# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., On Behalf Of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> - against - <br><br> CITIGROUP, INC. and CITIGROUP GLOBAL MARKETS, INC., <br><br> Defendant. | Case No. 08-cv-3095 (LTS) |
| LISA SWANSON, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> - against - <br><br> CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY, <br><br> Defendants. | Case No. 08-cv-3139 (LTS) |
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiff, <br><br> - against - <br><br> CITIGROUP INC. and CITIGROUP GLOBAL CAPITAL MARKETS, INC., <br><br> Defendants. | Case No. 08-cv-3904 (LTS) |

|  |  |
|---|---|
| WEDGEWOOD TACOMA LLC, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-   against -<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>Defendants. | Case No. 08-cv-4360 (UA) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE DIGNAM GROUP FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 4

    I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........4

    II.    THE DIGNAM GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .........4

        A.    The Procedure Required By the PSLRA ...................................................... 5

        B.    The Dignam Satisfies The Lead Plaintiff Requirements Of The
            PSLRA ........................................................................................................ 6

            1.    The Dignam Group Has Complied With the PSLRA and
                  Should Be Appointed Lead Plaintiff ................................................. 6

            2.    The Dignam Group Have The Requisite Financial Interest In
                  The Relief Sought By The Class ...................................................... 7

            3.    The Dignam Group Otherwise Satisfy Rule 23 .............................. 9

            4.    Aggregation of The Dignam Group's Financial Interests Is
                  Appropriate .....................................................................................11

    III.    THE DIGNAM GROUP'S CHOICE OF COUNSEL SHOULD BE
            APPROVED ............................................................................................... 12

CONCLUSION .................................................................................................. 14

## TABLE OF AUTHORITIES

**Case**                                                                 **Page**

*Albert Fadem Trust v. Citigroup, Inc.,*
    239 F. Supp. 2d 344 (S.D.N.Y. 2002).................................................... 6, 9

*In re American Bank Note Holographics Secs. Litig.,*
    93 F. Supp. 2d 424 (S.D.N.Y. 2000)..................................................... 11

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002)............................................................ 7

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)............................................................ 7

*In re Centerline Holding Co. Sec. Litig.,*
    2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008).......................... 11

*In re Fuwei Films Sec. Litig.,*
    247 F.R.D. 432 (S.D.N.Y. 2008) ............................................... 7, 9, 10

*In re Tarragon Corp. Sec. Litig.,*
    2007 U.S. Dist LEXIS 91418 (S.D.N.Y. Dec. 6, 2007)......................... 11

*Johnson v. Celotex Corp.*
    899 F. 2d 1281 (2d Cir. 1990)......................................................... 5

*Kaplan v. Gelfond*
    240 F.R.D. 88, 91 (S.D.N.Y. 2007)................................................... 5

*Lax v. First Merchs. Acceptance Corp.,*
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. 1997).................................... 7

*Reimer v. Ambac Fin. Group, Inc.,*
    2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008)....................... 11, 12

*Vladimir v. Bioenvision,*
    2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007)....................... 11

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) .................................................. 11, 12

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................................................... passim

Fed. R. Civ. P. 42(a) ……………………………………………………………...1, 4, 5

Fed. R. Civ. P. 23 ................................................................................................................ 5

Fed. R. Civ. P. 6(a) ……………………………………………………...…………...6

TABLE OF AUTHORITIES

## INTRODUCTION

Class members David Dignam and Ted Link (collectively, the "Dignam Group" or "Movants") move this Court for entry of an order: (1) consolidating the related actions before the Court; (2) appointing them Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and; (3) approving their selection of Girard Gibbs LLP ("Girard Gibbs") to serve as Lead Counsel, Stueve Siegel Hanson LLP ("Stueve Siegel") to serve as Co-Lead Counsel, and Seeger Weiss LLP ("Seeger Weiss") to serve as Liaison Counsel pursuant to the PSLRA.

Prior to selecting a Lead Plaintiff, the Court must decide whether to consolidate the four related actions pending before it, *LHB Insurance Brokerage Inc. v. Citigroup, Inc., et al.*, Case No. 08-cv-3095 (LTS); *Swanson v. Citigroup Inc.*, Case No. 08-cv-3139 (LTS); *Stockhamer v. Citigroup, Inc.*, Case No. 08-cv-3904 (LTS); and *Wedgewood Tacoma LLC v. CitiGroup Inc.*, Case No. 08-cv-4360 (UA). *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court must appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest of those seeking such appointment in the litigation and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

The Dignam Group submits that the above-captioned actions should be consolidated because they each involve the same defendants and substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). The Dignam Group further submits that it should be appointed Lead Plaintiff because it: (1) timely filed a motion for appointment of Lead Plaintiff; (2) has a substantial financial interest in the action, as its members collectively purchased and held $1,850,000 worth of auction rate securities from Citigroup Inc., Citigroup Global Markets, Inc., and Citi Smith Barney (collectively "Citigroup") during the Class Period, and in light of recent issuer redemptions, currently hold $1,350,000 of these securities; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Because the presumptive Lead Plaintiff selects counsel to represent the class under the PSLRA, and Girard

Gibbs, Stueve Siegel and Seeger Weiss are experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court should also approve the Dignam Group's selection of counsel to represent the Class.

**FACTUAL BACKGROUND**

This litigation arises out of "the hostage crisis otherwise known as the auction-rate securities market." Gretchen Morgenson, "How to Clear a Road to Redemption," *New York Times* (May 4, 2008).[1] As the *New York Times* explained earlier this month, "Some $300 billion worth of investors' funds—advertised as being easy as pie to cash in—are still locked up. And the brokerage firms that got investors into this mess are doing little to help." *Id.*

As described in the *Swanson* Complaint, auction rate securities are long-term variable-rate instruments. Their interest rates reset at periodic auctions, generally held every 7, 28 or 35 days. Auction rate securities include collateralized student loan debt obligations, preferred shares of closed-end mutual funds, and long-DIGNAMterm municipal debt. Despite the complex, long-term nature of these instruments, broker-dealers marketed auction rate securities to investors as risk-free, cash-equivalent alternatives to money-market funds.

Citigroup was a substantial broker-dealer of auction rate securities and the largest underwriter of auction rate securities. Through its financial advisors, Citigroup represented to investors in its uniform sales presentations and written materials that auction rate securities were the same as cash and were safe, highly liquid, short-term vehicles suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest.

Citigroup knew, but failed to disclose, material facts about the auction market and the auction rate securities it sold to investors including that: (1) auction rate securities were not cash alternatives, like money market funds, but were instead, complex, long-term financial instruments with 30-year maturity dates, or longer; (2) auction rate securities were only liquid at the time of sale because Citigroup and other broker-dealers were artificially supporting and

---

[1] http://www.nytimes.com/2008/05/04/business/04gret.html?scp=2&sq=auction+rate&st=nyt.

manipulating the auction market to maintain the appearance of liquidity and stability; (3) Citigroup and other broker-dealers routinely intervened in auctions for their own benefit, to set rates and prevent auctions from failing; and (4) Citigroup continued to market auction rate securities as liquid investments, even after it had determined that it and other broker-dealers were likely to withdraw their "support" for the periodic auctions which would result in a "freeze" of the auction rate securities market. As a result of these material non-disclosures, the value of the auction rate securities Citigroup sold was not as represented.

On February 13, 2008, all of the major broker-dealers, including Citigroup, withdrew their "support" for the auction rate securities market, causing 87 percent of all auctions to fail. The collapse of the auction rate securities market rendered more than $300 billion of outstanding securities illiquid. An analyst for Citigroup recently predicted that the auction rate securities market will "cease to exist" entirely and that the collapse of the auction rate securities market could cause investors to "stop using the services of their brokerage and/or asset management firms as a result of a loss of trust." Martin Z. Braun, "Auction-Rate Market Will 'Cease to Exist,' Citi Says (Update2)," *Bloomberg* (April 15, 2008).[2]

Citigroup was handsomely compensated for its participation in the auction rate securities market. Citigroup received significant underwriting and broker-dealer fees from issuers of auction rate securities, as well as substantial commissions on the sales of auction rate securities from investors.

The auction rate securities debacle has caught the attention of federal, state and industry regulators. Investigations are now being conducted by the U.S. Securities and Exchange Commission, the Financial Industry Regulatory Authority, the State of New York, and a nine-state task force including Florida, Georgia, Illinois, Massachusetts, Missouri, New Hampshire,

---

[2] http://www.bloomberg.com/apps/news?pid=20601213&refer=home&sid=aa6nZyh.SrNU.

New Jersey, Texas and Washington.[3]  Citigroup also has received a subpoena from the Attorney General of the State of New York.[4]

Investors are also pursuing their rights.  This class action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons and entities who purchased auction rate securities from Citigroup between March 26, 2003 and February 13, 2008 (the date of the collapse of the auction rate securities market), inclusive, and continued to hold such securities as of February 13, 2008.[5]

## ARGUMENT

### I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact.  Fed. R. Civ. P. 42(a).  Now pending before this Court are four related actions—*LHB Insurance, Swanson, Stockhamer* and *Wedgewood Tacoma*—each of which asserts class claims on behalf of investors who purchased auction rate securities from Citigroup during a largely overlapping Class Period and held those securities when the auction market collapsed on February 13, 2008.  Three of these complaints allege claims for violations of the Exchange Act, while the remaining action brings claims for violations of Investment Advisors Act.  The complaints make substantively similar allegations.   The actions name Citigroup and its subsidiaries and involve the same factual and legal issues, namely, whether plaintiffs purchased auction rate securities from Citigroup as a result of defendants' allegedly false and misleading statements and omissions, and, as to three of the actions, whether defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act.  Consolidation is appropriate where, as here, there

---

[3] http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=awpbOuGDDcs8.

[4]  http://www.nytimes.com/2008/04/18/business/18rate.html?_r=1&dlbk&oref=slogin.

[5] There are variations in the class periods alleged in each case: *LHB Insurance* (class period: March 26, 2003 to February 13, 2008); *Swanson* (class period:  March 27, 2003 to February 13, 2008); *Stockhamer* (class period:  April 25, 2002 to the present); *Wedgewood Tacoma* (class period:  May 8, 2003 to February 13, 2008).

are actions involving common questions of law or fact.[6]  *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  Therefore, the *LHB Insurance*, *Swanson*, *Stockhamer* and *Wedgewood Tacoma* actions should be consolidated pursuant to Rule 42(a).

## II.    THE DIGNAM GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Dignam Group includes two individuals who collectively held $1,850,000 in auction rate securities they purchased from Citigroup during the Class Period.  The Dignam Group respectfully submits that it should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

### A.    The Procedure Required By the PSLRA

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the complaint, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).  Notice of the first-filed action under the PSLRA relating to Citigroup's sale of auction rate securities was published on Prime Newswire on March 27, 2008.  *See* Declaration of Jonathan K. Levine In Support of the Motion of the Dignam Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Levine Dec."), Ex. A.  Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead

---

[6] The existence of variations among the defendants, class periods and causes of actions alleged in the actions does not preclude consolidation. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Albert Fadem Trust v. Citigroup, Inc.,* 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (Swain, J.).

**B.    The Dignam Group Satisfies The Lead Plaintiff Requirements Of The PSLRA**

**1.    The Dignam Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

As notice of the filing of the initial action was published on March 27, 2008, the time period in which class members may move to be appointed lead plaintiff in this case expires on May 27, 2008. *See* Levine Decl., Ex. A; 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a). This application, filed on May 27, 2008, is thus timely. Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Levine Decl., Ex. B (Dignam certification), Ex. C (Link certification). In addition, Movants have selected and retained competent counsel to represent themselves and the Class. *See id.,* Ex. D

6

(firm resume of Girard Gibbs), Ex. E (firm resume of Stueve Siegel), Ex. F (firm resume of Seeger Weiss).  Accordingly, the Dignam Group has satisfied the requirements of 15 U.S.C. § 78u-4(a)(3)(B), and the Court should approve its application for appointment as Lead Plaintiff and its selection of counsel to represent the Class.

### 2.    The Dignam Group Has The Requisite Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)).  "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has articulated such a method."  *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008).  To calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied."  *In re Cavanaugh*, 306 F.3d at 730 n.4.  Generally, courts have considered the following factors in determining a movant's financial interest:  (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *In re Fuwei Films,* 247 F.R.D. at 437 (citing *Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, *17 (N.D. Ill. 1997)).

The Dignam Group has a substantial financial interest in this case.  Beginning in June 2007, Mr. Dignam purchased $1,900,000 in auction rate securities from Citigroup.  Mr. Dignam sold $525,000 of those securities in 2007.  At the end of the Class Period, Mr. Dignam held $1,375,000 in auction rate securities.  *See* Levine Decl., Ex. B, Attachment A.  Beginning in July 2005, Mr. Link purchased $475,000 in auction rate securities from Citigroup.  Mr. Link held all

of those securities at the end of the Class Period.  *See* Levine Decl., Ex. C, Attachment A.

Citigroup had not disclosed the risks associated with auction rate securities prior to selling them

to Movants.

At the close of the Class Period on February 13, 2008, the Dignam Group held auction

rate securities with a par value of $1,850,000.  *See* Levine Decl., Ex. G (analysis of the Dignam

Group's Class Period transactions).  Upon the collapse of the auction market at the end of the

Class Period, all of those securities were rendered illiquid, precluding Movants from selling their

shares on the auction market.  In May 2008, certain issuers redeemed $500,000 of Mr. Dignam's

auction rate securities.  *See id.*  Mr. Link's securities have not been redeemed since the end of the

Class Period.  *See id.*

Because Citigroup sold auction rate securities as highly liquid cash equivalents, and these

securities are now illiquid, a movant's financial interest can be measured conservatively by the

amount of the movant's investment that remains illiquid—in other words, the par value of the

auction rate securities that were purchased from Citigroup during the Class Period that have not

been redeemed by the issuer.  Under this formulation, the Dignam Group's cumulative financial

interest for purposes of this motion, is $1,350,000—the combined par value of the shares of now-

illiquid auction rate securities they purchased from Citigroup during the Class Period and held at

the end of the Class Period that were not redeemed after the Class Period.  Given the nature of

the securities at issue, this is an objective and conservative method for calculating the financial

interest of each movant seeking appointment as Lead Plaintiff under the PSLRA.

The Dignam Group knows of no other applicant with a greater financial interest seeking

appointment as Lead Plaintiff in this matter.  It thus satisfies all of the PSLRA's prerequisites for

appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to

15 U.S.C. § 78u-4(a)(3)(B).

### 3.    The Dignam Group Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy — concern the personal characteristics of the class representative. Consequently, a court deciding a lead plaintiff motion should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), as "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *In re Fuwei Films*, 247 F.R.D. at 436 (quotations omitted); *see also Fadem Trust*, 239 F. Supp. 2d at 347 ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). Movants satisfy the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same course of events and are based on similar legal theories as the claims of the class members. *See, e.g., In re Fuwei Films*, 247 F.R.D. at 436. Typicality does not require that there be no factual differences between the class representative and the class members, because it is the generalized nature of the claims asserted that determines whether the class representative is typical. *See id.* ("The lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.") (citations omitted).

Movants are typical because, like all other Class members, they: (1) purchased auction rate securities from Citigroup during the Class Period as a result of Citigroup's allegedly

materially false and misleading statements and omissions concerning the liquidity and risk characteristics of the auction rate securities and the auction market; (2) held auction rate securities on the date that Citigroup and all other broker-dealers withdrew their "support" for the auction market; and (3) are consequently unable to sell their auction rate securities at par value. As the Dignam Group's claims and the claims of other Class members arise out of the same course of events, the Dignam Group satisfies the typicality requirement.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its adequacy inquiry to the existence of any conflict between the proposed Lead Plaintiff's interests and the interests of Class members. A proposed lead plaintiff is adequate where: (1) there is no conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel is qualified, experienced and generally able to conduct the proposed litigation. *In re Fuwei Films,* 247 F.R.D. at 436 (citations omitted). Additionally, the lead plaintiff should have a "sufficient interest in the outcome to ensure vigorous advocacy." *Id.*

Movants are adequate representatives of the Class, as their interests are aligned with those of Class members, and there is no evidence of any antagonism between their interests. Like Class members, the Dignam Group acquired now-illiquid auction rate securities based on Citigroup's material non-disclosures and misleading statements about auction rate securities and the auction market. Further, the Dignam Group has taken significant steps that demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims and to continue their investigation into the facts giving rise to this action. The Dignam Group's proposed counsel are qualified, experienced and able to conduct this complex litigation in a professional manner. The Dignam Group is not subject to any unique defenses or other legal hindrances. Finally, the Dignam Group, which currently holds $1,350,000 worth of illiquid auction rate securities purchased from Citigroup during the Class period, has a sufficient interest in the outcome of this case to ensure vigorous advocacy. For

these reasons, the Dignam Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4.    Aggregation of the Dignam Group's Financial Interests Is Appropriate

The PSLRA on its face contemplates appointment of more than one class member as lead plaintiff, so long as the investor group will be capable of representing the interests of the class. The PSLRA provides that a court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Under the PSLRA, a "person or group of persons" may be an adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Courts in this district routinely permit aggregated investors to serve as Lead Plaintiff. *See, e.g., Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (explaining that disallowing unrelated class members to aggregate and serve as lead plaintiff is "now the minority view"); *In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, *8 (S.D.N.Y. May 5, 2008) (Schneidlin, J.) ("[W]here aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements."); *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist LEXIS 91418, *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) ("The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."); *In re American Bank Note Holographics Secs. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) (McMahon, J.) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); *Weltz v. Lee,* 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (Batts, J.) ("The majority of courts . . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff."); *Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, *40-42 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.). Courts recognize, however, that

appointment of an aggregate lead plaintiff may be "inappropriate where the group is too large." *Reimer,* 2008 U.S. Dist. LEXIS 38729, at *8 (citing *Weltz,* 1999 F.R.D. at 133). The group must not be "so cumbersome as to deliver the control of the litigation into the hands of the lawyers." *Id.*

The Dignam Group is comprised of two individuals who purchased auction rate securities from Citigroup and held them when the auction market collapsed. Movants have informed themselves about this litigation, and expect to participate directly in the lawsuit. They have also stated their willingness to serve as Lead Plaintiff along with other qualified class representatives. *See* Levine Decl., Ex. B at ¶ 3, Ex. C at ¶ 3. As a group, they are neither too large nor too cumbersome to manage this litigation effectively. Accordingly, aggregation of their claims is appropriate for purposes of the Lead Plaintiff appointment.

## III.    **THE DIGNAM GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED**

Due to the complexity of this litigation, the Dignam Group has selected three law firms to represent the class in this matter, subject to Court approval: Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

As demonstrated by its firm resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors. *See* Levine Decl., Ex. D. Girard Gibbs has investigated the auction rate securities market since its collapse in February 2008 and filed the *Swanson* action against Citigroup. Girard Gibbs has been contacted by more than 2,000 auction rate securities investors, has interviewed Class members, and has retained consultants knowledgeable in auction rate securities. Girard Gibbs is thus in a unique position to assess the claims, damages and needs of Class members, and is well-qualified to represent their interests. Girard Gibbs has access to numerous individuals, businesses and charities that would be willing to provide testimony or participate as non-lead plaintiffs if necessary to further the interests of the case. This factor is critical here, as the case alleges widespread, systemic non-disclosures and misrepresentations.

Like Girard Gibbs, Stueve Siegel has taken a lead role in investigating and prosecuting cases related to auction rate securities, including the case pending against Citigroup. Since the collapse of the auction market in February 2008, Stueve Siegel in partnership with other firms has taken the initiative in researching the auction rate securities industry, investigating potential claims, drafting the pertinent documents for the commencement of the litigation, and contacting investors who have requested advice from an attorney. As evidenced by its firm resume, Stueve Siegel has extensive experience prosecuting and litigating class and complex litigation in courts across the country, including securities matters. *See* Levine Decl., Ex. E. Given its experience with complex litigation and its familiarity with the auction rate securities market, Stueve Siegel is well-equipped to serve as Co-Lead Counsel in this litigation.

Over the past decade, Seeger Weiss has emerged as one of the leading plaintiffs' firms in the United States, as demonstrated by its inclusion in the National Law Journal's 2007 "Plaintiff's Hot List" of nationally elite firms. With approximately 30 lawyers operating out of offices in four states, the firm's expertise in the areas of class action and mass tort litigation has been recognized by courts throughout the U.S. As reflected in the firm biography, Seeger Weiss has been appointed to numerous positions of leadership in a variety of multidistrict and complex litigations including securities fraud class actions. *See* Levine Decl., Ex. F. Currently, Seeger Weiss serves on the Plaintiffs' Steering Committee in the *IPO Securities Litigation*, one of the largest and most significant coordinated securities fraud prosecutions in United States history. Seeger Weiss also holds or has held leadership roles in other securities matters, including: *PixelPlus Securities Litigation*, *Sim, et al. v. Aspen Technology, et al.*, *Babcock v. Citigroup*, *Victor v. UBS Paine Weber, et al.*, and *ATEC Group, Inc. Class Action*. Along with Girard Gibbs and Stueve Siegel, Seeger Weiss has been communicating with Class members and investigating the claims alleged in this case since the collapse of the auction market.

Accordingly, the Dignam Group's selection of Lead, Co-Lead and Liaison Counsel should be approved.

## CONCLUSION

For the foregoing reasons, the Dignam Group satisfies the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  The Dignam Group respectfully requests that this Court:  (1) consolidate the related actions; (2) appoint the Dignam Group as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (3) approve its selection of Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.


DATED: May 27, 2008                         Respectfully submitted,

                                            **GIRARD GIBBS LLP**

                                            By:   *Jonathan K. Levine*
                                                  Jonathan K. Levine (JL-8390)

                                            Daniel C. Girard
                                            Aaron M. Sheanin
                                            601 California Street, 14th Floor
                                            San Francisco, CA  94108
                                            Telephone:  (415) 981-4500
                                            Facsimile:  (415) 981-4846

                                            **Proposed Lead Counsel**

                                            Norman E. Siegel
                                            **STUEVE SIEGEL HANSON LLP**
                                            460 Nichols Road, Suite 200
                                            Kansas City, MO, 64112
                                            Telephone: (816) 714-7100
                                            Facsimile: (816) 714-7101

                                            **Proposed Co-Lead Counsel**

                                            Christopher A. Seeger (CS-4880)
                                            Stephen A. Weiss (SW-3520)
                                            David R. Buchanan (DB-6368)
                                            **SEEGER WEISS LLP**
                                            One William Street, 10th Floor
                                            New York, NY  10004
                                            Telephone:  (212) 584-0757
                                            Facsimile:  (212) 584-0799

14

**Proposed Liaison Counsel**

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on May 27, 2008, I caused the following

document(s) to be filed electronically with the United States District Court for the Southern

District of New York through the Court's mandated ECF service:

1.      **MEMORANDUM OF LAW INSUPPORT OF THE MOTION OF
        THE DIGNAM GROUP, FOR CONSOLIDATION OF ACTIONS,
        APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
        SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are

automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of May, 2008 at San Francisco, California.


_____ /S/ Jonathan K. Levine _____

16