## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LHB INSURANCE BROKERAGE INC., On
Behalf Of Itself And All Others Similarly Situated,

                   Plaintiff,

    vs.

CITIGROUP INC. and CITIGROUP GLOBAL
MARKETS, INC.,

                   Defendants.

Civil Action No. 08-CV-3095 (LTS)

*[additional captions follow]*

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR APPOINTMENT AS
LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN
<ins>OPPOSITION TO COMPETING MOTIONS</ins>**

**MILBERG LLP**
Jerome M. Congress (JC-2060)
Kent A. Bronson (KB-4906)
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

***Proposed Lead Counsel for the Class***

LISA SWANSON, Individually And On Behalf of
All Others Similarly Situated,

                      Plaintiff,

      vs.

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. AND CITI SMITH BARNEY,

                      Defendants.

Civil Action No. 08-CV-3139 (LTS)

---

SAMUEL A. STOCKHAMER and ALICE L.
STOCKHAMER, On Behalf of Themselves and
All Others Similarly Situated,

                      Plaintiffs,

      vs.

CITIGROUP INC. and CITIGROUP GLOBAL
CAPITAL MARKETS, INC.

                      Defendants.

Civil Action No. 08-CV-3904 (LTS)

---

WEDGEWOOD TACOMA LLC, Individually
And On Behalf of All Others Similarly Situated,

                      Plaintiff,

      vs.

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC., and CITI SMITH BARNEY,

                      Defendants.

Civil Action No. 08-CV-4360 (LTS)

SAED GHALAYINI, Individually And On Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,

                Defendants.

Civil Action No. 08-CV-5016

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL HISTORY............................................................................................3

ARGUMENT ............................................................................................................4

    I.    THE WEDGEWOOD MOVANTS SHOULD BE APPOINTED LEAD
        PLAINTIFFS ...................................................................................................4

        A.    The Wedgwood Movants Have The Largest Face Amount Of Class
            Period  ARS Purchases Of Any Lead Plaintiff Movant That
            Unequivocally Meets The Rule 23 Requirements ......................................4

        B.    The Wedgewood Movants Exceed Rule 23's Adequacy Requirements .....4

    II.    PASSIDOMO'S MOTION RAISES SERIOUS QUESTIONS AS TO HIS
        ADEQUACY .....................................................................................................5

    III.    THE LHB INSURANCE MOVANTS' FINANCIAL INTERESTS SHOULD
        NOT BE AGGREGATED UNDER THE PSLRA................................................10

CONCLUSION..........................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Babcock v. Computer Associates International*,
    212 F.R.D. 126 (E.D.N.Y. 2003) ............................................................................6

*In re Cavanaugh*,
    306 F.3d  726 (9th Cir. 2002) ...............................................................................5

*In re Doral Financial Corporation Securities Litigation*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006) .................................................................10

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................................6

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ..............................................................................6

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983) .................................................................................6

*In re Pfizer Inc. Securities Litigation*,
    233 F.R.D. 334 (S.D.N.Y. 2005) .........................................................................9

*Savino v. Computer Credit, Inc.*,
    164 F.3d 81 (2d Cir. 1998) ...................................................................................6

*Weisman v. Darnielle*,
    78 F.R.D. 669 (S.D.N.Y. 1978) ..........................................................................9

*Xianglin Shi v. SINA Corp.*,
    No. 05 Civ 2154 (NRB), 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) .....6, 7, 8, 9

*Utopia Entertainment, Inc. v. Clairborne Parish*,
    No. 03-1355, 2006 U.S. Dist. LEXIS 11956 (W.D. La. Mar. 6, 2006)...................9

## DOCKETED CASES

*In re Superior Offshore International, Inc. Securities Litigation*,
    No. H-08-0687, 2008 WL. 2148745 (S.D. Tex. May 20, 2008) ...........................10

*In re Tarragon Corp. Securities Litigation*,
    No. 07 Civ 7972 (PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007)................13

*Goldberger v. PXRE Group, Ltd.*,
    No. 06-C 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) ...........................................................9

*Stockhamer v. Citigroup Inc.*,
    No. 1:08-CV-3904 (S.D.N.Y. filed Apr. 25, 2008) ....................................................3

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. 07-CV-2204, 2008 WL. 942273 (D. Ariz Apr. 7, 2008) ................................................11

## STATUTES, RULES AND OTHER AUTHORITES

Educ. Law. Sec. 6530 ...................................................................................................7

Fed. R. Civ. P. 23(a)(4) ..............................................................................................11

Fed. R. Civ. P. 23(g) ....................................................................................................3

Fed. R. Civ. P. 23(a) ....................................................................................................5

## PRELIMINARY STATEMENT

Movants Wedgwood Tacoma LLC and Jemstone LLC (the "Wedgewood Movants")
submit this Memorandum of Law in Further Support of the Motion of Wedgewood Tacoma LLC
and Jemstone LLC for Appointment As Lead Plaintiff, Approval Of Selection of Lead Counsel
and in Opposition to Competing Motions.

The Wedgewood Movants should be appointed Lead Plaintiff because they have the
largest financial interest in this litigation of any movant that unequivocally satisfies the Rule 23
requirements.  Moreover, the Wedgewood Movants are the type of experienced investors that
Congress sought to summon and empower when it enacted the PSLRA: they are two business
entities owned and managed by members of the same immediate family.  The family members
involved here, moreover, have significant experience working with lawyers and supervising
litigation, as well as other qualities, set forth below, that make them ideal candidates to represent
the class here.[1]

Passidimo reported a larger financial interest than the Wedgewood Movants but his
motion should, at the very least, give this Court pause.  The Wedgewood Movants have learned
that Passidimo had his license to practice medicine suspended in multiple states for what one
medical board described as conduct that was "dishonorable, unethical and unprofessional to the
extent said conduct is of a character likely to deceive, defraud or harm the public."  Bronson

---

[1] The competing movants, and their relative financial interest, in terms of face amount of ARS
purchases during the Class Period, are as follows:  Dr. Michael A. Passidomo ("Passidomo")
(approximately $10.95 million); The Wedgewood Movants (approximately $3.9 million); The
LHB Insurance Movants (approximately $3.225 million); and the Dignam Movants
(approximately $2.375 million).

438046_1

Decl. Ex. E.[2]  The Court was not apprised of Passidomo's suspension in Passidomo's opening papers --- indeed the Court likely would be unaware of Passidomo's suspensions were it not for the Wedgewood Movants --- and this strongly suggests that Passidomo did not reveal his history of misconduct to his own lawyers.  The failure to disclose his medical license suspensions to the Court strongly suggests that Passidomo may not be sufficiently trustworthy and forthright to serve as a lead plaintiff or class representative, and also Passidomo's apparent history of improper conduct and his failure to disclose it to the Court, must also raise doubts about the accuracy of his reported financial interest and other information he has submitted to the Court. At a minimum, Passidomo's multiple medical license suspensions and past misconduct raise serious questions about his fitness and adequacy to serve as lead plaintiff and/or class representative here, which merit further and full disclosure and examination.  In the alternative, in the event that the Court decides to allow Passidomo to assume a leadership position in this case, the Wedgewood Movants request that they be appointed as co-lead plaintiffs (and their counsel as co-lead counsel) so that they may participate in the conduct and supervision of this litigation to further safeguard the interests of the Class.

The Court should deny the LHB Insurance Movants motion because the total face amount of their ARS purchases during the Class Period is less than that of the Wedgewood Movants ($3.225 million versus $3.9 million).  Moreover, in sharp contrast to the Wedgewood Movants, the LHB Insurance Movants' are four individuals (and a corporation) with no apparent pre-existing relationship.  It appears that their lawyers cobbled them together for the purpose of reporting a larger combined financial interest than any of the other movants, and thereby obtain a

---

[2] "Bronson Decl." refers to the June 16, 2008 Declaration of Kent A. Bronson submitted herewith.

lead counsel position for themselves in this case. This lawyer-driven aggregation is too large, unwieldy and disorganized to meet the PSLRA's requirements for a lead plaintiff group.

The motion of the self-described "Dignam Group" motion should be denied on the same grounds: the so-called group is comprised of apparently two unrelated individuals who, together, have a lesser reported financial interest than the Wedgewood Movants.

## PROCEDURAL HISTORY

On May 8, 2008, Movant Wedgewood Tacoma LLC filed one of four related actions (the "Actions") in this District on behalf of a class of those who purchased or otherwise acquired ARS through Citigroup (the "Class"). On May 27, 2008, Wedgewood Tacoma LLC was joined by Jemstone LLC, and the Wedgewood Movants moved for consolidation, appointment as lead plaintiff, approval of selection of lead counsel, and appointment of interim lead counsel over the Investment Advisor Act claims. All but one of the Actions allege Exchange Act Claims (the Exchange Act Actions"). The remaining action, *Stockhamer v. Citigroup Inc.*, No. 1:08-CV-3904 (S.D.N.Y. filed Apr. 25, 2008) (LTS) (*Stockhamer*), brings IAA claims, as well as a number of pendent state law claims. Only the *Wedgewood* action alleges both the securities fraud claims and the IAA claims. Because both the Exchange Act Actions and *Stockhamer* arise from essentially the same facts and circumstances, and discovery will essentially be the same in both, the Wedgewood Movants sought to consolidate the Exchange Act Actions and *Stockhamer* for all purposes, and their counsel have sought appointment as Interim Lead Counsel over the IAA claims under Fed. R. Civ. P. 23(g). *See* Wedgewood Movants' May 27, 2008 Opening Br., 1-2, 5, and 12-16.

## ARGUMENT

I. **THE WEDGEWOOD MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS**

A. **The Wedgwood Movants Have The Largest Face Amount Of Class Period ARS Purchases Of Any Lead Plaintiff Movant That Unequivocally Meets The Rule 23 Requirements**

The Wedgewood Movants have the largest financial interest in terms of face amount of purchases of ARS during the Class Period of any of the movants herein who otherwise satisfy the prerequisites of Rule 23. The Wedgewood Movants acquired approximately $3.9 million of ARS during the Class Period.[3] *See* May 27, 2008 Declaration of Jerome M. Congress ("Congress Decl."), Ex. A. Because of the extent of their ARS purchases and holdings, the Wedgewood Movants have a powerful financial incentive to recover the full value of their holdings and other applicable damages from Defendants. Thus, the Wedgewood Movants are presumptively the most adequate plaintiffs and should be appointed Lead Plaintiffs by the Court in these Actions.

B. **The Wedgewood Movants Exceed Rule 23's Adequacy Requirements**

Moreover, the background and experience of the principals of the Wedgwood Movants involved here is noteworthy, as these factors further establish the Wedgewood Movants' suitability to lead this case and represent the Class here. The Wedgewood Movants are two

---

[3] The face amount of the Wedgewood Movants' overall ARS holdings are expected to be eventually reduced to approximately $2.47 million. The bulk of Wedgewood Movant Jemstone LLC's holdings (about $1.5 million out of a total of approximately $2.075 million) are spread across three different Calamos funds, and Calamos had either redeemed, or announced plans to redeem, many of these holdings; specifically, Calamos redeemed $978,000 worth of these holdings in late May, 2008, and is expected to redeem another $244,000 of these holdings on June 25' 2008. *See* Bronson Decl., Exs. B and C. Thus, Jemstone LLC's total ARS holdings are expected to be reduced to a total of approximately $853,000. *See id*; *see also* Congress Decl., Ex. A. Similarly, Movant Wedgewood Tacoma LLC's holdings of $1.7 million in various ARS is expected to be reduced by approximately $80,443 in late June, 2008 due to an announced redemption by BlackRock. *See* Bronson Decl., Ex. D, and Congress Decl. Ex. A.

limited liability companies, owned and/or managed by members of the same immediate family, the Mayers of Tacoma, Washington. *See* Bronson Decl., Ex. A (Affidavit of Kurtis R. Mayer (the "Mayer Aff.")), at ¶ 2. Wedgewood Tacoma LLC is majority owned by Kurtis R. and Pamela Mayer. Mayer Aff., ¶ 2. Pamela Mayer and their son Joseph Mayer are managers of Wedgewood along with their son Joseph Mayer. Joseph Mayer is also the majority owner and manager of Jemstone LLC. *Id.* The Mayers have long been entrepreneurs in the building industry in Washington State, have a significant history of community involvement and activism, philanthropy, and a track record of standing up and fighting for their principles, including in the courts. *Id.* at ¶¶ 4-8. The Mayers have substantial experience supervising lawyers and litigation, which will be brought to bear for the benefit of the Class here, and they are willing and able to vigorously prosecute this litigation through to conclusion. *Id.* at ¶ 7.[4]

The Wedgewood Movants not only meet the threshold requirements of typicality and adequacy of representation here, *see* Wedgewood Movants' Opening Brief, at pp. 9-12, they are more than adequate, indeed they are ideal, candidates to lead this important litigation, and are clearly the most adequate among the competing lead plaintiff movants herein. Their application should therefore be granted.

## II. THERE ARE SERIOUS QUESTIONS AS TO PASSIDOMO'S ADEQUACY

In contrast to the Wedgewood Movants, Passidomo's motion raises serious questions as to his adequacy to represent the Class that have yet to be addressed.

---

[4] Pursuant to the PSLRA, a Lead Plaintiff must also meet the applicable requirements of the Fed. R. Civ. P. 23(a), or the typicality and the adequacy requirements, which address the personal characteristics of a proposed lead plaintiff or class representative. *See, e.g., In re Cavanaugh*, 306 F.3d. 726, 739 (9th Cir. 2002).

A class representative, once designated by the Court, is a fiduciary for absent class members, and must be qualified and adequate under the Rule 23's adequacy standard, which generally involves questions of whether "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and . . . whether plaintiffs have any interests antagonistic to those of the rest of the class." *See, e.g.*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *Babcock v. Computer Assocs. Int'l,* 212 F.R.D. 126, 130 (E.D.N.Y. 2003).  However, "even where these two requirements are satisfied  . . . named plaintiffs might not qualify as class representatives because they do not possess the personal characteristics necessary to fulfill the fiduciary role of class representative."  *Kirkpatrick*, 827 F.2d at 726 (citing *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983). "To judge the adequacy of representation, courts may consider the honesty and trustworthiness  of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  *See also Xianglin Shi v. SINA Corp.*, No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176, at *14 (S.D.N.Y. July 1, 2005) ("Honesty and trustworthiness are thus relevant factors in determining and [sic] individual's ability to serve as a class representative.").  For this reason, strong evidence of prior dishonest conduct by a proposed lead plaintiff, such as "convictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative." *Id*.  It is just this sort of conduct that may render Passidomo inadequate to serve as lead plaintiff and represent the Class here, despite his apparently having the largest reported total of ARS purchases in terms of face amount during the Class Period.[5]

---

[5]Passidomo reportedly purchased a total of $10.95 million ARS during the Class Period, although actual and announced redemptions will apparently reduce that total by approximately

The Wedgewood Movants' counsels' investigation has revealed that Passidomo's medical license has been suspended, and/or surrendered, in multiple states, including New York, as a result of his having been charged with serious misconduct, including conduct that would have amounted to fraud had it occurred in New York:

- In 1994, Passidomo's medical license was suspended in Kentucky following a 1993 complaint charging that, over a prior six-year period (from 1985 to 1991), Passidomo engaged in conduct that was ". . . dishonorable, unethical and unprofessional to the extent said conduct is of a character likely to deceive, defraud or harm the public. . . ." *See* Bronson Decl., Ex. E.

- Also in 1994, Passidomo surrendered his medical license in West Virginia. *See* Bronson Decl., Exs. F and G. Although the West Virginia Board of Medicine did not specify the reasons for or details of the surrender, it appears that it was related to the action in Kentucky. *Id.*

- In a 1995 the New York State Department of Health, Board of Professional Conduct, charged Passidomo with "one specification of professional misconduct" on the ground that he had his license suspended in Kentucky for conduct that, had it occurred in New York, would have constituted "practicing the [medical] profession fraudulently or beyond its authorized scope" (Educ. Law Sec. 6530(2); "practicing the profession with gross negligence on a particular occasion" (Educ. Law Sec. 6530 (4); "practicing the profession with gross incompetence" (Educ. Law. Sec. 6530 (6); "Ordering of excessive tests, treatment, or use of treatment facilities not warranted by the condition of the patient" (Educ. Law. Sec. 6350 (35) McKinney Supp. 1995) *See* Bronson Decl., Exs. E and F.

- In 1995, Passidomo admitted guilt to certain of the charges, specifically those involving the "Ordering of excessive tests, treatment, or use of treatment facilities not warranted by the condition of the patient" in satisfaction of the charges against him in New York State. Passidomo's New York State medical license was suspended and he received two years probation (with the suspension stayed and the probation tolled as long as he did not practice medicine in New York State). *See* Bronson Decl., Exs. E and F.

---

$1,102,239 due to redemptions announced by BlackRock in June, 2008, and Eaton Vance in late April, 2008, reducing his overall holdings to about $9,847,761. That amount will be further reduced by approximately $68,250 - $195,000 due to a redemption plan announced by Nuveen in June, 2008. *See* the May 27, 2008 Affidavit of Richard A. Speirs in support of Passidomo's lead plaintiff motion, Ex. C; *see also* Bronson Decl., Exs. D, N, and G.

- In 1995, the Florida Medical Board charged Passidomo with failing to report the actions against him in other states pursuant to the Florida Board's rules, entered into a consent order with Passidomo, and assessed a fine against him and also issued a "letter of concern."  *See* Bronson Decl., Ex. F.

- In 1997, Passidomo consented to additional sanctions in connection with the New York State Department of Health charges, surrendered his New York medical license, and had his name stricken from the roster of physicians in New York State.  *See* Bronson Decl., Ex. N.  Records obtained by the Wedgewood Movants from the Federation of State Medical Boards indicate that the surrender of his New York license was "substituted for sanction originally imposed; charges and plea remain unchanged." Bronson Decl., Ex. F.

- In 1998, Passidomo surrendered his medical license in Virginia pursuant to a Consent Order with Virginia's Medical Board.  This surrender was "prior to or in lieu of [an] inquiry, investigation or other action."  According to Federation of State Medical Board Data obtained by the Wedgewood Movants.  *See* Bronson Decl., Ex. F.

- In 2003, the Kentucky Court of Appeals affirmed findings of "substantial evidence" that Passidomo had conducted numerous improper medical tests on Medicaid patients in 1992 and 1993, tests which were not medically necessary or for which Passidomo failed to establish the medical necessity.  *See* Bronson Decl., Ex. I.  In connection therewith, Passidomo was found liable to the Kentucky Cabinet for Health Services for almost $120,000.  *Id.* at pp. 2-5, 10-11.  This conduct appears to have been similar to at least some of the misconduct which was the subject of the earlier disciplinary actions against him in Kentucky and New York.

Passidomo thus appears to have engaged in a pattern of dishonest conduct that continues to date, at least insofar as Passidomo failed to mention any of these matters to the Court or, apparently, even his own counsel in this case.  Rather, it was the Wedgewood Movants' counsel that informed Passidomo's counsel approximately a week ago of Passidimo's history of license suspensions and improper conduct, and it is the Wedgewood Movants that now, hereby, attempt to bring this issue fully to the fore.  Courts facing substantially similar circumstances have refused to approve proposed lead plaintiffs or class representatives, finding that issues such as these concerning their character and integrity rendered them inadequate.  *See, e.g.,  SINA Corp.*, 2005 U.S. Dist. LEXIS 13176, at \*14-15 (denying lead plaintiff motion of group led by

individual who had pled guilty ten (10) years earlier to providing false information to a financial

institution), and *supra* at p. 6.  *See also Weisman v. Darnielle*, 78 F.R.D. 669, 670-71 (S.D.N.Y.

1978) (Proposed representative found inadequate where he had previously committed securities

fraud in an unrelated matter, and where he failed to bring this information to his counsel's

attention until just before his deposition); *Utopia Ent., Inc. v. Clairborne Parish*, No. 03-1355,

2006 U.S. Dist. LEXIS 11956, at *4 (W.D. La. Mar. 6, 2006).

At a minimum, Passidomo's multiple medical license suspensions raise serious questions

about his fitness and adequacy to serve as lead plaintiff and/or class representative here, which

merit further and full disclosure and examination.  Considering the fact that at least some of

Passidomo's misconduct and/or suspensions appear to have involved dishonesty and impropriety

in connection with billing and financial management, and in certain instances he appears to have

been involved in improperly billing governmental agencies in connection with Medicaid, such

conduct is clearly relevant to his adequacy as a lead plaintiff/fiduciary acting for the benefit of

absent class members.  This also puts the class at risk and makes him a target for the defense

later on in the litigation.  This situation will also put at risk the judicial resources that will have

been expended in the course of the litigation by then.  This potential problem is apparent now,

and can be remedied by the Court either by appointing the Wedgewood Movants as sole lead

plaintiff or alternatively appointing the Wedgewood Movants as co-lead plaintiffs (and their

counsel as co-lead counsel) should the Court decide that the size of Passidimo's financial interest

warrants that he have a role in this case.

### III.    THE LHB INSURANCE MOVANTS' FINANCIAL INTERESTS SHOULD NOT BE AGGREGATED UNDER THE PSLRA[6]

Although the PSLRA allows groups to serve as lead plaintiffs, "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (Owen, J.) (rejecting unrelated group of institutional investors as lead plaintiffs); *see also Goldberger v. PXRE Group, Ltd.*, No. 06-CV-3410 (KMK), 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (Karas, J.) (noting conflicting rulings in the district, agreeing that the assessment of a lead plaintiff group is contextual, and declining to appoint an unrelated group that "shares only this lawsuit in common."). *See also In re Superior Offshore Int'l, Inc. Sec. Litig.*, No. H-08-0687, 2008 WL 2148745 (S.D. Tex. May 20, 2008) ("Where a plaintiff bases his claim to have the largest financial loss on the aggregate loss of several investors, the group must have a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action.") (citations and quotations omitted).

In *In re Doral Financial Corporation Securities Litigation*, the court declined to appoint various collections of individuals who had moved to be lead plaintiff. 414 F. Supp. 2d 398 (S.D.N.Y. 2006) (Owen, J.). In doing so, the court stated:

> [T]he putative plaintiffs have aggregated themselves into "groups" of otherwise unrelated investors, and their *collective* financial

---

[6] The total face amount of the LHB Insurance Movants' ARS purchases during the Class Period is less than that of the Wedgewood Movants ($3.225 million versus $3.9 million). However, after actual or announced redemptions, it is anticipated that the amount of the LHB Insurance Movants' holdings will be reduced by approximately $277,000 by late June, 2008. *See* May 27, 2008 Levi Decl., Ex. B; *see also* Bronson Decl., Exs. D, J and K. Moreover, the individual LHB Insurance Movant with the largest holdings, Ian Lande, reportedly has the bulk of his holdings invested in Legg Mason-issued ARS preferred, and Legg Mason has announced that it is "seeking liquidity solutions" for investors in its ARS. *See* May 27, 2008 Levi Decl., Ex. B, and Bronson Decl., Ex. L.

> interest is thus calculated.  Nothing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible "financial interest" figure to be chosen, which, however, also cumulates case control problems and rival disagreements, resulting in delay and increased expense. I reject this approach as essentially inconsistent with the intention of the PSLRA.  As I have recently noted, based on earlier precedent, by allowing attorneys to designate otherwise unrelated plaintiffs as a purported "group," and by allowing unrelated groups to aggregate investments in an effort to generate the "largest financial interest," a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation.

*Id.* at 401-02 (emphasis in original).

The LHB Insurance Movants' "group" appears to be exactly what the *Doral* and other courts reject: unrelated individuals put on the papers for the sole purpose of combining their reported losses, thus enabling their lawyers to claim that that they represent the presumptive lead plaintiff "group" and, therefore, should be appointed lead counsel.  None of the members appear to have had any relationship prior to the commencement of this litigation. There is no evidence that the four individual members or any representative of the corporate member spoke to or among each other before the filing of the motion, or that they knew of or even now know of each others' existence.  On the contrary, such a prior relationship appears unlikely.  Of the individuals, they all have different last names, and most reside in different states (one in Florida; one in Los Angeles, California; one in Scarsdale, New York; one in McLean, Virginia; and two in New York State)(*see* May 27, 2008 Declaration of Joseph I. Levi, Ex. B filed with the LHB Insurance Movants' opening lead plaintiff papers; *see also* Bronson Decl., Ex. M), and were apparently organized by their lawyers for the purpose of gaining lead status. In sum, these movants by all appearances are an artificial, chance-driven amalgam of unrelated investors with no pre-existing relationship and no decision-making structure to coordinate amongst themselves to effectively or efficiently supervise this litigation or their counsel.

11

The LHB Insurance Movants are akin to a purported group denied lead status in the recent case of *Tsirekidze v. Syntax-Brillian Corp.,* No. 07-CV-2204, 2008 WL 942273 (D. Ariz Apr. 7, 2008). The court saw through the thinly-veiled attempt to create a group of unrelated investors through law firm solicitation:

> Although the PSLRA allows groups to serve as lead plaintiffs, "courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 451 (C.D.Cal.2002). For the most part, to "allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157 (S.D.N.Y.1997). Such a group is unlikely to "fairly and adequately represent the class" because it is unlikely to engage in the litigation in a meaningful way at all. Fed.R.Civ.P. 23(a)(4). What is more, when unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation. *See In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. at 158 ("[With the PSLRA,] Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

> From their papers, it appears that the Farrukh 'Group' consists of three completely unrelated individuals from different parts of the country. There is no suggestion how they plan to work together as a cohesive unit. As far as we can tell, each individual has so far participated only to the extent of signing his name onto a boilerplate "certification in support of application of lead plaintiff."

> . . . .

> Given no evidence of cohesiveness, we are not convinced that the Farrukh Group will adequately represent this class. *Cf. In re Northwestern Corp. Sec. Litig.,* 299 F.Supp.2d 997, 1006 (D.S.D.2003) (approved group had established a plan for conducting litigation, including mechanisms to call meetings and resolve disagreements).

> [T]he Farrukh Group does not contest that their participation was a product of counsel's "press release." They even suggest that their signing certifications on the same day (the day motions were due) is evidence of the group's cohesiveness. We are not persuaded.

> Without determining the ethical implications of counsel's patent
> effort to solicit clients, we conclude that the Farrukh Group's
> formation runs directly contrary to the goals of the PSLRA-to
> reduce lawyer-driven litigation.

*Id.* at *3-*4 (citations omitted).

Further, even if the LHB Insurance Movants could belatedly otherwise form a real

PSLRA group, it is unlikely such a geographically disparate group would ever be sufficiently

organized to speak to their lawyer with a single voice; indeed, the LHB Movants have made no

showing otherwise. There is also the very real prospect of competition among these individuals

for decision-making authority and the risk that they will devolve into factions. These problems

are compounded by the discrepant amount of their individual financial interests. For example,

one of the individuals, Ian Lande, reportedly purchased ARS in a total face amount worth $2.525

million during the Class Period. *See* May 27, 2008 Levi Decl., Ex. B. He thus has a financial

interest in the litigation that dwarfs the interests of the additional members of this "group"; the

other members reportedly purchased ARS in face amounts of only  comparatively small amounts

of $400,000, $125,000, $100,000, and $75,000, respectively, respectively, during the Class

Period. *Id.* The disparate size of these investments creates the possibility of problems among

these individuals allocating decision-making authority, the possibility that they will compete

with each other within the "group," or that Lande will dominate the others due to his much more

substantial investment.

In sum, there is zero evidence that the five individual members can or will act

collectively and separately from their lawyers. Accordingly, the LHB Insurance Movants'

motion should be denied. *See, e.g., In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972 (PKC),

2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) (declining to appoint a group

where "[t]here has been no showing that the members of either 'group' have, in fact, functioned as a group.").[7]

## <u>CONCLUSION</u>

For the reasons stated above, and in their opening submission, the Wedgewood Movants' respectfully submit that the Court should grant their motion to be appointed Lead Plaintiffs of these actions and approve their selection of Milberg LLP as Lead Counsel pursuant to the PSLRA, and deny the competing lead plaintiff applications.

---

[7] The lead plaintiff application of the remaining competing movants, the Dignam Movants group, should be rejected because its members' collective financial interest of $2.375 million in total face amount of ARS purchased during the Class Period (approximately $1.3 million after actual or announced redemptions and sales) is smaller than any of the other competing movants, and because the Dignam Movants suffer from similar aggregation flaws as the LHB Insurance Movants, as discussed above, and have similarly made no showing of cohesiveness or a pre-existing relationship.  Bronson Decl., Ex. G.

Dated:  June 16, 2008                          Respectfully submitted,


                                               **MILBERG LLP**

                                               By: */s/ Kent A. Bronson*
                                               Jerome M. Congress (JC-2060)
                                               Kent A. Bronson (KB-4906)
                                               One Pennsylvania Plaza, 49th Floor
                                               New York, New York 10119
                                               Telephone:     (212) 594-5300
                                               Facsimile:     (212) 868-1229
                                               jcongress@milberg.com
                                               kbronson@milberg.com

15

## CERTIFICATE OF SERVICE

I, Kent A. Bronson, a member of the law firm Milberg LLP, hereby certify that I caused a true and correct copy of the following documents to be served with the Clerk of the Court using the CM/ECF system, which will send notifications of filing to the CM/ECF participants listed on the attached Service List, and caused all counsel listed on the Service List to be served by regular U.S. Mail on this 16th day of June 2008:

1. **MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS; AND**

2. **DECLARATION OF KENT A. BRONSON IN FURTHER SUPPORT OF THE MOTION OF WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS.**


_____/s/ Kent A. Bronson_____
Kent A. Bronson

16

# Citigroup Inc. (ARS)

## Service List

***Counsel for Plaintiffs:***

Eduard Korsinsky
Joseph E. Levi
Juan E. Monteverde
**LEVI & KORSINSKY, LLP**
39 Broadway, Suite 1601
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com
         jlevi@zlk.com
         jmonteverde@zlk.com

Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
Email: dcg@girardgibbs.com
         jkl@girardgibbs.com
         ams@girardgibbs.com

Samuel P. Sporn
Joel P. Laitman
Frank R. Schirripa
Daniel B. Rehns
**SCHOENGOLD SPORN LAITMAN
  & LOMETTI, P.C.**
19 Fulton Street, Suite 406
New York, NY 10038
Tel: (212) 964-0046
Fax: (212) 267-8137
Email: ssporn@spornlaw.com
         joel@spornlaw.com
         frank@spornlaw.com
         daniel@spornlaw.com

Christopher A. Seeger
Stephen A. Weiss
David R. Buchanan
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY 10004
Tel: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com
         sweiss@seegerweiss.com
         dbuchanan@seegerweiss.com

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
Email: siegel@stuevesiegel.com

Richard A. Speirs
Paul Kleidman
**ZWERLING, SCACHTER & ZWERLING, LLP**
41 Madison Avenue
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969
Email: rspeirs@zsz.com
         pkleidman@zsz.com

Michael E. Criden
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
Tel: (305) 357-9000
Fax: (305) 357-9050
Email: mcriden@cridenlove.com

Joseph P. Danis
Michael J. Flannery
Corey D. Sullivan
**CAREY & DANIS, LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Tel: (314) 725-7700
Fax: (314) 721-0905
Email: jdanis@careydanis.com
       mflannery@careydanis.com
       csullivan@careydanis.com

A. Hoyt Rowell, III
Daniel O. Myers
T. Christopher Tuck
**RICHARDSON, PATRICK, WESTBROOK &**
  **BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
Tel: (843) 727-6500
Fax: (843) 216-6509
Email: hrowell@rpwb.com
       dmyers@rpwb.com
       ctuck@rpwb.com

Joe R. Whatley, Jr.
Edith M. Kallas
Joseph P. Guglielmo
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077
Email: jwhatley@whatleydrake.com
       ekallas@whatleydrake.com
       jguglielmo@whatleydrake.com

Edward M. Gergosian
**GERGOSIAN & GRALEWSKI LLP**
655 West Broadway, Suite 1410
San Diego, CA 92101
Tel: (619) 237-9500
Fax: (619) 237-9555

***Counsel for Defendants:***

Brad S. Karp
Susanna M. Buergel
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3980
Email: bkarp@paulweiss.com
        sbuergel@paulweiss.com

Charles E. Davidow
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
1615 L Street, N.W., Suite 1300
Washington, D.C.  20036-5694
Tel: (202) 223-7300
Fax: (202) 223-7420
Email: cdavidow@paulweiss.com