## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., On Behalf Of Itself And All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC., <br><br> Defendants. | Civil Action No. 08-CV-3095 (LTS) |

*[additional captions follow]*

**DECLARATION OF KENT A. BRONSON IN FURTHER SUPPORT OF THE MOTION OF WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN <u>OPPOSITION TO COMPETING MOTIONS</u>**

**MILBERG LLP**
Jerome M. Congress (JC-2060)
Kent A. Bronson (KB-4906)
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

*Proposed Lead Counsel for the Class*

437972_1

LISA SWANSON, Individually And On Behalf of
All Others Similarly Situated,

        Plaintiff,

    vs.

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. AND CITI SMITH BARNEY,

        Defendants.

Civil Action No. 08-CV-3139 (LTS)

SAMUEL A. STOCKHAMER and ALICE L.
STOCKHAMER, On Behalf of Themselves and
All Others Similarly Situated,

        Plaintiffs,
    vs.

CITIGROUP INC. and CITIGROUP GLOBAL
CAPITAL MARKETS, INC.

        Defendants.

Civil Action No. 08-CV-3904 (LTS)

WEDGEWOOD TACOMA LLC, Individually
And On Behalf of All Others Similarly Situated,

        Plaintiff,

    vs.

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC., and CITI SMITH BARNEY,

        Defendants.

Civil Action No. 08-CV-4360 (LTS)

437972_1

| | |
|---|---|
| SAED GHALAYINI, Individually And On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>   vs.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>           Defendants. | Civil Action No. 08-CV-5016 |

437972_1

I, Kent A. Bronson, under penalties of perjury, hereby declare:

1.      I am a member of Milberg LLP.  I submit this declaration in further support of the motion of Wedgewood Tacoma LLC and Jemstone LLC for appointment as Lead Plaintiff, approval of their selection of Lead Counsel, and in opposition to competing lead plaintiff motions.

2.      Attached hereto as Exhibit A is a true and correct copy of an affidavit of Kurtis R. Mayer dated June 16, 2008.

3.      Attached hereto as Exhibit B is a true and correct copy of a news release entitled "Calamos Announces Redemption Dates of Auction Rate Preferred Securities for Calamos Total Return and Calamos Strategic Total Return Funds" dated April 25, 2008.

4.      Attached hereto as Exhibit C is a true and correct copy of a news release entitled "Calamos Announces Redemption Dates of Auction Rate Preferred Securities for Calamos Convertible Opportunities and Income Fund and Calamos Convertible and High Income Fund" dated May 19, 2008.

5.      Attached hereto as Exhibit D is a true and correct copy of a news release entitled "BlackRock Announces Refinancing of Auction Rate Preferred Shares Issued by BlackRock Tax-Exempt Fixed Income Closed-End Funds" dated June 2, 2008.

6.      Attached hereto as Exhibit E is a true and correct copy of a March 27, 1995 letter from the New York State Board for Professional Medical Conduct, attaching various documents In The Matter of Michael Anthony Passidomo, M.D., including a Consent Order, BPMC #95-66 (dated March 23, 1995); an Application for Consent Order dated March, 1995 (with several exhibits thereto).

7.      Attached hereto as Exhibit F is a true and correct copy of a "Physician Profile" from the Federation of State Medical Boards concerning Michael Anthony Passidomo, M.D.

8.      Attached hereto as Exhibit G is a true and correct copy of two news articles entitled "Number of Physicians Disciplined in 1994 Down," dated February 16, 1995, and "293 W.Va. physicians have been disciplined for various misdeeds" dated July 30, 2003, both from the Charleston Daily Mail (West Virginia).

9.      Attached hereto as Exhibit H is a true and correct copy of a letter from the New York State Board of Professional Medical Conduct dated March 5, 1997, attaching certain documents In the Matter of Michael A. Passidomo, M.D., including certain pages of an Application to Surrender License #118872 Upon Modification of Order #BPMC 95-66, #BPMC 97-54.

10.      Attached hereto as Exhibit I is a true and correct copy of an opinion issued by the Commonwealth of Kentucky Court of Appeals, reportedly rendered on December 5, 2003, in Case No. 2002-CA-002326-MR.

11.      Attached hereto as Exhibit J are true and correct copies of two news releases entitled "Nuveen Multi-Strategy Income and Growth Fund 2 Issues Second At-Par Redemption Notices for Auction-Rate Securities" dated May 22, 2008, and "Nuveen Multi-Strategy Income and Growth Fund 2 Issues At-Par Redemption Notices for Auction-Rate Securities" dated April 18, 2008, respectively.

12.      Attached hereto as Exhibit K is a true and correct copy of a news release entitled "Franklin Templeton Limited Duration Income Trust Announces Refinancing of Certain Auction Rate Preferred Shares" dated May 21, 2008.

13.      Attached hereto as Exhibit L is a true and correct copy of a news release entitled "Legg Mason Seeks Liquidity Solutions for Auction Rate Preferred Securities Issued by LMP and Western Asset Closed-End Funds" dated March 28, 2008.

14.    Attached hereto as Exhibit M is a true and correct copy of a printout headed "LHB Insurance Brokerage", containing an address listing therefore, from the website http://www.lhbinsurance.com/.

15.    Attached hereto as Exhibit N is a true and correct copy of a news release entitled "Eaton Vance Announces Plan for Three Municipal Income Close-end Funds to Redeem Approximately $580 Million of Auction Preferred Shares" dated April 23, 2008.

16.    Attached hereto as Exhibit O is a true and correct copy of a news release entitled "Nuveen Investments Announces Board Approval of Tender Option Bond Refinancing for Auction-Rate Preferred Shares in Municipal Closed-End Funds" dated June 11, 2008.

Dated:  June 16, 2008                              Respectfully submitted,

                                                   **MILBERG LLP**


                                                   By: */s/ Kent A. Bronson*
                                                   Kent A. Bronson (KB-4906)
                                                   One Pennsylvania Plaza, 49th Floor
                                                   New York, New York 10119
                                                   Telephone:    (212) 594-5300
                                                   Facsimile:    (212) 868-1229
                                                   kbronson@milberg.com

# EXHIBIT A

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF PIERCE     )

    I, Kurtis R. Mayer, being duly sworn, depose and say:

    1.    I submit this affidavit in support of the Motion of Wedgewood Tacoma LLC and Jemstone LLC (the "Wedgewood Movants") for appointment as Lead Plaintiffs, and in opposition to competing lead plaintiff motions.

    2.    The Wedgewood Movants are two family-owned and managed limited liability companies, and are owned and/or managed by members of the same immediate family. Specifically, Movant Wedgewood Tacoma LLC is majority owned by myself and my wife, Pamela Mayer. Pamela and our son, Joseph Mayer are managers of Wedgewood Tacoma LLC. Movant Jemstone LLC is majority owned and is managed by our son, Joseph Mayer.

    3.    I graduated from Lowell High School, San Francisco in 1948 and attended the University of Pacific in Stockton, California from 1948-1951 and Hastings Law School in 1951-1952. I spent the next two years in the United States Army during the Korean War (from 1952-1954) and served as an interpreter in the Judge Advocate's Section in Nuremberg, Germany. Upon discharge from the military, I attended a second year of law school in 1954-1955 at the University of San Francisco School of Law. After deciding that law would not be my life's vocation, I worked as an Assistant Field Director for the American Red Cross from 1955-1957 and assisted military families with personal and financial problems.

    4.    I and my family have been involved in the building industry in Washington State for approximately fifty years. In 1957, I formed a building company in Tacoma known as Mayer & Peterson, a volume home builder in the Tacoma area. In 1964, I formed Mayer Built Homes, Inc. specializing in subsidized and affordable housing. In 1968, Mayer Built Homes expanded to Boise, Idaho and Denver, Colorado and developed land and built multi-family units,

apartments, condominiums, cooperatives and several thousand single-family homes, among other individual projects. Mayer Built Homes, Inc. is now operated by my son, Joseph Mayer, and I act as a consultant to my son as well as managing an investment portfolio of several hundred apartment units and single family homes.

5.    From 1988 to 1994, I was a member of the Pierce County Planning Commission and helped develop the Comprehensive Plan for Pierce County under the Washington State Growth Management Act. I also served on the Parkland/Spanaway Comprehensive Plan Advisory Committee and was a Board member for the Martin Luther King Housing Development Association from 1989 to 1993.

6.    During my many years in the Tacoma community, I have advised numerous organizations on the development and feasibility of low-income housing. I testified before the United States House of Representatives Sub-Committee on Banking on issues dealing with housing and lectured at the National Association of Home Builders in Las Vegas on the first federally-subsidized cooperative ever constructed in Washington State.

7.    Through the years, I and my wife have also been involved in several significant legal cases, including *Rainier View Assoc. v. United States, Dep't of Housing and Urban Development*, No. CV-83-997-R (W.D. Wash.), in which we brought an action against the federal government in 1983 for violation of Housing and Urban Development contracts. We also brought what we feel is an important consumer protection action, *Kurtis R. Mayer et al vs. Sto Industries*, Docket No. 91-2-04168-5 (Superior Court, Pierce County, Washington) which was litigated over an eleven-year period, and was recently the subject of a decision by the Washington State Supreme Court. Accordingly, we have substantial experience working with and supervising lawyers and litigation, and are willing to pursue significant litigation to conclusion.

2

8.    I and my family have been active in philanthropy and in the Tacoma community

for many years. For example, since 1975, I have supported the Pacific Lutheran University Q

Club which provides scholarships and financial assistance to qualifying students. I have served

as an advisor to the Pacific Lutheran University Collegium to develop business strategies for the

University, and have lectured at the School of Business Administration on various aspects of

business management. I also served three terms on the Board of Regents for Pacific Lutheran

University and was a member of the Real Estate Advisory Committee. My wife Pam is a

founding member of the Pacific Lutheran University Society for the Arts, is past president of the

Board of Greater Lakes Mental Health Foundation, and is currently a board member for the

Tacoma Art Museum and has served on the boards of numerous non-profit organizations. Also, I

have served as a board member for the Tacoma Philharmonic. We have also been substantial

financial contributors to the local arts community, to Tacoma General Hospital and Charles

Wright Academy and many other local charitable institutions.

9.    I and my family are willing and able to provide further information which the

Court might feel is pertinent to its pending decision to appoint lead plaintiffs in this litigation.

Dated:  June 16, 2008                            _Kurtis R. Mayer_
                                                          Kurtis R. Mayer

Sworn to before me this _16th_ day
of June, 2008.

_Janet V. Detering_
Janet V. Detering
Notary Public in and for the State of
Washington, residing at Tacoma.
My commission expires 4-24-2010.



3

# EXHIBIT B

PRN            Calamos Announces Redemption Dates of Auction Rate Preferred
               Apr 25 2008  18:00:06

Securities for Calamos Global Total Return and Calamos Strategic Total Return
Funds


    NAPERVILLE, Ill., April 25 /PRNewswire-FirstCall/ -- Calamos Investments
today announced the auction rate preferred securities redemption dates for the
Calamos Global Total Return Fund (NYSE: CGO) and the Calamos Strategic
Total Return Fund (NYSE: CSQ).  As announced earlier this week, Calamos has secured
an alternative form of borrowing that will enable, based on current market
conditions, CGO to redeem all of its $59 million of outstanding ARPs and CSQ
to redeem approximately 81.5% or $880 million of its outstanding ARPs.


    The redemption amounts and dates are as follows:


| CGO Auction Series | Shares Outstanding | Percent to be Redeemed | Amount to be Redeemed | Redemption Date |
|---|---|---|---|---|
| Tuesday | 2,360 | 100.0 % | $59,000,000 | May 13, 2008 |

| CSQ Auction Series | Shares Outstanding | Percent to be Redeemed | Amount to be Redeemed | Redemption Date |
|---|---|---|---|---|
| Monday | 7,040 | 81.5 % | $143,400,000 | May 12, 2008 |
| Tuesday | 7,040 | 81.5 % | $143,400,000 | May 13, 2008 |
| Wednesday | 7,040 | 81.5 % | $143,400,000 | May 14, 2008 |
| Thursday | 7,040 | 81.5 % | $143,400,000 | May 15, 2008 |
| Friday | 7,040 | 81.5 % | $143,400,000 | May 16, 2008 |
| A (28-Day) | 4,000 | 81.5 % | $81,500,000 | May 28, 2008 |
| B (28-Day) | 4,000 | 81.5 % | $81,500,000 | May 29, 2008 |


    Additional information regarding the redemptions will be discussed on a
conference call to be held Monday, April 28 at 2:00 pm ET/1:00 pm CT. The
conference call is accessible by dialing one of the following numbers:


    Participant Dial-in:
    *U.S./Canada Dial-in #: 800.379.3942
    *Int'l/Local Dial-in #: 706.679.7206
    Conference ID #: 44914033
    You may also listen online: http://audioevent.mshow.com/344153/


    Following the call, a replay will be available beginning at 5:00 pm
ET/4:00 pm CT. To access the telephone replay, call the number listed below
and provide the conference ID number:

Copyright (c) 2008

PRN          Calamos Announces Redemption Dates of Auction Rate Preferred
             Apr 25 2008  18:00:06
     Replay info:
     Encore Dial-in #: 800.642.1687 or 706.645.9291
     Encore Dates: 04/28/2008 - 05/06/2008 (end of day)
     Conference ID #: 44914033


     About Calamos

     Calamos Investments is a diversified investment firm offering equity,
fixed-income, convertible and alternative investment strategies, among others.
The firm serves institutions and individuals via separately managed accounts
and a family of open-end and closed-end funds, providing a risk-managed
approach to capital appreciation and income-producing strategies. For more
information, visit http://www.calamos.com/closedendfunds/default.aspx.


     From time to time, information or statements provided by us, including
those within this news release, may contain certain forward-looking statements
relating to future events, future transactions, future financial performance,
future potential costs, expectations, the competitive and regulatory
environment and future market conditions. Forward-looking statements are based
on information available at the time those statements are made and/or
management's good faith belief as of that time with respect to future events,
and are subject to risks and uncertainties that could cause actual performance
or results to differ materially from those expressed in or suggested by the
forward-looking statements. Such risks and uncertainties include, but are not
limited to: catastrophic or unpredictable events, changing costs of leverage,
strategy implementation obstacles, fluctuations in the financial markets and
the competitive conditions in the fund, asset management and broader financial
services sectors and other risks inherent in the financial and trading
markets, including liquidity issues.


SOURCE  Calamos Investments


CONTACT:
Ken Fincher, Vice President of Calamos Advisors LLC, +1-630-245-1076,
kfincher@calamos.com
-0- Apr/25/2008 22:00 GMT

# EXHIBIT C

PRN            Calamos Announces Redemption Dates of Auction Rate Preferred
               May 19 2008  18:00:06


Securities for Calamos Convertible Opportunities and Income Fund and Calamos
Convertible and High Income Fund


   NAPERVILLE, Ill., May 19 /PRNewswire-FirstCall/ -- Calamos Investments
today announced the auction rate preferred securities redemption dates for
Calamos Convertible Opportunities and Income Fund (NYSE: CHI) and Calamos
Convertible and High Income Fund  (NYSE: CHY).  As announced last week,
Calamos has secured an alternative form of borrowing that will enable, based
on current market conditions, CHI and CHY to redeem approximately 72.9% and
81.4% respectively of their outstanding ARPs.


   The redemption amounts and dates are as follows:

| CHI<br>Auction Series | CUSIP | Shares to be<br>redeemed/outstanding | Redemption<br>Percent | Redemption<br>Date |
|---|---|---|---|---|
| Monday | 128117207 | 1,488/2,040 | 72.9% | June 2, 2008 |
| Tuesday (28 day) | 128117306 | 1,488/2,040 | 72.9% | June 24, 2008 |
| Wednesday | 128117405 | 1,487/2,040 | 72.9% | June 4, 2008 |
| Thursday7 | 128117702 | 1,750/2,400 | 72.9% | June 5, 2008 |
| Friday7 | 128117801 | 1,750/2,400 | 72.9% | June 6, 2008 |
| Wednesday28 | 128117603 | 1,750/2,400 | 72.9% | June 18, 2008 |
| Thursday (28 day) | 128117504 | 1,487/2,040 | 72.9% | June 26, 2008 |

| CHY<br>Auction Series | CUSIP | Shares to be<br>redeemed/outstanding | Redemption<br>Percent | Redemption<br>Date |
|---|---|---|---|---|
| Monday | 12811P207 | 2,442/3,000 | 81.4% | June 2, 2008 |
| Tuesday | 12811P306 | 2,442/3,000 | 81.4% | June 3, 2008 |
| Wednesday | 12811P405 | 2,442/3,000 | 81.4% | June 4, 2008 |
| Thursday | 12811P504 | 2,442/3,000 | 81.4% | June 5, 2008 |
| Friday | 12811P603 | 2,442/3,000 | 81.4% | June 6, 2008 |
| Series A (28 day) | 12811P702 | 1,790/2,200 | 81.4% | June 25, 2008 |


   Additional information regarding the redemptions was discussed on a
conference call held earlier today at 12:00 pm ET/11:00 am CT. A replay will
be available beginning at 5:00 pm ET/4:00 pm CT today. To access the telephone
replay, call the number listed below and provide the conference ID number:


   Replay info:
   Encore Dial-in #: 800.642.1687 or 706. 645.9291
   Encore Dates: 05/19/2008 - 06/02/2008 (end of day)

Copyright (c) 2008

PRN        Calamos Announces Redemption Dates of Auction Rate Preferred
            May 19 2008  18:00:06
Conference ID #: 48122309
You may also listen online: http://audioevent.mshow.com/344735/


About Calamos

   Calamos Investments is a diversified investment firm offering equity,
fixed-income, convertible and alternative investment strategies, among others.
The firm serves institutions and individuals via separately managed accounts
and a family of open-end and closed-end funds, providing a risk-managed
approach to capital appreciation and income-producing strategies. For more
information, visit http://www.calamos.com/closedendfunds/default.aspx.


   From time to time, information or statements provided by us, including
those within this news release, may contain certain forward-looking statements
relating to future events, future transactions, future financial performance,
future potential costs, expectations, the competitive and regulatory
environment and future market conditions. Forward-looking statements are based
on information available at the time those statements are made and/or
management's good faith belief as of that time with respect to future events,
and are subject to risks and uncertainties that could cause actual performance
or results to differ materially from those expressed in or suggested by the
forward-looking statements. Such risks and uncertainties include, but are not
limited to: catastrophic or unpredictable events, changing costs of leverage,
strategy implementation obstacles, fluctuations in the financial markets and
the competitive conditions in the fund, asset management and broader financial
services sectors and other risks inherent in the financial and trading
markets, including liquidity issues.


SOURCE  Calamos Investments


CONTACT:
Ken Fincher, Vice President of Calamos Advisors LLC, +1-630-245-1076,
kfincher@calamos.com
-0- May/19/2008 22:00 GMT

Copyright (c) 2008

# EXHIBIT D

BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01

Shares Issued by BlackRock Tax-Exempt Fixed Income Closed-End Funds


NEW YORK--(BUSINESS WIRE)--June 02, 2008
BlackRock, Inc. (NYSE:BLK) today announced the dates for the
partial redemptions of auction rate preferred shares (ARPS) issued by
56 of the 61 BlackRock tax-exempt fixed income closed-end funds that
utilize these securities. The announced redemptions total $1.6 billion
and represent approximately 20% of the total outstanding ARPS issued
by BlackRock's tax-exempt closed-end funds.

    This redemption announcement follows the Company's April 15, 2008
press release in which BlackRock provided initial information
regarding approximately $1 billion in refinancing of its outstanding
tax-exempt ARPS with tender option bonds (TOBs). The figure announced
today exceeds that initial estimate with respect to tax-exempt ARPS by
60% and places total redemptions thus far announced for ARPS issued by
BlackRock taxable and tax-exempt funds at more than $2.4 billion, or
25% of BlackRock's total outstanding ARPS.

    "We are pleased to make this announcement today on the partial
refinancing of tax-exempt ARPS through the use of TOBs," said Robert
S. Kapito, President of BlackRock. "BlackRock is one of the first
firms in the industry to announce redemptions utilizing TOBs and, to
date, this announcement represents the largest tax-exempt ARPS
redemption. BlackRock believes this is a meaningful step that balances
the interests of both preferred and common shareholders. We continue
to work diligently to address liquidity issues for both taxable and
tax-exempt ARPS still outstanding."

    The amount of ARPS being redeemed at this time varies by fund and
ranges from 2% to 42% of the ARPS outstanding for each fund. The use
of TOBs as replacement financing, which has been approved by each
fund's Board of Directors, is expected to lower the cost of leverage
for common shareholders, while providing liquidity, at liquidation
preference, for certain preferred shareholders.

    As previously indicated, the ability to utilize TOBs in place of
ARPS varies by each fund based, in part, on the eligibility of its
underlying bonds for TOBs programs. ARPS refinancing utilizing TOBs
was not feasible for certain of BlackRock's smaller funds and/or
certain state-specific funds where the availability of bonds eligible
for creating TOBs was limited. The extent to which a fund is able to
use TOBs to redeem ARPS depends on market conditions, a fund's
portfolio composition, the cost of liquidity and the willingness of
liquidity providers to support TOBs, among other factors.

    This new financing seeks to balance the immediate benefit of a
lower cost of financing for the common shareholders and liquidity for
a portion of the holders of ARPS against the relative risks that the
maximum rates on the ARPS may rise and the risk that TOBs may become
more expensive in the future or unavailable in the future.

Copyright (c) 2008

BUS        BlackRock Announces Refinancing of Auction Rate Preferred
           Jun 2 2008  17:04:01

Redemptions will be allocated pro rata among the various series in
each fund. The Depository Trust Company (DTC), the securities' holder
of record, will determine by random lottery how a partial series
redemption will be allocated among each participant broker-dealer
account and each participant broker-dealer determines how to allocate
each redemption among the holders of the relevant series of ARPS held
by it.

For more information on the specific BlackRock tax-exempt fixed
income closed-end fund ARPS that are to be redeemed, including CUSIP
numbers and redemption dates, please see the redemption schedule
included in this press release.

Progress on the Development of Liquidity Enhanced Adjustable Rate
Securities (LEARS)

In seeking to engineer a broad-based solution for ARPS still
outstanding, BlackRock also announced its progress in developing a
money market fund eligible instrument, Liquidity Enhanced Adjustable
Rate Securities (LEARS). LEARS require a structural enhancement to be
made to the current ARPS structure by either adding a "put" feature to
a third party liquidity provider or issuing a new form of preferred
stock that includes the put feature. Existing ARPS, as currently
structured, are not eligible for purchase by money market funds.

BlackRock is working diligently to construct an industry-wide
solution and has made significant progress toward this goal. BlackRock
has held discussions with potential liquidity providers, auction
market participants and money market funds. It is anticipated that
certain aspects of the LEARS will require regulatory approval. In that
regard, BlackRock is engaged in substantive, on-going dialogue with
the Treasury Department, the Internal Revenue Service and the
Securities and Exchange Commission and has submitted informal requests
for regulatory guidance to these organizations. BlackRock continues to
work closely with regulators and has liaised with the Investment
Company Institute in attempting to solve this complex challenge.
BlackRock believes that the development of a successful LEARS
structure would present a comprehensive solution that would be
available to all industry participants with ARPS outstanding.

BlackRock's ability to successfully develop LEARS will depend on
market conditions, the willingness of money market funds and/or other
institutional investors to invest in such securities, the ability to
obtain necessary ratings, the need to comply with applicable laws and
regulations, and the agreement by all parties, including the liquidity
provider and others, to final terms of the transaction, among other
factors. In addition, there can be no guarantee that the necessary
regulatory approval will be obtained or these solutions can be
implemented.

BlackRock will continue to provide periodic updates to market
participants and shareholders via press releases and on its website at
www.blackrock.com.

Conference Call

Copyright (c) 2008

BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01

    BlackRock will host a conference call at 4:15 p.m. (ET) on Tuesday
June 3, 2008 to discuss the refinancing of these ARPS. Those
interested in listening to the call may dial 1-877-238-4697 or
1-719-785-5596 and reference conference ID number 301714. BlackRock
does anticipate high call volume and will also provide an audio
webcast at
https://cis.premconf.com/sc/scw.dll/usr?cid=vlllrcxlxmlvlnmmr.

    To access the replay of the call, please dial 1-888-348-4629 or
1-719-884-8882, referencing conference ID number 301714 or visit the
closed-end fund section of the company's website at www.blackrock.com.
The replay will be available for 14 days following the call.

    Redemption Schedule

    Auction Rate Preferred Shares Issued by BlackRock Tax-Exempt Fixed
Income Closed-End Funds

    -0-
    *T
BlackRock Florida Insured Municipal Income Trust (NYSE:BAF)
-----------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| M7     | 09250G201    | 1,265                     | $31,625,000     | June 24, 2008   |

    *T

    -0-
    *T
BlackRock Florida Municipal Income Trust (NYSE:BBF)
---------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| T7     | 09248H204    | 320                       | $8,000,000      | June 25, 2008   |

    *T

    -0-
    *T
BlackRock Municipal Bond Trust (NYSE:BBK)
--------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7     | 09249H302    | 200                       | $5,000,000      | June 27, 2008   |
| T7     | 09249H203    | 200                       | $5,000,000      | June 25, 2008   |

    *T
Copyright (c) 2008

BUS         BlackRock Announces Refinancing of Auction Rate Preferred
            Jun 2 2008  17:04:01

-0-
*T
BlackRock California Insured Municipal Income Trust (NYSE:BCK)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F7     | 092484203    | 358                       | $8,950,000      | June 30, 2008   |

*T

-0-
*T
BlackRock California Municipal Income Trust II (AMEX:BCL)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7     | 09249S308    | 244                       | $6,100,000      | June 27, 2008   |
| T7     | 09249S209    | 244                       | $6,100,000      | June 25, 2008   |

*T

-0-
*T
BlackRock Municipal Income Trust (NYSE:BFK)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F7     | 09248F604    | 656                       | $16,400,000     | June 30, 2008   |
| M7     | 09248F208    | 656                       | $16,400,000     | June 24, 2008   |
| R7     | 09248F505    | 656                       | $16,400,000     | June 27, 2008   |
| T7     | 09248F307    | 656                       | $16,400,000     | June 25, 2008   |
| W7     | 09248F406    | 656                       | $16,400,000     | June 26, 2008   |

*T

-0-
*T
BlackRock Florida Municipal 2020 Term Trust (NYSE:BFO)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F7     | 09250M208    | 240                       | $6,000,000      | June 30, 2008   |

Copyright (c) 2008

```
BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01
----------------------------------------------------------
*T

-0-
*T
```

BlackRock California Municipal Income Trust (NYSE:BFZ)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7 | 09248E300 | 621 | $15,525,000 | June 27, 2008 |
| T7 | 09248E201 | 621 | $15,525,000 | June 25, 2008 |

```
*T

-0-
*T
```

BlackRock Virginia Municipal Bond Trust (AMEX:BHV)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7 | 092481209 | 54 | $1,350,000 | June 27, 2008 |

```
*T

-0-
*T
```

BlackRock Florida Municipal Bond Trust (NYSE:BIE)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| W7 | 09249K206 | 144 | $3,600,000 | June 26, 2008 |

```
*T

-0-
*T
```

BlackRock Municipal 2020 Term Trust (NYSE:BKK)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F7 | 09249X406 | 50 | $1,250,000 | June 30, 2008 |
| M7 | 09249X208 | 50 | $1,250,000 | June 24, 2008 |
| W7 | 09249X307 | 50 | $1,250,000 | June 26, 2008 |

```
*T
```

Copyright (c) 2008

BUS            BlackRock Announces Refinancing of Auction Rate Preferred
               Jun 2 2008  17:04:01

-0-
*T
BlackRock Investment Quality Municipal Trust (NYSE:BKN)
---------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| T28    | 09247D303    | 348                       | $8,700,000      | July 9, 2008    |
| T7     | 09247D204    | 436                       | $10,900,000     | June 25, 2008   |

*T

-0-
*T
BlackRock Municipal Income Trust II (AMEX:BLE)
---------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| M7     | 09249N200    | 395                       | $9,875,000      | June 24, 2008   |
| R7     | 09249N507    | 395                       | $9,875,000      | June 27, 2008   |
| T7     | 09249N309    | 395                       | $9,875,000      | June 25, 2008   |
| W7     | 09249N408    | 395                       | $9,875,000      | June 26, 2008   |

*T

-0-
*T
BlackRock New Jersey Municipal Bond Trust (AMEX:BLJ)
---------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| M7     | 09249A208    | 41                        | $1,025,000      | June 24, 2008   |

*T

-0-
*T
BlackRock Insured Municipal Term Trust* (NYSE:BMT)
---------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| M7     | 092474204    | 600                       | $15,000,000     | June 24, 2008   |

*T

Copyright (c) 2008

BUS        BlackRock Announces Refinancing of Auction Rate Preferred
           Jun 2 2008  17:04:01

    *BlackRock Insured Municipal Term Trust (BMT) is redeeming ARPS in
conjunction with its 2010 scheduled maturity and will not be
implementing TOBs as replacement financing.

-0-
*T
BlackRock New Jersey Municipal Income Trust (NYSE:BNJ)
--------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7     | 09248J200    | 133                       | $3,325,000      | June 27, 2008   |

*T

-0-
*T
BlackRock New York Municipal Income Trust (NYSE:BNY)
--------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F7     | 09248L304    | 278                       | $6,950,000      | June 30, 2008   |
| W7     | 09248L205    | 278                       | $6,950,000      | June 26, 2008   |

*T

-0-
*T
BlackRock Municipal 2018 Term Trust (NYSE:BPK)
--------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7     | 09248C304    | 75                        | $1,875,000      | June 27, 2008   |
| W7     | 09248C205    | 75                        | $1,875,000      | June 26, 2008   |

*T

-0-
*T
BlackRock Pennsylvania Strategic Municipal Trust
  (AMEX:BPS)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| W7     | 09248R202    | 27                        | $675,000        | June 26, 2008   |

*T

Copyright (c) 2008

BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01

-0-
*T
BlackRock New York Municipal Bond Trust (NYSE:BQH)
--------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption
                    Shares   Redeemed     Date
                    Redeemed
--------------------------------------------------------
T7      09249P205   72       $1,800,000  June 25, 2008
--------------------------------------------------------
*T

-0-
*T
BlackRock Strategic Municipal Trust (NYSE:BSD)
--------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption
                    Shares   Redeemed     Date
                    Redeemed
--------------------------------------------------------
W7      09248T208   570      $14,250,000 June 26, 2008
--------------------------------------------------------
*T

-0-
*T
BlackRock New York Insured Municipal Income Trust (NYSE:BSE)
--------------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption Date
                    Shares   Redeemed
                    Redeemed
--------------------------------------------------------------
R7      09249U204   573      $14,325,000 June 27, 2008
--------------------------------------------------------------
*T

-0-
*T
BlackRock Insured Municipal Income Trust (NYSE:BYM)
--------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption
                    Shares   Redeemed     Date
                    Redeemed
--------------------------------------------------------
F7      092479401   1,054    $26,350,000 June 30, 2008
--------------------------------------------------------
M7      092479203   1,054    $26,350,000 June 24, 2008
--------------------------------------------------------
R7      092479302   1,054    $26,350,000 June 27, 2008
--------------------------------------------------------
*T

-0-
*T
BlackRock California Municipal Bond Trust (NYSE:BZA)
                    Copyright (c) 2008

```
BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01
---------------------------------------------------------
Series CUSIP Number Number of Amount    Redemption
                    Shares   Redeemed   Date
                    Redeemed
---------------------------------------------------------
F7     09249J209    80       $2,000,000 June 30, 2008
---------------------------------------------------------
*T

-0-
*T
BlackRock Maryland Municipal Bond Trust (AMEX:BZM)
---------------------------------------------------------
Series CUSIP     Number of Amount    Redemption
       Number    Shares   Redeemed   Date
                 Redeemed
---------------------------------------------------------
R7     09249L204 80        $2,000,000 June 27, 2008
---------------------------------------------------------
*T

-0-
*T
BlackRock MuniYield California Insured Fund, Inc. (NYSE:MCA)
---------------------------------------------------------
Series CUSIP Number Number of Amount    Redemption Date
                    Shares   Redeemed
                    Redeemed
---------------------------------------------------------
A      09254N202    541      $13,525,000 July 7, 2008
---------------------------------------------------------
B      09254N301    541      $13,525,000 June 30, 2008
---------------------------------------------------------
C      09254N400    481      $12,025,000 June 25, 2008
---------------------------------------------------------
D      09254N509    602      $15,050,000 July 11, 2008
---------------------------------------------------------
E      09254N608    602      $15,050,000 June 27, 2008
---------------------------------------------------------
F      09254N707    541      $13,525,000 June 26, 2008
---------------------------------------------------------
*T

-0-
*T
BlackRock MuniEnhanced Fund, Inc. (NYSE:MEN)
---------------------------------------------------------
Series CUSIP Number Number of Amount    Redemption
                    Shares   Redeemed   Date
                    Redeemed
---------------------------------------------------------
A      09253Y209    301      $7,525,000 June 17, 2008
---------------------------------------------------------
B      09253Y308    301      $7,525,000 June 24, 2008
---------------------------------------------------------
C      09253Y407    301      $7,525,000 June 17, 2008
                             Copyright (c) 2008
```

```
BUS           BlackRock Announces Refinancing of Auction Rate Preferred
         Jun 2 2008  17:04:01
-------------------------------------------------------
D     09253Y506   223      $5,575,000 June 27, 2008
-------------------------------------------------------
*T

-0-
*T
BlackRock MuniHoldings Florida Insured Fund (NYSE:MFL)
-------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption Date
                    Shares    Redeemed
                    Redeemed
-------------------------------------------------------
A     09254P207   387      $9,675,000  June 25, 2008
-------------------------------------------------------
B     09254P306   646      $16,150,000 June 23, 2008
-------------------------------------------------------
C     09254P405   636      $15,900,000 June 24, 2008
-------------------------------------------------------
D     09254P504   399      $9,975,000  June 26, 2008
-------------------------------------------------------
E     09254P603   617      $15,425,000 June 27, 2008
-------------------------------------------------------
*T

-0-
*T
BlackRock MuniYield Florida Insured Fund (NYSE:MFT)
-------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption
                    Shares    Redeemed    Date
                    Redeemed
-------------------------------------------------------
A     09254T209   325      $8,125,000 June 24, 2008
-------------------------------------------------------
B     09254T308   65       $1,625,000 June 26, 2008
-------------------------------------------------------
*T

-0-
*T
BlackRock MuniHoldings Fund, Inc. (NYSE:MHD)
-------------------------------------------------------
Series CUSIP Number Number of Amount      Redemption Date
                    Shares    Redeemed
                    Redeemed
-------------------------------------------------------
A     09253N203   582      $14,550,000 June 25, 2008
-------------------------------------------------------
B     09253N302   582      $14,550,000 June 27, 2008
-------------------------------------------------------
C     09253N401   159      $3,975,000  June 24, 2008
-------------------------------------------------------
*T

-0-
```

Copyright (c) 2008

```
BUS            BlackRock Announces Refinancing of Auction Rate Preferred
               Jun 2 2008  17:04:01
*T
Massachusetts Health & Education Tax-Exempt Trust (AMEX:MHE)
```

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 575672209 | 15 | $750,000 | June 12, 2008 |
| B | 575672308 | 15 | $750,000 | June 11, 2008 |

```
*T

-0-
*T
BlackRock MuniHoldings New York Insured Fund, Inc. (NYSE:MHN)
```

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09255C205 | 365 | $9,125,000 | June 26, 2008 |
| B | 09255C304 | 365 | $9,125,000 | June 27, 2008 |
| C | 09255C403 | 584 | $14,600,000 | June 24, 2008 |
| D | 09255C502 | 707 | $17,675,000 | June 23, 2008 |
| E | 09255C601 | 384 | $9,600,000 | June 25, 2008 |

```
*T

-0-
*T
BlackRock MuniYield Michigan Insured Fund, Inc. (NYSE:MIY)
```

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254V204 | 247 | $6,175,000 | June 25, 2008 |
| B | 09254V303 | 247 | $6,175,000 | June 23, 2008 |
| C | 09254V402 | 197 | $4,925,000 | June 26, 2008 |
| D | 09254V501 | 123 | $3,075,000 | June 24, 2008 |

```
*T

-0-
*T
BlackRock MuniYield New Jersey Insured Fund, Inc. (NYSE:MJI)
```

| Series | CUSIP Number | Number of | Amount | Redemption Date |
|--------|--------------|-----------|--------|-----------------|

Copyright (c) 2008

```
BUS          BlackRock Announces Refinancing of Auction Rate Preferred
          Jun 2 2008  17:04:01
                        Shares    Redeemed
                        Redeemed
--------------------------------------------------------------
A      09255A209    238     $5,950,000 June 23, 2008
--------------------------------------------------------------
B      09255A308    74      $1,850,000 June 27, 2008
--------------------------------------------------------------
*T

-0-
*T
```

BlackRock Muni NY Intermediate Duration Fund, Inc. (NYSE:MNE)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F | 09255F208 | 55 | $1,375,000 | June 23, 2008 |

```
*T

-0-
*T
```

BlackRock MuniYield Pennsylvania Insured Fund (NYSE:MPA)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09255G206 | 386 | $9,650,000 | June 24, 2008 |
| B | 09255G305 | 463 | $11,575,000 | June 25, 2008 |
| C | 09255G404 | 135 | $3,375,000 | June 27, 2008 |

```
*T

-0-
*T
```

BlackRock MuniYield Quality Fund II, Inc. (NYSE:MQT)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254G207 | 397 | $9,925,000 | July 7, 2008 |
| B | 09254G306 | 397 | $9,925,000 | July 14, 2008 |
| C | 09254G405 | 397 | $9,925,000 | June 30, 2008 |
| D | 09254G504 | 79 | $1,975,000 | June 24, 2008 |

```
*T

-0-
```

BUS           BlackRock Announces Refinancing of Auction Rate Preferred
              Jun 2 2008   17:04:01
*T
BlackRock MuniYield Quality Fund, Inc. (NYSE:MQY)
------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254F209 | 464 | $11,600,000 | July 8, 2008 |
| B | 09254F308 | 464 | $11,600,000 | June 24, 2008 |
| C | 09254F407 | 464 | $11,600,000 | July 18, 2008 |
| D | 09254F506 | 464 | $11,600,000 | June 27, 2008 |
| E | 09254F605 | 464 | $11,600,000 | June 23, 2008 |

*T

-0-
*T
BlackRock MuniHoldings California Insured Fund (NYSE:MUC)
------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254L206 | 505 | $12,625,000 | June 24, 2008 |
| B | 09254L305 | 1,021 | $25,525,000 | June 23, 2008 |
| C | 09254L404 | 842 | $21,050,000 | June 27, 2008 |
| D | 09254L503 | 779 | $19,475,000 | June 26, 2008 |
| E | 09254L602 | 958 | $23,950,000 | June 25, 2008 |

*T

-0-
*T
BlackRock MuniHoldings Insured Fund II, Inc. (NYSE:MUE)
------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254C206 | 608 | $15,200,000 | June 27, 2008 |
| B | 09254C305 | 608 | $15,200,000 | June 26, 2008 |
| C | 09254C404 | 1,152 | $28,800,000 | June 25, 2008 |

*T

-0-

Copyright (c) 2008

BUS        BlackRock Announces Refinancing of Auction Rate Preferred
           Jun 2 2008  17:04:01
*T
BlackRock MuniHoldings Fund II, Inc. (NYSE:MUH)
------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09253P208 | 520 | $13,000,000 | June 25, 2008 |
| B | 09253P307 | 520 | $13,000,000 | June 23, 2008 |

*T

-0-
*T
BlackRock Muni Intermediate Duration Fund, Inc. (NYSE:MUI)
-----------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| F7 | 09253X607 | 205 | $5,125,000 | June 23, 2008 |
| M7 | 09253X201 | 205 | $5,125,000 | June 24, 2008 |
| T7 | 09253X300 | 277 | $6,925,000 | June 25, 2008 |
| TH28 | 09253X706 | 144 | $3,600,000 | July 7, 2008 |
| TH7 | 09253X508 | 277 | $6,925,000 | June 27, 2008 |
| W7 | 09253X409 | 205 | $5,125,000 | June 26, 2008 |

*T

-0-
*T
BlackRock MuniHoldings New Jersey Insured Fund, Inc. (NYSE:MUJ)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254X200 | 176 | $4,400,000 | June 24, 2008 |
| B | 09254X309 | 176 | $4,400,000 | June 27, 2008 |
| C | 09254X408 | 311 | $7,775,000 | June 25, 2008 |
| D | 09254X507 | 244 | $6,100,000 | June 26, 2008 |
| E | 09254X606 | 145 | $3,625,000 | June 23, 2008 |

*T

-0-
Copyright (c) 2008

```
BUS         BlackRock Announces Refinancing of Auction Rate Preferred
            Jun 2 2008  17:04:01
*T
```
BlackRock MuniHoldings Insured Fund, Inc. (NYSE:MUS)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254A200 | 796 | $19,900,000 | June 27, 2008 |
| B | 09254A309 | 796 | $19,900,000 | June 24, 2008 |

```
*T

-0-
*T
```
BlackRock MuniVest Fund, Inc. (AMEX:MVF)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09253R204 | 349 | $8,725,000 | June 30, 2008 |
| B | 09253R303 | 349 | $8,725,000 | July 7, 2008 |
| C | 09253R402 | 349 | $8,725,000 | June 16, 2008 |
| D | 09253R501 | 349 | $8,725,000 | June 23, 2008 |
| E | 09253R600 | 524 | $13,100,000 | June 16, 2008 |
| F | 09253R709 | 412 | $10,300,000 | June 25, 2008 |

```
*T

-0-
*T
```
BlackRock MuniVest Fund II, Inc. (NYSE:MVT)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09253T200 | 249 | $6,225,000 | July 3, 2008 |
| B | 09253T309 | 249 | $6,225,000 | July 10, 2008 |
| C | 09253T408 | 249 | $6,225,000 | June 26, 2008 |
| D | 09253T507 | 221 | $5,525,000 | June 24, 2008 |

```
*T

-0-
*T
```
BlackRock MuniYield California Fund, Inc. (NYSE:MYC)
Copyright (c) 2008

BUS        BlackRock Announces Refinancing of Auction Rate Preferred
           Jun 2 2008  17:04:01
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254M204 | 665 | $16,625,000 | July 10, 2008 |
| B | 09254M303 | 665 | $16,625,000 | June 19, 2008 |
| C | 09254M402 | 222 | $5,550,000 | July 3, 2008 |
| D | 09254M501 | 388 | $9,700,000 | June 24, 2008 |

*T

-0-
*T
BlackRock MuniYield Fund, Inc. (NYSE:MYD)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09253W203 | 375 | $9,375,000 | July 2, 2008 |
| B | 09253W302 | 375 | $9,375,000 | July 9, 2008 |
| C | 09253W401 | 375 | $9,375,000 | June 25, 2008 |
| D | 09253W500 | 375 | $9,375,000 | June 18, 2008 |
| E | 09253W609 | 584 | $14,600,000 | June 18, 2008 |
| F | 09253W708 | 359 | $8,975,000 | June 26, 2008 |
| G | 09253W807 | 417 | $10,425,000 | June 23, 2008 |

*T

-0-
*T
BlackRock MuniYield Florida Fund (NYSE:MYF)
----------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254R203 | 384 | $9,600,000 | June 19, 2008 |
| B | 09254R302 | 279 | $6,975,000 | June 27, 2008 |
| C | 09254R401 | 104 | $2,600,000 | June 25, 2008 |

*T

-0-

Copyright (c) 2008

BUS        BlackRock Announces Refinancing of Auction Rate Preferred
           Jun 2 2008  17:04:01
*T
BlackRock MuniYield Insured Fund, Inc. (NYSE:MYI)
--------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254E202 | 744 | $18,600,000 | June 26, 2008 |
| B | 09254E301 | 744 | $18,600,000 | July 3, 2008 |
| C | 09254E400 | 744 | $18,600,000 | July 10, 2008 |
| D | 09254E509 | 744 | $18,600,000 | July 17, 2008 |
| E | 09254E608 | 1,353 | $33,825,000 | June 26, 2008 |
| F | 09254E707 | 812 | $20,300,000 | July 8, 2008 |
| G | 09254E806 | 812 | $20,300,000 | June 24, 2008 |
| H | 09254E889 | 880 | $22,000,000 | June 27, 2008 |
| I | 09254E871 | 880 | $22,000,000 | June 23, 2008 |

*T

-0-
*T
BlackRock MuniYield New Jersey Fund, Inc. (NYSE:MYJ)
--------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09254Y208 | 288 | $7,200,000 | June 26, 2008 |
| B | 09254Y307 | 180 | $4,500,000 | June 25, 2008 |
| C | 09254Y406 | 103 | $2,575,000 | June 24, 2008 |

*T

-0-
*T
BlackRock MuniYield Michigan Insured Fund II, Inc. (NYSE:MYM)
--------------------------------------------------------------

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|---------------|
| A | 09254W202 | 259 | $6,475,000 | June 17, 2008 |
| B | 09254W301 | 160 | $4,000,000 | June 25, 2008 |
| C | 09254W400 | 47 | $1,175,000 | June 26, 2008 |

Copyright (c) 2008

```
BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01
------------------------------------------------------------------
*T

-0-
*T
```

BlackRock MuniYield New York Insured Fund, Inc. (NYSE:MYN)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| A | 09255E201 | 249 | $6,225,000 | June 24, 2008 |
| B | 09255E300 | 249 | $6,225,000 | June 17, 2008 |
| C | 09255E409 | 410 | $10,250,000 | June 23, 2008 |
| D | 09255E508 | 287 | $7,175,000 | June 25, 2008 |
| E | 09255E607 | 322 | $8,050,000 | July 17, 2008 |
| F | 09255E706 | 264 | $6,600,000 | June 27, 2008 |

```
*T

-0-
*T
```

BlackRock California Investment Quality Municipal Trust, Inc. (AMEX:RAA)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| W7 | 09247U206 | 27 | $675,000 | June 26, 2008 |

```
*T

-0-
*T
```

BlackRock Florida Investment Quality Municipal Trust (AMEX:RFA)

| Series | CUSIP Number | Number of Shares Redeemed | Amount Redeemed | Redemption Date |
|--------|--------------|---------------------------|-----------------|-----------------|
| R7 | 09247B208 | 55 | $1,375,000 | June 27, 2008 |

```
*T

-0-
*T
```

BlackRock New Jersey Investment Quality Municipal Trust, Inc. (AMEX:RNJ)

| Series | CUSIP Number | Number of Shares Redeemed | Amount | Redemption |
|--------|--------------|---------------------------|--------|------------|

Copyright (c) 2008

```
BUS            BlackRock Announces Refinancing of Auction Rate Preferred
               Jun 2 2008  17:04:01
                       Shares    Redeemed  Date
                       Redeemed
-------------------------------------------------------------
T7      09247C206    17        $425,000  June 25, 2008
-------------------------------------------------------------
*T
```

About BlackRock

BlackRock is one of the world's largest publicly traded investment management firms. At March 31, 2008, BlackRock's AUM was $1.364 trillion. The firm manages assets on behalf of institutions and individuals worldwide through a variety of equity, fixed income, cash management and alternative investment products. In addition, a growing number of institutional investors use BlackRock Solutions investment system, risk management and financial advisory services. Headquartered in New York City, as of March 31, 2008, the firm has approximately 5,600 employees in 19 countries and a major presence in key global markets, including the U.S., Europe, Asia, Australia and the Middle East. For additional information, please visit the Company's website at www.blackrock.com.

Forward-Looking Statements

This press release, and other statements that BlackRock may make, may contain forward-looking statements within the meaning of the Private Securities Litigation Reform Act, with respect to the BlackRock closed-end funds' future financial or business performance, strategies or expectations. Forward-looking statements are typically identified by words or phrases such as "trend," "potential," "opportunity," "pipeline," "believe," "comfortable," "expect," "anticipate," "current," "intention," "estimate," "position," "assume," "outlook," "continue," "remain," "maintain," "sustain," "seek," "achieve," and similar expressions, or future or conditional verbs such as "will," "would," "should," "could," "may" or similar expressions.

BlackRock cautions that forward-looking statements are subject to numerous assumptions, risks and uncertainties, which change over time. Forward-looking statements speak only as of the date they are made, and BlackRock and the closed-end funds managed by BlackRock and its affiliates assume no duty to and do not undertake to update publicly or revise any forward-looking statements. Actual results could differ materially from those anticipated in forward-looking statements and future results could differ materially from historical performance.

The following factors, among others, could cause actual results to differ materially from forward-looking statements or historical occurrences: (1) the ability of the BlackRock closed-end funds that have announced these refinancing plans to implement those plans on a timely basis; (2) the ability of other BlackRock closed-end funds that have issued ARPS but that are not announcing a refinancing plan today to develop and finalize fund-by-fund specific proposals to restructure the leverage of such funds; (3) the need for such other BlackRock funds to obtain formal fund-by-fund board approval of certain types of specific proposals as they are developed and finalized; (4) the

Copyright (c) 2008

BUS          BlackRock Announces Refinancing of Auction Rate Preferred
             Jun 2 2008  17:04:01
ability of such other BlackRock funds to negotiate and obtain from
broker dealers or other financial institutions the put commitments
necessary to make the ARPS eligible for purchase by money market funds
on terms acceptable to the BlackRock funds and in a timely manner; (5)
the acceptance by the market, and demand for,

Copyright (c) 2008

# EXHIBIT E



**Board for Professional Medical Conduct**

*Corning Tower • Empire State Plaza • Albany, NY 12237 • (518) 474-8357*

Barbara A. DeBuono, M.D., M.P.H.
*Commissioner*

C. Maynard Guest, M.D.
*Executive Secretary*

March 27, 1995

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Michael A. Passidomo, M.D.
162 South Mayo Trail
P.O. Box 2037
Pikeville, Kentucky 41502

RE:   License No. 118872
        Effective Date: 04/03/95

Dear Dr. Passidomo:

        Enclosed please find Order #BPMC 95-66 of the New York State
Board for Professional Medical Conduct.  This Order and any penalty
provided therein goes into effect upon receipt of this letter or seven (7)
days after the date of this letter, whichever is earlier.

        If the penalty imposed by the Order is a surrender, revocation
or suspension of this license, you are required to deliver to the Board
the license and registration within five (5) days of receipt of the Order.

                Board for Professional Medical Conduct
                New York State Department of Health
                Empire State Plaza
                Tower Building-Room 438
                Albany, New York  12237-0756

                Sincerely,

                *C. Maynard Guest*

                C. Maynard Guest, M.D.
                Executive Secretary
                Board for Professional Medical Conduct

Enclosure

cc:  W. Terry McBrayer, Esq.
     McBrayer, McGinnis, Leslie & Kirkland
     163 West Short Street, Suite 300
     Lexington, Kentucky 40507-1361

     Paul Stein, Esq.

NEW YORK STATE              DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

| | |
|---|---|
| **IN THE MATTER**<br><br>**OF**<br><br>**MICHAEL ANTHONY PASSIDOMO, M.D.** | CONSENT<br><br>ORDER<br><br>BPMC #95-66 |

     Upon the application of MICHAEL ANTHONY PASSIDOMO, M.D. (Respondent) for Consent Order, which application is made a part hereof, it is

     ORDERED, that the application and the provisions thereof are hereby adopted and so ORDERED, and it is further

     ORDERED, that this order shall take effect as of the date of the personal service of this order upon Respondent, upon receipt by Respondent of this order via certified mail, or seven days after mailing of this order by certified mail, whichever is earliest.

     SO ORDERED.

DATED: 23 March 1995

CHARLES J. VACANTI, M.D.
Chairperson
State Board for Professional
Medical Conduct

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT
----------------------------------------------------------------

IN THE MATTER

OF

MICHAEL ANTHONY PASSIDOMO, M.D.

APPLICATION

FOR

CONSENT ORDER

----------------------------------------------------------------

STATE OF KENTUCKY   )
                          ss.:
COUNTY OF  PIKE       )

MICHAEL ANTHONY PASSIDOMO, M.D., being duly sworn, deposes and says:

That on or about  January 28, 1974, I was licensed to practice as a physician in the State of New York, having been issued License No. 118872 by the New York State Education Department.

My current address is 534-536 Mayo Trail, Suite 302, Pikeville, Kentucky 41501 and I will advise the Director of the Office of Professional Medical Conduct of any change of my address.

I understand that the New York State Board for Professional Medical Conduct has charged me with one specification of professional misconduct.

A copy of the Statement of Charges is annexed hereto, made a part hereof, and marked as Exhibit "A".

I admit guilt to the first specification, including, but limited to, paragraph "1." and paragraph "1. f.",  in full satisfaction of the charges against me.  I hereby agree to a sanction of three months suspension, such suspension to be stayed, and further agree to a  two year period of probation, to be tolled unless and until I commence the practice of medicine in the State of New York, the terms of such period of probation being fully stated in Exhibit "B" annexed hereto and made a part hereof.

I hereby make this Application to the State Board for Professional Medical Conduct (the Board) and request that it be granted.

I understand that, in the event that this Application is not granted by the Board,

nothing contained herein shall be binding upon me or construed to be an admission of any act of misconduct alleged or charged against me, such Application shall not be used against me in any way and shall be kept in strict confidence during the pendency of the professional misconduct disciplinary proceeding; and such denial by the Board shall be made without prejudice to the continuance of any disciplinary proceeding and the final determination by the Board pursuant to the provisions of the Public Health Law.

I agree that, in the event the Board grants my Application, as set forth herein, an order of the Chairperson of the Board shall be issued in accordance with same.

I am making this Application of my own free will and accord and not under duress, compulsion or restraint of any kind or manner.

MICHAEL ANTHONY PASSIDOMO, M.D.
RESPONDENT

Sworn to before me this
10th day of March, 1995.

*Mildred B. Childers*
NOTARY PUBLIC
My comm. expire
Mar 6, 1996

2

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

| IN THE MATTER | APPLICATION |
|---|---|
| OF | FOR |
| MICHAEL ANTHONY PASSIDOMO, M.D. | CONSENT ORDER |

The undersigned agree to the attached application of the Respondent and to the proposed penalty based on the terms and conditions thereof.

DATE: _____

MICHAEL ANTHONY PASSIDOMO, M.D.
Respondent

DATE: 3/9/95

W. TERRY McBRAYER, ESQ.
Attorney for Respondent

DATE: 3-14-95

PAUL STEIN, ESQ.
Associate Counsel
Bureau of Professional
Medical Conduct

3

DATE: _March 21, 1995_     _____
KATHLEEN M. TANNER
Director
Office of Professional Medical
Conduct

DATE: _23 March 1995_     _____
CHARLES J. VACANTI, M.D.
Chairperson
State Board for Professional
   Medical Conduct

4

```
STATE OF NEW YORK   :   DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT
----------------------------------------------x
```

|  |  |  |
|---|---|---|
| In the Matter | : | STATEMENT |
| of | : | OF |
| MICHAEL ANTHONY PASSIDOMO, M.D. | : | CHARGES |

```
----------------------------------------------x
```

MICHAEL ANTHONY PASSIDOMO, M.D., the Respondent, was authorized to practice as a physician in New York State on January 28, 1974 by the issuance of license number 118872 by the New York State Education Department.  The Respondent is not currently registered with the New York State Education Department to practice medicine in the State of New York.  His current address is 534-536 Mayo Trail, Suite 302, Pikeville, Kentucky  41501.

## FACTUAL ALLEGATIONS

A.  In an Agreed Order filed of record on April 1, 1994, the Commonwealth of Kentucky, State Board of Medical Licensure (hereinafter referred to as "the Kentucky Board") suspended Respondent's license to practice medicine in the state of Kentucky for a period of three months.  The suspension was "probated for a period of three (3) years", subject to various terms of probation.  This action was based upon a complaint filed of record on July 27, 1993 by the Kentucky Board in which it was charged:

1

EXHIBIT A

"That on or between November of 1985 and April of 1991, Respondent treated and examined thirty-four (34) patients in such a manner as to constitute a pattern of overutilization and expensive technology. Such conduct is dishonorable, unethical and unprofessional to the extent that said conduct is of a character likely to deceive, defraud or harm the public or any member thereof and constitutes a pattern of acts committed during the course of Respondent's medical practice which, under the attendant circumstances, is deemed to be of gross incompetence, gross ignorance, gross negligence or malpractice, and is calculated or has the effect of bringing the medical professional into disrepute, including, but not limited to, any departure from or failure to conform to the standards of acceptable and prevailing medical practice within the Commonwealth of Kentucky, and any departure from or failure to conform to principles of medical ethics of the American Medical Association or the Code of Ethics of the American Osteopathic Association."

The period of probation was subsequently reduced from three years to six months.

## SPECIFICATION

### FIRST SPECIFICATION

1.    Respondent is charged with professional misconduct within the meaning of N.Y. Educ. Law Sec. 6530(9)(d) (McKinney Supp. 1995), in that he had his license to practice medicine revoked, suspended or had other disciplinary action taken after a disciplinary action was instituted by a duly authorized professional disciplinary agency of another state, where the conduct resulting in the revocation, suspension or other disciplinary action involving the license would, if committed in New York State, constitute professional misconduct under the laws of New York State, specifically:

2

a.    "Practicing the profession fraudulently or beyond its
      authorized scope" (Educ. Law sec. 6530 (2) (McKinney
      Supp. 1995)); and/or

b.    "Practicing the profession with gross negligence on a
      particular occasion" (Educ. Law sec. 6530 (4)
      (McKinney Supp. 1995)); and/or

c.    "Practicing the profession with gross incompetence"
      (Educ. Law sec. 6530 (6) (McKinney Supp. 1995));
      and/or

d.    "Practicing the profession with negligence on more
      than one occasion" (Educ. Law sec. 6530 (3) (McKinney
      Supp. 1995)); and/or

e.    "Practicing the profession with incompetence on more
      than one occasion" (Educ. Law sec. 6530 (5) (McKinney
      Supp. 1995)); and/or

f.    "Ordering of excessive tests, treatment, or use of
      treatment facilities not warranted by the condition
      of the patient" (Educ. Law sec. 6530 (35) (McKinney
      Supp. 1995)).


Dated:   New York, New York
         February 17, 1995


                              CHRIS STERN HYMAN
                              Counsel
                              Bureau of Professional
                                Medical Conduct

3

EXHIBIT "B"

TERMS OF PROBATION

1.    MICHAEL ANTHONY PASSIDOMO, M.D., during the period of probation, shall conduct himself in all ways in a manner befitting his professional status, and shall conform fully to the moral and professional standards of conduct imposed by law and by his profession;

2.    Respondent shall submit written notification to the New York State Department of Health (NYSDOH), addressed to the Director, Office of Professional Medical Conduct, New York State Department of Health, Corning Tower Building, 4th Floor, Empire State Plaza, Albany, New York  12237 of any employment and practice, of Respondent's residence and telephone number, and of any change in Respondent's employment, practice, residence, or telephone number within or without the State of New York;

3.    Respondent shall submit written proof from the Division of Professional Licensing Services (DPLS), New York State Education Department (NYSED), that Respondent has paid all registration fees due and owing to the NYSED and Respondent shall cooperate with and submit whatever papers are requested by DPLS in regard to said registration fees, said proof from DPLS to be submitted by Respondent to the New York State Department of Health, addressed to the Director, Office of Professional Medical Conduct, as aforesaid, within the first three months of the period of probation;

4.    Respondent shall submit written proof to the NYSDOH, addressed to the Director, Office of Professional Medical Conduct, as aforesaid, that 1) Respondent is currently registered with the NYSED, unless Respondent submits written proof that Respondent has advised DPLS, NYSED, that Respondent is not engaging in the practice of Respondent's profession in the State of New York and does not desire to register, and that 2) Respondent has paid any fines which may have previously been imposed upon Respondent by the Board or by the Board of Regents; said proof of the above to be submitted no later than the first two months of the period of probation;

5.    Respondent shall comply with all terms, conditions, restrictions, and penalties to which he is subject pursuant to the order of the Board;

6.    Any civil penalty not paid by the date prescribed herein shall be subject to all provisions of law relating to debt collection by the State of New York.  This includes but is not limited to the imposition of interest, late payment charges and collection fees; referral to the New York State Department of Taxation and Finance for collection; and non renewal of permits or licenses (Tax Law §171(27); State Finance Law §18; CPLR §5001; Executive Law §32);

7.    This period of probation shall commence if and when Respondent commences the practice of medicine in the State of New York.  If Respondent commences the practice of medicine in the State of New York and discontinues such practice in the State of New York before the two year probationary term is completed, the period of probation shall be tolled, and shall be resumed at such time as Respondent again commences the practice of medicine in the State of New York. The period of probation shall be resumed and tolled in this manner until such time as Respondent has completed the two year period of probation.

5

8.     Thirty days prior to the commencement of the practice of medicine in New York State, or resumption of the practice of medicine in New York State if Respondent has not yet completed the two year period of probation, Respondent shall, by certified or registered mail, notify the Director of the Office of Professional Medical Conduct, at the address in paragraph 2 above, of such commencement or resumption of practice.   Within one week of the discontinuance of the practice of medicine in the State of New York., if Respondent will not have completed the two year period of probation before such discontinuance, Respondent shall, by certified or registered mail, notify the Director of the Office of Professional Medical Conduct, at the address in paragraph 2 above, of such discontinuance.

9.     During the two year period of probation, Respondent shall have quarterly meetings with an employee or designee of the Office of Professional Medical Conduct.  During these quarterly meetings, Respondent's professional performance shall be monitored by having a random selection of his office records, patient records, and hospital charts reviewed by such employee or designee.  Respondent shall cooperate fully in making available such records and charts.

10.     So long as there is full compliance with every term herein set forth, Respondent may continue to practice his aforementioned profession in accordance with the terms of probation; provided, however, that upon receipt of evidence of noncompliance with, or any violation of these terms, the Director of the Office of Professional Medical Conduct and/or the Board may initiate a violation of probation proceeding and/or such other proceeding against Respondent as may be authorized pursuant to the Public Health Law.

# EXHIBIT F

*Federation of*
# STATE
# MEDICAL
# BOARDS

## Physician Profile

Report Date:  06/11/2008

In response to your recent inquiry concerning the individual referenced below, the following summary of reported information is provided.

**NAME:**

### Michael Anthony Passidomo, MD

The Federation Physician Data Center provides names previously used by reporting entities. This information is provided to consumers to assist in identification.

## BOARD ACTIONS/DISCIPLINE/SANCTIONS

| | |
|---|---|
| **Reporting State Board** | KENTUCKY |
| **Date Of Order** | 03/31/1994 |
| **Form Of Order** | Agreed Order |
| **Action(s)** | MEDICAL LICENSE PLACED ON PROBATION |
| | Additional Detail:  Placed On Three Years Probation. |
| **Basis for Action(s)** | Overutilization of Health Care Services |

| | |
|---|---|
| **Reporting State Board** | KENTUCKY |
| **Date Of Order** | 07/22/1994 |
| **Action(s)** | PROBATION MODIFIED - RESTRICTIONS/CONDITIONS REDUCED |
| | Additional Detail:  Order Reducing Probationary Period From Three Years To Six Months From April 1, 1994. |
| **Basis for Action(s)** | Not Applicable |

| | |
|---|---|
| **Reporting State Board** | WEST VIRGINIA |
| **Date Of Order** | 09/08/1994 |
| **Effective Date** | 09/07/1994 |
| **Action(s)** | SURRENDER OF MEDICAL LICENSE |
| **Basis for Action(s)** | Not Reported |

| | |
|---|---|
| **Reporting State Board** | KENTUCKY |
| **Date Of Order** | 10/01/1994 |
| **Action(s)** | PROBATION TERMINATED |
| | Additional Detail:  Probation Terminated. |
| **Basis for Action(s)** | Not Applicable |

| | |
|---|---|
| **Reporting State Board** | FLORIDA |
| **Date Of Order** | 02/27/1995 |
| **Form Of Order** | Consent Order/Agreement |
| **Action(s)** | ASSESSED A FINE |
| | ISSUED LETTER OF CONCERN |
| **Basis for Action(s)** | |
| | Due to Action Taken by Another Board/Agency |
| | Failure to Report Adverse Actions Against Self in Accordance with |

| | |
|---|---|
| **Reporting State Board** | NEW YORK |
| **Date Of Order** | 03/27/1995 |
| **Effective Date** | 04/03/1995 |
| **Form Of Order** | Consent Order/Agreement |
| **Action(s)** | MEDICAL LICENSE PLACED ON PROBATION |
| | Additional Detail: Placed On Two Years Probation To Commence Upon Resumption Of Practice In New York. |
| **Basis for Action(s)** | Due to Action Taken by Another Board/Agency |

| | |
|---|---|
| **Reporting State Board** | NEW YORK |
| **Date Of Order** | 03/05/1997 |
| **Effective Date** | 03/12/1997 |
| **Action(s)** | SURRENDER OF MEDICAL LICENSE |
| | Additional Detail: Surrender of license substituted for sanction originally imposed; charges and plea remain unchanged. |
| | PRIOR ORDER OF THE BOARD MODIFIED/AMENDED |
| **Basis for Action(s)** | Due to Action Taken by Another Board/Agency |

| | |
|---|---|
| **Reporting State Board** | VIRGINIA |
| **Date Of Order** | 08/07/1998 |
| **Form Of Order** | Consent Order/Agreement |
| **Action(s)** | SURRENDER OF LICENSE PRIOR TO OR IN LIEU OF INQUIRY, INVESTIGATION OR OTHER ACTION |
| **Basis for Action(s)** | Due to Action Taken by Another Board/Agency |

A report containing no reportable actions is just as valuable as receiving a report with disciplinary actions, because it indicates that the individual you searched against the national database has not been disciplined by a state medical board or regulatory entity. Of the physicians disciplined in 2006, 86% have held licenses in 2 to 35 different state jurisdictions.

Entities reporting to the Federation include U.S. state medical boards and its territories, and U.S. Department of Health and Human Services (Medicaid/Medicare). In addition, reports are received from numerous international jurisdictions including Canada, England, New Zealand, and Australia.

Disciplinary actions taken by licensing and regulatory entities can vary widely in scope and nature. Actions may range from warnings or letters of concern to the revocation of the privilege to practice medicine. Actions may be either disciplinary or administrative in nature. In deciding to seek treatment from an individual who has reportable actions, the patient should closely evaluate the nature and consequence of the action and decide if the action could potentially impact the quality of care received.

**LICENSE HISTORY**

| State Board | Date Issued | License Number |
|---|---|---|
| FLORIDA | 08/28/1974 | ME22483 |
| KENTUCKY | | 20408 |
| MAINE | 12/07/1972 | 7183 |
| NEW YORK | 01/28/1974 | 118872 |
| VIRGINIA | 10/01/1986 | 0101040208 |
| WEST VIRGINIA | 11/10/1986 | 14896 |

Case 1:08-cr-03095-LTS Document 32-7 Filed 06/16/2008 Page 1 of 6

## MEDICAL SCHOOL
### Universita Di Bologna
### Country: Italy

It takes many years of education and training to become a physician. Typically, after completing a four-year undergraduate or pre-medical program at an accredited college or university, a student may enter medical school. Once admitted to medical school, it generally takes four years to earn a Doctor of Medicine (M.D.) degree or Doctor of Osteopathic Medicine (D.O.) degree. Typically, a medical student spends the first two years in classroom and laboratory instruction, which is often referred to as the pre-clinical studies, and the final two years working under supervision of experienced physicians in clinics and hospitals, known as the clinical studies, where students observe and take part in the care of actual patients. Rotations on clinical services such as internal medicine, obstetrics and gynecology, pediatrics, and surgery are the foundation of the curriculum.

The Educational Commission for Foreign Medical Graduates (ECFMG), through its program of certification, assesses whether international medical graduates are ready to enter residency or fellowship programs in the United States.

ECFMG Certification assures the people of the United States, that international medical graduates have met minimum standards of eligibility required to enter such programs. ECFMG Certification is one of the eligibility requirements for international medical graduates to take Step 3 of the three-step United States Medical Licensing Examination (USMLE). Medical licensing authorities in the United States require ECFMG Certification, among other requirements, to obtain an unrestricted license to practice medicine. Additional information regarding the USMLE can be found at www.usmle.org and additional information regarding ECFMG can be found at www.ecfmg.org.

## DEGREE
### Doctor of Medicine (MD)

United States medical students earn either a Doctorate of Medicine (M.D.) or Doctorate of Osteopathic Medicine (D.O.). These degree types entitle a graduate to use these initials after his/her name. The title Doctor is based on completion of education requirements and is not an indicator of licensure status. Graduation from an accredited U.S. allopathic school program earns the student a Doctor of Medicine (M.D.) degree, while graduation from an accredited osteopathic school earns the Doctor of Osteopathic Medicine (D.O.) degree.

Currently, of the 148 medical schools in the United States – 126 teach allopathic medicine and award an M.D. degree, and 22 teach osteopathic medicine and award the D.O. degree. Currently, there are not any equivalent osteopathic medical schools outside of the United States. For further information on osteopathic physicians visit the American Osteopathic Association at www.osteopathic.org

In addition to medical doctors and doctors of osteopathic medicine, individuals in the United States who have graduated from an accredited physician assistant program and are trained to provide health care services under the supervision and direction of a licensed physician are awarded the degree of Physician Assistant (P.A.). Physician Assistants can provide a broad range of medical and surgical services that traditionally have been performed by physicians,

such as taking medical histories, performing physical examinations, ordering and interpreting lab tests and prescribing medication.

In some countries, such as Australia, India, and Pakistan, international medical school graduates who complete their studies in medicine and surgery earn a Bachelor of Medicine and Bachelor of Surgery degree, or in Latin, Medicinae Baccalaureus et Baccalaureus Chirurgiae (abbreviated MBBS, MBChB, and MBBCh.) These medical school diplomas are not offered in any U.S. or Canadian medical school program, and the exact name of the international degree programs can vary from country to country.

Medical schools outside the United States and Canada vary in educational standards, curriculum and evaluation methods. In order for foreign medical graduates to enter U.S. residency and fellowship programs, they must first be certified by the Educational Commission for Foreign Medical Graduates (ECFMG.) In addition to satisfying the ECFMG certification requirements, international medical graduates must also have had at least four credit years in attendance at a recognized medical school.

## YEAR OF GRADUATION
### 1974

Year of Graduation refers to the year a physician obtained his/her medical degree and graduated from medical school. The length of time since year of graduation is the personal preference of the patient and often depends on the relationship established with the treating physician.

## MEDICAL SPECIALTY

### We do not have record of the medical specialty(ies) for this individual.

Following medical school, physicians may enter a residency program where they choose to specialize in a particular area of medicine, which means additional years of training. The residency program may take the form of paid on-the-job training usually conducted in a hospital setting.

During this specialty training, the residents practice medicine under the supervision of licensed physicians who are experienced in their specialty. Upon completion of their residency training, the graduate resident is eligible to take the specialty board certification exam offered by one of the 24-approved medical specialty boards of the American Board of Medical Specialties (ABMS), the American Osteopathic Association (AOA), or other non-ABMS or non-AOA certification boards. A physician may gain board certification status in more than one area of specialization.

After residency, some doctors may continue their training to specialize even further and obtain certification in a sub-specialty, which usually requires an additional 2 to 3 years of fellowship training. For example, an internal medicine graduate may choose to sub-specialize in cardiology, which means an additional 3 years of training. On completion of the fellowship program, the physician may take a second board certification exam in the area of cardiology.

Certification in either a specialty or sub-specialty helps the public identify those physicians who have met a higher standard of educational training, passed competency examinations and have the knowledge and experience beyond the level required for licensure. Although many physicians are electing to become board certified, it is not a requirement to practice medicine. When selecting a board certified physician, it is important to review the certifying board's eligibility requirements, examination procedures, and ongoing maintenance of competency criteria. **Additional information pertaining to medical specialties of the American Board of Medical Specialties and the American Osteopathic Association can be found at www.abms.org or www.osteopathic.org**

# LOCATION HISTORY (NOT CHRONOLOGICAL)

**Pikeville, KY  41501**
**Naples, FL  34102-7629**
**Pikeville, KY  41501-1526**
**Pikeville, KY  415011526**

Since the Federation Physician Data Center database is a nationally consolidated database of physician information, it is very common for a single physician to have multiple locations on file. Generally, location information is self-reported by a physician to a licensing and regulatory agency, and therefore, it has not been verified. Location information is updated in our system as new or additional information becomes available. **This location history is provided for use as a guide for individuals seeking to explore additional sources of information.**

PLEASE NOTE: For more information regarding the above data, please contact the reporting state board or reporting agency. The information contained in this report was supplied by the respective state medical boards and other reporting agencies. The Federation makes no representations or warranties, either express or implied, as to the accuracy, completeness or timeliness of such information and assumes no responsibility for any errors or omissions contained therein. Additionally, the information provided in this profile may not be distributed, modified or reproduced in whole or in part without the prior written consent of the Federation of State Medical Boards.

# EXHIBIT G

1 of 1 DOCUMENT

Copyright 1995 Charleston Newspapers
Charleston Daily Mail (West Virginia)

February 16, 1995, Thursday

**SECTION:** News; Pg. P 1A

**LENGTH:** 997 words

**HEADLINE:** NUMBER OF PHYSICIANS DISCIPLINED IN 1994 DOWN

**BYLINE:** Therese Cox

**BODY:**

Medical board still swamped with dozens of written complaints

Drug violations, failure to pass required exams and inconsistent record keeping led the state Board of Medicine to discipline 23 medical doctors in 1994, records show.

The number was down somewhat from the previous year, when 31 physicians received sanctions.

The board, however, receives as many as four times that number of complaints in a year, said Ronald Walton, executive director for the board.

All written complaints have to be fully investigated, he said

"If a doctor is rude, unfortunately we have to investigate," Walton said.  "Maybe it was an unpleasant experience, but we can't say it was necessarily unprofessional or mismanaged care."

The board employs one full-time and one part-time investigator to track 5,575 physicians, 103 podiatrists and 225 physician assistants.

Revocation is the most severe and rarest sanction given.  Only two physicians had their licenses revoked in 1994.

Dr. Thomas J. Park, a Princeton ophthalmologist, preyed on the elderly, pressing them to have eye surgery, the board concluded.

The board also revoked the license of Dr. Thomas S. Clark of Morgantown, but a Monongalia County circuit judge delayed the revocation.  Clark, a former five-year member of the board, has appealed the board's decision and the case is pending.

NUMBER OF PHYSICIANS DISCIPLINED IN 1994 DOWN Charleston Daily Mail (West Virginia) February 16, 1995, Thursday

Last year, the board certified 35 new medical corporations,

which include one or more physicians in practice, as compared to 21

the year before.  That brought the total to 572.

State physicians disciplined by the board in 1994 include:

James Michael Beane, a family practitioner in Vienna, was

given a five-year probation for writing prescriptions for himself.

Radhakrishna Murty Bellam was restricted to practicing only

under the supervision of another licensed physician.  He is a family

practitioner in Man.

Patricia Bonitatibus, a Wheeling anesthesiologist, was put on

probation for two years.  She must refrain from the use of controlled

drugs.

Mary Boyd of Elkins, a pediatrician, was reprimanded for

employing an unlicensed physician's assistant.

Freeman L. Clark, whose residence was listed as Memphis, Tenn

., was given a two-year probation and must submit to random drug

testing.

Thomas S. Clark's case is pending.  The board said it was

clearly demonstrated that Clark fraudulently renewed his license by

not stating that he had been treated for drug addiction; that he

failed to keep some medical records on the dispensation of controlled

drugs; and that as a Board of Medicine member he betrayed the public

trust.

Doff D. Daniel Jr. of Beckley, an internal medicine

specialist, was ordered to stop prescribing drugs, to keep medical

records for all patients and to take an exam.

Maria Estacio-Suarez, a Huntington geriatric physician, was

ordered to take an exam and complete studies of rational drug therapy

and record keeping.  When Estacio-Suarez later failed the exam, her

license was suspended.

Stuart Henry Fox was given three years of probation for a

substandard surgical technique in 1992.  He is a Huntington

obstetriciangynecologist.

Gary A. Hanson of Weirton, a specialist in cardiovascular

medicine and internal medicine, was put on probation for two years

for failing to keep written records in treating his wife.

NUMBER OF PHYSICIANS DISCIPLINED IN 1994 DOWN Charleston Daily Mail (West Virginia) February 16, 1995, Thursday

James D. Hoffman, a Williamson family practitioner, was put
on a three-year probation for not complying with an earlier order of
the board.  It did not say why he was reprimanded.  He is to attend
Alcoholics Anonymous meetings.

Oscar Irisari, who was sued several times by patients, was
ordered to take an exam.  He is an obstetriciangynecologist in
Moundsville.

Chaikitch V. Lucas of Chapmanville, a general surgeon and
family practitioner, surrendered his license until he passes an exam

David C. McClure of Elkins was fined for letting his license
lapse.  His specialty was not listed.

Bruce Jeffrey Merkin surrendered his license and entered a
chemical dependency treatment program.  His license then was
reinstated with a five-year probationary period.  He practices
internal medicine in Barboursville.

The license of Thomas J. Park, the Princeton ophthalmologist,
was revoked.

Karl J. Reckenthaler, a radiologist, was fined for
fabricating minutes of a radiation safety committee meeting in Grant
County.

Maurice C. Rhodes, a family practitioner in Clarksburg, had
his license reinstated after passing an exam.  He is to practice for
a time under the supervision of another licensed physician.

Alan Ruben, a Wheeling dermatologist, was fined for
prescribed controlled drugs to himself.

Victor P. Salutillo, a family practitioner in Charleston,
acknowledged that he prescribed controlled substances to himself.  He
was put on a two-year probation, ordered to cease prescribing
controlled drugs and ordered to obtain a personal physician.

James Lee Schmidt's license was suspended for three years.
He was fined and ordered to participate in an alcohol rehabilitation
program.  He is a Harrisville family practitioner.

Richard Camp Wisman was ordered to submit to random drug
tests.  The board extended the Beckley family practitioner's
probation one year.

James W. Woodford received public reprimand for his treatment

NUMBER OF PHYSICIANS DISCIPLINED IN 1994 DOWN Charleston Daily Mail (West Virginia) February 16, 1995, Thursday

of a patient in 1988. He is a general surgeon in Philippi.

Six other physicians voluntarily surrendered their licenses.

The board is not required to release details.

They are Lenore Adele Breen, a Morgantown neurologist; Anton J

.Dubrick, an emergency physician whose residence is Champaign, Ill

.; Pamela Fawley, a Morgantown psychiatristfamily practitioner;

**Michael A. Passidomo,** a Pikeville, Ky., neurologist.

Also, Wayne Joseph Plymale, a Charleston urologist; and Martin

David Sokoll, an anesthesiologist whose address is Iowa City, Iowa

DOCTORS9A Doctors 1A

*293 W.Va. physicians have been disciplined for various misdeeds July 30, 2003, Wednesday Charleston Gazette (West Virginia) July 30, 2003, WednesdayCorrection Appended*

Copyright 2003 Charleston Newspapers
Charleston Gazette (West Virginia)

July 30, 2003, Wednesday
Correction Appended

**SECTION:** News; Pg. P1A

**LENGTH:** 1741 words

**HEADLINE:** 293 W.Va. physicians have been disciplined for various misdeeds July 30, 2003, Wednesday

**BYLINE:** John Heys

**BODY:**
johnheys@wvgazette.com

A consumer group says West Virginia should do a better job cracking down on bad doctors.

The group has put on its Web site the names of nearly 300 doctors in the state who have been disciplined by state medical boards and the government for incompetence, sexual misconduct, criminal convictions and other offenses.

"Only a small fraction of doctors with offenses have been stopped from practicing," said Dr. Sidney Wolfe, who directs Public Citizen's health research group.

The 293 names join about 18,000 others from 40 states and the District of Columbia that Public Citizen reports have had disciplinary actions taken against them by state medical boards and the federal government from 1992 to 2001.

Browsing through the list of doctors, arranged by state, is free. To view more information about disciplinary actions taken against particular doctors, you'll have to pay $ 10. The fee gives you access to information on up to 10 physicians.

Ron Walton, executive director of the state's Board of Medicine, said the board does all it can with the resources it has to track and discipline West Virginia's physicians.

"I think that the board responds appropriately when dealing with disciplinary actions as they see fit," Walton said. "My position is, we don't think we're doing anything inappropriately."

During the 10-year period covered, Public Citizen found that 417 disciplinary actions were taken against 293 doctors in the state.

The group's list comes from information from state medical boards and federal agencies, such as the U.S. Drug Enforcement Administration, that also discipline doctors.

Wolfe called the list more comprehensive than what an individual medical board like West Virginia's could provide because Public Citizen looked at actions taken by other state boards and the government.

For instance, an action taken by Ohio's medical board against a doctor also licensed in West Virginia may not show up in the West Virginia board's information.

Most consumers won't find their doctors on the Web site, Wolfe said. "Most doctors are practicing good medicine," he said. But for patients whose physicians are listed, the data provides another way to find out why.

"Patients deserve more information about their doctors," Wolfe said.

Public Citizen earlier this year ranked West Virginia's medical board 13th in the country based on how many serious disciplinary actions were made for every 1,000 doctors in the state. Serious actions include revoking or suspending licenses, forcing doctors to give up their licenses or placing doctors on probation.

Wolfe said West Virginia could do better, especially when it comes to disciplining doctors with multiple malpractice claims and making it easier to get information about doctors and actions against them.

The Board of Medicine still plans to improve its Web site, but Walton said he didn't know when that would happen. In 2002, Public Citizen gave the board's Web site a grade of "F" for user-friendliness.

Walton said the board is hamstrung by its budget, which comes solely from fees the board collects from those it licenses.

To see Public Citizen's list of questionable doctors, visit www.questionabledoctors.org. For more information about a specific doctor, call the West Virginia Board of Medicine at 558-2921.

Questionable doctors

Public Citizen's list of questionable doctors in West Virginia is on Page 11A, or visit www.questionabledoctors.org. Viewing the list online is free, but it costs $ 10 to see more information about doctors. The West Virginia Board of Medicine (558-2921) can also provide information about specific doctors.

Questionable doctors

Public Citizen published the following list of West Virginia doctors who were disciplined by state medical boards or the federal government from 1992 to 2001. The offenses range from minor administrative errors to more serious cases, such as sexual abuse of patients.

Although your doctor's name might be similar or identical to one listed, your doctor and the one listed might not be the same person. The status of a doctor's license or any disciplinary action might have changed since this list was made.

Check with the state Board of Medicine at 558-2921 for updated information. More

information can be also be found at www.questionabledoctors.org.

Abedi, Kheyrolah; Abrigo, Ignacio Bangayan Jr.; Acosta, Armando Maximiliano F.; Adams, Barton J.; Agarwal, Anil Bhikulal; Aksoy, Yasar; Aksoy, Yasar J.; Allinder, Maureen; Alvarez, Dona M.; Amar, John Jason; Arce, Jose B.; Arreola, Rodolfo Jr.; Ashby, Diane Elizabeth;

Baker, Larry Allen; Barran, Peter D.; Batish, Rajesh; Battaglino, John Joseph Jr.; Beane, James Michael; Beard, John Wilson; Bellam, Radhakrishna Murty; Bennett, Roger Paul; Berlow, Abraham J.; Beyer, Elizabeth C.T.; Boggs, James Ernest; Bonitatibus, Patricia Joan Steigner; Boyd, Mary Simon; Braga, Djalma A.; Breen, Lenore Adele; Breitinger, Ernest Robert; Brooks, Delroy Courtney; Brown, Gary Lamoyne; Burke, Paul Weber Jr.;

Campano, Mark Anthony; Canady, Michael Ray; Castro, Orlando Roa; Cavender, Susan Lynn; Cheng, Mark Chiayung; Chin, Frank Tuin Wong; Christian, Homer Lee; Clark, Freeman L.; Clark, Thomas Samuel; Cochran, David Lee; Coleman, James W.; Cooper, Warren Lindley; Cottle, Aaron Depue; Covington, Martin Cade; Craske, William J.; Cunningham, James Eugene; Curtin, William J.;

Dababnah, Mousa Ibrahim; Daniel, Doff D. Jr.; Daniel, William Douglas; Davis, Eric Howard; Davis, Jeffrey Martin; Dayo, Zinnia Aliac Brawner; Dehgan, Ebrahim; Delgiorno, Louis John; Doak, Bruce Morrise Jr.; Dodd, Larry Allen; Dubrick, Anton J.; Duff, Wirt Rexford; Eden, James Arthur; Elliott, Sandra Young; Eskew, Edward; Estacio-Suarez, Maria C.;

Fahmy, Magdi Zakaria; Farsaii, Asghar; Fawley, Pamela Marian Shelton; Floresca, Jose P.; Fortner, Fredrick Mont; Foster, John Michael; Fox, Stuart Henry; Freed, John Douglas; Gajendragadkar, Subhash V.; Gant, Allen Louis; Garada, Hazem Salah; Garza, Gilberto A.; Getty, Paul Allen; Gingold, Glenn Adam; Glaser, Marilyn Knoll; Goldweber, Brian A.; Goodarzi, Ali Assghar; Gore, Timothy Joseph; Green, Samuel M.; Griffith, John Perry Jr.; Guanzon, Noel A.;

Hamrick, George Vincent; Hansel, John Seybert Jr.; Hanson, Gary Arnold; Harika, Jopindar Pal; Harish, Gorli; Harper, Morris Earl; Harrah, John Dae; Harrison, Hollister Summers; Hayden, Constance N.; Healy, Paul Thomas; Hembree, Wanda Marie; Hendricks, Daniel Ewell; Henshaw, Raymond E. II; Henson, Scott; Herceg, Robert J.; Hirsch, Harry Anthoney; Hochman, Victor; Hoffman, James David; Homily, Blessing Bennett; Hoover, Katherine Anne; Howsare, Charles Robert; Hughes, Francis Homer Jr.; Hung, Cheng Tong;

Ignatiadis, Panayotis; Irisari, Oscar Solidum; Iskander, Hany Maurice; Jain, Vijay K.; Jereza, Ramon C.; Josovitz, Mark Steven; Karpilow, Craig; Kelchak, Joseph Andrew; Kelly, Francis William Jr.; Khalil, Ghassan Abou; Khan, Farukh Ahmed; Khatib-Shahidi, Mani; Khoury, Elias Haikal; Khurana, Amar Nath; Klinestiver, Donald Gerould; Knull, Alan Franklin; Koh, Yung Hie; Kohal, Surinder Singh; Kondroski, Elaine Marie; Koon, Richard Ethen; Korstanje, Marion C.; Kostenko, Michael Merritt; Koukol, Steven Charles; Koussayer, Tarek; Kramer, Robert Edward;

Lawrence-Berrey, Robert Edmond; Lee, Kee Chin; Leo, Sherwood P.; Leppla, David Charles; Lewis, Michael Lloyd; Liberman, Joseph; Linger, Harry Teter; Lirio, Apolonio E. Jr.; Liu, Edward Ting; Livingstone, Samuel A; Long, Thomas Porter; Lucas, Chaikitch V.; Lucktong, Boonlua;

Mahood, John J.; Majmundar, Gauravi K.; Malone, Daniel Ray; Maouad, Michel Ibrahim; Marshall, John Talmadge; Martinez, Orestes A.; Mayron, Charles David; McCaffrey, Garfield B.; McCarty, George Eugene; McClure, David Cameron; McIntosh, Michael Stephen; Meek, Robert Baxter; Mercer, Michael J.; Merkin, Bruce J.; Michael, Gary E.; Miller, John C.; Miller, John Joseph; Miller, Stephen Blaine; Mitchell, Thomas E. Jr.; Modi, Shakuntala; Morehead, Raymond August; Muzaffer, Rahmet; Myers, Karl Johnson Jr.; Mynes, Chester Franklin;

Nelson, Trudy Joyce; Nerz, Paul Michael; Nichols, Carl Edwin; Nolan, Mark Warren; O'Donnell, Robert W.; O'Hara, Brendan Linus; Olaf, Charles R.; Olivas, Odilon Santiago; Ortiz, Serafin T.; Park, Thomas June; **Passidomo,** Michael A.; Patel, Aneel N.; Patterson, Kevin M.; Pavilack, Sidney; Pedrosa, Dora I.; Peterson, Frank R.; Phalsaphie, Mansour; Pickens, James Keith; Plymale, Wayne Joseph; Ponce, Francisco Deleon;

Quarequio, Francesco; Rahimian, Ali; Rajan, V.K. Suresh; Ram, Moorthy S.; Rashid, Richard C.; Rayevsky, Igor G.; Reckenthaler, Karl J.; Reyes, Charles Wesley; Reyes, Samson Dypiangco Jr.; Rhodes, Maurice Clement; Rikhy, Swaraj Singh; Rizvi, Hil; Roberts, Gary F.; Roberts, Samuel K.; Romano, Thomas James; Romero, Erdulfo Silan; Roxas, Felixberto R.; Ruben, Alan Marshall; Rydland, Danine Anne;

Saldanha, Francis Maxim; Saldanha, Joseph P.; Salon, Iligino Fernandez; Salutillo, Victor P.; Scarzella, Giulio I.; Scharf, Charles Selden; Schieve, Donald Reynolds; Schles, Marvin; Schmidt, James L.; Schmitt, Susan Ann; Shafer, Diane E.; Shaver, Joseph Emmett; Shepherd, James Banks Jr.; Shumaker, Scott D.; Sibley, Richard Henry;

Silverstein, Alan J.; Simkovich, Valerie A.; Singh, Ram; Sizemore, Hiram Jr.; Sloan, Clinton W.; Smith, Rodney Lester; Sokoll, Martin David; Soule, Arthur Bradley III; Spencer, Frederick A. Jr.; Spencer, James Thomas; Stadtmiller, Richard J.; Starr, Robert; Stephenson, Melanie Ann; Stollings, James Edward; Sumner, Calvin Russell;

Tamea, Conrad D. Jr.; Tarakji, Muhib Shukri; Tordilla, Plaridel Palma; Trujillo, Ralph Eusebio; Turgut, Hasan M.; Urrego, Francisco; Urrego-Diaz, Francisco; Vandiveer, Carol Ann; Vega-Bonilla, Carlos V.; Vemuri, Dwarka Nath; Villanueva, Eusebio L.; Vincent, Alfred James; Von Luhrte, Tommy; Vondran, Janet Elise; Vutla, Prasad Venkata S.; Vyas, Subhash A.;

Wall, Wendell Allan Jr.; Walter, Steven Wayne; Wang, Shen Kuang; Webb, Deleno H. III; Webb, Nancy Rapisardi; Weinstein, George W.; West, Paul Richard; Whelan, Frances Joseph; Whelan, Francis J.; Whitley, Ebb Keister Jr.; Willems, William Joseph; Wilson, Paul Wesley; Wisman, Richard Camp; Woodford, James William; Yates, James Ernest; Ybanez, Benjamin Casis; Yocum, Richard A.; Zaman, Qamar U.; Zamzam, Salih M.

To contact staff writer John Heys, use e-mail or call 348-1254.

**CORRECTION-DATE:** August 2, 2003, Saturday

**CORRECTION:**
A list of questionable doctors provided by Public Citizen, a consumer group based in Washington, D.C., published in Wednesday's Gazette included the name of Dr. John

J. Mahood, who has had no disciplinary action taken against him by the West Virginia Board of Medicine, according to the board's executive director, Ron Walton.

Mahood, now deceased, served on the Board of Medicine.In 1994, Mahood asked to have the status of his license changed from active to inactive status at his retirement, rather than during the usual time period for license renewals. Walton said state law requires the board to report these changes in license status in a different way from status changes made during renewal periods.

Dr. Sidney Wolfe, director of Public Citizen's health research group, said Public Citizen was not aware of Mahood's death and would remove his name from its list. Wolfe said the group's list of doctors was based on information provided by the West Virginia Board of Medicine.

**LOAD-DATE:** July 30, 2003

Source: News & Business > Individual Publications > C > **The Charleston Gazette**
Terms: **passidomo**  (Edit Search | Suggest Terms for My Search)
View: **Full**
Date/Time: Monday, June 16, 2008 - 3:57 PM EDT

# EXHIBIT H



**New York State Board for Professional Medical Conduct**

*433 River Street, Suite 303 Troy, New York 12180-2299 • (518) 402-0863*

Barbara A. DeBuono, M.D., M.P.H.
*Commissioner of Health*

Charles J. Vacanti, M.D.
*Chair*

March 5, 1997

**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**

Michael A. Passidomo, M.D.
162 South Mayo Trail
PO Box 2037
Pikeville, KY 41502

Re: License No. 118872

Dear Dr. Passidomo:

Enclosed please find Order #BPMC 97-54 of the New York State Board for Professional Medical Conduct. This Order and any penalty provided therein goes into effect upon receipt of this letter or seven (7) days after the date of this letter, whichever is earlier.

If the penalty imposed by the Order is a surrender, revocation or suspension of this license, you are required to deliver to the Board the license and registration within five (5) days of receipt of the Order.

Board for Professional Medical Conduct
New York State Department of Health
433 River Street, Suite 303
Troy, New York 12180-2299

Sincerely,

Charles Vacanti

Charles Vacanti, M.D.
Chair
Board for Professional Medical Conduct

Enclosure

cc:    Marla S. Buckles, Esq.
       McBrayer, McGinnis, Leslie & Kirkland, PLLC
       163 West Short Street, Suite 300
       Lexington, KY 40507-1361

       Roy Nemerson, Esq.

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

---------------------------------------------------------------------

**IN THE MATTER**

**OF**

**MICHAEL A. PASSIDOMO, M.D.**

---------------------------------------------------------------------

APPLICATION
TO
SURRENDER
LICENSE
#118872
UPON
MODIFICATION
OF ORDER
#BPMC 95-66

#BPMC 97-54

Upon the Application of MICHAEL A. PASSIDOMO, M.D. (Respondent) to Surrender License #118872 upon Modification of Order #BPMC 95-66, which Application and Order are made a part hereof, it is

ORDERED, that the application and the provisions thereof are hereby adopted; it is further

ORDERED, that Order #BPMC 95-66 is hereby Modified; it is further

ORDERED, that this shall not constitute a new or additional disciplinary action against Respondent but shall constitute a modification of the sanction imposed by Order #BPMC 95-66 and shall be publically reportable as such; it is further

ORDERED, that the name of Respondent be stricken from the roster of physicians in the State of New York; it is further

ORDERED, that this order shall take effect as of the date of the personal service of this order upon Respondent, upon receipt by Respondent of this order via certified mail, or seven days after mailing of this order via certified mail, whichever is earliest.

SO ORDERED.

DATED: _28 February 1997_

_____
CHARLES J. VACANTI, M.D.
Chairperson
State Board for Professional
   Medical Conduct

my license to practice medicine in the State of New York for the sanction originally imposed by Order #BPMC 95-66. I understand and agree that the charges and plea upon which that Order was based will remain unchanged.

I agree that, in the event the Board grants my Application, as set forth herein, an order of the Chairperson of the Board shall be issued in accordance with same.

I am making this Application of my own free will and accord and not under duress, compulsion or restraint of any kind or manner. In consideration of the value to me of the acceptance by the Board of this Application, relieving me of the various costs and burdens of compliance with Order #BPMC 95-66, I knowingly waive any right I may have to contest the Order for which I hereby apply, whether administratively or judicially, I agree that I shall not reapply for licensure to practice medicine in the State of New York, and ask that the Application be granted.

MICHAEL A. PASSIDOMO, M.D.
RESPONDENT

Sworn to before me this

20 day of February , 1997.

Elizabeth W. Cander
NOTARY PUBLIC

My Commission Expires:
January 22, 2001

2

DATE:  _2/26/97_                    _Anne Saile_
                                    ANNE F. SAILE
                                    Director
                                    Office of Professional Medical
                                    Conduct


DATE: _28 February 1997_            _Charles J Vacanti_
                                    CHARLES J. VACANTI, M.D.
                                    Chairperson
                                    State Board for Professional
                                    Medical Conduct

4

NEW YORK STATE            DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT
------------------------------------------------------------

IN THE MATTER

OF

MICHAEL ANTHONY PASSIDOMO, M.D.

------------------------------------------------------------

APPLICATION

FOR

CONSENT ORDER

STATE OF KENTUCKY  )
COUNTY OF PIKE     )    ss.:

MICHAEL ANTHONY PASSIDOMO, M.D., being duly sworn, deposes and says:

That on or about January 28, 1974, I was licensed to practice as a physician in the State of New York, having been issued License No. 118872 by the New York State Education Department.

My current address is 534-536 Mayo Trail, Suite 302, Pikeville, Kentucky 41501 and I will advise the Director of the Office of Professional Medical Conduct of any change of my address.

I understand that the New York State Board for Professional Medical Conduct has charged me with one specification of professional misconduct.

A copy of the Statement of Charges is annexed hereto, made a part hereof, and marked as Exhibit "A".

I admit guilt to the first specification, including, but limited to, paragraph "1." and paragraph "1. f.", in full satisfaction of the charges against me. I hereby agree to a sanction of three months suspension, such suspension to be stayed, and further agree to a two year period of probation, to be tolled unless and until I commence the practice of medicine in the State of New York, the terms of such period of probation being fully stated in Exhibit "B" annexed hereto and made a part hereof.

I hereby make this Application to the State Board for Professional Medical Conduct (the Board) and request that it be granted.

I understand that, in the event that this Application is not granted by the Board,

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

---

IN THE MATTER

OF

MICHAEL ANTHONY PASSIDOMO, M.D.

APPLICATION

FOR

CONSENT ORDER

---

The undersigned agree to the attached application of the Respondent and to the proposed penalty based on the terms and conditions thereof.

DATE: _____

MICHAEL ANTHONY PASSIDOMO, M.D.
Respondent

DATE: ___3/9/95_____

W. TERRY McBRAYER, ESQ.
Attorney for Respondent

DATE: ___3-14-95_____

PAUL STEIN, ESQ.
Associate Counsel
Bureau of Professional
    Medical Conduct

3

STATE OF NEW YORK   :   DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                    In the Matter              :      STATEMENT

                         of                    :         OF

        MICHAEL ANTHONY PASSIDOMO, M.D.         :      CHARGES

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

          MICHAEL ANTHONY PASSIDOMO, M.D., the Respondent, was

authorized to practice as a physician in New York State on

January 28, 1974 by the issuance of license number 118872 by

the New York State Education Department.  The Respondent is not

currently registered with the New York State Education

Department to practice medicine in the State of New York.  His

current address is 534-536 Mayo Trail, Suite 302, Pikeville,

Kentucky  41501.


                      **FACTUAL ALLEGATIONS**

A.    In an Agreed Order filed of record on April 1, 1994, the

      Commonwealth of Kentucky, State Board of Medical Licensure

      (hereinafter referred to as "the Kentucky Board")

      -suspended Respondent's license to practice medicine in the

      state of Kentucky for a period of three months.  The

      suspension was "probated for a period of three (3) years",

      subject to various terms of probation.  This action was

      based upon a complaint filed of record on July 27, 1993 by

      the Kentucky Board in which it was charged:


                                1
                            EXHIBIT A

a.  "Practicing the profession fraudulently or beyond its
    authorized scope" (Educ. Law sec. 6530 (2) McKinney
    Supp. 1995)); and/or

b.  "Practicing the profession with gross negligence on a
    particular occasion" (Educ. Law sec. 6530 (4)
    (McKinney Supp. 1995)); and/or

c.  "Practicing the profession with gross incompetence"
    (Educ. Law sec. 6530 (6) (McKinney Supp. 1995));
    and/or

d.  "Practicing the profession with negligence on more
    than one occasion" (Educ. Law sec. 6530 (3) (McKinney
    Supp. 1995)); and/or

e.  "Practicing the profession with incompetence on more
    than one occasion" (Educ. Law sec. 6530 (5) (McKinney
    Supp. 1995)); and/or

f.  "Ordering of excessive tests, treatment, or use of
    treatment facilities not warranted by the condition
    of the patient" (Educ. Law sec. 6530 (35) (McKinney
    Supp. 1995)).

Dated:  New York, New York
        February 14, 1995

                                CHRIS STERN HYMAN
                                Counsel
                                Bureau of Professional
                                  Medical Conduct

3

8.  Thirty days prior to the commencement of the practice of medicine in New York State, or resumption of the practice of medicine in New York State if Respondent has not yet completed the two year period of probation, Respondent shall, by certified or registered mail, notify the Director of the Office of Professional Medical Conduct, at the address in paragraph 2 above, of such commencement or resumption of practice.   Within one week of the discontinuance of the practice of medicine in the State of New York., if Respondent will not have completed the two year period of probation before such discontinuance, Respondent shall, by certified or registered mail, notify the Director of the Office of Professional Medical Conduct, at the address in paragraph 2 above, of such discontinuance.

9.  During the two year period of probation, Respondent shall have quarterly meetings with an employee or designee of the Office of Professional Medical Conduct.  During these quarterly meetings, Respondent's professional performance shall be monitored by having a random selection of his office records, patient records, and hospital charts reviewed by such employee or designee.  Respondent shall cooperate fully in making available such records and charts.

10. So long as there is full compliance with every term herein set forth, Respondent may continue to practice his aforementioned profession in accordance with the terms of probation; provided, however, that upon receipt of evidence of noncompliance with, or any violation of these terms, the Director of the Office of Professional Medical Conduct and/or the Board may initiate a violation of probation proceeding and/or such other proceeding against Respondent as may be authorized pursuant to the Public Health Law.

# EXHIBIT I

RENDERED: DECEMBER 5, 2003; 2:00 p.m.
NOT TO BE PUBLISHED

# Commonwealth Of Kentucky
# Court of Appeals

NO. 2002-CA-002326-MR

**MICHAEL A. PASSIDOMO**, M.D.
AND
**MICHAEL A. PASSIDOMO**, P.S.C.

APPELLANTS

APPEAL FROM FRANKLIN CIRCUIT COURT
v.
HONORABLE ROGER L. CRITTENDEN, JUDGE
ACTION NO. 01-CI-00230

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH SERVICES,
DEPARTMENT FOR MEDICAID SERVICES

APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: BUCKINGHAM, COMBS, AND DYCHE, JUDGES.
BUCKINGHAM, JUDGE: Dr. **Michael A. Passidomo** appeals from an
order of the Franklin Circuit Court affirming a decision by the
Kentucky Cabinet for Health Services which determined that Dr.
Passidomo owed the Cabinet $119,208.38 based on a denial of
claims submitted by him for MRI
[1]
services provided to Medicaid
recipients. We affirm.
[1]
Magnetic Resonance Imaging.

---

**Page 2**

-2-
Dr. Passidomo was a neurologist practicing in
Pikeville, Kentucky.
[2]
He was the only neurologist in Pike
County, and he owned and operated Appalachian MRI, Inc., a
clinic that provided MRI and other diagnostic services.
[3]
The
clinic where the MRI scanner was located was not at the same

location as Dr. Passidomo's office.
Vicky Cole, a registered nurse and investigator from
the Surveillance and Utilization Review Subsystem (SURS) Branch
of the Department of Medicaid Services conducted a review of Dr.
Passidomo's records beginning in October 1993. This review
covered claims for MRI services provided by Appalachian MRI,
Inc., for the period from March 1, 1992, through June 30, 1993.
The SURS review conducted at that time identified 141 identical
claims submitted by Dr. Passidomo's clinic in which a
precontrast MRI scan was performed on a particular Medicaid
recipient followed one or two days later by a contrast-enhanced
MRI scan for the same recipient.
The SURS review also included a sampling of Dr.
Passidomo's patient records and MRI scans for 20 of the 141
claims at issue. Based on this review, it was determined that
Dr. Passidomo failed to establish medical necessity for the

[2]
Dr. Passidomo is now retired.
[3]
The entity, Appalachian MRI, Inc., was subsequently renamed Michael A.
Passidomo, P.S.C.

_____

Page 3

-3-

performance of the contrast-enhanced MRI scans after the
precontrast MRI scans had been performed and that there was no
record of physician-patient contact regarding the performance of
the contrast-enhanced scans. Nurse Cole therefore concluded
that Dr. Passidomo's claims for MRI services totaling
$119,208.38 were improper.
Dr. Passidomo requested an administrative review of
the denial pursuant to 907 KAR

[4]
1:671,§ 9. A hearing was held
before an administrative law judge (ALJ) at which time the
Cabinet presented the testimony of Nurse Cole, Nurse Caroline
Combs, and Dr. James Lee. Dr. Passidomo testified on his own
behalf and presented testimony from Dr. Murray Solomon. In a
hearing report dated April 29, 1996, the ALJ determined that the
Cabinet was entitled to recover the sum of $119,208.38 from Dr.
Passidomo. The Secretary of the Cabinet for Health Services
adopted the ALJ's report as final on May 9, 1996.
Dr. Passidomo appealed this decision to the Franklin
Circuit Court, which entered a judgment in favor of Dr.
Passidomo on March 3, 1998. The court found that the Cabinet's
actions were arbitrary. In particular, the court concluded that
the Cabinet treated operators of low field scanners differently
from those who operated high field scanners. Further, the court
noted that questions remained concerning whether the contrast-

[4]
Kentucky Administrative Regulations.

**Page 4**

-4-

enhanced scans were medically necessary and whether the use of
two billing codes by Dr. Passidomo resulted in greater cost to
the Medicaid program. Thus, the court reversed the ALJ's
decision and remanded the case for further proceedings.
After the case was remanded, a new hearing officer was
assigned to the case because the first ALJ had ended his
employment with the Cabinet. Also, the parties agreed that the
issue of the use of two billing codes would not be dispositive
of the case. On December 22, 2000, the second hearing officer
rendered Findings of Fact, Conclusions of Law, and Recommended
Decision. In an eight-page decision, the hearing officer
concluded that Dr. Passidomo "has failed to substantiate the
medical necessity of the contrast-enhanced MRI scans via the
medical records as required by the Manual." In short, the
hearing officer ruled in favor of the Cabinet as to its right to
recoup the money from Dr. Passidomo. On January 23, 2001, the
Secretary for the Cabinet for Health Services adopted the
hearing officer's report.
Dr. Passidomo once again appealed to the Franklin
Circuit Court. The Cabinet filed a motion to dismiss the appeal
for failure of Dr. Passidomo to exhaust his administrative
remedies. In particular, the Cabinet argued that Dr.
Passidomo's exceptions to the hearing officer's report were
untimely filed. Finding that there was substantial reason to

**Page 5**

-5-

believe that the Cabinet's usual practices concerning the
entering and mailing of orders were not followed, the circuit
court entered an order on April 5, 2002, directing the Secretary
to consider Dr. Passidomo's exceptions.
After considering Dr. Passidomo's exceptions, the
Secretary once again affirmed the hearing officer's report. The
Secretary's order was entered on May 23, 2002. Rather than file
a new appeal, a motion was filed in the same case in the
Franklin Circuit Court submitting the matter for final
adjudication.
The circuit court entered its final order on October
17, 2002. After presenting the procedural history of the case
and reviewing the applicable case law involving a court's
authority when reviewing an administrative agency action, the
court then held as follows:
Having examined the record, the testimony of
the individual's [sic] in question, and
other evidence, this Court concludes that

sufficient, admissible information exists to
support the findings of fact made by the ALJ
and the decision of the Cabinet that it is
entitled to recoup the funds is supported by
substantial evidence.
Dr. Passidomo's appeal to this court followed.
Dr. Passidomo's first argument is that the circuit
court violated his due process rights by failing to produce an
opinion capable of review by this court. Dr. Passidomo refers

---

**Page 6**

-6-

to the court's opinion as "a cursory opinion." Dr. Passidomo's
description of the court's opinion is correct to the extent it
resolved the case in the one sentence set forth above and did
not discuss what "substantial evidence" supported the Cabinet's
decision.
This court stated in Commonwealth, Dept. of Educ. v.
Commonwealth, Ky. App., 798 S.W.2d 464, 467 (1990), that "[t]he
position of the circuit court in administrative matters is one
of review, not reinterpretation." In reviewing the Cabinet's
decision, the circuit court could review whether the Cabinet
acted in excess of its granted powers, whether all parties were
afforded due process of law, and whether the Cabinet's action
was supported by substantial evidence. American Beauty Homes
Corp. v. Louisville & Jefferson County Planning and Zoning
Comm'n, Ky., 379 S.W.2d 450, 456 (1964). See also KRS
[5]
13B.150.
As it does not appear that there were issues concerning whether
the Cabinet acted in excess of its granted powers or whether Dr.
Passidomo was afforded his due process rights in connection with
the Cabinet proceedings, Dr. Passidomo's complaint is that the
circuit court did not explain its reasons for holding that the
Cabinet's decision was supported by substantial evidence. Dr.
Passidomo asserts that "the reviewing Circuit Court must clearly
explain the reasoning that supports its action in order to
[5]
Kentucky Revised Statutes.

---

**Page 7**

-7-

provide for meaningful appellate review." He maintains that the
failure of the circuit court to explain its reasoning violates
his due process rights.
It is true that the Cabinet was required to "make
findings of basic evidentiary facts, as opposed to a simple
statement which reaches a conclusion and quotes the words of a
statute." Shields v. Pittsburg & Midway Coal Mining Co., Ky.

App., 634 S.W.2d 440, 443 (1982). See also Caller v. Ison, Ky.,
508 S.W.2d 776 (1974). However, these cases relate to the
necessity of fact findings by an administrative agency and do
not relate to fact findings to be made by the circuit court.
Where circuit courts review administrative agency decisions, the
court does not make additional fact findings but rather reviews
the actions of the administrative agency. Commonwealth, Dep't
of Educ., supra. In short, although the circuit court did not
explain the reasons for its decision, it made the necessary
determination concerning whether there was substantial evidence
to support the Cabinet's decision. We find no error in the
manner and form in which the court affirmed the Cabinet's
decision.
Dr. Passidomo's second argument is that the court's
decision was arbitrary and capricious because it was not
supported by substantial evidence and was incorrect as a matter
of law. His argument has three parts. First, he argues that

-8-
the circuit court committed clear error when it failed to
identify the standard of medical practice for a neurologist in
Pike County, Kentucky. Second, he argues that the circuit court
failed to give Dr. Passidomo's testimony as a treating physician
the weight to which it was entitled as a matter of law. Third,
he argues that by affirming the Cabinet's decision, the circuit
court erroneously upheld a decision that was not supported by
substantial evidence.
In connection with the standard of medical practice
for a neurologist in the Pike County area, Dr. Charles Lee, a
neuroradiologist, testified on behalf of the Cabinet. The
hearing officer determined that Dr. Lee, who practiced at the
University of Kentucky, was an expert in neuroradiology and that
Dr. Lee was familiar with the standard of medical practice in
the nation and in Kentucky. Dr. Lee testified that he was
familiar with Medicaid rules and policies regarding the medical
necessity and use of MRI, that he was familiar with the medical
standards in Eastern Kentucky because the University of Kentucky
receives many referrals from the area, that he has experience
using low field scanners, that he was familiar with applicable
national and Kentucky standards, that he reads 40-50 scans per
year from low field scanners which are referred to the radiology
department from other neurosurgeons, and that the medical need
for a contrast-enhanced MRI was no different for individuals

-9-
living in Lexington, Kentucky, than it was for individuals

living in Pikeville, Kentucky. Based on his qualifications,
training, and practice, Dr. Lee testified that the contrast-
enhanced MRI scans provided by Dr. Passidomo were not medically
necessary.
While Dr. Passidomo argues that Dr. Lee's testimony
was "unreliable and entitled to no probative value," we believe
otherwise. Rather, it appears obvious to us that Dr. Lee was
qualified to give his opinion as to the medical necessity of the
MRI scans. Furthermore, the Cabinet hearing officer was
entitled to choose between the conflicting testimony presented
to him.
6
See Square D Co. v. Tipton, Ky., 862 S.W.2d 308, 309
(1993).
The second part to Dr. Passidomo's second argument is
that the Cabinet and the circuit court failed to give Dr.
Passidomo's testimony as a treating physician the weight to
which it was entitled as a matter of law. He argues that there
is a "treating physician doctrine" under which courts must give
the testimony of treating physicians deference over the
testimony of nontreating physicians. Thus, he asserts that his
6
Dr. Arthur Solomon, a neuroradiologist, testified on behalf of Dr.
Passidomo. Dr. Solomon testified that seventeen of the twenty contrast-
enhanced MRI scans appeared to be medically necessary. However, Dr. Solomon
testified that the medical necessity of the scans was outside his area of
expertise.

Page 10

-10-
testimony concerning medical necessity should have been given
greater weight than the testimony of Dr. Lee.
Dr. Passidomo failed to cite any Kentucky case law
which would support his position. Furthermore, the federal
cases upon which he relies are distinguishable and do not
persuade us to support his position. In short, it was for the
fact finder to choose between the conflicting testimony of the
experts, see Square D, supra, and Dr. Passidomo's testimony was
not entitled to be given greater weight than the testimony of
the other experts.
The last part of Dr. Passidomo's second argument is
that the Cabinet's decision was not supported by substantial
evidence. Specifically, he argues that the Cabinet "failed to
substantiate the finding of medical necessity" and that the
Secretary "did not articulate any facts to support that legal
conclusion." In short, Dr. Passidomo's argument is that the
Cabinet's decision was arbitrary as a matter of law because it
was not supported by substantial evidence.
"So long as the agency's decision is supported by
substantial evidence of probative value, it is not arbitrary and

must be accepted as binding by the appellate court." Aubrey v.
Office of Attorney Gen., Ky. App., 994 S.W.2d 516, 519 (1998).
"Substantial evidence is defined as evidence of substance and
relevant consequence, having the fitness to induce conviction in

**Page 11**

-11-
the minds of reasonable people." Id. "[T]he possibility of
drawing two inconsistent conclusions from the evidence does not
prevent an administrative agency's finding from being supported
by substantial evidence." Bowling v. Natural Resources, Ky.
App., 891 S.W.2d 406, 410 (1994), quoting Kentucky State Racing
Comm'n v. Fuller, Ky., 481 S.W.2d 298, 307 (1972).
Dr. Lee testified that the contrast-enhanced MRI scans
performed by Dr. Passidomo were not medically necessary. Dr.
Solomon testified that seventeen of the twenty contrast-enhanced
MRI scans performed by Dr. Passidomo appeared to be medically
justified. However, Dr. Solomon also testified that the medical
necessity of the scans was outside his area of expertise. Dr.
Passidomo testified that the scans were medically necessary.
Dr. Passidomo challenges the value and credibility of
Dr. Lee's testimony. However, "the trier of facts is afforded
great latitude in its evaluation of the evidence heard and the
credibility of witnesses appearing before it." Bowling, 891
S.W.2d at 409-10. "[I]t is the exclusive province of the
administrative trier of fact to pass upon the credibility of
witnesses, and the weight of the evidence." Id., citing
Kentucky State Racing Comm'n, supra. We conclude there was
substantial evidence to support the findings and conclusions of
the hearing officer.
The order of the Franklin Circuit Court is affirmed.

**Page 12**

-12-
ALL CONCUR.
BRIEFS FOR APPELLANT:
Holly J. Turner
Lisa English Hinkle
Lexington, Kentucky
ORAL ARGUMENT FOR APPELLANT:
Lisa English Hinkle
Lexington, Kentucky
BRIEF AND ORAL ARGUMENT FOR
APPELLEES:
Paula J. Holbrook
Office of the General Counsel
Frankfort, Kentucky

# EXHIBIT J



FOR IMMEDIATE RELEASE
ATTN:  Business/Financial Editors

Media Contact:
**Chris Allen**
**(312) 917-8331**
**christopher.allen@nuveen.com**

**Kathleen Cardoza**
**(312) 917-7813**
**kathleen.cardoza@nuveen.com**

**Investors Contact:**
**(877) 622-7530**

## Nuveen Multi-Strategy Income and Growth Fund 2 Issues
## Second At-Par Redemption Notices for Auction-Rate Securities

CHICAGO, May 22, 2008 – Nuveen Multi-Strategy Income and Growth Fund 2 (NYSE: JQC) today announced that it has called for redemption at par outstanding shares of its auction-rate preferred shares (ARPS).  The fund's Board of Trustees has approved the redemption, which is part of a refinancing expected to lower the relative costs of leverage for the fund over time while also providing liquidity at par for the holders of at least some of Nuveen Multi-Strategy Income and Growth Fund 2's ARPS.

JQC is redeeming $240 million of its $565 million currently outstanding ARPS.  As previously announced, this represents the second of two planned stages approximately a month apart which together total $640 million.  The table below lists the total number of shares, par amounts and scheduled redemption dates for the second stage of redemptions:

| Series | Cusip # | Total Shares Redeemed | Total Amount Redeemed | Redemption Date |
|--------|---------|-----------------------|-----------------------|-----------------|
| M | 67073D201 | 960 | $24,000,000 | June 3, 2008 |
| M2 | 67073D300 | 960 | $24,000,000 | June 3, 2008 |
| T | 67073D409 | 960 | $24,000,000 | June 4, 2008 |
| T2 | 67073D508 | 960 | $24,000,000 | June 4, 2008 |
| W | 67073D607 | 960 | $24,000,000 | May 29, 2008 |
| W2 | 67073D706 | 960 | $24,000,000 | May 29, 2008 |
| TH | 67073D805 | 960 | $24,000,000 | May 30, 2008 |
| TH2 | 67073D888 | 960 | $24,000,000 | May 30, 2008 |
| F | 67073D870 | 960 | $24,000,000 | June 2, 2008 |
| F2 | 67073D862 | 960 | $24,000,000 | June 2, 2008 |

NWQ     **NUVEEN**     RITTENHOUSE     SANTA BARBARA     S Y M P H O N Y     Tradewinds



The ARPS in the Nuveen Multi-Strategy Income and Growth Fund 2 being redeemed will be replaced with new borrowings. With respect to the partial redemption for JQC, The Depository Trust Company (DTC), the securities' holder of record, determines how a partial series redemption will be allocated among each participant broker-dealer account. Each participant broker-dealer, as nominee for underlying beneficial owners (street name shareholders), in turn determines how redeemed shares are allocated among its underlying beneficial owners. The procedures used by different broker-dealers to allocate redeemed shares among beneficial owners may differ from each other as well as from the procedures used by DTC.

Nuveen Investments provides high quality investment services designed to help secure the long-term goals of institutions and high net worth investors as well as the consultants and financial advisors who serve them. Nuveen Investments markets its growing range of specialized investment solutions under the high-quality brands of NWQ, Santa Barbara, Tradewinds, Rittenhouse, Symphony and Nuveen, including the Nuveen HydePark Group. In total, the Company managed $153 billion in assets as of March 31, 2008.

### FORWARD LOOKING STATEMENTS

*Certain statements made in this release are forward-looking statements. Actual future results or occurrences may differ significantly from those anticipated in any forward-looking statements due to numerous factors. These include, but are not limited to: changes in securities or financial markets or general economic conditions, including changes in interest rates for borrowings, and other risks discussed from time to time in the fund's filings with the Securities and Exchange Commission. Nuveen Investments and the closed-end funds managed by Nuveen Investments and its affiliates undertake no responsibility to update publicly or revise any forward-looking statements.*

###



**FOR IMMEDIATE RELEASE**
**ATTN: Business/Financial Editors**

Media Contact:
**Chris Allen**
**(312) 917-8331**
**christopher.allen@nuveen.com**

**Kathleen Cardoza**
**(312) 917-7813**
**kathleen.cardoza@nuveen.com**

**Investors Contact:**
**(877) 622-7530**

## Nuveen Multi-Strategy Income and Growth Fund 2 Issues
## At-Par Redemption Notices for Auction-Rate Securities

CHICAGO, April 18, 2008 – Nuveen Multi-Strategy Income and Growth Fund 2 (NYSE: JQC) today called for redemption at par outstanding shares of its auction-rate preferred shares (ARPS). The fund's Board of Trustees has approved the redemption, which is part of a refinancing expected to lower the relative costs of leverage for the fund over time while also providing liquidity at par for the holders of at least some of Nuveen Multi-Strategy Income and Growth Fund 2's ARPS.

JQC is initially redeeming $400 million of its $965 million ARPS. As previously announced, this represents the first of two planned stages approximately a month apart which together are expected to total $640 million. The table below lists the total number of shares, par amounts and scheduled redemption dates for the first stage of redemptions:

| Series | Cusip # | Total Shares Redeemed | Total Amount Redeemed | Redemption Date |
|--------|---------|-----------------------|-----------------------|-----------------|
| M | 67073D201 | 1,600 | $40,000,000 | May 6, 2008 |
| M2 | 67073D300 | 1,600 | $40,000,000 | May 6, 2008 |
| T | 67073D409 | 1,600 | $40,000,000 | May 7, 2008 |
| T2 | 67073D508 | 1,600 | $40,000,000 | May 7, 2008 |
| W | 67073D607 | 1,600 | $40,000,000 | May 8, 2008 |
| W2 | 67073D706 | 1,600 | $40,000,000 | May 8, 2008 |
| TH | 67073D805 | 1,600 | $40,000,000 | May 9, 2008 |
| TH2 | 67073D888 | 1,600 | $40,000,000 | May 9, 2008 |
| F | 67073D870 | 1,600 | $40,000,000 | May 12, 2008 |
| F2 | 67073D862 | 1,600 | $40,000,000 | May 12, 2008 |

NWQ     **NUVEEN**     RITTENHOUSE     SANTA BARBARA     S Y M P H O N Y     Tradewinds



The ARPS in the Nuveen Multi-Strategy Income and Growth Fund 2 being redeemed will be replaced with new borrowings.  With respect to the partial redemption for JQC, The Depository Trust Company (DTC), the securities' holder of record, determines how a partial series redemption will be allocated among each participant broker-dealer account.  Each participant broker-dealer, as nominee for underlying beneficial owners (street name shareholders), in turn determines how redeemed shares are allocated among its underlying beneficial owners.  The procedures used by different broker-dealers to allocate redeemed shares among beneficial owners may differ from each other as well as from the procedures used by DTC.

Nuveen Investments provides high quality investment services designed to help secure the long-term goals of institutions and high net worth investors as well as the consultants and financial advisors who serve them. Nuveen Investments markets its growing range of specialized investment solutions under the high-quality brands of NWQ, Santa Barbara, Tradewinds, Rittenhouse, Symphony and Nuveen, including the Nuveen HydePark Group.  In total, the Company managed $164 billion in assets as of December 31, 2007.

### *FORWARD LOOKING STATEMENTS*

*Certain statements made in this release are forward-looking statements.  Actual future results or occurrences may differ significantly from those anticipated in any forward-looking statements due to numerous factors. These include, but are not limited to: changes in securities or financial markets or general economic conditions, including changes in interest rates for borrowings, and other risks discussed from time to time in the fund's filings with the Securities and Exchange Commission.  Nuveen Investments and the closed-end funds managed by Nuveen Investments and its affiliates undertake no responsibility to update publicly or revise any forward-looking statements.*

###

NWQ     **NUVEEN**     RITTENHOUSE     SANTA BARBARA     S Y M P H O N Y     Tradewinds

# EXHIBIT K

Home : Contact Us : Our Company : Careers

FRANKLIN TEMPLETON
INVESTMENTS

< GAIN FROM OUR PERSPECTIVE® >
FRANKLIN · TEMPLETON · MUTUAL SERIES

UNITED STATES

| Funds & Performance | Retirement Center | Products & Services | Education & Planning | Commentary & Outlook | Forms & Literature |

Fund Information : Price/Performance Snapshot : **Closed-End Funds** : Fund Ratings : Capital Gains : Quantity Discounts

[ Site Search ]     [ Fund Search ]     Log In : Are you a New User?

Closed-End Funds

## For Immediate Release

### Franklin Templeton Limited Duration Income Trust Announces Refinancing of Certain Auction Preferred Shares

From:
**Franklin Advisers, Inc.**

Telephone:
(800) 223-2141

Contact:
Franklin Templeton Fund Information

San Mateo, CA, May 21, 2008 – Franklin Templeton Limited Duration Income Trust [AMEX:FTF], a closed-end investment company managed by Franklin Advisers, Inc., announced today its intention to refinance approximately $100 million of its auction preferred shares (APS), representing approximately 53% of the Fund's outstanding APS. Franklin Templeton Limited Duration Income Trust (the "Fund") is the only fund within Franklin Templeton Investments that has outstanding APS.

Approved by the Fund's Board of Trustees, the alternate form of leverage, principally through the use of mortgage dollar rolls, is expected to lower the cost of leverage for common shareholders. It is also expected that this action will provide liquidity, at the liquidation preference per share, for a portion of the APS held by the Fund's preferred shareholders. Franklin Advisers believes that this financing option is in the best interest of the Fund's common shareholders and holders of APS. Franklin Advisers presently believes that mortgage dollar rolls provide an attractive and available source of financing. However, Franklin Advisers can make no assurance that any alternative forms of leverage, including mortgage dollar rolls, used by the Fund can be entered into or will not become more expensive or unavailable in the future.

Following this proposed refinancing, the Fund will continue to meet the asset coverage requirements mandated by the Investment Company Act of 1940 and the appropriate rating agencies. Franklin Advisers, as the Fund's investment manager, continues to work with the underwriters of the APS and other financial institutions to explore alternative financing options that could be in the best interests of the Fund's common shareholders and the holders of the remaining APS.

The Fund intends that this partial redemption of the APS will be implemented on a pro rata basis across the Fund's three outstanding series of APS, beginning on or about June 9, 2008. The Depository Trust Company (DTC), the securities' holder of record, will determine how a partial series redemption will be allocated among participant broker dealer accounts. Each participant broker dealer will decide how to allocate redeemed shares among its underlying beneficial owners. The Fund anticipates that the refinancing will be completed by June 12, 2008. As of May 20, 2008, the Fund had total assets of approximately $548 million, of which approximately $121 million are in U.S. government agency mortgage-backed securities. Upon completion of the proposed refinancing, it is expected that the Fund will have $100 million in mortgage dollar rolls outstanding and $90 million of APS. Going forward, the Fund will treat such mortgage dollar rolls as indebtedness or a borrowing of the Fund and will comply with the related asset coverage requirements of the Investment Company Act of 1940 and the Fund's fundamental investment restrictions relating thereto. The Fund will no longer segregate liquid assets with respect to the mortgage dollar rolls. For a brief period of time while the redemption of the APS is being processed, the total leverage of the Fund represented by the mortgage dollar rolls and the APS will exceed 38% of the Fund's managed assets. However, upon completion of the redemption, the Fund's total leverage will again fall below such 38% target limit.

Franklin Advisers, Inc., is a wholly owned subsidiary of Franklin Resources, Inc. [NYSE:BEN], a global investment management organization operating as Franklin Templeton Investments.

Franklin Templeton Investments provides global and domestic investment management solutions managed by its Franklin, Templeton, Mutual Series, Fiduciary Trust, Darby and Bissett investment teams. The San Mateo, CA-based company has more than 60 years of investment experience and over $617 billion in assets under management as of April 30, 2008. For more information, please call 1-800/DIAL BEN® or visit franklintempleton.com.

For U.S. residents only. Terms of Use  |  Privacy Policy

**FRANKLIN.TEMPLETON.INVESTMENTS**

Copyright © 1999 - 2008. Franklin Templeton Investments. All rights reserved.

# EXHIBIT L

BUS            Legg Mason Seeks Liquidity Solutions for Auction Rate Preferred
               Mar 28 2008  10:33:01


Securities Issued by LMP and Western Asset Closed-End Funds


NEW YORK--(BUSINESS WIRE)--March 28, 2008
Legg Mason, Inc. (NYSE:LM) today announced that the firm and its
affiliates are continuing to actively explore potential solutions to
restore liquidity to shareholders of auction rate preferred securities
(ARPS) issued by seven "LMP" and "Western Asset" branded closed-end
funds that are advised by its affiliates. Collectively, these Funds
have issued approximately $672 million in ARPS.

    The ARPS market has experienced an unprecedented lack of liquidity
that has resulted in failed auctions across the closed-end fund
industry. We believe that this continues to be a liquidity issue
caused by broader economic conditions and continued severe
dislocations in the credit markets; and that it is not a credit issue
related to the Funds or their portfolios. The Funds continue to pay
interest to preferred shareholders, and continue to be AAA/Aaa-rated
by one or more nationally recognized credit agencies.

    Given the current interest rate environment, the Funds' managers
currently continue to believe that leverage is beneficial to the
overall performance of the Funds, even as we anticipate that the
preferred auctions may continue to fail. Legg Mason recognizes the
importance of resolving this situation and has been working on
potential alternative financing solutions with major banks, broker
dealers and other financial institutions to address the liquidity
issue.

    Finding a suitable and viable solution that is equitable to both
the common and preferred shareholders presents a number of complex
issues. Any potential solution would be subject to factors beyond Legg
Mason's control such as market, credit and economic developments and,
possibly, regulatory approval. We cannot provide any assurance that
potential solutions will be workable, receive all necessary approvals
or implemented. At this time we cannot provide definitive timing for a
resolution to this issue.

    Legg Mason is fully aware of the urgency to resolve this
situation, and of the uncertainty, frustration and difficulties these
failed auctions have caused for shareholders of these securities, and
is committed to explore any and all possible solutions that are
equitable to both the preferred and common shareholders of these
Funds.

    The funds utilizing ARPS are: LMP Corporate Loan Fund Inc. (NYSE:
TLI), LMP Real Estate Income Fund Inc. (NYSE: RIT), Western Asset
Intermediate Muni Fund Inc. (AMEX: SBI), Western Asset Managed
Municipals Fund Inc. (NYSE: MMU), Western Asset Municipal Partners
Fund Inc. (NYSE: MNP), Western Asset Zenix Income Fund Inc. (NYSE:
ZIF), and Western Asset Premier Bond Fund (NYSE: WEA).

Copyright (c) 2008

BUS       Legg Mason Seeks Liquidity Solutions for Auction Rate Preferred
          Mar 28 2008  10:33:01
    Contact the Funds at 1-888-777-0102 for additional information, or
consult the Funds' web site at www.leggmason.com/cef. For Western
Asset Premier Bond, contact the Fund at 1-866-290-4386 or consult the
Fund's web site at www.westernasset.com.

    About Legg Mason

    Legg Mason is a global asset management firm, with $998 billion in
assets under management as of December 31, 2007. The Company provides
active asset management in many major investment centers throughout
the world. Legg Mason is headquartered in Baltimore, Maryland, and its
common stock is listed on the New York Stock Exchange (NYSE: LM).


CONTACT:
Legg Mason, Inc.
Maria Rosati, 212-805-6036

-0- Mar/28/2008 14:33 GMT

Copyright (c) 2008

# EXHIBIT M

# LHB Insurance Brokerage

421 Rt. 59
Monsey, NY 10952
(845) 352-4000
(845) 352-5002 fax
Email lblisko@lhbinsurance.com

**Contact Us**

Last Name [_____] *

First Name [_____] *

Email [_____] *

Please enter your question below:*

[                                    ]

[ Click to Contact Our Agency ]

Return to quote

Copyright © 2001-2007 LHB Insurance Bkge Inc

Not all insurance products from all insurance companies are available in all states.

# EXHIBIT N

BUS          Eaton Vance Announces Plan for Three Municipal Income Closed-
             Apr 23 2008  9:51:01


End Funds to Redeem Approximately $580 Million of Auction Preferred Shares


BOSTON--(BUSINESS WIRE)--April 23, 2008
Eaton Vance Corp. (NYSE: EV) announced today that three municipal
income closed-end funds managed by its affiliate, Eaton Vance
Management, have secured new financing that the funds intend to use to
redeem approximately $580 million of their outstanding auction
preferred shares ("APS") at a redemption price of $25,000 per share
plus the amount of accumulated but unpaid dividends. Eaton Vance
Insured Municipal Bond Fund (AMEX: EIM), Eaton Vance Insured
California Municipal Bond Fund (AMEX: EVM) and Eaton Vance Insured New
York Municipal Bond Fund (AMEX: ENX) (collectively, the "Funds") plan
to redeem approximately 65%, 55% and 63%, respectively, of their
outstanding APS.

    The replacement financing is being provided through the creation
by the Funds of Tender Option Bonds ("TOBs"). In creating a TOB, a
Fund transfers a highly rated bond held in its portfolio to a special
purpose trust that issues two classes of interests: floater
certificates, which pay a rate of interest that is reset weekly based
on a market-determined spread to a short-term municipal benchmark, and
residual certificates, which pay the difference between the interest
paid on the underlying bond and the interest paid to floater
certificate holders, less TOB program expenses. The Funds will hold
the TOB residuals and use the proceeds of the sale of TOB floaters as
new financing to replace a portion of their outstanding APS. The
floaters are subject to a liquidity backstop financing facility
provided by a major financial institution. Although the Funds are
utilizing TOBs for the first time, Eaton Vance's municipal income team
has invested in TOB residuals on behalf of other funds that it manages
since 1993.

    Subject to satisfying the notice and other requirements that apply
to APS redemptions, a proportionate amount of each series of the
Funds' APS is expected to be redeemed at the next dividend payable
date on or after May 12, 2008. Limitations on holdings of bonds
suitable for TOBs creation and other considerations allow only a
partial redemption of the Funds' APS to be feasible at this time.
Eaton Vance is working diligently to provide liquidity solutions that
will enable the Funds to redeem their remaining outstanding APS. It is
not certain when, or if, the Funds' remaining APS will be redeemed. To
view a copy of the Funds' APS redemption announcement, see "press
releases" on the closed-end fund section of Eaton Vance's web site, at
www.eatonvance.com. To receive a hard copy of this information, call
(800) 225-6265.

    Eaton Vance manages 29 leveraged closed-end funds that had
approximately $5 billion of APS outstanding collectively as of
December 31, 2007. Completion of the APS redemptions being announced
today, together with previously announced APS redemptions totaling
approximately $2.7 billion, will reduce the amount of outstanding APS
Copyright (c) 2008

BUS         Eaton Vance Announces Plan for Three Municipal Income Closed-
            Apr 23 2008  9:51:01

for Eaton Vance-sponsored closed-end funds to approximately $1.7
billion. Eaton Vance understands that the current disruption in the
auction rate securities market imposes significant hardship on APS
holders who need access to liquidity. Eaton Vance is working
diligently to provide liquidity solutions for its funds' remaining APS
holders, and is hopeful that it will be able to do so. Different
solutions may be most workable for different types of funds (equity,
taxable income and municipal income). It is not certain when, or if,
solutions will be available to APS holders of other funds.

    Conference Call

    A conference call to discuss the announced APS redemptions and
other auction rate securities market developments will take place at
11:00 a.m. EDT on Friday, April 25, 2008. To listen to the call, dial
1-888-562-3356 and use the following access code: 44823127. A
telephone replay of the conference call will be available beginning
two hours after completion at 1-800-642-1687. To submit a question to
be addressed on the conference call, please send in advance of the
call to CEFQuestions@eatonvance.com.

    Eaton Vance Corp., a Boston based investment management firm, is
listed on the New York Stock Exchange under the symbol EV. Through its
subsidiaries, Eaton Vance Corp. manages funds and separate accounts
for individuals and institutional clients.

    This news release contains statements that are not historical
facts, referred to as "forward-looking statements." The Company's
actual future results may differ significantly from those stated in
any forward-looking statements, depending on factors such as changes
in securities or financial markets or general economic conditions, the
volume of sales and repurchases of fund shares, the continuation
investment advisory, administration, distribution and service
contracts, and other risks discussed from time to time in the
Company's filings with the Securities and Exchange Commission.


CONTACT:
Eaton Vance Corp.
Investor Contact:
Jonathan Isaac, 617-598-8818
or
Media Contact:
Jeanette Harrison-Sullivan, 617-598-8920

-0- Apr/23/2008 13:51 GMT

Copyright (c) 2008

# EXHIBIT O

BUS          Nuveen Investments Announces Board Approval of Tender Option
             Jun 11 2008  17:43:01

Bond Refinancing for Auction-Rate Preferred Shares in Municipal Closed-End Funds

CHICAGO--(BUSINESS WIRE)--June 11, 2008
Nuveen Investments:

    --  Expects $1 Billion of ARPS Redemptions by Initial Group of 41
        Funds

    --  13 Funds to Issue $560 Million in Redemption Notices Within 2
        Weeks

    --  Announcements on Additional Municipal Funds Expected

    Nuveen Investments, a leading global provider of investment
services to institutions and high-net-worth investors, today announced
Board approval of plans to use tender option bonds (TOBs) to refinance
a portion of auction-rate preferred shares (ARPS) in Nuveen municipal
closed-end funds, including an initial phase of approximately $1
billion by 41 funds. Of this amount, Nuveen expects that approximately
$560 million in ARPS redemption notices will be issued within 2 weeks
for the following 13 funds:

-0-
*T
Premium Income Municipal Fund (NPI)
Performance Plus Municipal Fund (NPP)
Investment Quality Municipal Fund (NQM)
Quality Income Municipal Fund (NQU)
Premier Municipal Income Fund (NPF)
Premium Income Municipal Fund 2 (NPM)
Premium Income Municipal Fund 4 (NPT)
Dividend Advantage Municipal Fund (NAD)
Dividend Advantage Municipal Fund 3 (NZF)
Insured Municipal Opportunity Fund (NIO)
New York Quality Income Municipal Fund (NUN)
California Dividend Advantage Municipal Fund (NAC)
California Dividend Advantage Municipal Fund 3 (NZH)
*T

    "This marks another step forward in our efforts to address the
issues common and ARPS shareholders of our closed-end funds have been
facing due to the industry-wide ARPS challenge," said Bill Adams,
Executive Vice President, Nuveen Investments. "As noted previously, we
believe TOBs present a helpful tool for refinancing ARPS for municipal
closed-end funds. The funds' Board of Trustees has authorized us to go
forward with creating TOBs to permit the partial refinancing of the
ARPS issued by all 87 affected Nuveen municipal closed-end funds,
market conditions permitting. After in-depth analysis of many factors,
we estimate that an initial group of 41 municipal funds will be able
to redeem approximately $1 billion in ARPS. In coming weeks, we hope
to announce additional municipal funds beyond the initial 41 that will
be partially redeeming their ARPS."

    Under the current TOB-based refinancing plan, in the aggregate,
approximately 11% of outstanding ARPS for these 41 funds would be
refinanced under current market conditions. For the 13 funds first
Copyright (c) 2008

BUS        Nuveen Investments Announces Board Approval of Tender Option
            Jun 11 2008  17:43:01
planning to issue redemption notices, it is expected that
approximately 7% to 20% of each fund's outstanding ARPS will be
redeemed depending on the funds' portfolio characteristics and other
factors. Nuveen plans to provide information on additional TOB
refinancing for its municipal funds on an ongoing basis as TOBs are
created and the funds are in a position to issue redemption notices.

    TOBs are floating rate securities issued by trusts into which a
fund has deposited municipal securities. The proceeds derived from the
issuance of TOBs can be used to refinance ARPS. Many Nuveen CEFs
already use TOBs as a portfolio structuring and duration management
tool. Nuveen has created a team of experts focused on evaluating
Nuveen CEFs for expanded implementation of TOBs as an alternative form
of leverage replacing ARPS.

    Adams noted that Nuveen continues to view TOBs as a partial
refinancing solution intended to redeem a portion the funds' ARPS and
that Nuveen continues to pursue the development of Variable Rate
Demand Preferred (VRDP) shares as another alternative form of leverage
to redeem ARPS. The redemption of ARPS using TOBs is not contingent on
the potential issuance of VRDP but may be influenced by several
factors, including: continuing strong creditworthiness of issuers,
insurers and guarantors of bonds in the funds' portfolios; continuing
strong creditworthiness and participation of the financial firms that
may serve as liquidity providers for TOBs; and the continued interest
of tax-exempt money market funds in investing in these sorts of TOBs.

    "We are pleased that TOBs will enable us to help provide some
liquidity for ARPS shareholders in the near future," Adams said. "With
the use of TOBs, we also will gain new flexibility in managing the
future leverage levels of our funds."

    Below is a list of the 28 funds, which together with those named
above are part of the initial $1 billion of proposed TOB refinancing:

-0-
*T
Municipal Advantage Fund (NMA)
Select Quality Municipal Fund (NQS)
Dividend Advantage Municipal Fund 2 (NXZ)
Nuveen Municipal Market Opportunity Fund (NMO)
Insured Quality Municipal Fund (NQI)
Premier Insured Municipal Income Fund (NIF)
Insured Dividend Advantage Municipal Fund (NVG)
Insured Tax-Free Advantage Municipal Fund (NEA)
California Performance Plus Municipal Fund (NCP)
California Municipal Market Opportunity Fund (NCO)
California Investment Quality Municipal Fund (NQC)
California Select Quality Municipal Fund (NVC)
California Quality Income Municipal Fund (NUC)
California Premium Income Municipal Fund (NCU)
California Dividend Advantage Municipal Fund 2 (NVX)
Insured California Premium Income Municipal Fund (NPC)
Insured California Premium Income Municipal Fund 2 (NCL)
Insured California Dividend Advantage Municipal Fund (NKL)
Insured California Tax-Free Advantage Municipal Fund (NKX)
New York Performance Plus Municipal Fund (NNP)
New York Dividend Advantage Municipal Fund (NAN)
New York Dividend Advantage Municipal Fund 2 (NXK)
New York Investment Quality Municipal Fund (NQN)
New York Select Quality Municipal Fund (NVN)
                    Copyright (c) 2008

```
BUS          Nuveen Investments Announces Board Approval of Tender Option
             Jun 11 2008  17:43:01
Insured New York Premium Income Municipal Fund (NNF)
Insured New York Dividend Advantage Municipal Fund (NKO)
Insured New York Tax-Free Advantage Municipal Fund (NRK)
Insured Premium Income Municipal Fund 2 (NPX)
*T
```

Information and updates on Nuveen CEFs and ARPS refinancing are
posted regularly at www.nuveen.com/cef and www.nuveen.com/arps.

Nuveen Investments provides high quality investment services
designed to help secure the long-term goals of institutions and high
net worth investors as well as the consultants and financial advisors
who serve them. Nuveen Investments markets its growing range of
specialized investment solutions under the high-quality brands of NWQ,
Santa Barbara, Tradewinds, Rittenhouse, Symphony, Nuveen and HydePark.
In total, the Company managed $153 billion in assets as of March 31,
2008.

No TOBs or VRDP shares have been registered under the Securities
Act of 1933 (the Securities Act) or any state securities laws. Unless
so registered, no TOBs or VRDP shares may be offered or sold in the
United States except pursuant to an exemption from the registration
requirements of the Securities Act and applicable state securities
laws. This press release is neither an offer to sell nor a
solicitation of an offer to buy any of these securities.

FORWARD LOOKING STATEMENTS

Certain statements made in this release are forward-looking
statements. Actual future results or occurrences may differ
significantly from those anticipated in any forward-looking statements
due to numerous factors. These include, but are not limited to: the
ability of the leveraged Nuveen funds that have announced refinancing
plans to implement those plans on a timely basis; the ability of the
leveraged Nuveen funds intending to use TOBs as part of their
announced refinancing plans to structure and create a sufficient
number of TOBs from their portfolios; the ability of any leveraged
Nuveen fund to negotiate and obtain from financial institutions the
liquidity support in amounts necessary for the issuance of TOBs on
terms acceptable to the fund and in a timely manner; other legal and
regulatory developments; the demand for TOBs in amounts sufficient for
any leveraged Nuveen fund to refinance a portion of its leverage; the
ability of the Nuveen leveraged funds to negotiate and obtain from
broker-dealers or other financial institutions the unconditional put
commitments necessary for the issuance of VRDP on terms acceptable to
the funds and in a timely manner; the acceptance by money market funds
of VRDP as an appropriate investment for such funds; the acceptance by
the market, and demand for, VRDP in amounts sufficient for any Nuveen
fund to refinance all or a portion of its leverage; the need for
leveraged Nuveen funds to obtain formal fund-by-fund board approval of
various types of specific proposals as they are developed and
finalized; the need to obtain any necessary regulatory approvals for
the issuance of VRDP or the implementation of the Nuveen funds' plans
to restructure their leverage; the effects of changes in market and
economic conditions and other additional risks and uncertainties.
Nuveen and the closed-end funds managed by Nuveen and its affiliates
undertake no responsibility to update publicly or revise any
forward-looking statements.

CONTACT:

Copyright (c) 2008

```
BUS          Nuveen Investments Announces Board Approval of Tender Option
             Jun 11 2008  17:43:01
Nuveen Investments
Media Contact:
Chris Allen
(312) 917-8331
christopher.allen@nuveen.com
or
Kathleen Cardoza
(312) 917-7813
kathleen.cardoza@nuveen.com
or
Investors Contact:
(877) 622-7530


-0- Jun/11/2008 21:43 GMT
```