## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LHB INSURANCE BROKERAGE INC., On Behalf Of Itself And All Others Similarly Situated,

                Plaintiff,

    vs.

CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC.,

                Defendants.

Civil Action No. 08-CV-3095 (LTS)

*[additional captions follow]*

**WEDGEWOOD MOVANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, APPOINTMENT AS INTERIM LEAD COUNSEL OVER INVESTMENT ADVISER ACT CLAIMS UNDER FED. R. CIV. P. 23(G), AND IN OPPOSITION TO COMPETING MOTIONS**

**MILBERG LLP**
Jerome M. Congress (JC-2060)
Kent A. Bronson (KB-4906)
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

***Proposed Lead Counsel for the Class***

| | |
|---|---|
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC. AND CITI SMITH BARNEY,<br><br>               Defendants. | Civil Action No. 08-CV-3139 (LTS) |
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated,<br><br>               Plaintiffs,<br>   vs.<br><br>CITIGROUP INC. and CITIGROUP GLOBAL CAPITAL MARKETS, INC.<br><br>               Defendants. | Civil Action No. 08-CV-3904 (LTS) |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>               Defendants. | Civil Action No. 08-CV-4360 (LTS) |

SAED GHALAYINI, Individually And On Behalf of All Others Similarly Situated,

               Plaintiff,

    vs.

CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,

               Defendants.

Civil Action No. 08-CV-5016 (LTS)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................3

    I.      PASSIDOMO'S OPPOSITION FURTHER CONFIRMS HIS
           INADEQUACY ...................................................................................................3

    II.     THE WEDGEWOOD MOVANTS ARE MORE THAN ADEQUATE, AND
           THEIR CHOICE OF COUNSEL IS SOUND .........................................................6

    III.    CONSOLIDATION OF STOCKHAMER WITH THE EXCHANGE ACT
           CASES WILL FACILITATE JUDICIAL ECONOMY AND AVOID
           POSSIBLE PREJUDICE TO THE EXCHANGE ACT CLASS MEMBERS ......12

CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.F.I.K. Holding SPRL v. Fass*,
 216 F.R.D. 567 (D.N.J. 2003)................................................................................................14

*Alexander v. Franklin Resources, Inc.*,
 No. C 06-7121 SI, 2007 U.S. Dist. LEXIS 19727 (N.D. Cal. Feb. 14, 2007)........................14

*American Stock Exchange, LLC v. Mopex, Inc.*,
 215 F.R.D. 87 (S.D.N.Y. 2002)..............................................................................................13

*Borenstein v. The Finova Group, Inc.*,
 No. Civ. 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732 (D. Ariz. Aug. 28, 2000)........14

*Coleman v. B.G. Sulzle, Inc.*,
 402 F. Supp. 2d 403 (N.D.N.Y. 2005).....................................................................................13

*In re Citigroup Pension Plan ERISA Litigation*,
 No. 05 Civ. 5296 (SAS), 2006 WL 3770504 (S.D.N.Y. Dec. 19, 2006) ...............................11

*Curtis v. Citibank, N.A.*,
 226 F.3d 133 (2d. Cir. 2000) ..................................................................................................13

*Ferrari v. Impath, Inc.*,
 No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 20, 2004) ............14

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
 245 F.R.D. 147 (S.D.N.Y. 2007) ..............................................................................................9

*In re Initial Public Offering Securities Litigation*,
 499 F. Supp. 2d 415 (S.D.N.Y. 2007) ....................................................................................10

*Johnson v. Ashcroft*,
 378 F.3d 164 (2d Cir. 2004) ...................................................................................................13

*Kirkpatrick v. J.C. Bradford & Co.*,
 827 F.2d 718 (11th Cir. 1987) ..............................................................................................1, 6

*Kline v. Wolf*,
 702 F.2d 400 (2d Cir. 1983) .....................................................................................................6

*Power Travel International, Inc. v. American Airlines, Inc.*,
 02 Civ. 7434 (RWS), 2004 U.S. Dist. LEXIS 21802 (S.D.N.Y. Oct. 29, 2004)...................13

*Savino v. Computer Credit, Inc.*,
 164 F.3d 81 (2d Cir. 1998) .......................................................................................................5

*Schriver v. Impac Mortgage Holdings, Inc.*,
    No. SACV 06-0031, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) .....................14

*Takeda v. Turbodyne Technologies, Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..................................................................................14

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979).................................................................................................................13

*In re Vivendi Universal, S.A. Securities Litigation*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................................................9

*In re WRT Energy Securities Litigation*,
    No. 96 Civ. 3610, 2006 U.S. Dist. LEXIS 47483 (S.D.N.Y. July 13, 2006) ........................10

*Waldman v. Village of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000) .................................................................................................13

*Weisman v. Darneille*,
    78 F.R.D. 669 (S.D.N.Y. 1978) ..............................................................................................5

*In re WorldCom, Inc. Securities Litigation*,
    No. 02 Civ. 3288 (DLC), 2002 U.S. Dist. LEXIS 27638 (S.D.N.Y. 2002) ...........................14

*Xianglin Shi v. SINA Corp.*,
    No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) ................5

## DOCKETED CASES

*In re American Express Finance Advisors Securities Litigation*,
    No. 04 Civ. 1773 (S.D.N.Y. July 18, 2007) .....................................................................9, 11

*In re Biovail Securities Litigation*,
    No. 03-CV-8917 (S.D.N.Y.)..................................................................................................11

*In re Martha Stewart Living Omnimedia, Inc. Securities Litigation*,
    No. 02-6273 (S.D.N.Y. June 8, 2007) ....................................................................................9

*In re McLeod USA Inc. Securities Litigation*,
    No. C02-0001 (N.D. Iowa Jan. 5, 2007)..................................................................................9

*Montoya v. Mamma.com, Inc.*,
    No. 05-CV-2313 (S.D.N.Y. July 13, 2007) .............................................................................9

*In re Morgan Stanley ERISA Litigation*,
    No. 07 Civ. 11285 (S.D.N.Y. Feb. 11, 2008) .........................................................................9

*In re Nortel Networks Corp. Securities Litigation (Nortel I)*,
    No. 01 Civ. 1855 (S.D.N.Y. Dec. 26, 2006)..........................................................................10

*Pozniak v. Imperial Chemical Industrial PLC*,
 No. 03-CV-2457 (S.D.N.Y. Sept. 19, 2006)........................................................................10

*In re Rhodia S.A. Securities Litigation*,
 No. 05-CV-5389 (MDL No. 1714) (S.D.N.Y. May 31, 2006).............................................10

*In re Sears, Roebuck & Co. Securities Litigation*,
 No. 02 C 7527 (N.D. Ill. Jan. 8, 2007) ............................................................................11

*Simon v. KPMG LLP*,
 2:05-CV-3189-DMC-MF (D.N.J. June 6, 2006) ................................................................11

*In re Tyco International Ltd. Securities Litigation*,
 No. 02-md-1335 (D.N.H. Dec. 19, 2007) ..........................................................................10

*Welmon v. Chicago Bridge & Iron Co.*,
 No. 06-CV-01283 (S.D.N.Y. June 19, 2006) ....................................................................10

**RULES**

Fed. R. Civ. P. 23(g) ............................................................................................................1

Fed. R. Civ. P. 42 (a) ..........................................................................................................12

## PRELIMINARY STATEMENT

Movants Wedgewood Tacoma LLC and Jemstone LLC (the "Wedgewood Movants") submit this Reply Memorandum in Further Support of their Motion for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel, Appointment as Interim Lead Counsel over Investment Adviser Act Claims under Fed. R. Civ. P. 23(g), and in Opposition to Competing Motions.

There remain two competing lead plaintiff movants: the Wedgewood Movants and Michael Passidomo ("Passidomo").[1]  Both have large financial interests in the case, but only the Wedgewood Movants are adequate under Rule 23, and only their application should be granted.

Passidomo is inadequate.  As set forth in the Wedgewood Movants' June 16, 2008 opposition brief (at pp. 5-9), Passidomo's own professional history illustrates a pattern of misconduct, dishonesty, and conduct tantamount to fraud, which compromises his trustworthiness and calls into question whether he possesses the requisite "personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).  It also appears that Passidomo failed to inform his own counsel of this history before his lead plaintiff motion was filed, further undercutting his credibility.  Perhaps most damaging is Passidomo's continuing failure to make full disclosure to the Court in his June 16, 2008 opposition brief.  Those papers reveal very little of the charges and findings against him by medical boards and agencies in at least five states, or the professional misconduct and dishonesty for which he was sanctioned,

---

[1]  Of the other two competing movants, one, the Dignam Movants, withdrew their lead plaintiff motion and filed a statement of non-opposition to Passidomo.  *See* Dkt. # 30.  The other, the LHB Insurance Movants, failed to file any papers opposing the competing lead plaintiff movants, and may therefore be presumed to have withdrawn their own motion for lead plaintiff.

even though his counsel presumably asked him about these matters after being apprised by the Wedgewood Movants' counsel. Passidomo appears to have intentionally excluded numerous serious instances of his misconduct from his papers. Thus his pattern of deception and improper conduct, which has tarnished his professional reputation and resulted in the suspension or loss of his medical license in multiple states (including New York), continues to date, and continues before this Court.

To distract from his own inadequacy, Passidomo launches a misdirected and misleading attack on the adequacy of the Wedgewood Movants and their counsel, Milberg LLP. This attack is particularly ill-timed because, on June 16, 2008, it was publicly announced that federal prosecutors had agreed to dismiss all charges against the firm as part of a comprehensive settlement in which the prosecutors stated their "belief that no attorney currently a partner or associate with Milberg LLP is criminally culpable with respect to the Investigated Conduct" and the government further stated that "[t]hroughout the conspiracy, the Conspiring Former Partners took affirmative steps to conceal their illegal activities from other partners, associates, and employees of the Firm." *See* June 20 Bronson Reply Decl., Ex. A.[2] Also, it is important to note here that the Wedgewood Movants have been informed and kept updated concerning the previous indictment against the firm, and its recent pending dismissal. Furthermore, they made an informed decision to retain Milberg LLP, and they have confidence in the firm's commitment and ability to vigorously prosecute this litigation. *See* June 20 Bronson Reply Decl., Ex. B.

Besides the fact that the indictment is being dismissed, effectively mooting Passidomo's criticism, Passidomo misinforms the Court as to how the vast majority of other Courts have

---

[2] "June 20 Bronson Reply Decl." refers to the June 20, 2008 Declaration of Kent A. Bronson submitted herewith. "June 16 Bronson Decl." refers to the June 16, 2008 Declaration of Kent A. Bronson submitted with the Wedgewood Movants' opposition papers on that date.

addressed the indictment issues even before this settlement was reached. The overwhelming majority of Courts (including numerous decisions in the Southern District of New York) have expressed confidence in Milberg's adequacy to serve as lead or co-lead counsel, notwithstanding the indictment. *See infra* at pp. 9-10. The firm has also continued to achieve outstanding results for aggrieved class members since the indictment, recovering over $5.7 *billion* in cases (over $725 million in cases in this District alone) where it had a leadership role. *See infra* at pp. 11-12.

Finally, at this point only the Wedgewood Movants seek to avoid potential prejudice to the Class members by moving for consolidation of the *Stockhamer* action and for appointment of the same lead counsel in both the cases asserting claims under the Securities Exchange Act ("Exchange Act cases") and *Stockhamer*, which is an Investment Advisers Act ("IAA") case. The putative class in *Stockhamer* includes most of the persons who will be members of the Class in the Exchange Act cases. If the *Stockhamer* action proceeds ahead of the Exchange Act cases, there is a risk that the *Stockhamer* plaintiffs will litigate and the Court will decide issues that profoundly affect the Exchange Act cases before the Court appointed lead plaintiff and lead counsel in the Exchange Act cases have addressed those issues with the Court. As discussed below, there is even a risk that if the *Stockhamer* action is resolved first, defendants might argue that the Exchange Act Class members are barred from going forward on the Exchange Act claims because of issues concerning claim splitting or issues relating to claim preclusion. The Court can easily avoid such risks by granting the Wedgewood Movants' motion to consolidate the *Stockhamer* action for all purposes with the Exchange Act cases now.

## ARGUMENT

## I.    PASSIDOMO'S OPPOSITION FURTHER CONFIRMS HIS INADEQUACY

Passidomo's own personal history of pervasive improper and dishonest professional conduct, resulting in disciplinary actions, fines, medical license suspensions, surrenders, and

adverse court judgments, is enough by itself to render him inadequate to serve as lead plaintiff here.  *See* Wedgewood Movants' Opp. Br., at pp. 6-9; June 16, 2008 Bronson Decl, Exs. E, F, N, and I.  It is also particularly noteworthy that certain instances of this misconduct took place in connection with financial management and billing issues that adversely affected patients and/or government agencies in connection with the provision of Medicaid services, for which Passidomo was specifically found to have engaged in "improper" conduct and found liable in the amount of almost $120,000.  *See* June 16, 2008 Bronson Decl., Ex. I, at pp. 2-5, 10-11.

Passidomo's June 16, 2008 opposition papers further compel a finding of his inadequacy here.  While he makes cursory mention in a single footnote to a single prior "administrative" action against him by the Kentucky Cabinet for Health Services, he omits any mention at all of the numerous disciplinary actions in his past involving dishonesty and even fraud, for which his license to practice medicine was suspended and/or surrendered in multiple states (including in New York).  These incidents, which are listed in the Wedgewood Movants' June 16, 2006 opposition brief (at pp. 8-9) include, among others, instances in which he was charged with conduct stated to be:

(a)     ". . . dishonorable, unethical and unprofessional to the extent said conduct is of a character likely to deceive, defraud or harm the public. . . ." and which, had it occurred in New York, would have constituted "practicing the [medical] profession fraudulently or beyond its authorized scope," among other things;

(b)     having his license to practice medicine suspended or surrendered in multiple states, and ultimately having his name stricken from the roster of physicians in New York;

(c)     being sanctioned by the Florida for dishonest conduct in failing to report disciplinary actions against him in other states; and

(d)        surrendering his Virginia medical license to avoid another inquiry, investigation or action.  *See* June 16 Bronson Decl., Exs. E and F.

Contrary to Passidomo's assertions, many of these incidents have occurred or been adjudicated more recently than "over fifteen years ago."  Passidomo Opp. Br., at p. 5, n. 5.  Even with respect to the one incident he does mention, Passidomo is less than forthright, neglecting to mention that in 2003 the Kentucky Court of Appeals affirmed lower tribunal findings of "substantial evidence" that he conducted numerous improper tests on Medicaid patients, or that he was found liable to the Kentucky Cabinet for Health Services for almost $120,000 in connection therewith.  *See* June 16 Bronson Decl., Ex. I, at pp. 2-5, 10-11.

Passidomo thus appears to have engaged in a pattern of improper and dishonest conduct that continues to date, insofar as Passidomo has failed to disclose this information to the Court.  This pattern of conduct is clearly relevant to his adequacy as a lead plaintiff/fiduciary acting for the benefit of absent class members, and in fact fatally compromises his adequacy.  Passidomo's latest exhibited lack of candor, his failure to come clean to this Court (or apparently even his own counsel) about the full extent of his disciplinary history, confirms that he is unfit to serve as lead plaintiff or to represent the class and that his application should be rejected.  *See, e.g.*, *Weisman v. Darneille*, 78 F.R.D. 669, 670-71 (S.D.N.Y. 1978) (Proposed representative found inadequate where he had previously committed fraud in an unrelated matter, and failed to bring this information to his counsel's attention until just before his deposition).  *See also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff."); *Xianglin Shi v. SINA Corp.*, No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176, at *14 (S.D.N.Y. July 1, 2005) ("Honesty and trustworthiness are . . . relevant factors in determining and [sic]

individual's ability to serve as a class representative."); *Kirkpatrick*, 827 F.2d at 726 (citing *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983) (Even where threshold adequacy requirements appear satisfied, plaintiffs might not be adequate if they "do not possess the personal characteristics necessary to fulfill the fiduciary role of class representative.").

Passidomo's appointment will put the class at risk, as it makes him a target for the defense later on in the litigation, for example at the class certification stage, and will also put at risk the judicial resources expended in the course of the litigation by then.  If his pattern of misconduct emerges at trial, his credibility will come under sharp attack before the jury.  This problem can and should be remedied by the Court either by appointing the Wedgewood Movants as sole lead plaintiff, or alternatively, at least appointing the Wedgewood Movants as co-lead plaintiffs (and their counsel as co-lead) should the Court decide that the size of Passidimos' financial interest warrants a role in this case.[3]

## II.    THE WEDGEWOOD MOVANTS ARE MORE THAN ADEQUATE, AND THEIR CHOICE OF COUNSEL IS SOUND

The Wedgewood Movants are ideal candidates to lead this litigation.  The Wedgewood Movants have the largest financial interest in terms of face amount of purchases of ARS during the Class Period of any of the movants herein who otherwise satisfy the prerequisites of Rule 23. *See* Wedgewood Movants Opp. Br. at pp. 4.  Passidomo falsely attacks the Wedgewood Movants (indiscriminately lumping them in with the other, now withdrawn movants) as being an "unrelated" aggregation to obtain a larger financial interest.  Passidomo Opp. Br. at pp. 3-4.  As shown in their opposition papers (and their certifications), this is simply not true.  The Wedgewood Movants are closely related; their principals and managers are members of the same

---

[3]  At a bare minimum, Passidomo's history raises serious questions about his adequacy which at least merit further and full disclosure and examination before any lead plaintiff decision is made.

immediate family, the Mayers of Tacoma, Washington, a close-knit family with a significant history of community involvement and activism, philanthropy, and substantial experience supervising lawyers and litigation.  *See* June 16 Bronson Decl., Ex. A, at ¶¶ 2, 4-8.

In an attempt to distract from Passidomo's own inadequacy and lack of candor *in this case*, he launches a misdirected, misleading, and ill-timed attack on the Wedgewood Movants' Counsel, Milberg LLP, for the conduct of lawyers other than those involved in this case and for which the government has now agreed to dismiss all charges as against the Firm itself.  As stated in the Wedgewood Movants' May 27, 2008 opening brief (at p. 13), they were informed concerning the indictment and the status of the proceedings with respect thereto before retaining Milberg LLP as counsel.  On June 16, 2008 (even before Passidomo's opposition brief attacking Milberg LLP was filed) it was publicly announced that federal prosecutors had agreed to dismiss all charges against the firm as part of a comprehensive settlement, a copy of which is being filed herewith as Ex. A to the June 20 Bronson Reply Decl.  The Case Disposition Agreement (CDA) includes, among other provisions:

(a)    that the government agrees as part of the CDA to seek the dismissal of the indictment against Milberg LLP, CDA ¶ 22, and not to prosecute Milberg LLP for any crimes arising out of the "Investigated Conduct" and not to pursue any related civil or criminal forfeiture claims against Milberg LLP, which is highly unusual if not unique after an indictment has issued.

(b)    that the government recites as part of the CDA that among the reasons it agreed to this unusual resolution is "the USAO's belief that no attorney currently a partner or associate with Milberg LLP is criminally culpable with respect to the investigated conduct,"  CDA ¶ 3(f); and

(c)     that the government has agreed to accept as part of the statement of facts ("SOF") that "[t]hroughout the conspiracy, the Conspiring Former Partners took affirmative steps to conceal their illegal activities from other partners, associates, and employees of the Firm."  SOF ¶ 5.  *See* Bronson Reply Decl., Ex. A.[4]

Passidomo also misinforms this Court as to how the majority of other Courts addressed the indictment issues even before this settlement with the government was reached.  Similar to Passidomo's selective presentation of his own past, Passidomo's counsel cherry-picks the few negative decisions with unfavorable holdings toward Milberg, ignoring the vast majority of decisions (including several from Courts in this District) since the May 2006 indictment which have expressed confidence in Milberg's adequacy to serve as lead or co-lead counsel.  *See* June 20 Bronson Reply Decl., Ex. C.  The individual attorneys implicated in the indictment are no longer associated with the firm and have nothing to do with this case.[5]  Moreover, the Wedgewood Movants are well aware of the indictment, the status of the proceedings, and the pending dismissal, and are confident in Milberg LLP ability and commitment to prosecute this case.  *See id*, Ex. B (Supplemental Aff. of Kurtis R. Mayer) ¶¶ 2-4.

The overwhelming weight of courts considering the issue have ruled just the opposite to the handful of cases cited by Passidomo.  Milberg LLP continues to be appointed to or confirmed

---

[4]   In addition, Milberg has agreed as part of the settlement to make $75 million in payments to the government over the next five years, as well as to continue to maintain and expand a "Best Practices" program with respect to fees that it voluntarily implemented prior to the indictment, and which has been in place ever since.

[5]   Indeed, the U.S. Attorney whose office brought the indictment against Milberg stated in announcing the indictment, that "there are a number of individuals who are at the firm who have not been complicit and who are very well respected and so I can only hope and imagine that they'll sort of step up to the forefront after today."  Milberg's post-indictment track record shows that its attorneys have done just that, and will continue to do so.

in leadership positions in numerous important complex class action cases in federal and state courts nationwide, including in federal securities cases. In total, in the two years since the indictment, numerous decisions have appointed or reaffirmed Milberg's leadership position as class counsel, including decisions in a dozen or so cases being litigated before the federal District Court for the Southern District of New York. *See*, *e.g.*, *In re Morgan Stanley ERISA Litig.*, No. 07 Civ. 11285 (S.D.N.Y. Feb. 11, 2008) (Pretrial Order appointing Milberg LLP as co-lead class counsel); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 163 (S.D.N.Y. 2007) (certifying class, appointing Milberg sole Class Counsel, noting that none of the Milberg lawyers on the case were implicated in the indictment, and remarking that Milberg had "competently and vigorously represented plaintiffs and the [class]" and was "eminently qualified to represent the proposed class and arguably has unrivaled experience in securities class actions"; also stating "[i]n accord with the overwhelming majority of courts faced with this issue, we decline [to remove Milberg LLP as class counsel]")[6]; *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (S.D.N.Y. July 18, 2007) (Order & Final Judgment appointing Milberg LLP class co-counsel for settlement purposes and approving settlement); *Montoya v. Mamma.com, Inc.*, No. 05-CV-2313 (S.D.N.Y. July 13, 2007) (Final Judgment approving settlement and distribution of attorneys' fees in case in which Milberg LLP served as co-lead counsel to the class); *In re Martha Stewart Living Omnimedia, Inc. Sec. Litig.*, No. 02-6273 (S.D.N.Y. June 8, 2007) (Order & Final Judgment approving settlement in case in which Milberg LLP served as co-lead counsel to the class); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007) (certifying class in case in which Milberg LLP is co-lead counsel); *In re McLeod USA Inc. Sec. Litig.*, No.

---

[6]   The United States Court of Appeals for the Second Circuit has granted Rule 23(f) review of this decision.

C02-0001 (N.D. Iowa Jan. 5, 2007) (Order & Final Judgment approving settlement in case in which Milberg LLP served as co-lead counsel for the class); *In re Initial Public Offering Sec. Litig.*, 499 F. Supp. 2d 415, 419 (S.D.N.Y. 2007) ("[t]here simply is no evidence that [Milberg's] representation has suffered as a result of its defense [to the indictment] or that it will suffer in the future."); *In re Nortel Networks Corp. Sec. Litig. (Nortel I)*, No. 01 Civ. 1855 (S.D.N.Y. Dec. 26, 2006) (Decision & Order approving settlement in case in which Milberg LLP served as lead counsel for the class).[7]  *See also* June 20 Bronson Reply Decl., Ex. C.

Moreover, since the indictment Milberg has continued to achieve outstanding results for aggrieved class members, recovering a total of over $5.7 *billion* in class actions in cases (including over $725 million in monetary recoveries cases before Courts in this District) in which it has a leadership position.  *See* June 20 Bronson Reply Decl., Ex. D.  Milberg's post-indictment results include a record $3 billion recovery in the *In re Tyco International Limited Securities Litigation*, No. 02-md-1335 (D.N.H. Dec. 19, 2007) (the largest recovery ever achieved against a single corporate defendant);[8] a settlement of approximately $438.66 million in cash and 314.33 million in shares in *In re Nortel Networks Securities Litigation*, No. 01 Civ.

---

[7]  *See also Pozniak v. Imperial Chem. Indus. PLC*, No. 03-CV-2457 (S.D.N.Y. Sept. 19, 2006) (Order & Final Judgment approving settlement and stating that "Plaintiffs' Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy"); *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610, 2006 U.S. Dist. LEXIS 47483, at *9 n.2 (S.D.N.Y. July 13, 2006) (noting that plaintiffs' counsel's letter to the court assured it "that [Milberg LLP] remains ready and able to vigorously prosecute the WRT matter" and that "the indictment does not bear on the 'pending' litigation in this case."); *Welmon v. Chicago Bridge & Iron Co.*, No. 06-CV-01283 (S.D.N.Y. June 19, 2006) (Judge Sprizzo Order reaffirming Milberg LLP as co-lead counsel); *In re Rhodia S.A. Sec. Litig.*, No. 05-CV-5389 (MDL No. 1714) (S.D.N.Y. May 31, 2006) (Order appointing Milberg LLP lead counsel).

[8]  The Court in *Tyco* noted that "Co-Lead Counsel's continued, dogged effort" was "a major reason for the magnitude of the recovery."  *In re Tyco Int'l Ltd. Sec. Litig.*, No. 02-md-1335 (D.N.H. Dec. 19, 2007), Tr. at 51-52.

1855 (S.D.N.Y. Dec. 26, 2006); a settlement of $138 million (preliminary approval granted on

April 9, 2008, final approval pending) in *In re Biovail Sec. Litig.*, No. 03-CV-8917 (S.D.N.Y.),

in which Milberg LLP served as co-lead counsel; a settlement of $100 million in *In re American*

*Express Financial Advisors Sec. Litig.*, No. 04 Civ. 1773 (S.D.N.Y. July 18, 2007); and a $225

million recovery in a case before Judge Cavanaugh in *Simon v. KPMG LLP*, 2:05-CV-3189-

DMC-MF (D.N.J. June 6, 2006).[9]

     In sum, Milberg's new and continued leadership roles in securities fraud and complex

class actions belies Passidomo's claim that the indictment, which is now being dismissed, will

somehow hamper Milberg or prejudice the Class. Milberg remains one of the largest class action

law firms in the United States, with offices in New York, Los Angeles, and Tampa, with

tremendous resources, talent and experience at its disposal, including over 200 in personnel

(including lawyers and staff), over 65 attorneys, a team of five investigators headed by a veteran

of the Federal Bureau of Investigation, and five forensic accountants. The Zwerling firm, in

contrast, is a much smaller law firm, only about a third the size of Milberg LLP in terms of

number of attorneys, and with more limited resources. According to recent studies, Milberg LLP

was in the top five law firms in 2006 terms of aggregate settlement totals, and first among fifty

---

[9]  *See also In re Citigroup Pension Plan ERISA Litig.*, No. 05 Civ. 5296 (SAS), 2006 WL 3770504 (S.D.N.Y. Dec. 19, 2006)(certifying class action in which Milberg is co-lead counsel); *In re Sears*, *Roebuck & Co. Sec. Litig.*, No. 02 C 7527 (N.D. Ill. Jan. 8, 2007) ($215 million settlement); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB) (S.D.N.Y. July 13, 2007) Tr. at 154 ($100 million settlement where Court noted that "[I]t is clear of the dedication, devotion, professionalism, and in the court's view efficiency of these firms, so there is no question in the court's mind of the quality of the representation"); *Cooper v. Pac. Life Ins. Co.* No. CV: 03-131, (S.D. Ga. Oct. 3, 2007) Order at 7 (confirming Milberg as lead counsel, approving a $60 million settlement, stating "Lead Class Counsel have conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy.") *See also* June 20 Bronson Reply Decl., Ex. D.

law firms in 2007 in terms of aggregate settlement totals with $3.8 billion.[10]  The Zwerling firm,

by contrast, did not appear as a 2006 top fifty firm, and appeared at number 29 on the 2007 list

(with only 2 settlements totaling $102 million).  *See* June 20 Bronson Reply Decl., Exs. E and F.

**III.    CONSOLIDATION OF *STOCKHAMER* WITH THE EXCHANGE ACT
         CASES WILL FACILITATE JUDICIAL ECONOMY AND AVOID
         POSSIBLE PREJUDICE TO THE EXCHANGE ACT CLASS MEMBERS**

As set forth in the Wedgewood Movants' opening memorandum, consolidation is

appropriate when actions involve common questions of law or fact.  Fed. R. Civ. P. 42 (a).  The

Exchange Act cases and *Stockhamer* share two core questions of fact:  (i) whether Defendants

deceived investors by misrepresenting the liquidity and risk profile of ARS; and (ii) the injuries

resulting from that deception.[11]

The cases seek to represent essentially the same class members.  Based on a longer

statute of limitations period for the claims alleged, *Stockhamer* is brought on behalf of persons

who purchased ARS between April 25, 2002 to the present.  The first filed Exchange Act case is

brought on behalf of persons purchasing ARS between March 26, 2003 and February 13, 2008.

Thus, most members of the *Stockhamer* class belong to the Exchange Act classes.  Also, the

Exchange Act cases afford greater relief than *Stockhamer*, particularly a damages remedy.[12]

---

[10]  Milberg was also in the top five law firms in terms of average settlement amounts and number
of settlements in 2006 and 2007.  *See* June 20 Bronson Decl., Exs. E and F.

[11]  The defendants in *Stockhamer* consist of Citigroup, Inc. and one of its wholly-owned
subsidiaries, Citigroup Global Capital Markets, Inc.  Certain of the Exchange Act cases name
these two entities as defendants as well as another subsidiary, defendant Citi Smith Barney.
Thus, the Exchange Act cases allege claims against all of the defendants in the *Stockhamer*
action.  The complaint filed by Wedgewood Tacoma LLC includes claims under both the IAA
and the Exchange Act, thereby alleging the same (or at least substantially similar claims) against
the defendants in *Stockhamer*.

[12]  The IAA claims asserted in *Stockhamer* are not an adequate substitute for the securities fraud
claims asserted in the Exchange Act cases.  In addition to other differences between the two

There is a risk that if *Stockhamer* proceeds independently and is finally resolved before the Exchange Act cases become final, defendants will likely argue that the members of the *Stockhamer* class are barred from proceeding further as class members in the Exchange Act cases because to do so would violate the doctrine against claim splitting.[13]   If the issue were raised, counsel for the Exchange Act class would certainly do their best to avoid such a draconian result. However, this Court can easily avoid the risk that the issue might be decided adversely to the Exchange Act class by consolidating *Stockhamer* with the Exchange Act cases for all purposes. *See Curtis v. Citibank*, *N.A.*, 226 F.3d 133, 138 (2d. Cir. 2000).

The congressional policy embodied in the PSLRA strongly supports consolidation of *Stockhamer* with the Exchange Act cases.  Even in the absence of any claim splitting issue, the virtual total factual overlap between *Stockhamer* and the other actions creates a situation in which the Court may decide crucial issues of law, discovery questions, or important motions (such as on summary judgment) in *Stockhamer* that, in practical terms, may be dispositive with respect to the Exchange Act cases.  In such a situation, the *Stockhamer* plaintiffs, rather than the Court appointed lead plaintiff under the PSLRA, would, de facto, play the primary role in litigating many crucial issues in the Exchange Act cases.  It is appropriate for this Court to

statutes, the Supreme Court has held that private actions under the IAA are limited to rescission and not damages.  *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979).

[13]  "A party must bring in one action all legal theories arising of the same transaction or series of transactions."  (citations omitted) (emphasis omitted) *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 419 (N.D.N.Y. 2005) citing *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (citing, *inter alia*, *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)).  *See also Johnson v. Ashcroft*, 378 F.3d 164, 172 n.10 (2d Cir. 2004) (citation omitted) ("In civil suits a litigant must advance all available evidence and legal arguments relating to a claim or controversy in the context of a single proceeding."); *Power Travel Int'l, Inc. v. Am. Airlines, Inc.*, 02 Civ. 7434 (RWS), 2004 U.S. Dist. LEXIS 21802, at *12 (S.D.N.Y. Oct. 29, 2004) ("res judicata applies to members of a class as it would to named plaintiffs.")

consolidate *Stockhamer* with the Exchange Act cases so that the Court-appointed lead plaintiff under the PSLRA will actually, not just theoretically, be conducting the litigation on behalf of the Exchange Act case class members.

Consolidation is also proper because it will promote judicial economy and avoid duplication of discovery efforts among the parties. *See Ferrari v. Impath, Inc*., No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *7-9 (S.D.N.Y. July 20, 2004) (citations and quotations omitted).[14]  Absent consolidation, separate trials will occur and numerous motions may need to be adjudicated twice when consolidation would require only one motion.[15]  Wasteful duplication of discovery will likely result, unless the Court places *Stockhamer* on the same discovery schedule as the Exchange Act cases.

Finally, consolidation will not prejudice the plaintiff in *Stockhamer,* who has already agreed to coordination of discovery.  For this to be meaningful, at a minimum coordination would involve deferring any depositions in *Stockhamer* until the Exchange Act plaintiffs are also

---

[14]   Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on a common course of conduct and defendants will not be prejudiced. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *6-7.  *See also Borenstein v. The Finova Group, Inc.*, No. Civ. 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732, at *9-14 (D. Ariz. Aug. 28. 2000); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999).

[15]   "Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated." *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003).  Indeed, courts have consolidated cases asserting different causes of action where they were based upon common questions of law or fact.  *See, e.g., Schriver v. Impac Mortgage Holdings, Inc*., No. SACV 06-0031, 2006 U.S. Dist. LEXIS 40607, at * 4-6 (C.D. Cal. May 1, 2006) (consolidating actions where there were derivative state law claims and Exchange Act claims); *Alexander v. Franklin Resource*s, *Inc.*, No. C 06-7121 SI,  2007 U.S. Dist. LEXIS 19727, at *7-10 (N.D. Cal. Feb. 14, 2007) (transferring securities fraud case because, *inter alia*, consolidation with New Jersey cases brought under the Investment Company Act, Investment Adviser Act and state law was likely given the same underlying factual predicate); *In re WorldCom, Inc. Sec. Litig*., No. 02 Civ. 3288 (DLC), 2002 U.S. Dist. LEXIS 27638, at *2 (S.D.N.Y. 2002) (consolidating securities and ERISA class actions with non-class actions given common questions of law and fact).

prepared to participate in those depositions.  Any slight delay in *Stockhamer* resulting from the need to proceed on the same time schedule as the Exchange Act cases is vastly outweighed by the risk of possible prejudice to the Exchange Act class that would result if issues of claim splitting or claim preclusion ultimately materialized.  Indeed, the *Stockhamer* plaintiffs cite to no authority whatsoever as to why these cases should not be consolidated.

As set forth in their opening memorandum, this Court should approve the choice of Milberg LLP as lead counsel of the IAA claims as well as the Exchange Act claims.  Although the *Stockhamer* Plaintiffs oppose the Wedgewood Movants' selection, they cite no basis in fact or in law as to why the Wedgewood Movants' request should be denied.

### CONCLUSION

For the reasons stated herein and in their prior submissions, the Court should grant the Wedgewood Movants' motion in all respects, deny the motions of the competing movants, and consolidate the *Stockhamer* action with the Exchange Act cases for all purposes.

Dated:  June 20, 2008                           Respectfully submitted,

                                                **MILBERG LLP**

                                                By: */s/ Kent A. Bronson*_____
                                                Jerome M. Congress (JC-2060)
                                                Kent A. Bronson (KB-4906)
                                                One Pennsylvania Plaza, 49th Floor
                                                New York, New York 10119
                                                Telephone:    (212) 594-5300
                                                Facsimile:    (212) 868-1229
                                                jcongress@milberg.com
                                                kbronson@milberg.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Kent A. Bronson, a member of the law firm Milberg LLP, hereby certify that I caused a true and correct copy of the following documents to be served with the Clerk of the Court using the CM/ECF system, which will send notifications of filing to the CM/ECF participants listed on the attached Service List, and caused all counsel listed on the Service List to be served by regular U.S. Mail on this 20th day of June 2008:

1. **WEDGEWOOD MOVANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, APPOINTMENT AS INTERIM LEAD COUNSEL OVER INVESTMENT ADVISER ACT CLAIMS UNDER FED. R. CIV. P. 23(G), AND IN OPPOSITION TO COMPETING MOTIONS**

2. **REPLY DECLARATION OF KENT A. BRONSON IN FURTHER SUPPORT OF THE MOTION OF WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**


*/s/ Kent A. Bronson*
Kent A. Bronson

# Citigroup Inc. (ARS)

### Service List

***Counsel for Plaintiffs:***

Eduard Korsinsky
Joseph E. Levi
Juan E. Monteverde
**LEVI & KORSINSKY, LLP**
39 Broadway, Suite 1601
New York, NY  10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com
       jlevi@zlk.com
       jmonteverde@zlk.com

Christopher A. Seeger
Stephen A. Weiss
David R. Buchanan
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY  10004
Tel: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com
       sweiss@seegerweiss.com
       dbuchanan@seegerweiss.com

Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA  94108
Tel: (415) 981-4800
Fax: (415) 981-4846
Email: dcg@girardgibbs.com
       jkl@girardgibbs.com
       ams@girardgibbs.com

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO  64112
Tel: (816) 714-7100
Fax: (816) 714-7101
Email: siegel@stuevesiegel.com

Samuel P. Sporn
Joel P. Laitman
Frank R. Schirripa
Daniel B. Rehns
**SCHOENGOLD SPORN LAITMAN
  & LOMETTI, P.C.**
19 Fulton Street, Suite 406
New York, NY  10038
Tel: (212) 964-0046
Fax: (212) 267-8137
Email: ssporn@spornlaw.com
       joel@spornlaw.com
       frank@spornlaw.com
       daniel@spornlaw.com

Richard A. Speirs
Paul Kleidman
**ZWERLING, SCACHTER & ZWERLING, LLP**
41 Madison Avenue
New York, NY  10010
Tel: (212) 223-3900
Fax: (212) 371-5969
Email: rspeirs@zsz.com
       pkleidman@zsz.com

Michael E. Criden
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, FL  33143
Tel: (305) 357-9000
Fax: (305) 357-9050
Email: mcriden@cridenlove.com


Joseph P. Danis
Michael J. Flannery
Corey D. Sullivan
**CAREY & DANIS, LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, MO  63105
Tel: (314) 725-7700
Fax: (314) 721-0905
Email: jdanis@careydanis.com
        mflannery@careydanis.com
        csullivan@careydanis.com


A. Hoyt Rowell, III
Daniel O. Myers
T. Christopher Tuck
**RICHARDSON, PATRICK, WESTBROOK &
  BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29464
Tel: (843) 727-6500
Fax: (843) 216-6509
Email: hrowell@rpwb.com
        dmyers@rpwb.com
        ctuck@rpwb.com


Joe R. Whatley, Jr.
Edith M. Kallas
Joseph P. Guglielmo
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, NY  10036
Tel: (212) 447-7070
Fax: (212) 447-7077
Email: jwhatley@whatleydrake.com
        ekallas@whatleydrake.com
        jguglielmo@whatleydrake.com


Edward M. Gergosian
**GERGOSIAN & GRALEWSKI LLP**
655 West Broadway, Suite 1410
San Diego, CA  92101
Tel: (619) 237-9500
Fax: (619) 237-9555

***Counsel for Defendants:***

Brad S. Karp
Susanna M. Buergel
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3980
Email: bkarp@paulweiss.com
          sbuergel@paulweiss.com

Charles E. Davidow
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
1615 L Street, N.W., Suite 1300
Washington, D.C.  20036-5694
Tel: (202) 223-7300
Fax: (202) 223-7420
Email: cdavidow@paulweiss.com