UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., On Behalf Of Itself And All Others Similarly Situated, | Civil Action No. 08-CV-3095 (LTS) |
| Plaintiff, | |
| vs. | |
| CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC., | |
| Defendants. | |

*[additional captions follow]*

**REPLY DECLARATION OF KENT A. BRONSON IN FURTHER SUPPORT OF THE MOTION OF WEDGEWOOD TACOMA LLC AND JEMSTONE LLC FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

**MILBERG LLP**
Jerome M. Congress (JC-2060)
Kent A. Bronson (KB-4906)
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

*Proposed Lead Counsel for the Class*

| | |
|---|---|
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 08-CV-3139 (LTS) |
| Plaintiff, | |
| vs. | |
| CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC. AND CITI SMITH BARNEY, | |
| Defendants. | |
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated, | Civil Action No. 08-CV-3904 (LTS) |
| Plaintiffs, | |
| vs. | |
| CITIGROUP INC. and CITIGROUP GLOBAL CAPITAL MARKETS, INC. | |
| Defendants. | |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 08-CV-4360 (LTS) |
| Plaintiff, | |
| vs. | |
| CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY, | |
| Defendants. | |

SAED GHALAYINI, Individually And On Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,

                Defendants.

Civil Action No. 08-CV-5016 (LTS)

I, Kent A. Bronson, under penalties of perjury, hereby declare:

1.      I am a member of Milberg LLP.  I submit this reply declaration in further support of the motion of Wedgewood Tacoma LLC and Jemstone LLC for appointment as Lead Plaintiff, approval of their selection of Lead Counsel, and in opposition to competing lead plaintiff motions.

2.      Attached hereto as Exhibit A is a true and correct copy of a Case Disposition Agreement ("CDA") in the matter of *United States of America v. Milberg LLP*, CR-05-587(D). Among other things:

(a)      the government agrees as part of the CDA to seek the dismissal of the indictment against Milberg LLP, CDA ¶ 22, and not to prosecute Milberg LLP for any crimes arising out of the "Investigated Conduct" and not to pursue any related civil or criminal forfeiture claims against Milberg LLP, which is highly unusual if not unique after an indictment has issued.

(b)      the government recites as part of the CDA that among the reasons it agreed to this unusual resolution is "the USAO's belief that no attorney currently a partner or associate with Milberg LLP is criminally culpable with respect to the investigated conduct," CDA ¶ 3(f); and

(c) the government has agreed to accept as part of the statement of facts ("SOF") that "[t]hroughout the conspiracy, the Conspiring Former Partners took affirmative steps to conceal their illegal activities from other partners, associates, and employees of the Firm."  SOF ¶ 5.

3.      Attached hereto as Exhibit B is a true and correct copy of the Supplemental Affidavit of Kurtis R. Mayer dated June 20, 2008.

4.      Attached hereto as Exhibit C is a true and correct copy of an "Appendix of Decisions Appointing/Affirming Milberg LLP as Counsel in Leadership Position Post-Indictment."

5.      Attached hereto as Exhibit D is a true and correct copy of a table entitled "Appendix of Milberg LLP's Post-Indictment Final and Preliminary Approved Settlements."

6.      Attached hereto as Exhibit E is a true and correct copy of the Securities Class Action Services Report entitled "SCAS 50 for 2006" available at http://www.issproxy.com//pdf/SCAS50for2006.pdf.

7.      Attached hereto as Exhibit F is a true and correct copy of the Securities Class Action Services Report entitled "SCAS 50 for 2007" available at http://www.riskmetrics.com/pdf/SCAS50for2007.pdf.

Dated:  June 20, 2008                                        Respectfully submitted,

                                                            **MILBERG LLP**


                                                            By:  */s/ Kent A. Bronson*
                                                            Kent A. Bronson (KB-4906)
                                                            One Pennsylvania Plaza, 49th Floor
                                                            New York, New York 10119
                                                            Telephone:      (212) 594-5300
                                                            Facsimile:      (212) 868-1229
                                                            kbronson@milberg.com

# EXHIBIT A

## (PART 1 OF 2)

THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA (Cal. Bar #135439)
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar #173814)
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
Assistant United States Attorney
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-0713
      Facsimile:  (213) 894-6269
      E-mail: Richard.Robinson@usdoj.gov
              Doug.Axel@usdoj.gov
              George.S.Cardona@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-587(D)-JFW |
| | ) | |
| Plaintiff, | ) | CASE DISPOSITION AGREEMENT FOR |
| | ) | DEFENDANT MILBERG LLP; |
| v. | ) | EXHIBITS A-F |
| | ) | |
| MILBERG LLP, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

1.    Defendant Milberg LLP (formerly known as "Milberg Weiss
LLP," "Milberg Weiss & Bershad LLP," "Milberg Weiss Bershad &
Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," and
"Milberg Weiss Bershad Specthrie & Lerach") ("Milberg LLP") and
the United States Attorney's Office for the Central District of
California (the "USAO") hereby enter into this agreement (the
"Agreement") to resolve as against Milberg LLP: (a) the above-
captioned case ("U.S. v. Milberg LLP et al.") and (b) the USAO's
criminal investigation regarding conduct described in the second

1   superseding indictment in <u>U.S. v. Milberg LLP et al.</u> (the "SSI")

2   and/or in Exhibit A to this Agreement (collectively the

3   "Investigated Conduct").

4       A.   INTRODUCTION

5       2.   Milberg LLP has been indicted on charges of conspiracy

6   in violation of 18 U.S.C. § 371; mail fraud in violation of 18

7   U.S.C. §§ 1341, 1346; money laundering in violation of 18 U.S.C.

8   § 1956(h); and obstruction of justice in violation of 18 U.S.C.

9   § 1503, as well as criminal forfeiture pursuant to 28 U.S.C.

10  § 2461(c), 18 U.S.C. § 981(a)(1)(C), and 21 U.S.C. § 853, and 18

11  U.S.C. § 982(a)(1) and 21 U.S.C. § 853, as set forth in the SSI.

12      3.   The USAO has determined that entry into this Agreement

13  to resolve both the prosecution of Milberg LLP in <u>U.S. v. Milberg</u>

14  <u>LLP et al.</u> and any further investigation of potential charges

15  against Milberg LLP arising from the Investigated Conduct is

16  appropriate in light of: (a) Milberg LLP's acceptance of

17  responsibility for the conduct in question, as described in

18  paragraphs 6 through 9 of this Agreement; (b) Milberg LLP's

19  commitment to provide full cooperation as directed by the USAO,

20  as described in paragraphs 10 through 12 of this Agreement; (c)

21  Milberg LLP's agreement to pay the United States the total sum of

22  $75,000,000, plus applicable interest, and to take steps

23  necessary to ensure such payments, as described in paragraphs 13

24  through 19 of this Agreement; (d) Milberg LLP's remedial actions

25  taken to date and to be taken pursuant to this Agreement, as well

26  as its continuing commitment to maintain the "best practices"

27  program, as described in paragraph 20 of this Agreement; (e) the

28  other undertakings Milberg LLP has accepted as set forth in this

1 Agreement; and (f) the USAO's belief that no attorney currently a
2 partner or associate with Milberg LLP is criminally culpable with
3 respect to the Investigated Conduct.

4     4.   This Agreement shall be deemed effective as of the last
5 date of execution by a party to this Agreement and shall continue
6 in effect until the later of (a) 24 months from its effective
7 date or (b) the date by which Milberg LLP has satisfied all of
8 its payment obligations under paragraphs 13 through 17 below.
9 The period of time during which this Agreement continues in
10 effect is referred to as the "Agreement Term."

11     B.   <u>MILBERG LLP'S PROMISES AND OBLIGATIONS</u>

12     5.   In consideration for the USAO's promises set forth in
13 paragraphs 22 through 25 of this Agreement, Milberg LLP
14 knowingly, voluntarily, and with the advice of counsel, agrees to
15 the following:

16     (a)   Milberg LLP acknowledges and accepts
17 responsibility for the conduct of its partners, in accordance
18 with paragraphs 6 through 9 of this Agreement;

19     (b)   Milberg LLP agrees to cooperate with the USAO, as
20 described in paragraphs 10 through 12 of this Agreement;

21     (c)   Milberg LLP agrees to pay to the United States the
22 total sum of $75,000,000, plus applicable interest, and to take
23 steps necessary to ensure such payments, as more fully provided
24 in paragraphs 13 through 19 of this Agreement;

25     (d)   Milberg LLP agrees to maintain a "best practices"
26 program, as more fully described in paragraph 20 of this
27 Agreement;

28     (e)   Milberg LLP agrees to include in any applicable

3

1  contract a provision binding any acquirer/successor to the
2  obligations of Milberg LLP described in this Agreement, as
3  provided in paragraph 21 of this Agreement;

4         (f)   Milberg LLP agrees: (i) to toll the federal
5  statute of limitations for any criminal offense charged in the
6  SSI and/or arising from or relating to the Investigated Conduct
7  for the period beginning on May 18, 2006 and continuing to March
8  31, 2013; (ii) to waive all speedy trial rights it might have
9  pursuant to the Sixth Amendment of the United States
10 Constitution, Title 18, United States Code, Section 3161, and
11 Federal Rule of Criminal Procedure 48(b) for the period beginning
12 on May 18, 2006 and continuing to March 31, 2013; and (iii) to
13 document the tolling of the statute of limitations and waiver of
14 speedy trial rights by delivering to the USAO concurrently with
15 the execution of this Agreement an executed tolling agreement in
16 the form attached hereto as Exhibit B; and

17        (g)   Milberg LLP agrees: (i) to waive any right it
18 might have to be prosecuted by indictment for the offenses
19 charged in the SSI and/or any other federal criminal offense
20 arising from or relating to the Investigated Conduct; (ii) that
21 any such prosecution may be brought by way of an information
22 rather than an indictment; and (iii) to document its waiver of
23 indictment by delivering to the USAO concurrently with the
24 execution of this Agreement an executed waiver of indictment in
25 the form attached hereto as Exhibit C.

26        Acceptance of Responsibility

27     6.   Milberg LLP acknowledges and accepts responsibility for
28 the conduct of its partners as described in the Statement of

4

1  Facts attached hereto as Exhibit A, with the understanding that

2  the pseudonyms, capitalized terms, and case names used in this

3  Agreement and Exhibit A have the same meanings as are ascribed to

4  them in the SSI.

5      7.   Milberg LLP agrees that it shall not, through any of

6  its counsel, representatives, partners, associates, or executive

7  employees who has authority to speak and is speaking publicly on

8  behalf of Milberg LLP, make any public statement, including any

9  statement of position in litigation, that in whole or in part

10  contradicts any material fact stated in Exhibit A.  Any such

11  contradictory public statement by Milberg LLP shall constitute a

12  breach of this Agreement as governed by paragraphs 26 through 28

13  of this Agreement, and Milberg LLP shall thereafter be subject to

14  prosecution pursuant to the terms of this Agreement.

15     8.   Paragraph 7 above is not intended to apply to any

16  statement made by any individual, as a witness or otherwise,

17  during testimony or otherwise, in connection with or in

18  preparation for proceedings in <u>U.S. v. Milberg LLP et al.</u>, or in

19  any proceeding, whether civil, criminal, or administrative,

20  concerning the Investigated Conduct, unless such individual has

21  authority to speak, and is speaking, publicly on behalf of

22  Milberg LLP.

23     9.   Subject to Milberg LLP's obligations as set forth in

24  paragraphs 6 through 8 above, this Agreement shall not limit

25  Milberg LLP's ability to raise and support defenses and/or assert

26  and support affirmative claims in any civil or administrative

27  proceedings relating to the Investigated Conduct.

28

<u>Cooperation</u>

10.   Milberg LLP agrees to cooperate fully with the USAO, the United States Postal Inspection Service, the Internal Revenue Service, and any other agency designated by the USAO, regarding the Investigated Conduct.

11.   Milberg LLP's obligation to cooperate is not limited to the Agreement Term but shall extend until the completion of the USAO's prosecution of <u>U.S. v. Milberg LLP et al.</u> and any related case.

12.   Milberg LLP agrees that its cooperation shall require the following:

(a)   Complete and truthful disclosure of all non-privileged information as may be requested by the USAO with respect to the activities of Milberg LLP and its present and former partners, employees, and agents concerning all matters relating to the Investigated Conduct;

(b)   On request from the USAO, assembling, organizing, and providing all non-privileged documents, records, or other tangible evidence in Milberg LLP's possession, custody, or control, concerning all matters relating to the Investigated Conduct;

(c)   Providing access to the USAO, and any law enforcement agencies designated by the USAO, to inspect and copy all non-privileged records and documents relating to the Investigated Conduct that are in the possession, custody, or control of Milberg LLP, whether located at Milberg LLP's offices or kept offsite in storage;

(d)   Using its best efforts to facilitate the

6

1  availability of its present and former partners and employees to
2  provide information and/or testimony as requested by the USAO,
3  including sworn testimony in <u>U.S. v. Milberg LLP et al.</u> and any
4  related case, as well as for interviews with federal law
5  enforcement authorities; and

6          (e)   Providing non-privileged testimony and other
7  information deemed necessary by the USAO or a court to identify
8  or establish the original location, authenticity, or other
9  evidentiary foundation necessary to admit into evidence documents
10 in <u>U.S. v. Milberg LLP et al.</u> or any other proceeding as
11 requested by the USAO.

12     <u>Monetary Payments</u>

13     13.   Milberg LLP agrees to pay the sum of $60,000,000, plus
14 applicable interest thereon, as a criminal monetary penalty,
15 which sum shall be paid to the United States Treasury by
16 electronic funds transfer, pursuant to instructions to be
17 provided by the USAO, in the following installments:

18          (a)   $12,500,000 upon execution of this Agreement to a
19 trust account of Zuckerman Spaeder LLP, which amount shall be
20 paid to the United States Treasury within 5 days of the entry of
21 dismissal pursuant to paragraph 22 below;

22          (b)   $10,000,000, plus applicable interest thereon, on
23 or before December 31, 2009;

24          (c)   $10,000,000, plus applicable interest thereon, on
25 or before December 31, 2010;

26          (d)   $10,000,000, plus applicable interest thereon, on
27 or before December 31, 2011; and

28          (e)   $17,500,000, plus applicable interest thereon, on

1  or before December 31, 2012.

2      14.  Milberg LLP agrees to pay, pursuant to instructions to

3  be provided by the USAO, the additional sum of $15,000,000, plus

4  applicable interest thereon, to the United States Postal

5  Inspection Service Consumer Fraud Fund (the "Consumer Fraud

6  Fund"), to further the efforts of the Postal Inspection Service

7  in preventing frauds on consumers, which sum shall be paid by

8  electronic funds transfer, pursuant to instructions to be

9  provided by the USAO, in the following installments:

10          (a)   $10,000,000 upon the execution of this Agreement

11 to a trust account of Zuckerman Spaeder LLP, which amount shall

12 be paid to the Consumer Fraud Fund within 5 days of the entry of

13 dismissal pursuant to paragraph 22 below; and

14          (b)   $5,000,000, plus applicable interest thereon, on

15 or before December 31, 2009.

16     15.  Milberg LLP will pay interest on each of the

17 installments described in paragraphs 13(b) through (e) and 14(b)

18 above from the date of execution of this Agreement to the date of

19 each such installment payment.  Simple interest on the

20 outstanding balance of each installment shall be calculated each

21 calendar quarter using the lesser of (a) the published Wall

22 Street Journal Prime Rate effective on the last business day of

23 that quarter or (b) 5% per annum.  Milberg LLP at its own

24 election may make payment in advance of the due date for any of

25 the installments provided by paragraphs 13 through 15, consisting

26 of the principal and accrued interest thereon as of the payment

27 date, without additional charge or penalty.

28     16.  During the Agreement Term, in the event that Milberg

8

1  LLP's Gross Revenues (as defined below) exceed either $40,000,000
2  for any calendar quarter or $120,000,000 for any consecutive 4
3  calendar quarters commencing July 1, 2008, Milberg LLP will
4  within 45 days of receipt of such revenues exceeding the amounts
5  specified above ("excess Gross Revenues") pay to the United
6  States the lesser of:

7          (a)    The balance of all unpaid installments described
8  in paragraphs 13(b) through (e) and 14(b) above; or

9          (b)    Fifty-five (55%) of the amount by which Gross
10 Revenues exceeds $40,000,000 for that calendar quarter or
11 $120,000,000 for 4 consecutive calendar quarters, whichever is
12 greater.

13     For purposes of this Agreement, "Gross Revenues" means
14 aggregate gross revenues from all sources, prior to any taxes,
15 including but not limited to cash and cash equivalents received
16 from any former Milberg LLP partner or the Coughlin Stoia Geller
17 Rudman & Robbins LLP law firm ("Coughlin LLP") but excluding: (i)
18 any amounts due to Coughlin LLP pursuant to the May 1, 2004
19 agreement between Coughlin LLP and Milberg LLP (the "Separation
20 Agreement"); (ii) any amounts due for referrals approved by the
21 Compliance Monitor in accordance with Exhibit F hereto; (iii) in
22 any case in which Milberg LLP receives aggregate attorneys' fees,
23 any amounts due to co-counsel of record consistent with the
24 court's fee orders, if any, in such case; (iv) loan proceeds to
25 be used in the ordinary course of business to fund the operations
26 of Milberg LLP; and (v) any excess Gross Revenues upon which
27 payment was made pursuant to this paragraph 16.

28     17.    Payments made pursuant to paragraph 16 above shall be

9

1  applied to satisfy the unpaid balances of the installments

2  described in paragraphs 13 and 14 above in the following order:

3              (a)    installment described in paragraph 14(b); then

4              (b)    installment described in paragraph 13(b); then

5              (c)    installment described in paragraph 13(e); then

6              (d)    installment described in paragraph 13(d); then

7              (e)    installment described in paragraph 13(c).

8       18.   Until such time as Milberg LLP has fully satisfied all

9  its payment obligations under paragraphs 13 through 17 above,

10  Milberg LLP will:

11             (a)    provide a written report to the USAO no later than

12  15 days after the last day of each calendar quarter, that

13  accurately states:

14                 (i)    the amount of Gross Revenues for the

15  quarterly period, specifically identifying any and all sources of

16  Gross Revenues during the reporting period that exceed $500,000.

17  For example, if Gross Revenues exceeding $500,000 derive from

18  attorneys' fees and cost reimbursement obtained by Milberg LLP in

19  connection with a particular lawsuit, the name, case number, and

20  court for that lawsuit will be identified in the report, as well

21  as the amounts of gross attorneys' fees and costs received;

22                 (ii)   any payments to Coughlin LLP pursuant to the

23  Separation Agreement;

24                 (iii)  any referrals paid, together with a

25  statement as to whether such referrals were approved by the

26  Compliance Monitor;

27                 (iv)   any payments to co-counsel of record from

28  aggregate fees received by Milberg LLP, together with a copy of

1  any fee orders by the court in such case;

2       (v)  any other division or sharing of attorneys'

3  fees received by Milberg LLP with another lawyer or law firm

4  which was not counsel of record in the case in which those fees

5  were awarded, together with a statement as to whether such

6  division or sharing of attorneys' fees was approved by the

7  Compliance Monitor; and

8       (vi)  any proceeds from loans, and the existence

9  of any line of credit or other financial accommodation, exceeding

10  $500,000, together with a description of any security interests

11  or liens granted by Milberg LLP to secure such loans or lines of

12  credit or financial accommodations.

13       (b)  provide written notice to the USAO of the amount

14  by which its Gross Revenues have exceeded $40,000,000 for the

15  preceding calendar quarter or $120,000,000 for the preceding

16  consecutive 4 calendar quarters, no later than 15 days after such

17  excess Gross Revenues are in the possession, custody, or control

18  of Milberg LLP.

19  <u>Consent Judgment</u>

20     19.  Concurrent with the execution of this Agreement, the

21  parties shall execute a Stipulation for Entry of Consent Judgment

22  with respect to all of the amounts not yet paid under paragraphs

23  13 through 15 above.  The USAO may immediately file,

24  notwithstanding paragraphs 26 through 28 below, the Stipulation

25  for Entry of Consent Judgment and the Complaint and Consent

26  Judgment based thereon (copies of which are attached hereto as

27  Exhibits D and E, respectively), if and only if Milberg LLP

28  defaults on any payment obligation set forth in paragraphs 13

1  through 17 above.   The USAO may also file the Stipulation for
2  Entry of Consent Judgment and the civil Complaint and Consent
3  Judgment based thereon following a final determination of breach
4  pursuant to paragraphs 26 through 28 below.   In the event of such
5  default or breach, Milberg LLP shall be obligated immediately to
6  pay a sum of all of the amounts not yet paid under paragraphs 13
7  through 15 of this Agreement.   The parties agree that the Court
8  shall have jurisdiction and venue over the civil Complaint in
9  order to enforce the Consent Judgment in the event of a default
10  or breach by Milberg LLP, as provided by this paragraph.

11      Remedial Measures

12      20.   Milberg LLP agrees, within 30 days of the execution of
13  this Agreement, to maintain and enforce a "best practices"
14  program at Milberg LLP as further described in Exhibit F, to
15  avoid any potential future misconduct of the type described in
16  Exhibit A, which "best practices" program shall be maintained and
17  continue in place until 24 months after the execution of this
18  Agreement.   No later than 45 days after the execution of this
19  Agreement, Milberg LLP will provide to the USAO a written
20  certification from the Compliance Monitor (as defined in Exhibit
21  F) confirming that the "best practices" program is in place at
22  Milberg LLP and is being enforced satisfactorily; and thereafter
23  such certifications by the Compliance Monitor shall be provided
24  to the USAO every three months until 24 months after the
25  execution of this Agreement.

26      Acquirer/Successor Obligations

27      21.   Milberg LLP agrees that if it sells or transfers all or
28  a majority (by value) of its assets (including accounts

12

1  receivable and cash), case inventory, or business operations as
2  they exist as of the effective date of this Agreement to one or
3  more other law partnership(s), corporation(s), sole
4  proprietorship(s), or any other acquirer during the term of this
5  Agreement, it shall include in any applicable contract a
6  provision binding the acquirer/successor to the obligations of
7  Milberg LLP described in this Agreement.  This paragraph 21 does
8  not apply:

9          (a)   to any partner, associate, or employee of Milberg
10 LLP, or any group of partner(s), associates(s), or employees(s)
11 of Milberg LLP who, consistent with the terms of the partnership
12 agreement, terminate their respective relationship(s) with
13 Milberg LLP, so long as such termination does not include a
14 transfer of all or majority (by value) of Milberg LLP's assets
15 (including accounts receivable and cash), case inventory, or
16 business operations as they exist as of the effective date of
17 this Agreement; or

18         (b)   to any security interests or liens granted by
19 Milberg LLP to secure loans or other financial accommodations
20 made to the firm in the ordinary course of its business to fund
21 the operations of Milberg LLP or to the exercise by such secured
22 creditors of their respective rights and remedies.

23     C.    THE USAO's PROMISES AND OBLIGATIONS
24     Dismissal
25     22.  Upon Milberg LLP's completion of all its obligations
26 set forth in paragraphs 5(f), 5(g), 13(a), 14(a), and 19 above,
27 and Milberg LLP's provision of the initial compliance
28 certification required by paragraph 20 above, the USAO will move

1  to dismiss without prejudice the SSI in <u>U.S. v. Milberg LLP et</u>

2  <u>al.</u> as against Milberg LLP only.  Milberg LLP agrees that such

3  dismissal shall be without prejudice to any subsequent

4  reinstating of the charges against Milberg LLP in the SSI, in

5  accordance with this Agreement, which is expressly conditioned

6  upon such dismissal.

7       <u>Non-Prosecution</u>

8       23.  Subject to the breach provisions of paragraphs 26

9  through 28 below, the USAO agrees:

10          (a)  Not to prosecute Milberg LLP for any crimes

11 arising out of any of the Investigated Conduct occurring prior to

12 May 18, 2006 (collectively the "non-prosecution conduct").  The

13 non-prosecution provisions of this sub-paragraph 23(a) are

14 binding on the USAO, the United States Attorney's Offices for

15 each of the other 93 judicial districts of the United States

16 ("the other USAOs"), and the United States Department of Justice

17 ("DOJ"); and

18          (b)  Not to pursue any additional civil or criminal

19 forfeiture claims against Milberg LLP based on conduct occurring

20 prior to the execution of this Agreement and arising out of the

21 non-prosecution conduct.

22      24.  Except as expressly provided in paragraph 23 above,

23 this Agreement does not preclude or limit the USAO, the other

24 USAOs, or DOJ from investigating or prosecuting Milberg LLP or

25 any other individuals or entities, including any present or

26 former partners or employees of Milberg LLP.

27      25.  Nothing in this Agreement shall preclude or limit the

28 USAO, the other USAOs, or DOJ from bringing a criminal

14

1  prosecution against Milberg LLP for making false statements,

2  obstruction of justice, perjury, subornation of perjury, or

3  aiding and abetting or conspiring to commit such offenses based

4  on Milberg LLP's conduct in performing its obligations under this

5  Agreement.

6      D.    BREACH OF AGREEMENT

7      26.    It shall constitute a breach of this Agreement for

8  Milberg LLP, during the Agreement Term, to commit any federal

9  crime or to knowingly engage in conduct that constitutes a

10  material failure to abide by or fully perform any of its promises

11  and obligations set forth in paragraphs 5 through 21 of this

12  Agreement, including any default on any of the payment

13  obligations set forth in paragraphs 13 through 17 above.

14      27.    In the event that the USAO determines, in its sole

15  discretion, that Milberg LLP has breached this Agreement, the

16  USAO shall provide Milberg LLP with written notice of this

17  determination, and thereafter:

18      (a)    Milberg LLP shall have 14 calendar days from the

19  date of that written notice in which to make a presentation to

20  the USAO to demonstrate that in fact no breach has occurred or,

21  to the extent applicable, that the breach is not a knowing breach

22  or has been cured;

23      (b)    the USAO shall thereafter provide written notice

24  to Milberg LLP of its final determination regarding whether or

25  not a breach has occurred; and

26      (c)    Milberg LLP shall thereafter have 30 days to

27  obtain a decision from a higher authority within DOJ reversing or

28  modifying the USAO's determination that Milberg LLP has breached

15

1   this Agreement -- in the absence of such a decision, the USAO's

2   determination of breach shall become final.

3       28.   Should there be a final determination, in accordance

4   with the procedures set forth in paragraph 27 above, that Milberg

5   LLP has breached this Agreement, then:

6           (a)   Milberg LLP shall be released from its cooperation

7   obligations referenced in paragraphs 10 through 12 above, and its

8   maintenance of the "best practices" program referenced in

9   paragraph 20 above;

10          (b)   the United States shall not be obligated to repay

11  any amounts paid under paragraphs 13 through 17 and 19 of this

12  Agreement, Milberg LLP shall be obligated immediately to pay all

13  of the amounts not yet paid under paragraphs 13 through 15 of

14  this Agreement, and the USAO will immediately be free to file the

15  Stipulation for Entry of Consent Judgment, the civil Complaint,

16  and the Consent Judgment described in paragraph 19 above;

17          (c)   the USAO, the other USAOs, and DOJ shall

18  immediately be free to use the waiver of indictment provided by

19  Milberg LLP in Exhibit C attached hereto and to prosecute Milberg

20  LLP by way of information for any federal offense relating to the

21  Investigated Conduct;

22          (d)   any such prosecution by the USAO, the other USAOs,

23  or DOJ may be premised upon any documents, testimony or other

24  information provided by or on behalf of Milberg LLP to the USAO

25  or any government agency at any time.   Milberg LLP shall be

26  unable to assert that any such documents, testimony, or other

27  information: (i) were obtained in violation of any

28  constitutional, statutory, or rule-based right or privilege; (ii)

16

1  are subject to any attorney-client privilege or work product

2  protection that may be claimed by Milberg LLP; or (iii) are

3  inadmissible because of Rule 11(f) of the Federal Rules of

4  Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or

5  any other constitutional provision, statute, or rule;

6         (e)   In any proceeding or trial in any criminal

7  prosecution relating to the Investigated Conduct, Milberg LLP

8  shall be deemed to stipulate to the admissibility into evidence

9  of Exhibit A as an admission by Milberg LLP, and shall be

10  precluded from offering any evidence or argument that the facts

11  stated in Exhibit A are untrue or misleading; and

12         (f)   In any proceeding or trial in any criminal

13  prosecution relating to the Investigated Conduct, Milberg LLP

14  shall be precluded from asserting any claim or defense based on:

15  (i) preindictment delay with respect to any period of time

16  between May 18, 2006 and March 31, 2013; (ii) any violation of

17  any speedy trial rights that have been waived by Milberg LLP as

18  provided in Exhibit B hereto; and (iii) any statutes of

19  limitations that have been tolled by Milberg LLP as provided in

20  Exhibit B hereto.

21     In the event Milberg defaults on the payment obligations

22  under paragraphs 13 through 17 above, entry of the Consent

23  Judgment pursuant to paragraph 19 does not preclude other

24  non-monetary remedies under this paragraph.  In the event that

25  the USAO finally determines to prosecute the Firm under this

26  paragraph, the financial penalty to be sought by the USAO in such

27  a prosecution shall be limited to the unpaid amount of the

28  payments provided for in paragraphs 13 and 14 of this agreement,

17

1  plus accrued interest, and the USAO agrees not to seek any

2  additional amounts in forfeiture, fines, penalties, or other

3  financial remedies.

4      E.    <u>SCOPE OF THE AGREEMENT</u>

5      29.  Except as specified in sub-paragraph 23(a) above, which

6  makes the non-prosecution provisions of this Agreement binding on

7  the USAO, the other USAOs, and DOJ, this Agreement is binding

8  only on Milberg LLP and the USAO, and does not bind any other

9  federal, state, or local agency or prosecuting authority, or any

10  federal, state, or local administrative or regulatory authority.

11      F.    <u>MISCELLANEOUS PROVISIONS</u>

12      30.  This Agreement, with its attached Exhibits A through F,

13  sets forth all the terms of the agreement between Milberg LLP and

14  the USAO.  No modifications or additions to this Agreement, or to

15  its attached Exhibits A through F, shall be valid unless they are

16  ///

17  ///

18

19

20

21

22

23

24

25

26

27

28

in writing and signed by the USAO, Milberg LLP's

attorneys, and a duly authorized partner of Milberg LLP.

AGREED AND ACCEPTED:

UNITED STATES DEPARTMENT OF JUSTICE:

_____          6/16/2008
GEORGE S. CARDONA                          Date
Chief Assistant United States Attorney
Central District of California

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:

_____          6/16/2008
GEORGE S. CARDONA                          Date
Chief Assistant United States Attorney

_____          6/16/08
DOUGLAS A. AXEL                            Date
Assistant United States Attorney
Chief, Major Frauds Section

_____          6/16/08
RICHARD E. ROBINSON                        Date
Assistant United States Attorney
Major Frauds Section

Milberg LLP


_____          _____
                                           Date
Partner
Milberg LLP

## CERTIFICATIONS

I, _____, am a partner of the law firm

Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

19

1  in writing and signed by the USAO, Milberg LLP's

2  attorneys, and a duly authorized partner of Milberg LLP.

3  AGREED AND ACCEPTED:

4  UNITED STATES DEPARTMENT OF JUSTICE:

5

6  _____          _____
   GEORGE S. CARDONA                    Date
7  Chief Assistant United States Attorney
   Central District of California
8
   UNITED STATES ATTORNEY'S OFFICE
9  FOR THE CENTRAL DISTRICT OF CALIFORNIA:

10

11 _____          _____
   GEORGE S. CARDONA                    Date
12 Chief Assistant United States Attorney

13

14 _____          _____
   DOUGLAS A. AXEL                      Date
15 Assistant United States Attorney
   Chief, Major Frauds Section
16

17

18 _____          _____
   RICHARD E. ROBINSON                  Date
19 Assistant United States Attorney
   Major Frauds Section
20
   Milberg LLP
21

22 _____          6/16/08
                                        _____
23                                      Date
   Partner
24 Milberg LLP

25              **CERTIFICATIONS**

26    I, _SANFORD P. DUMAIN_, am a partner of the law firm

27 Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

28
                        19

1  Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP,"
2  "Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss
3  Bershad Specthrie & Lerach" ("Milberg LLP"), and am duly
4  authorized, in accordance with all requirements of the Milberg
5  LLP partnership agreement, to enter into this Agreement on behalf
6  of Milberg LLP.  I understand the terms of this Agreement, and I
7  voluntarily, knowingly, and willfully agree, on behalf of Milberg
8  LLP, to all of those terms without force, threat, or coercion.
9  No promises, representations, or inducements, other than those
10  set forth in this Agreement, have been made to Milberg LLP or me
11  to cause me to enter into this Agreement on behalf of the law
12  firm.  Milberg LLP's counsel of record, Zuckerman Spaeder LLP and
13  Mayer Brown LLP, as well as Viet Dinh, a principal of Bancroft
14  Associates PLLC, have advised Milberg LLP concerning this
15  Agreement, including the rights and defenses that Milberg LLP
16  will be giving up by entering into the Agreement.  Milberg LLP
17  and I are satisfied with the counsel that Zuckerman Spaeder LLP,
18  Mayer Brown LLP, and Viet Dinh have provided to Milberg LLP in
19  this matter.

20
21  _____          6/16/08
                                      ‾‾‾‾‾‾‾‾‾‾
22  Partner,                          Date
    Defendant Milberg LLP
23

24
25     I, Bryan Daly, a member of the law firm Mayer Brown LLP, am
26  counsel of record in this case for defendant Milberg LLP.  I
27  believe that  Sanford P. Dumain  is a partner of Milberg LLP
28  who is duly authorized to enter into this Agreement on behalf of

                                  20

1  Milberg LLP. To the best of my knowledge and belief, Milberg

2  LLP's decision to enter into this Agreement is an informed and

3  voluntary one.

4

5  _____          6|16|08
   BRYAN DALY                        Date
6  Mayer Brown LLP
   Counsel for Milberg LLP
7

8     I, William W. Taylor, a member of the law firm of Zuckerman

9  Spaeder LLP, am counsel of record in this case for defendant

10  Milberg LLP. I believe that _____ is a partner

11  of Milberg LLP who is duly authorized to enter into this

12  Agreement on behalf of Milberg LLP. To the best of my knowledge

13  and belief, Milberg LLP's decision to enter into this Agreement

14  is an informed and voluntary one.

15

16  _____          _____
   WILLIAM W. TAYLOR, III             Date
17  Zuckerman Spaeder LLP
   Counsel for Milberg LLP
18

19     I, Viet D. Dinh, a principal of Bancroft Associates PLLC,

20  serve as counsel for Milberg LLP to independently advise and

21  assist Milberg LLP in negotiating this Agreement with the USAO.

22  I have carefully reviewed and discussed the terms of this

23  Agreement with _Sanford P. Dumain_, whom I believe is a partner

24  of Milberg LLP duly authorized to enter into this Agreement on

25  behalf of Milberg LLP. To the best of my knowledge and belief,

26  Milberg LLP's decision to enter into this Agreement is an

27  ///

28

                              21

1  Milberg LLP.  To the best of my knowledge and belief, Milberg

2  LLP's decision to enter into this Agreement is an informed and

3  voluntary one.

4

5

   _____        _____
   BRYAN DALY                               Date
6  Mayer Brown LLP
   Counsel for Milberg LLP
7

8       I, William W. Taylor, a member of the law firm of Zuckerman

9  Spaeder LLP, am counsel of record in this case for defendant

10 Milberg LLP.  I believe that _Janfnsr. Vumaid_ is a partner

11 of Milberg LLP who is duly authorized to enter into this

12 Agreement on behalf of Milberg LLP.  To the best of my knowledge

13 and belief, Milberg LLP's decision to enter into this Agreement

14 is an informed and voluntary one.

15

16 _____        _6_/_10_/_08_
   WILLIAM W. TAYLOR, III                    Date
17 Zuckerman Spaeder LLP
   Counsel for Milberg LLP
18

19

20      I, Viet D. Dinh, a principal of Bancroft Associates PLLC,

   serve as counsel for Milberg LLP to independently advise and
21
   assist Milberg LLP in negotiating this  Agreement with the USAO.
22
   I have carefully reviewed and discussed the terms of this
23
   Agreement with _____, whom I believe is a partner
24
   of Milberg LLP duly authorized to enter into this Agreement on
25
   behalf of Milberg LLP.  To the best of my knowledge and belief,
26
   Milberg LLP's decision to enter into this Agreement is an
27
   ///
28

                              21

1   informed and voluntary one.

2

3   _____          6/16/08
    VIET D. DINH                         Date
4   Bancroft Associates PLLC
    Counsel for Milberg LLP
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        22

**EXHIBIT A TO MILBERG LLP CASE DISPOSITION AGREEMENT**

## EXHIBIT A TO MILBERG LLP CASE DISPOSITION AGREEMENT

### STATEMENT OF ADMITTED FACTS

In connection with the Case Disposition Agreement entered into between Milberg LLP (previously known as "Milberg Weiss LLP," "Milberg Weiss & Bershad LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach,") (the "Firm") and the United States Attorney's Office for the Central District of California ("USAO") in the case of <u>United States v. Milberg Weiss LLP, et al.</u>, Case No. CR 05-587(D)-JFW ("<u>U.S. v. Milberg</u>"), and with the understanding that the pseudonyms, capitalized terms, and case names herein have the same meanings as are ascribed to them in the second superseding indictment in <u>U.S. v. Milberg</u> (the "Indictment"), the Firm admits and accepts responsibility for the following:

### Introduction

1.    The Firm is a law firm partnership, which at all relevant times maintained its principal offices in New York, New York and, from 1976 through on or about May 2004, in San Diego, California.  On May 1, 2004, approximately 28 equity partners, 20 non-equity partners, and 75 other attorneys at the Firm, at that time known as Milberg Weiss Bershad Hynes & Lerach LLP, withdrew from the Firm and established Lerach Coughlin Stoia & Robbins LLP, which maintained its principal office in San Diego, California.

-1-

2.    The Firm specialized in serving as plaintiffs' counsel
in class actions and shareholder derivative actions (collectively
"Class Actions") brought in federal and state courts throughout
the United States, including in the Central District of
California.

3.    As counsel seeking to represent and representing class
members or shareholders not before the courts (collectively
"absent class members"), the Firm and its attorneys had fiduciary
duties of loyalty, honesty, and trust to the absent class
members.  Individuals who sought to be authorized by the courts
to serve and who served as representative plaintiffs on behalf of
absent class members (hereinafter "named plaintiffs") likewise
had fiduciary duties of loyalty, honesty, and trust to those
absent class members.  As a result of these duties, the Firm and
its attorneys (a) could not give preferential treatment to the
interests of named plaintiffs over the interests of the absent
class members; (b) could not act in a deceitful or unethical
manner toward the court or the absent class members; and (c) were
required to disclose to the court any fact that could reasonably
affect the ability of the Firm and its attorneys to fairly or
adequately represent the interests of the absent class members.

<u>Secret Kickback Payments to Plaintiffs</u>

4.    Beginning in or before 1979 and continuing into 2005,
in order to facilitate the recruitment and retention of named
plaintiffs, former senior Firm partners Melvyn I. Weiss

("Weiss"), William S. Lerach ("Lerach"), David J. Bershad

("Bershad"), Steven G. Schulman ("Schulman"), Partner E, Partner

F, and Partner G (collectively the "Conspiring Former Partners"),

all of whom exercised management authority over the Firm, agreed

to and did secretly pay kickbacks to named plaintiffs in

Class Actions in which the Firm served as counsel. Specifically,

they agreed to and did pay to certain named plaintiffs a portion

of the attorneys' fees that the Firm obtained in Class Actions in

which such individuals served, or caused a relative, associate,

or entity they controlled to serve, as a named plaintiff for the

Firm. Generally, these named plaintiffs were promised that they

would be paid approximately 10% of the net attorneys' fees that

the Firm obtained in their respective Class Actions, although

they were also told by certain of the Conspiring Former Partners

that the amount would be lower if they were paid in cash or if

the Firm had payment obligations on the same case to others.

5.    During the times that the Conspiring Former Partners

made these secret kickback payment arrangements, they were senior

partners of the Firm who controlled the management of the Firm.

Throughout the conspiracy, the Conspiring Former Partners took

affirmative steps to conceal their illegal activities from other

partners, associates, and employees of the Firm.

6.    By entering into such payment arrangements, the

Conspiring Former Partners were able to secure a reliable source

of individuals who were ready, willing, and able to serve as

-3-

named plaintiffs in Class Actions that the Firm wanted to bring.
In addition, some of these individuals would investigate and
propose to the Firm lucrative potential Class Actions for the
Firm to bring.  Such payment arrangements enabled the Firm to
file more Class Actions, and frequently to file them more
quickly, than would be possible absent such arrangements.

    7.    Included among the named plaintiffs who were paid
kickbacks by the Firm were those referred to in the Indictment as
the "Paid Plaintiffs," namely, Howard J. Vogel ("Vogel"), Seymour
M. Lazar ("Lazar"), Steven G. Cooperman ("Cooperman"), Cooperman
Plaintiff 1 and Cooperman Plaintiff 2, and the Florida Plaintiffs
(collectively the "Paid Plaintiffs").  The Class Actions in which
the Paid Plaintiffs served, or caused their spouses or entities
they controlled to serve, as named plaintiffs for the Firm are
referred to hereinafter as the "Lawsuits."  ("Lawsuits" do not
include Class Actions in which the named plaintiff was an
associate of a Paid Plaintiff or a relative other than the spouse
of a Paid Plaintiff, even though the Firm paid kickbacks to the
Paid Plaintiff for referring such associates and relatives to the
Firm to serve as named plaintiffs.)  The specific Lawsuits for
the Paid Plaintiffs are further identified in the exhibit
attached hereto.

    8    In summary:

        a.    Vogel served, and caused his relatives and an
entity he controlled to serve, as named plaintiffs in

-4-

approximately forty Class Actions for the Firm between 1991 and 2005 and, as a result, the Firm secretly paid him approximately $2.5 million;

b.    Lazar served, and caused his relatives and an entity he controlled to serve, as named plaintiffs in approximately sixty-seven Class Actions for the Firm between 1976 and 2004 and, as a result, the Firm secretly paid him approximately $2.6 million;

c.    Cooperman served, and caused his relatives and associates (including Cooperman Plaintiff 1 and Cooperman Plaintiff 2) to serve, as named plaintiffs in approximately seventy Class Actions for the Firm between 1988 and 1999 and, as a result, the Firm secretly paid him approximately $6.2 million, some of which was to be shared with Cooperman Plaintiff 1 and Cooperman Plaintiff 2;

d.    The Florida Plaintiffs served as named plaintiffs in approximately one hundred Class Actions for the Firm between 1983 and 2004 and, as a result, were secretly paid hundreds of thousands of dollars in cash; and

e.    The Firm obtained approximately $239 million in attorneys' fees in connection with the Lawsuits and litigation resolving the Lawsuits.

9.    The Firm's kickback payments to and payment arrangements with the Paid Plaintiffs were illegal because they violated laws and regulations: (a) prohibiting an attorney from paying a person

to maintain his or her lawsuit; (b) prohibiting paying a
fiduciary, without the consent of the principal, with the intent
to influence his or her conduct as a fiduciary; and (c)
prohibiting an attorney from sharing attorneys' fees with persons
who are not duly licensed to practice law.  Additionally, such
payments and payment arrangements created a conflict of interest
between the Paid Plaintiffs and absent class members because, as
a result, the Paid Plaintiffs had a greater interest in
maximizing the amount of attorneys' fees awarded to the Firm than
in maximizing the net recovery to the absent class members.

        10.  At all relevant times, the Conspiring Former Partners
knew that the Firm's kickback payments to and payment
arrangements with named plaintiffs had to be concealed from the
federal and state courts presiding over the Class Actions
(hereinafter the "presiding courts").  Discovery by the presiding
courts of a secret payment arrangement with a named plaintiff in
a Class Action could have resulted in, among other things:
(a) the disqualification of the named plaintiff from serving as a
class representative in that Action and other Class Actions;
(b) the disqualification of the Firm, including the Conspiring
Former Partners, from serving as class counsel in that action and
other Class Actions; and (c) referral to a disciplinary committee
and a risk of revocation or suspension of one or more of the
Conspiring Former Partners' licenses to practice law.

11.   To conceal the payments and payment arrangements, the
Conspiring Former Partners made and caused to be made false and
misleading representations in complaints, motions, and other
pleadings filed and caused to be filed by the Firm in the
Lawsuits.  Among such misrepresentations were representations
that the Paid Plaintiffs or their spouses or entities they
controlled had no interest in conflict with, or antagonistic to,
absent class members when, in fact, the Firm's secret payment
arrangement with the Paid Plaintiffs created a significant
conflict of interest, as described above.

12.   Conspiring Former Partners also prepared paid named
plaintiffs for their testimony in a manner intended to assure
that they would lie when questioned concerning the existence of
any payments or payment arrangements.  As a result, such
plaintiffs, including the Paid Plaintiffs, made false statements
designed to conceal the existence of their kickback payment
arrangements with the Firm in under-oath testimony and in written
certifications, declarations, and other documents signed under
penalty of perjury in Class Actions.

13.   To make sure the Firm's payments to the Paid Plaintiffs
would not be discovered, Weiss, Lerach, Bershad and other of the
Conspiring Former Partners personally delivered some of these
payments in cash.  Regarding the cash used to pay these
plaintiffs:

-7-

a.    Weiss, Lerach, Bershad, and other of the
Conspiring Former Partners pooled their personal cash into a fund
that Bershad maintained in his office at the Firm, which was used
by the Conspiring Former Partners to supply cash for secret
payments to paid plaintiffs and others.

b.    Weiss, Lerach, Bershad, and other Conspiring
Former Partners who had contributed cash caused the Firm to award
"bonuses" to them, amounting to the cash they had contributed,
plus additional amounts intended to approximate the income taxes
payable by them on such "bonuses."

c.    The Firm's partnership agreements included
provisions for the award of discretionary bonuses.  A purpose of
these bonus provisions was to enable Weiss, Lerach, Bershad, and
other Conspiring Former Partners, who determined in their sole
discretion the allocation of the bonuses, to use Firm profits to
compensate themselves for the cash they had contributed to the
secret payment fund.  The government has no evidence that any
current member of the Firm had knowledge or notice of the
improper use of these bonus provisions as described above.  There
is nothing in these bonus provisions themselves that would give
uninvolved partners notice that these bonus provisions might be
used for such improper purposes.

14.  The Conspiring Former Partners also caused the Firm to
pay the Paid Plaintiffs by check made payable to lawyers or other
professionals selected by the Paid Plaintiffs, who then used and

-8-

disbursed the payments at the direction, and for the benefit, of
the Paid Plaintiffs.  The Conspiring Former Partners falsely
disguised such payments as "referral fees" or "professional fees"
to the intermediary lawyer or professional.  The Conspiring
Former Partners knew and intended, however, that such payments
were for the exclusive benefit of the Paid Plaintiffs, and not
for the intermediary to whom the check was made out.  In
addition, in connection with the Newhall Land class action, in
which Cooperman served as a paid plaintiff, Weiss made a $175,000
payment by personal check to Cooperman, disguised as a phony
"option" payment for artwork.

15.  The concealment of the payments to and payment
arrangements with Paid Plaintiffs from courts presiding over the
Lawsuits impeded the ability of these courts to assess and
determine: (a) the appropriateness of approving the Lawsuits to
proceed as Class Actions; (b) the ability of the Paid Plaintiffs,
their spouses or the entities they controlled to fairly and
adequately represent the interests of the absent class members;
(c) the ability of the Firm to fairly and adequately represent
the interests of the absent class members; (d) the fairness of
settlements of the Lawsuits proposed by the Firm and the Paid
Plaintiffs, their spouses, or entities they controlled; and
(e) whether and the extent to which the Firm should be awarded
the attorneys' fees it sought in the Lawsuits.

<u>Payments to Stockbrokers</u>

16.   In addition to the foregoing, cash from the fund
described in paragraph 13 above was also used by Bershad,
Schulman, and Partner E to secretly pay kickbacks to several
stockbrokers for referring their clients and other individuals to
serve as named plaintiffs for the Firm.

17.   The secret kickback payments to stockbrokers were
illegal because they violated laws and regulations:
(a) prohibiting stockbrokers from soliciting or accepting,
directly or indirectly, remuneration for assisting an attorney in
obtaining the representation of any person in any private action
arising under this chapter or under the Securities Act of 1933,
<u>see</u> 15 U.S.C. § 78o(c)(8) (effective December 22, 1995); (b)
prohibiting paying a fiduciary (i.e. the stockbroker), without
the consent of the principal (i.e. the brokerage firm employing
the stockbroker), with the intent to influence his or her conduct
as a fiduciary; and (c) prohibiting an attorney from sharing
attorneys' fees with persons who are not duly licensed to
practice law.

18.   Regarding cash kickbacks paid to stockbrokers:

(a)   Schulman brought to the attention of Bershad and
other Conspiring Former Partners two stockbrokers located in
Albany, New York, who were willing to refer clients to the Firm
in exchange for cash compensation (the "Albany brokers").   In the
1980s and 1990s, the Albany brokers referred clients to the Firm

-10-

who served as named plaintiffs in successful class actions.

(b)   In turn, Schulman received substantial sums of
cash from Bershad, supplied from the fund, which Schulman then
delivered from time to time to the Albany brokers.  Bershad also
delivered a cash payment to one of the Albany brokers.

(c)   Bershad delivered a cash payment to another stock
broker located on Long Island, New York who referred clients (the
"Long Island broker"), and provided cash from the fund to
Partner E to make additional cash payments to the Long Island
broker for client referrals.

(d)   Weiss, Lerach, Bershad, Schulman, and Partner E
knew of the practice of making secret cash payments to stock
brokers, knew that it was improper, and knew that it had to be
kept secret.  Certain of these Conspiring Former Partners used
the annual discretionary bonus awards described in
paragraph 13(b) above to reimburse themselves for the cash they
contributed to pay the Albany brokers and the Long Island broker,
among others, for plaintiff referrals.

19.  The Conspiring Former Partners caused the Firm to pay
New York stockbroker Paul L. Tullman ("Tullman") by check for
referring his clients, friends, and clients of other stockbrokers
Tullman knew to serve as named plaintiffs for Firm.  The Firm's
payments to Tullman made by check were identified in the Firm's
records as "referral fees," "fees to others," or "professional
fees" to Tullman purportedly for his functioning in the capacity

-11-

of a lawyer. Although Tullman was at all relevant times a member of the New York State Bar, in fact, Tullman did not work as a lawyer on such cases, and was being paid for his client contacts and resources as a stockbroker.

20. From the late 1970s through 2001, while Tullman was employed full-time as a stockbroker, Tullman provided to the Firm individuals who served as named plaintiffs in more than seventy Class Actions. As a result, between 1981 and 2005, certain of the Conspiring Former Partners caused the Firm to pay Tullman checks totaling approximately $8.85 million. With respect to these Class Actions, the Firm obtained attorneys' fees in excess of $102 million. One of the payments to Tullman, in the amount of $1,074,291, was made on June 20, 2005, well after the Firm knew that its relationship with Tullman was under investigation.

Misrepresentations to Courts Regarding Expert John Torkelsen

21. Beginning at least as early as 1985 and continuing through at least 2004, the Firm employed the services of John Torkelsen and his associated entities, including Princeton Venture Research, Inc. and Equity Valuation Advisors, Inc. (collectively "Torkelsen"). The Firm used Torkelsen to provide damages and valuation analysis and testimony in Class Actions.

22. The plaintiffs in certain Class Actions designated Torkelsen as an expert witness. In such Class Actions, the Firm and its co-counsel could not pay Torkelsen on a contingent basis, i.e. could not condition Torkelsen's right to payment on the

result obtained in a case.

23.    From at least as early as 1985 and continuing through
at least 1998, certain former senior Firm partners caused the
Firm to retain Torkelsen on a contingent basis.  That is,
Torkelsen's right to be compensated depended on whether and the
degree to which the Firm was successful in the litigation for
which Torkelsen provided testimony or consultation.  The Firm's
contingent fee arrangement with Torkelsen applied to cases in
which Torkelsen provided expert testimony for the Firm, as well
as cases in which Torkelsen provided only non-testimonial
consulting services.

24.    In under-oath testimony and in declarations signed
under penalty of perjury in support of fee applications in a
number of cases, Torkelsen represented that he had been retained
pursuant to a "non-contingent" payment arrangement with the Firm.
In fact, as certain former senior partners of the Firm and
Torkelsen well knew, these statements were false because
Torkelsen had in fact been retained by the Firm on a contingent
basis.

25.    In order to ensure that Torkelsen's overall
compensation was commensurate with the work he did on both
winning and losing cases for the Firm, Torkelsen, with the
knowledge and approval of certain former senior Firm partners,
often submitted and caused to be submitted reimbursement
applications to courts that were fraudulently inflated, in that

-13-

they included claims for hours worked that were never in fact worked, or that had been worked in other Class Actions.   For example, between 1993 and 1996 Torkelsen submitted bills to the Firm reflecting write-offs or downward adjustments of more than $4 million billed to various Class Actions, with corresponding upward adjustments of more than $4 million billed to other Class Actions.

### The Firm's Conduct In Response to The Investigation

26.   The Firm acknowledges that, after it became aware of the existence of the USAO's criminal investigation into its secret payment arrangements with named plaintiffs and stockbrokers who provided named plaintiffs in Class Actions, it continued to be controlled by the Conspiring Former Partners whom the USAO had identified to the Firm as targets of its investigation and, while under their continuing control, it (a) failed to conduct an independent internal investigation into the allegations that it secretly paid plaintiffs and referring stockbrokers in Class Actions and (b) delayed taking adequate action to prevent such conduct from occurring in the future.

-14-

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Abbott Laboratories | Charles R. Gallman, Kathleen A. King Gallman, Steven Cooperman, and Darres A. McMahon v. Abbott Laboratories, Inc., et al. | California Superior Court, Alameda County Case No. 675978-1 | 02/01/91 | | |
| Abbott Laboratories | Steven Cooperman v. Abbott Laboratories, Inc., et al | California Superior Court, San Diego County, Case 632601 | 01/09/91 | | |
| AHI | Mel Kinder, Joseph and Carrol DiLustro, and Joshua Chopp v. AHI Healthcare Systems, Inc. | USDC CDCA 95-8658 MRP | 12/20/95 | In re AHI Healthcare Systems, Inc. Securities Litigation | USDC CDCA 95-8658 MRP |
| Alexander's | A. Jacques Lou et al v. Alexander's Inc. et al | Delaware Chancery 8955/77 | 04/09/87 | | |
| Allergan | Steven G. Cooperman v. Allergan, Inc., et al. | California Superior Court, Orange County, 603737 | 09/27/89 | | |
| Allergan | Steven G.Cooperman v. Allergan, Inc., et al. | USDC CDCA 89-713 JGD | 09/27/89 | In re Allergan Inc. Securities Litigation | USDC CDCA 89-643-AHS |
| American Airlines | Steven G. Cooperman, et al. v. AMR Corp., et al. | Delaware 11149 | 10/06/89 | | |
| American Continental | Sarah B. Shields et al. v. Charles H. Keating, . Jr. et al | California Superior Court, Orange County, Case 594802 | 06/22/89 | | |
| American Continental | Ronald Fischman and Robert C. Keller v. Lincoln Savings and Loan Association, et al. | USDC Arizona 90-567 RMB | 04/12/90 | In re American Continental Corporation/Lincoln Savings & Loan Securities Litigation | USDC Arizona MDL Docket No. 834 |
| American Continental | Ronald Fischman and Robert C. Keller v. Lincoln Savings and Loan | USDC CDCA 89-2448 MRP | 04/24/89 | Sarah B. Shields; Ronald Fischman; Wally Al-Aseer; Raymond Parks and Jik Ind, Money Purchase Plan and Trust v. Charles Hl. Keating, Jr., et al. | USDC CDCA 89-2052 SVW |
| Aquila Gas Pipeline Corporation | Eugenia Gladstone Vogel v. Harvey J. Padewer, et al. | Delaware Chancery 16775 NC | 11/13/98 | In re Aquila Gas Pipeline Corporation Shareholders Litigation | Delaware Chancery 16775 NC |
| Arcata | Mordecai Rosenfeld and Seymour Lazar v. Kohlberg, Kravis, Roberts & Co. et al | Massachusetts Superior CA-60315 | 03/17/83 | | |
| Arcata | Mordecai Rosenfeld, Seymour Lazar and Stanley Zuckerman v. Kohlberg, Kravis, Roberts & Co. et al | San Mateo Superior 257916 | 10/01/81 | | |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Aristech | Ronald Fischman, Steven G. Cooperman and Michael Pattitucci v. Aristech Chemical Corporation, et al. | Delaware Chancery Civil Action No. 10909 | early June 1989 | | |
| Armor All Products Corp. | Eugenia Gladstone Vogel v. William A. Armstrong, et al. | Delaware Chancery 15401 NC | 12/04/96 | | |
| Armstrong World Industries | Steven G. Cooperman v. Armstrong World Industries, Inc., et al. | Court of Common Pleas, Lancaster County, Pennsylvania 2839-1989 | 07/12/89 | | |
| Armstrong World Industries | Cooperman v. Armstrong World Industries, Inc., et al. | USDC EDPA 89-5122 MT | 07/12/89 | | |
| Array's | Seymour Lazar v. James D. Sadler et al | USDC CDCA CV 84 8100 DWW | 10/19/84 | Seymour Lazar v. James D. Sadler et al | USDC CDCA CV 84 8100 WJR |
| Ashland Oil | A. Jacques Lou v. William Belzberg et al | Los Angeles Superior Court CA 000972 | 04/09/86 | | |
| Ashland Oil | A. Jacques Lou v. William Belzberg et al | US Court of Appeals 9th Circuit 86-6057, 86-6144 | 08/20/87 | | |
| Ashland Oil | A. Jacques Lou v. William Belzberg et al | USDC CDCA CV 86 2465 DT | ukn. | A. Jacques Lou v. William Belzberg et al | USDC SDNY 86 5304 JSM |
| Ashland Oil | A. Jacques Lou v. William Belzberg et al | USDC SDNY 86-5304-JSM | 07/07/86 | | |
| Avon Products | Steven G. Cooperman v. Avon Products, Inc. | Supreme Court, New York County, N.Y. 89-9794 | 05/03/89 | | |
| Axsys Technologies, Inc. | Howard Vogel Retirement Plan v. Axsys Technologies, Inc. | Delaware Chancery 16799 NC | 11/23/98 | | |
| Bally Entertainment | Mel Kinder v. Barrie K. Brunet et al. | Delaware 14928 | early April 1996 | | |
| BankAmerica Corporation | Seymour Lazar et al v. Bankamerica Corporation | Los Angeles Superior Court CA BC146881 | 03/25/96 | | |
| BankAmerica Corporation | Janet Robbins and Seymour Lazar v. Bankamerica Corporation | San Francisco Superior 988043 | 07/10/97 | | |
| Barnes & Noble | Eugenia Gladstone Vogel v. Joel I. Klein, et al. | Delaware Chancery 042-N | 11/07/03 | In re BarnesandNoble.com. Inc. Shareholders Litigation | Delaware Chancery 042-N |
| Bell Atlantic | Seymour Lazar v. Thomas E. Bolger et al | Philadelphia Court of Common Pleas, April Term 1990, No. 2121 | 04/10/90 | In re Bell Atlantic Corporation Securities Litigation | USDC EDPA 91-0514 |
| Beverly Enterprises | Seymour Lazar v. Robert Van Tuyle et al | Los Angeles Superior Court CA 001117 | 07/05/88 | | |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Beverly Hills Savings & Loan Association | Seymour Lazar v. Touche Ross & Co. et al | Los Angeles Superior Court CA 000927 | 04/19/85 | | |
| Beverly Hills Savings & Loan Association | Mendel Berkowitz v. Touche Ross & Co. | USDC CDCA 85-2702 RMT | 04/23/89 | In re Beverly Hills Savings and Loan Association Securities Litigation | USDC CDCA CV 85-3157 RMT |
| Biogen | Seymour Lazer v. James L. Vincent et al | USDC Massachusetts CV 94-12177 PBS | 11/02/94 | In re Biogen Securities Litigation | USDC Massachusetts CV 94-12177 PBS |
| Bisys Group, Inc. | Howard Vogel v. The Bisys Group, Inc. | USDC SDNY 04-4048-LTS | 05/27/04 | | |
| Black and Decker | Steven Cooperman, et al. v. Black and Decker Corp., et al. | USDC SDNY 89-2177 MJL | 03/31/89 | | |
| Blockbuster | Howard Vogel v. Richard J. Bressler, et al. | Delaware Chancery 226-N | 02/10/04 | | |
| Burnham Pacific | Alyce Lou et al. v. J. David Martin | San Diego Superior Court GIC 743017 | 02/07/00 | In re Burnham Pacific Properties Shareholder Litigation | San Diego Superior Court GIC743017 |
| Cabot Medical | Steven G. Cooperman v. Cabot Medical Corporation, et al. | Superior Court of New Jersey, Chancery Division - Mercer County #MER-C-000058-95 | 04/29/95 | | |
| Carson Pirie | Seymour Lazar et al v. Carson Pirie Scott & Co. et al | Cook County Illinois Circuit Court 89 CH 03070 | 04/13/89 | In re Carson Pirie Scott & Co. Litigation | Cook County Circuit Court 89 CH 2687 |
| Cetus | Steven G. Cooperman v. Ronald E. Cape et al | USDC NDCA 90-2042 EFL | 07/20/90 | In re Cetus Corp. Securities Litigation | USDC NDCA C-90-2042 |
| Christie International | Chang Trust v. Christie International, et al. | USDC SDNY 00-788-LAK | 02/03/00 | In re: Auction Houses Antitrust Litigation | USDC SDNY 00-648-LAK |
| Cineplex Odeon | Steven Cooperman v. Garth H. Drabinsky et al. and Cineplex Odeon Corporation | USDC CDCA 89-2579 RSWL | 04/28/89 | In re Cineplex Shareholders Litigation | USDC CDCA 89-2461 WJR |
| CIT Group, Inc. | Howard Vogel v. CIT Group Inc., et al. | USDC SDNY 03-2471 JES | 04/10/03 | In re CIT Group, Inc. Securities Litigation | USDC SDNY 03-2471 JES |
| Columbia | Steven Cooperman et al. vi Thomas Spiegel, et al., and Columbis Savings and Loan Association | California Superior Court, Los Angeles CA001-177 | 06/16/89 | | |
| Columbia | Steven Cooperman et al. and Columbia Savings and Loan Association | USDC CDCA 89-6538 SVW | 11/09/89 | In re Consolidated Columbia Savings and Loan Actions | USDC SDNY 92-3175 MP |
| Community Psychiatric | Barry L. Bragger, Peter Gershon, and Steven Cooperman v. James W. Conte et al. | USDC CDCA 91-5258 RSWL | 09/30/91 | In re Community Psychiatric Centers Securities Litigation | USDC CDCA 91-533 AHS |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Community Psychiatric | Dollard McGann et al. v. Ernst & Young | USDC CDCA 93-3712 WMB | 06/24/93 | Dollard McGann et al. v. Ernst & Young | USDC CDCA 93-0814 AHS |
| Concord Holdings | Seymour Lazar v. Hambrecht & Quist | USDC NDCA CV 94 20579 RMW | 08/23/94 | In re Concord Holdings Securities Litigation | USDC NDCA CV 94 20579(A)-RMW |
| Copley | Seymour Lazar v. Copley Pharmaceutica, et al | USDC Massachusetts CV 95-10113-WGY | 01/19/95 | In re Copley Pharmaceutical, Inc. Securities Litigation | USDC Massachusetts CV 94-11897-WGY |
| Del Webb | Steven G. Cooperman and Ronald Fischman, on Behalf of Themselves and Others Similarly Situated, and On Behalf of Del Webb Corporation v. Phillip J. Dion, et al., and Del Webb Corporation | USDC CDCA 89-3405 JGD | 06/05/89 | | |
| Education Alternatives, Inc. | Seymour Lazar, et al v. Education Alternatives, Inc. | USDC Minnesota CV 3 94 101 | 02/23/94 | | |
| Emhart | Steven Cooperman v. Emhart Corporation, et al. | USDC EDVA 89-0112 R | 02/24/89 | | |
| Epitope | Steven Cooperman v. Epitope, Inc, et al. | USDC Oregon 92-780 DA | June 1990 | Rayna Ragonetti et al. v. Epitope, Inc., et al. | USDC Oregon 92-759 RE |
| Fairfield Communities | Steven G. Cooperman v. Fairfield Communities, Inc. | USDC EDAS 90-464 | 06/29/90 | | |
| Fidelity Medical | Nancy Cooperman IRA and Peter Schotten v. Fidelity Medical, Inc., et al. | USDC NJ 92-1913 MTB | 05/09/92 | In re Fidelity Medical, Inc. Securities Litigation | USDC NJ 92-1908 MTB |
| First Executive | First Executive Corporation by Steven Cooperman and Rodney B. Shields v. Fred Carr, et al., and First Executive Corporation | California Superior Court, Los Angeles C741965 | 10/27/89 | | |
| First Executive | Larry M. Carroll and Steven G. Cooperman v. First Executive Corporation, et al. | USDC CDCA 90-0388 RJ | 01/25/90 | In Re: First Executive Corporation Securities Litigation | USDC CDCA 89-7135 WDK |
| Fox Entertainment Group, Inc. | The Howard Vogel retirement Plan v. Peter J. Powers, et al. | Delaware Chancery 984-N | 01/10/05 | In re Fox Entertainment Group, Inc. Shareholders Litigation | Delaware Chancery 1033-N |
| Future Healthcare | Howard Vogel v. Future Healthcare, Inc. | USDC SD Ohio 95-182-SSB | 03/13/95 | In re Future Healthcare Securities Litigation | USDC SD Ohio 95-180 |
| Gap | Seymour Lazar v. Gap Stores | USDC NDCA 76 1693 | 09/03/76 | In re Gap Stores Securities Litigation | USDC NDCA MDL 277 SW |
| Gaylord Container | Howard Vogel and Helen Dagron v. Marvin A. Pomerantz, et al. | Delaware Chancery 14722 | 12/04/95 | In re Gaylord Container Corporation Shareholders Litigation | Delaware Chancery 14616 |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Gaylord Container | Howard Vogel and Helen Dagron v. Marvin A. Pomerantz, et al. | Delaware Chancery Court, New Castle County 14722 | 12/04/95 | In re Gaylord Container Corporation Shareholders Litigation | Delaware Chancery Court, New Castle County 14616 |
| Genentech I | Seymour Lazar v. Robert A. Swanson, et al. | USDC NDCA C 88 4088 THE | 10/13/88 | In re Genentech Securities, Inc | USDC NDCA C 88 4038 DLJ |
| Genentech III | Robert Liebauer, Seymour Lazar and Hans Keim v Roche Holdings, Inc et al | New Castle County Delaware Chancery Court CA 14268 | 05/02/95 | In re Genentech Inc. Shareholders Litigation | New Castle County Delaware Chancery Court CA 14265 |
| General Electric | Seymour Lazar v. General Electric Company | USDC NDCA C 00 1621 MJJ | 05/05/00 | Churchill Village, L.L.C.,et al v. General Electric Company | USDC NDCA C 99 5073 MHP |
| General Instrument | Edward Newman, Trustee for Stephanie Newman, Clifford Trust, Benjamin Katz, Phyllis Freeman, Frederick Rand, Steven Cooperman, Ruth Lindner, Jack Gross, Rita D'Arco, Ellen Klein and Lillian Skolnick v. General Instrument Corporation, et al | Delaware (case number unknown) | approx. 07/02/90 | | |
| General Instrument | Seymour Lazar, derivatively on behalf of General Instrument Corp. v. John Seely Brown | USDC EDPA 95 CV 6773f | 10/25/94 | In Re General Instrument Corp. Securities Litigation | USDC NDIL 95 C 6007 GMM |
| Georgia Gulf | Gary Goldberg, Steven G. Cooperman, Jack M. Gross, Max Ellenberg and Ira Neaman v. Georgia Gulf Corp., et al. | Delaware 11054 | 08/22/89 | | |
| Guaranty National Corp. | Eugenia Gladstone Vogel v. Guaranty National Corporation, et al. | Denver, CO District Court 96-2277 | 05/09/96 | | |
| Guaranty National Corp. | Eugenia Gladstone Vogel v. Guaranty National Corporation, et al. | NY Supreme Court, NY County 96-602632 | 05/17/96 | | |
| Guaranty National Corp. (Guaranty II) | Eugenia Gladstone Vogel v. Guaranty National Corporation, et al. | Denver, CO District Court 97-5754 | Sept. 1997 | | |
| Happiness Express | Steven G. Cooperman v. Happiness Express Inc. | USDC SDNY 95-7731 RWS | 09/07/95 | | |
| Health Management, Inc. | Howard Vogel, et al., v. BDO Seidman, LLP and health Management, Inc. | NY Supreme Court, NY County 603064 | 06/12/96 | | |
| Health Management, Inc. | Howard Vogel v. Clifford E. Hotte, et al. | USDC EDNY 96-1208 (TCP) | 03/15/96 | In re Health Management, Inc. Stockholders' Derivative Litiation | USDC EDNY 96-1208 (TCP) |
| Heart Technology | Mel Kinder v. Dr. David C. Auth, et al. | Delaware 14513 | 08/30/95 | | |
| Hertz I | Seymour Lazar v. The Hertz Corporation | San Diego Superior Court 461200 | 11/07/80 | | |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Homelink | Steven Cooperman v. Phyllis Reff, et al. | USDC SDFL 96-7206 Davis | 10/21/96 | | |
| Individual | Steven Cooperman and Scott Sklar v. Individual, Inc. | USDC Massachusetts 96-12272 DPW | 11/13/96 | | |
| Infinity Broadcasting | Eugenia Gladstone Vogel v. David T. McLaughlin | Delaware Chancery 18219 NC | 08/15/00 | In re Infinity Broadcasting Corporation Shareholders Litigation | Delaware Chancery 18219 NC |
| Intimate Brands, Inc. | Eugenia Gladstone Vogel v. F. Gordon Gee, et al. | Delaware Chancery 02-19382 NC | 02/05/02 | In re Intimate Brands, Inc. Shareholders Litigation | Delaware Chancery 02-19382 NC |
| Jan Bell | Steven G. Cooperman and Nancy Cooperman v. Jan Bell Marketing, Inc., et al. | USDC SDFL 90-6183 Gonzalez | 03/07/90 | In re; Jan Bell Marketing Securities Litigation | USDC SDFL 90-6183 Gonzalez |
| Jardine | Seymour Lazar v. Jardine Strategic Holdings, Limited | County of New York Supreme Court 87-26513 | 10/27/87 | Mortimer Schulman, et al v. Jardine Strategic Holdings Limited | County of New York Supreme Court 26513/87 |
| Jepson | Steven G. Cooperman, Frederick Rand, Barbara Gerber, Sonem Partners and Victoria A. Shaev v. The Jepson Corporation, et al. | Delaware 10987 | 07/28/89 | | |
| KVH Industries, Inc. | Howard Vogel v. KVH Industries, Inc., et al. | USDC RI 04-320-ML | 07/21/04 | Sekuk Global, et al. v. KVH Industries, Inc. et al. | USDC RI 04-306ML |
| LA Gear | Dr. Steven G. Cooperman v. Robert Y. Greenberg, et al. | USDC CDCA 90-2832 FW | 06/04/90 | In re L.A. Gear Securities Litigation | USDC CDCA 90-2832 KN |
| Life Technologies, Inc. | Eugenia Gladstone Vogel v. Life Technologies, Inc., et al. | Delaware Chancery 16519 NC | 07/07/98 | In re Life Technologies, Inc. Shareholders Litigation | Delaware Chancery 16513 |
| Lin Broadcasting | Steven Cooperman v. Lin Broadcasting Corporation, et al. | Delaware 10658 | 03/06/89 | In re Lin Broadcasting Corporation | Delaware 10596 |
| Lockheed | Seymour Lazar v. Daniel M. Tellep, et al | Los Angeles Superior Court CA001171 | 04/13/89 | Richard Rampell et al v. Daniel M. Tellep | Los Angeles Superior Court BC 111786 |
| Lotus | Steven G. Cooperman v. Lotus Development Corporation | USDC Delaware 95-346 | 06/09/95 | | |
| Lyphomed | Vivian Gordon, As Custodian for David Gordon, Northwest Investment Club, Sheldon Shore, Steven Cooperman, Maring Gagliano, Thomas Roever and Lauren Benn v. Lyphomen, Inc., et al. | Delaware Chancery Court #11040 | 08/23/89 | | |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| MBNA | Dr. Steven Cooperman and Leslie U. Harris v. MBNA America, Inc., et al. | California Superior Court, Los Angeles BC 049848 | 03/03/92 | | |
| MBNA | Dr. Steven Cooperman and Leslie U. Harris v. MBNA America, Inc., et al. | USDC CDCA 92-2031 JSL | 04/02/92 | | |
| MCA , Inc. | Seymour Lazar et al v. MCA Inc. et al | Los Angeles Superior Court BC011305 | 09/26/90 | In Re MCA, Inc. Shareholders Litigation | New Castle County Delaware Chancery Court CA 11740 |
| MCA, Inc. | Seymour Lazar, et al. v. MCA Inc., et al | Delaware Chancery C.A. 11740 (MAH) | 09/26/90 | In Re MCA Inc. Shareholders Litigation | Delaware Chancery C.A. 11740 (MAH) |
| MCI | Seymour Lazar, et al. vs. MCI Communications Corporation, et al. | San Diego Superior 521353 | 05/16/84 | Seymour Lazar, et al. vs. MCI Communications Corporation | USDC SDCA 1435 N (M) |
| MCI | Seymour Lazar, et al. vs. MCI Communications Corporation, et al. | USDC SDCA 1435-B (M) | ukn. | In Re Long Distance Telecommunications Litigation | USDC EDMich, MDL-598 (ADT) |
| Medaphis | Melvyn Kinder v. Medaphis Corporation and Randolph G. Brown | USDC NDGA 95-1545 GET | 06/16/95 | In re: Medaphis Corporation Securities Litigation | USDC NDGA 95-2973 GET |
| Mellon I | Seymour Lazar v Dreyfus Corp. | County of New York Supreme Court 131068 | 12/09/93 | | |
| Mellon II | Kenneth Elan and Seymour Lazar v. Dwight L. Allison, Jr. et al | USDC EDPA 98-CV-2137 | 04/22/98 | | |
| Mercer Int'l | Eugenia G. Vogel, et al. v. Mercer International Inc., et al. | USDC CDCA 94-201-RT | 10/28/94 | | |
| Mercer Int'l | Eugenia G. Vogel and Wendy Y. Mitchell v. Mercer International, Inc., et al. | USDC CDCA 94-4229 WJR | 06/23/94 | Eugenia G. Vogel and Wendy Y. Mitchell v. Mercer International, Inc., et al. | USDC CDCA 94-201 RT |
| Mercer Int'l | Alfonso L. Sedita v. Mercer International, Inc., et al. | USDC WDWA 94-553-WLD | 04/13/94 | In re Mercer International Securities Litigation | USDC WDWA 94-553-WLD |
| Micro Focus | Seymour Lazar v. Micro Focus Group, et al. | USDC NDCA 00-20055 (SW) | 12/17/98 | In Re Micro Focus Securities Litigation | USDC NDCA01-1352-SBA |
| Micro Focus | Seymour Lazar v. Micro Focus Group, et al. | USDC NDCA 99-5320 (WHA) | ukn. | In Re Micro Focus Securities Litigation | USDC NDCA01-1352-SBA |
| Micro Focus | Seymour Lazar v Micro Focus Group, PLC, et al. | USDC SDNY 98-8591 (LAP) | 12/03/98 | In Re Micro Focus Securities Litigation | USDC SDNY 98-8591 (LAP) |
| Multimedia | Steven G. Cooperman v. Multimedia, Inc., et al. | Philadelphia County Court of Common Pleas, C. A. No. 95-CP-23-1708 | 06/15/95 | | |
| Multimedia | Jean Zaffos and Steven G. Cooperman v. Multimedia, Inc., et al. | USDC SDNY 95-9159 KMW (later changed to 95-9159 SHS) | 10/25/95 | | |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| NASDAQ | Lawrence A. Abel, James J. Robbins, Seymour Lazar and Steven Cooperman v. Merrill Lynch & Co., et al. | California Superior Court, San Diego County, Case No. 677313 | 05/27/94 | | |
| Neff Corp | Howard Vogel v. Neff Corp., et al. | Delaware Chancery 17826 NC | 02/29/00 | | |
| Neff Corp | Howard Vogel v. Jorge Mas | Delaware Chancery 18589 | 01/03/01 | | |
| New Image | Seymour Lazar, et al. vs. Robert H. Gurevitch, et al. | USDC CDCA 90-6345-ER (GHRx); (Bx); (GHKx); (VVB) | 11/27/90 | | |
| Newhall Land and Farm | Steven Cooperman, Ronald Fischman and Lourdes Ramann v. Thomas L. Lee, et al., and The Newhall Land and Farming Company | California Superior Court, Los Angeles, CA001093 | 04/19/88 | Case for which SC was paid | |
| Newhall Land and Farm | Steven Cooperman, Ronald Fischman and Lourdes Ramann v. Thomas L. Lee, et al. | USDC CDCA 88-3157 FW | 06/02/88 | | |
| NRG Energy | Howard Vogel v. NRG Energy, Inc., et al. | Delaware Chancery 19411 NC | 02/15/02 | In re: NRG Energy, Inc. Shareholders Litigation | Delaware Chancery 19411 NC |
| One Bancorp | Steven Cooperman v. The One Bancorp, et al. | USDC Maine 89-0315 GC | 12/28/89 | In re The One Bancorp Securities Litigation | USDC Maine 89-0315 |
| Orion | Steven G. Cooperman v. Orion Pictures Corporation, et al. | Delaware Chancery court #11956 | approx. 01/10/91 | | |
| Orion | Chuck Kowall v. Orion Pictures Corporation, et al. | USDC EDNY #91-1903 CBA | 05/28/91 | In re Orion Pictures Corp. Securities Litigation | USDC EDNY 91-1903 |
| Oxford Health Plans, Inc. | Howard Vogel Retirement Plan v. Oxford Health Plans, Inc., et al. | USDC CT 97-2325, transferred to USDC SDNY MDL No. 1222 (CLB) | 10/31/97 | In re Oxford Health Plans, Inc., Securities Litigation | USDC SDNY MDL-1222 |
| Pathcom, Inc. | Seymour Lazar vs. Joseph Spivack, et al. | USDC CDCA 77-2493 (DWW) | 07/07/77 | | |
| Pet, Inc. | In re Pet Incorporated Shareholders Litigation | Delaware Chancery Court #13984 | 03/02/95 | | |
| Prime Motor Inns | Steven G. Cooperman v. David A. Simon, et al. | USDC NJ 90-99 RJH | 01/12/90 | In re Prime Motor Inns Shareholders Litigation | USDC New Jersey 90-CV-87 DRD |
| Quanta Services, Inc. | Eugenia Gladstone Vogel v. Vincent D. Foster, et al. | Delaware Chancery 01-19324 | 12/21/01 | | |
| Recognition Equipment | Steven Cooperman v. Recognition Equipment, Inc., et al. | Delaware 10555 | 01/19/89 | | |
| Samuel Goldwyn | Mel Kinder v. Samuel Goldwyn, Jr., et al. | Delaware 14751 | 12/27/95 | | |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Santa Fe Pacific Pipeline Partners | Eugenia Gladstone Vogel v. Santa Fe Pacific Pipeline Partners, L.P., et al. | Orange County Superior Court, CA 785816 | 10/23/97 | | |
| SCI | Steven Cooperman, on behalf of himself and derivatively on behalf of SCI Television, vs Ronald O. Perelman, et al. and SCI Television, Inc. | California Superior Court, Los Angeles, # BC100359 | 03/10/94 | | |
| Sequent Computers | Steven G. Cooperman v. Karl C. Powell, Jr. et al. | USDC Oregon 91-37 FR | 01/11/91 | | |
| Shawmut | Gary Steiner, Kenneth Steiner and Leonard Shapiro v. Shawmut National Corporation, et al. | USDC Connecticut 90-253 AHN | 03/23/90 | | |
| Shawmut | Sarah B. Shields, Lepow Equities, Inc., and Steven G. Cooperman v. Shawmut National Corp., et al. | USDC Massachusetts 90-10659 S | 03/15/90 | | |
| Smithkline Beckman | Steven G. Cooperman v. Smithkline Beckmann Corporation, et al. | Philadelphia County Court of Common Pleas Master File #2303 | 04/05/89 | | |
| Software Toolworks | Steven G. Cooperman v. Leslie Crane, et al. | USDC CDCA 90-3310 RJK | 06/26/90 | | |
| Software Toolworks | Steven G. Cooperman v. The Software Toolworks Inc., et al. | USDC NDCA 90-2920 SAW | 10/12/90 | In re Software Toolworks Inc. Securities Litigation | USDC NDCA C-90-2906 FMS |
| Standard Oil | Ted Trief, et al. vs. The Standard Oil Company et al. | Ct. of Common Pleas, Cuyahoga County, OH 127045 (TOM) | approx. 04/09/87 | In Re The Standard Oil Company / British Petroleum Litigation | Ct. of Common Pleas, Cuyahoga County, OH 126760 (TJP) |
| Stratosphere | Victor M. Opitz, et al., v. Robert E. Stupak, et al. | District Court, Clark County, NV Case No. A363019 | 08/16/96 | | |
| Student Loan Corp. | Howard Vogel IRA v. The Student Loan Corp., et al. | Delaware Chancery 17493 NC | 10/22/99 | In re The Student Loan Corp. Shareholders Litigation | Delaware Chancery 17491 NC |
| Student Loan Corp. II (derivative action) | Kenneth Steiner, Crandon Capital, Howard Vogel, IRA, and Rick DeGeorge v. Citigroup, Inc. | Delaware Chancery 17810 NC | 02/25/00 | In re The Student Loan Derivative Litigation | Delaware Chancery 17799 NC |
| Sun Microsystems | Steven Cooperman and Montague Lane on behalf of themselves and derivatively on behalf of Sun Microsystems, Inc., v. Carol Bartz, et al. | California Superior Court, Santa Clara County, No. 731248 | 05/10/93 | | |

Page 9 of 11

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Sun Microsystems | Steven Cooperman and Montague Lane vs Carol Bartz, et al. and Sun Microsystems, Inc. | USDC NDCA 93-20292 RMW (later changed to 93-20292 EAI) | 04/26/93 | In re Sun Microsystems, Inc. Securities Litigation | |
| Swiss Army Brands | Eugenia G. Vogel v. Swiss Army Brands, Inc., et al. | Delaware Chancery 19698 NC | 06/12/02 | In re: Swiss Army Brands, Inc. Shareholders Litigation | Delaware Chancery 19698 NC |
| Symantec | Steven Cooperman and Eric D. Freed v. Gordon Eubanks, et al. | California Superior Court, Santa Clara County, No. CV756665 | 03/18/96 | | |
| TD Waterhouse | Eugenia Gladstone Vogel v. Richard J. Rzasa, et al. | Delaware Chancery 19171 NC | 10/11/01 | In re TD Waterhouse Group, Inc. Shareholders Litigation | Delaware Chancery 19166 NC |
| The Learning Co. | Seymour Lazar against The Learning Company, et al. | Delaware Chancery 16860NC | 12/21/98 | | |
| Travelers Insurance | Stanley Ferber and Steven G. Cooperman v. The Travelers Corporation, et al. | USDC Connecticut 90-842 PCD | 10/09/90 | In re Travelers Corporation Securities Litigation | USDC Connecticut H-90-842 PCD |
| Travelers Property Casualty (Travelers / Citigroup II) | Howard Vogel v. Travelers Property Casualty Corp., et al. | Delaware Chancery 17902 NC | 03/21/00 | In re Travelers Property Casualty Corp. Shareholders Litigation | Delaware Chancery 17902 NC |
| TW Services | Seymour Lazar against TW Services, Inc., et al. | Delaware Chancery 10343 | 10/11/88 | In re TW Services, Inc. Shareholders Litigation | Delaware Chancery 10298 (Allen) |
| TWA | Seymour Lazar against Carl C. Icahn, et al. | Delaware Chancery 87 Civ. 8851 (RO) | Amended Complaint 12/16/87 | | |
| TWA II | Adele Charal, et al. v. Trans World Airlines, Inc., et al. | Delaware Chancery 9844 | approx. 05/05/88 | In Re Trans World Airlines, Inc. Shareholders Litigation | Delaware Chancery 9844 (Allen) |
| United Airlines | Steven G. Cooperman and Naomi Masri. v. UAL Corporation, et al. | Delaware Chancery Ct Case No. 11020 | 08/09/89 | | |
| Unity Buying | Seymour Lazar, et al. vs. Unity Buying Service Co., Inc. and DOES I through X, inclusive | San Diego Superior 511287 (AWJ); (SER); (JRM); and (REM) | 10/26/83 | | |
| Urcarco | Steven G. Cooperman v. Urcarco, Inc., et al. | USDC NDTX 90-2047 G | 07/26/90 | In re: Urcarco Securities Litigation | USDC NDTX CA3-90-1737 P |
| Urcarco | Steven G. Cooperman v. Urcarco, Inc., et al. | USDC NDTX 90-551 E | 07/26/90 | In re: Urcarco Securities Litigation | USDC NDTX CA3-90-1737 P |
| US Oncology | Howard Vogel v. Lloyd K. Everson, et al. | Delaware Chancery 324-N | 03/22/04 | In re US Oncology, Inc. Shareholders Litigation | Delaware Chancery 324-N |
| Valero Energy | Howard J. Vogel v. Valero Energy Corporation, et al. | Texas District Court, Bexar, TX 91-CI-12179 | 08/23/91 | none | |
| Valero Natural Gas Partners (Valero II) | Howard J. Vogel v. Edward C. Benninger, et al. | Delaware Chancery 13194 | 05/15/94 | In re Valero Ntural Gas Partners, L.P. Litigation | Delaware Chancery 13194 |

*Lawsuits*

| Defendant | Initial Case Caption | Initial Case Number | Filing Date | Consolidated Case Caption | Consolidated Case Number |
|---|---|---|---|---|---|
| Valley National | Steven Cooperman v. Valley National Corporation, et al. | USDC Arizona 89-1733 EHC | 10/20/89 | David Hoexter v. James P. Simmons | USDC Arizona 89-1069 RCB, 89-1732 RCB, 89-1733 RCB (Consolidated) |
| Vastar Resources, Inc. | Eugenia Gladstone Vogel v. Jimmie D. Callison, et al. | Delaware Chancery 17890 NC | 03/17/00 | In re Vastar Resources, Inc. Shareholders Litigation | Delaware Chancery 17888 NC |
| Vernitron | Seymour Lazar v. Vernitron Corporation, et al. | Delaware Chancery 12187 | 07/11/91 | In re Vernitron Corporation Shareholders Litigation | Delaware Chancery 12181 (CB) |
| W.R. Grace & Co. | Seymour Lazar against W. R. Grace & Co., et al. | USDC SDFL 95-8633 ZLOCH | 10/19/95 | Morris Gladstein, et al. vs. W. R. Grace & Co., et al. | USDC SDFL 95-8632 ZLOCH |
| W.R. Grace & Co. | Bruce G. Murphy, et al. against W. R. Grace & Co. | USDC SDNY 95 Civ. 9003 (JFK) | 10/20/95 | In re W. R. Grace & Co. Securities Litigation | USDC SDNY 95-9003 (JFK) |
| Western National Corp. | Howard Vogel v. Michael J. Poulos, et al. | Delaware Chancery 15930 NC | 09/12/97 | In re Western National Corporation Shareholders Litigation | Delaware Chancery 15927 NC |
| Xerox | Helene Giaraputo vs. Xerox Corporation | USDC CT 3:99CV2374 AWT | 12/09/99 | In Re Xerox Corporation Securities Litigation | USDC CT 3:99CV2374 AWT |
| Zenith | A. Jacques Lou vs. Stanley R. Zax, et al. and Zenith National | California Superior Court, BC015017 | 11/14/90 | | |
| Zenith Electronics | Seymour Lazar v. Hun Jo Lee, et al. and Zenith Electronics Corporation | Delaware Chancery C.A. 15705 | 05/22/97 | | |
| Zenith National | A. Jacques Lou vs. Stanley R. Zax, et al. and Zenith National | LA Sup. BC 015017 JHL | 11/14/90 | | |
| ZZZZ Best | A. Jacques Lou, Seymour Lazar and Robert Margolin vs. Bruce T. Andersen | USDC CDCA 87-06151 AAH | 09/16/87 | In Re ZZZZ Best Securities Litigation | USDC CDCA 87-3574 RSWL |

# EXHIBIT A

## (PART 2 OF 2)

**EXHIBIT B TO MILBERG LLP CASE DISPOSITION AGREEMENT**

EXHIBIT B

## STATUTE OF LIMITATIONS TOLLING AGREEMENT
## BETWEEN MILBERG LLP AND
## THE UNITED STATES ATTORNEY'S OFFICE
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

1.    This Statute of Limitations Tolling Agreement ("Tolling Agreement") is entered into between the law firm of Milberg LLP and the United States Attorney's Office for the Central District of California (the "USAO" or the "government").  This Tolling Agreement is entered into in connection with, and shall be effective as of the effective date of, the Case Disposition Agreement between Milberg LLP and the USAO in United States v. Milberg LLP, et al., CR 05-587(D)-JFW ("U.S. v. Milberg LLP").  Capitalized terms herein shall have the same meaning as ascribed to such terms in the Case Disposition Agreement.

2.    Having been fully advised by its counsel, Milberg LLP knowingly, voluntarily, and intelligently agrees that, for any of the offenses described in paragraph 3 below, the period beginning on May 18, 2006 and continuing to March 31, 2013, shall be tolled and excluded from any calculation of time for purposes of: (a) applying any federal statute of limitations; (b) any constitutional, statutory, or common law defense, claim, or argument relating to pre-indictment delay; and (c) any constitutional, statutory, or common law defense, claim, or argument relating to post-indictment delay, including any such

claim under 18 U.S.C. § 3161 or Federal Rule of Criminal

Procedure 48(b).

    3.    This Tolling Agreement applies to any offense arising

from, relating to, or based upon any of the following conduct

occurring prior to May 18, 2006:

    (a)    any of the conduct charged in the second

superseding indictment filed in <u>U.S. v. Milberg LLP</u>;

    (b)    any conduct described in Exhibit A to the Case

///

///

///

Disposition Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:


_____          _____
RICHARD E. ROBINSON                        Date
Assistant United States Attorney
Major Frauds Section


MILBERG LLP:


_____          _____
                                           Date
Partner
Milberg LLP

## CERTIFICATIONS

I, _____, am a partner of the law firm

Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

Weiss Bershad LLP," "Milberg Weiss Bershad & Schulman LLP,"

"Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss

Bershad Specthrie & Lerach" ("Milberg LLP"), and am duly

authorized to enter into this Tolling Agreement on behalf of

Milberg LLP.  This Tolling Agreement is entered into in

connection with the Case Disposition Agreement between Milberg

LLP and the USAO in United States v. Milberg LLP, et al., CR 05-

587(E)-JFW ("U.S. v. Milberg LLP").  I understand the terms of

this Tolling Agreement and the Case Disposition Agreement, and I

voluntarily, knowingly, and willfully agree, on behalf of Milberg

-3-

LLP, to all of those terms without force, threat, or coercion. Milberg LLP and I are satisfied with the representation of Milberg LLP by its counsel, Zuckerman Spaeder LLP and Mayer Brown LLP.

_____        _____
                                        Date
Partner, Milberg LLP

I, William W. Taylor, a member of the law firm of Zuckerman Spaeder LLP, am counsel of record in <u>U.S. v. Milberg LLP</u> for defendant Milberg LLP. I believe that _____ is a partner of Milberg LLP who is duly authorized to enter into this Tolling Agreement on behalf of Milberg LLP. To the best of my knowledge and belief, Milberg LLP's decision to enter into this Tolling Agreement is an informed and voluntary one.

_____        _____
WILLIAM W. TAYLOR, III                  Date
Zuckerman Spaeder LLP
Counsel for Milberg LLP

I, Bryan Daly, a member of the law Mayer Brown LLP, am counsel of record in <u>U.S. v. Milberg LLP</u> for defendant Milberg LLP. I believe that _____ is a partner of Milberg LLP who is duly authorized to enter into this Tolling Agreement on behalf of Milberg LLP. To the best of my knowledge

-4-

and belief, Milberg LLP's decision to enter into this Tolling

Agreement is an informed and voluntary one.

_____          _____

BRYAN DALY                                 Date
Mayer Brown LLP
Counsel for Milberg LLP

**EXHIBIT C TO MILBERG LLP CASE DISPOSITION AGREEMENT**

EXHIBIT C

Waiver of Indictment _____ Cr. Form No. 18

# United States District Court

FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )    No. CR _____ |
|     Plaintiff, | ) |
| | ) |
|        v. | ) |
| | ) |
| MILBERG LLP, | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| | ) |

MILBERG LLP, the above named defendant, being advised of
the nature of the charges that may be brought against it in the
event of its breach of the Case Disposition Agreement entered
into in <u>United States v. Milberg LLP, et al.</u>, CR 05-587(D)-JFW,
and of its rights, hereby waives prosecution by indictment for
any charges brought pursuant to paragraphs 26 through 28 of the
Case Disposition Agreement and consents that any such charges may
be brought by information instead of by indictment.

DATE: _____      _____

                                              MILBERG LLP
                                              By:
                                              Its: Partner

DATE: _____      _____

                                              Name: _____
                                            WITNESS

DATE: _____      _____

                                              Counsel for Defendant
                                              MILBERG LLP

Waiver of Indictment                                                    Cr. Form No. 18

# United States District Court

## FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. CR _____ |
| v. | ) | |
| MILBERG LLP, | ) | |
| Defendant. | ) | |

MILBERG LLP, the above named defendant, being advised of
the nature of the charges that may be brought against it in the
event of its breach of the Case Disposition Agreement entered
into in <u>United States v. Milberg LLP, et al.</u>, CR 05-587(D)-JFW,
and of its rights, hereby waives prosecution by indictment for
any charges brought pursuant to paragraphs 26 through 28 of the
Case Disposition Agreement and consents that any such charges may
be brought by information instead of by indictment.

DATE: 6/16/08

    MILBERG LLP
    By: _SANFORD P. DUMAIN_
    Its: Partner

DATE: 6/16/08

    Name: _MATTHEW GLUCK_
    WITNESS

DATE: 6/16/08

    Counsel for Defendant
    MILBERG LLP

**EXHIBIT D TO MILBERG LLP CASE DISPOSITION AGREEMENT**

**EXHIBIT D**

1  THOMAS P. O'BRIEN
   United States Attorney
2  LEON W. WEIDMAN
   Chief, Civil Division
3  RICHARD E. ROBINSON (Cal. Bar #090840)
   Assistant United States Attorney
4       1100 United States Courthouse
        312 North Spring Street
5       Los Angeles, California 90012
        Telephone:  (213) 894-0713
6       Facsimile:  (213) 894-6269
        E-mail: Richard.Robinson@usdoj.gov
7  Attorney for Plaintiff
   UNITED STATES OF AMERICA

8

9

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13
   UNITED STATES OF AMERICA,      )  CASE NO. CV _____
14                                 )
           Plaintiff,              )  STIPULATION FOR ENTRY OF
15                                 )  CONSENT JUDGMENT
           v.                      )
16                                 )
   MILBERG LLP,                    )
17                                 )
           Defendant.              )
18  _____)

19      The parties to this Stipulation for Entry of Consent Judgment

20  ("this Stipulation") are plaintiff the United States of America and

21  defendant Milberg LLP, appearing individually and through its

22  counsel in this action.

23      The parties hereby stipulate as follows:

24      1.  The Court has subject matter jurisdiction over this action

25  pursuant to 28 U.S.C. § 1345.

26      2.  Defendant Milberg LLP acknowledges and accepts service of

27  the Complaint in this action.

28      3.  The Court has personal jurisdiction over defendant Milberg

1  LLP in this action.

2      4.   Venue is proper in this District pursuant to 28 U.S.C.

3  § 1391(b) because defendant Milberg LLP has an office and transacts

4  business in this District.

5      5.   Milberg LLP and the United States entered into an

6  agreement effective July 1, 2008 entitled "Case Disposition

7  Agreement for Defendant Milberg LLP" (the "CDA"), filed in the

8  United States Court for the Central District of California in

9  <u>United States v. Milberg LLP, et al.</u>, case no. CR 05-587(D)-JFW.

10     6.   Milberg LLP is required to: (a) make certain installment

11  payments to the United States Treasury and the United States Postal

12  Inspection Service Consumer Fraud Fund, pursuant to paragraphs 13

13  and 14 of the CDA; (b) pay applicable interest as part of each of

14  the foregoing installment payments, pursuant to paragraph 15 of the

15  CDA; and (c) satisfy Milberg LLP's installment payment obligations

16  on an accelerated basis in the event that Milberg LLP's "Gross

17  Revenues" exceed certain thresholds, pursuant to paragraphs 16 and

18  17 of the CDA.   (The foregoing are hereinafter referred to

19  individually and collectively as the "payment obligations").

20     7.   The United States is authorized and entitled to file this

21  Stipulation for Entry of Consent Judgment, as well as a Complaint

22  and Consent Judgment based thereon substantially in the form

23  attached hereto, if and only if (a) Milberg LLP defaults on any

24  payment obligations; or (b) there has been a final determination of

25  breach of the CDA pursuant to paragraphs 26 through 28 of the CDA.

26  The United States is further authorized and entitled to insert in

27  the Complaint and Consent Judgment as the amount then due and owing

28

                                2

1    from Milberg LLP to the United States a dollar amount that is the

2    sum of all of the amounts not yet paid under paragraphs 13 through

3    15 of the CDA.

4         8.   If and when the full amount of the Consent Judgment has

5    been paid, the United States shall prepare and file a Satisfaction

6    of Judgment with the Clerk of the Court and, if any lien has been

7    recorded, shall provide Defendant with a Release of Lien Under

8    Abstract of Judgment, which may be recorded with the applicable

9    County Recorder's Office.

10        9.   Both the United States and defendant Milberg LLP's counsel

11   have participated in the drafting and preparation of this

12   Stipulation.   Therefore no provision of this Stipulation shall be

13   construed against either party.

14        10.  This Stipulation represents the full and complete

15   agreement by and between the parties regarding the subject matter

16   of this Stipulation.   This Stipulation shall not be modified or

17   amended except in a writing signed by the person or entity against

18   ///

19   ///

20   ///

21

22

23

24

25

26

27

28
                                    3

1  whom enforcement is sought.

2  THE UNITED STATES OF AMERICA

3  THOMAS P. O'BRIEN
   United States Attorney
4  LEON W. WEIDMAN
   Chief, Civil Division
5

6  _____        _____
   RICHARD E. ROBINSON                 Dated
7  Assistant United States Attorney
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9  MILBERG LLP

10

11 _____        _____
                                       Date
   Partner
12 Milberg LLP

13

14 _____        _____
   BRYAN DALY                          Date
   Mayer Brown LLP
15 Counsel for Milberg LLP

16

17 _____        _____
   WILLIAM W. TAYLOR, III              Date
   Zuckerman Spaeder LLP
18 Counsel for Milberg LLP

19                   CERTIFICATIONS

20      I, _____, am a partner of the law firm Milberg

21 LLP, formerly known as "Milberg Weiss LLP," "Milberg Weiss & Bershad

22 LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad

23 Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach"

24 ("Milberg LLP"), and am duly authorized, in accordance with all

25 requirements of the Milberg LLP partnership agreement, to enter into

26 this Stipulation for Entry of Consent Judgment on behalf of Milberg

27 LLP (the "Stipulation").  I understand the terms of this

28                          4

Disposition Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:


_____          _____
RICHARD E. ROBINSON                Date
Assistant United States Attorney
Major Frauds Section


MILBERG LLP:


_____          _____
                                   6/11/08
Partner                            Date
Milberg LLP


## CERTIFICATIONS

I, SANFORD P. DUMAIN, am a partner of the law firm

Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

Weiss Bershad LLP," "Milberg Weiss Bershad & Schulman LLP,"

"Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss

Bershad Specthrie & Lerach" ("Milberg LLP"), and am duly

authorized to enter into this Tolling Agreement on behalf of

Milberg LLP.  This Tolling Agreement is entered into in

connection with the Case Disposition Agreement between Milberg

LLP and the USAO in United States v. Milberg LLP, et al., CR 05-

587(E)-JFW ("U.S. v. Milberg LLP").  I understand the terms of

this Tolling Agreement and the Case Disposition Agreement, and I

voluntarily, knowingly, and willfully agree, on behalf of Milberg

-3-

LLP, to all of those terms without force, threat, or coercion.
Milberg LLP and I are satisfied with the representation of
Milberg LLP by its counsel, Zuckerman Spaeder LLP and Mayer Brown
LLP.

_____          _6/11/08____
                                   Date
Partner, Milberg LLP

    I, William W. Taylor, a member of the law firm of Zuckerman
Spaeder LLP, am counsel of record in <u>U.S. v. Milberg LLP</u> for
defendant Milberg LLP.  I believe that _____ is a
partner of Milberg LLP who is duly authorized to enter into this
Tolling Agreement on behalf of Milberg LLP.  To the best of my
knowledge and belief, Milberg LLP's decision to enter into this
Tolling Agreement is an informed and voluntary one.

_____          _____
WILLIAM W. TAYLOR, III             Date
Zuckerman Spaeder LLP
Counsel for Milberg LLP

    I, Bryan Daly, a member of the law Mayer Brown LLP, am
counsel of record in <u>U.S. v. Milberg LLP</u> for defendant Milberg
LLP.  I believe that _Sanford Dumain_ is a partner of
Milberg LLP who is duly authorized to enter into this Tolling
Agreement on behalf of Milberg LLP.  To the best of my knowledge

-4-

Disposition Agreement.

READ AND AGREED TO:

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA:


_____          _____
RICHARD E. ROBINSON                       Date
Assistant United States Attorney
Major Frauds Section


MILBERG LLP:

_____          _____
                                          6/11/08
                                          Date
Partner
Milberg LLP


CERTIFICATIONS

I, _SANFORD P. DUMAIN,_ am a partner of the law firm

Milberg LLP, formerly known as "Milberg Weiss LLP," "Milberg

Weiss Bershad LLP," "Milberg Weiss Bershad & Schulman LLP,"

"Milberg Weiss Bershad Hynes & Lerach LLP," and "Milberg Weiss

Bershad Specthrie & Lerach" ("Milberg LLP"), and am duly

authorized to enter into this Tolling Agreement on behalf of

Milberg LLP.  This Tolling Agreement is entered into in

connection with the Case Disposition Agreement between Milberg

LLP and the USAO in United States v. Milberg LLP, et al., CR 05-

587(E)-JFW ("U.S. v. Milberg LLP").  I understand the terms of

this Tolling Agreement and the Case Disposition Agreement, and I

voluntarily, knowingly, and willfully agree, on behalf of Milberg

-3-

1  whom enforcement is sought.

2  THE UNITED STATES OF AMERICA

3  THOMAS P. O'BRIEN
   United States Attorney
4  LEON W. WEIDMAN
   Chief, Civil Division

5

6  _____          Dated _____
7  RICHARD E. ROBINSON
   Assistant United States Attorney
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9  MILBERG LLP

10 _____                6/16/08
                                          _____
11                                        Date
   Partner
12 Milberg LLP

13 _____                6/16/98
                                          _____
14 BRYAN DALY                             Date
   Mayer Brown LLP
15 Counsel for Milberg LLP

16

17 _____          _____
   WILLIAM W. TAYLOR, III               Date
18 Zuckerman Spaeder LLP
   Counsel for Milberg LLP

19                    CERTIFICATIONS

20     I, _Sanford P. Dumain_, am a partner of the law firm Milberg

21 LLP, formerly known as "Milberg Weiss LLP," "Milberg Weiss & Bershad

22 LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad

23 Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach"

24 ("Milberg LLP"), and am duly authorized, in accordance with all

25 requirements of the Milberg LLP partnership agreement, to enter into

26 this Stipulation for Entry of Consent Judgment on behalf of Milberg

27 LLP (the "Stipulation").  I understand the terms of this

28                              4

1 | whom enforcement is sought.

2 | THE UNITED STATES OF AMERICA

3 | THOMAS P. O'BRIEN
   | United States Attorney
4 | LEON W. WEIDMAN
   | Chief, Civil Division

5 |

6 | _____         _____
   | RICHARD E. ROBINSON                 Dated
7 | Assistant United States Attorney
   | Attorneys for Plaintiff
8 | UNITED STATES OF AMERICA

9 | MILBERG LLP

10 |

11 | _____         _____
    |                                     Date
   | Partner
12 | Milberg LLP

13 |

14 | _____         _____
    | BRYAN DALY                          Date
   | Mayer Brown LLP
15 | Counsel for Milberg LLP

16 | [signature]
17 | _____         6 / 18 / 08
    | WILLIAM W. TAYLOR, III              _____
   | Zuckerman Spaeder LLP                Date
18 | Counsel for Milberg LLP

19 |                    CERTIFICATIONS

20 |     I, _____, am a partner of the law firm Milberg

21 | LLP, formerly known as "Milberg Weiss LLP," "Milberg Weiss & Bershad

22 | LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss Bershad

23 | Hynes & Lerach LLP," and "Milberg Weiss Bershad Specthrie & Lerach"

24 | ("Milberg LLP"), and am duly authorized, in accordance with all

25 | requirements of the Milberg LLP partnership agreement, to enter into

26 | this Stipulation for Entry of Consent Judgment on behalf of Milberg

27 | LLP (the "Stipulation"). I understand the terms of this

28 |

1  Stipulation, and I voluntarily, knowingly, and willfully agree, on
2  behalf of Milberg LLP, to all of those terms without force, threat,
3  or coercion.  No promises, representations, or inducements, other
4  than those set forth in this Stipulation, have been made to Milberg
5  LLP or me to cause me to enter into this Stipulation on behalf of
6  the law firm.  Milberg LLP's counsel, Zuckerman Spaeder LLP and
7  Mayer Brown LLP, have advised Milberg LLP concerning this
8  Stipulation, including the rights and defenses that Milberg LLP will
9  be giving up by entering into the Stipulation.  Milberg LLP and I
10  are satisfied with the counsel that Zuckerman Spaeder LLP and Mayer
11  Brown LLP have provided to Milberg LLP in this matter.

12
13  _____            6/16/08
                                       Date
14  Partner,
    Defendant Milberg LLP
15

16      I, Bryan Daly, a member of the law firm Mayer Brown LLP, am
17  counsel for defendant Milberg LLP.  I believe that
18  Sanford P. Dumain is a partner of Milberg LLP who is duly
19  authorized to enter into this Stipulation for Entry of Consent
20  Judgment on behalf of Milberg LLP (the "Stipulation").  To the best
21  of my knowledge and belief, Milberg LLP's decision to enter into
22  this Stipulation is an informed and voluntary one.

23
24  _____            6/16/08
    BRYAN DALY                         Date
25  Mayer Brown LLP
    Counsel for Milberg LLP
26
27      I, William W. Taylor, a member of the law firm of Zuckerman
28  .

                                   5

1  Spaeder LLP, am counsel for defendant Milberg LLP.  I believe that

2  SANFORD P DUMAIN  is a partner of Milberg LLP who is duly

3  authorized to enter into this Stipulation for Entry of Consent

4  Judgment on behalf of Milberg LLP (the "Stipulation").  To the best

5  of my knowledge and belief, Milberg LLP's decision to enter into

6  this Stipulation is an informed and voluntary one.

7

8  _____          6/18/08
   WILLIAM W. TAYLOR, III              Date
9  Zuckerman Spaeder LLP
   Counsel for Milberg LLP
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT E TO MILBERG LLP CASE DISPOSITION AGREEMENT**

Case 1:08-cv-03095-LTS    Document 38-3    Filed 06/20/2008    Page 24 of 35
Case 2:05-cr-00587-JFW    Document 515-6    Filed 06/16/2008    Page 2 of 7
EXHIBIT C

1  THOMAS P. O'BRIEN
   United States Attorney
2  LEON W. WEIDMAN
   Chief, Civil Division
3  RICHARD E. ROBINSON (Cal. Bar #090840)
   Assistant United States Attorney
4       1100 United States Courthouse
        312 North Spring Street
5       Los Angeles, California 90012
        Telephone:  (213) 894-0713
6       Facsimile:  (213) 894-6269
        E-mail: Richard.Robinson@usdoj.gov
7  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
8

9

10                 UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13
   UNITED STATES OF AMERICA,        ) CASE NO. CV _____
14                                   )
        Plaintiff,                   ) UNITED STATES' COMPLAINT TO
15                                   ) RECOVER MONEY OWED
        v.                           )
16                                   )
   MILBERG LLP,                      )
17                                   )
        Defendant.                   )
18  _____)

19       Plaintiff United States of America, through its attorneys,

20  alleges as follows:

21  I.  JURISDICTION AND VENUE

22       1.  This is an action to recover money owed to the United

23  States by defendant Milberg LLP (formerly known as "Milberg Weiss

24  LLP," "Milberg Weiss & Bershad LLP," and "Milberg Weiss Bershad &

25  Schulman LLP" ("Milberg LLP").  This Court has subject matter

26  jurisdiction pursuant to 28 U.S.C. § 1345.

27       2.  Venue is proper in this District under 28 U.S.C. § 1391(b)

28  because defendant Milberg LLP has an office and transacts business

1   in this District.

2   **II.  PARTIES**

3       3.   Plaintiff is the United States of America.

4       4.   Defendant Milberg LLP is a New York limited liability

5   partnership, with headquarters in New York, New York, and maintains

6   an office in this District.

7   **III. DEFENDANT MILBERG LLP'S AGREEMENT TO PAY MONEY TO THE UNITED**
       **STATES**

8

9       5.  Milberg LLP and the United States entered into an

10   agreement effective July 1, 2008 entitled "Case Disposition

11   Agreement for Defendant Milberg LLP" (the "Agreement"), filed in

12   the United States Court for the Central District of California in

13   <u>United States v. Milberg LLP, et al.</u>, case no. CR 05-587(D)-JFW.  A

14   true and correct copy of the Agreement is attached hereto and

15   incorporated herein by reference.

16       6.  Milberg LLP is required to: (a) make certain installment

17   payments to the United States Treasury and the United States Postal

18   Inspection Service Consumer Fraud Fund, pursuant to paragraphs 13

19   and 14 of the Agreement; (b) pay applicable interest as part of

20   each of the foregoing installment payments, pursuant to paragraph

21   15 of the Agreement; and (c) satisfy Milberg LLP's installment

22   payment obligations on an accelerated basis in the event that

23   Milberg LLP's "Gross Revenues" exceed certain thresholds, pursuant

24   to paragraphs 16 and 17 of the Agreement.  (The foregoing are

25   hereinafter referred to individually and collectively as the

26   "payment obligations").

27       7.   The United States is entitled to file a Stipulation for

28

1  Entry of Consent Judgment and a Complaint and Consent Judgment
2  based thereon, pursuant to paragraph 19 of the Agreement, if (a)
3  Milberg LLP defaults on any payment obligations; or (b) there has
4  been a final determination of breach pursuant to paragraphs 26
5  through 28 of the Agreement.
6      8.   The United States is authorized and entitled, pursuant to
7  the Stipulation for Entry of Consent Judgment, to insert in the
8  Complaint and Consent Judgment as the amount then due and owing
9  from Milberg LLP to the United States a dollar amount that is the
10 sum of all of the amounts not yet paid under paragraphs 13 through
11 15 of the Agreement.
12                  **FIRST CLAIM FOR RELIEF**
13                **[Default on Payment Obligation]**
14     9.   The United States incorporates the allegations of
15 paragraph 1 through 8 above.
16     10.  Milberg LLP is in default on its payment obligation to
17 the United States.  Milberg LLP therefore owes the United States
18 the sum of all of the amounts not yet paid under paragraphs 13
19 through 15 of the Agreement, which is the sum of $_____.
20                 **SECOND CLAIM FOR RELIEF**
21                  **[Breach of Agreement]**
22     11.  The United States incorporates the allegations of
23 paragraph 1 through 8 above.
24     12.  There has been a final determination of breach pursuant
25 to paragraphs 26 through 28 of the Agreement.  Milberg LLP
26 therefore owes the United States the sum of all of the amounts not
27 yet paid under paragraphs 13 through 15 of the Agreement, which is
28
                                3

1 │ the sum of $_____.

2 │ **PRAYER**

3 │    WHEREFORE, plaintiff the United States of America prays for

4 │ judgment against defendant Milberg LLP on the First Claim for

5 │ Relief and/or for the Second Claim for Relief, for the following:

6 │ the sum of $_____, plus interest thereon at the legal rate,

7 │ and all other relief this Court deems just and proper.

8 │ DATED:

9 │                              Respectfully submitted,

10 │                             THOMAS P. O'BRIEN
                                 United States Attorney

11 │

12 │                            LEON W. WEIDMAN
                                 Assistant United States Attorney
                                 Chief, Civil Division

13 │

14 │

15 │                             By:_____
                                      RICHARD E. ROBINSON
                                 Assistant United States Attorney

16 │

17 │                             Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │
                                    4

1  THOMAS P. O'BRIEN
   United States Attorney
2  LEON W. WEIDMAN
   Chief, Civil Division
3  RICHARD E. ROBINSON (Cal. Bar #090840)
   Assistant United States Attorney
4       1100 United States Courthouse
        312 North Spring Street
5       Los Angeles, California 90012
        Telephone:  (213) 894-0713
6       Facsimile:  (213) 894-6269
        E-mail: Richard.Robinson@usdoj.gov
7  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

8

9

10               UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13
   UNITED STATES OF AMERICA,      ) CASE NO. CV _____
14                                )
        Plaintiff,                ) CONSENT JUDGMENT
15                                )
        v.                        )
16                                )
   MILBERG LLP,                   )
17                                )
        Defendant.                )
18 _____)

19

20
        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that, pursuant
21
   to the Stipulation for Entry of Consent Judgment filed herein by
22
   Plaintiff the United States of America and Defendant Milberg LLP,
23
   and good cause appearing, judgment on the Plaintiff's claims shall
24
   be and hereby is entered in favor of Plaintiff and against
25
   Defendant, in the principal sum of $_____, plus
26
   ///
27
   ///
28

1  post-judgment interest at the legal rate in effect on the date of

2  entry of judgment pursuant to 28 U.S.C. § 1961(b), as amended.

3

4  DATED: _____

5

6

7  _____

8                            UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19  SUBMITTED BY:

20  THOMAS P. O'BRIEN
    United States Attorney
21  LEON W. WEIDMAN
    Chief, Civil Division
22

23  _____        _____
24  RICHARD E. ROBINSON                       Dated
    Assistant United States Attorney
    Attorneys for Plaintiff
25  UNITED STATES OF AMERICA

26

27

28
                                  2

**EXHIBIT F TO MILBERG LLP CASE DISPOSITION AGREEMENT**

1       **EXHIBIT F**

2       **BEST PRACTICES PROGRAM**

3       INTRODUCTION

4       1.      Milberg LLP (the "Firm") voluntarily implemented a "best practices"

5       program on or about February 8, 2006 and it agrees to maintain the program as described

6       herein for 24 months after the execution of its Case Disposition Agreement (the

7       "Agreement") with the United States Attorney's Office for the Central District of

8       California (the "USAO").

9       THE PROGRAM

10      2.      The Firm agrees to:

11              (a)     ensure full compliance with all legal and ethical rules and

12      requirements applicable to the Firm's payment of, or arrangement to pay, any (1) referral

13      fee, co-counsel fee, or other fee division or fee sharing; (2) expert witness; or

14      (3) significant political contribution, charitable contribution, or gift (collectively referred

15      to hereinafter as the "Rules");

16              (b)     require every attorney in the Firm, when entering into any

17      arrangement to pay a referral fee or other fee division or sharing of fees, to prepare and

18      promptly provide to the Compliance Monitor (as defined below) "front end" documents

19      that (1) specify the terms of and justification for the arrangement; (2) in the case of any

20      referral fee arrangement, include written representation(s) from the individual or entity

21      who is expected to share in the fees that the arrangement meets the legal and ethical

22      requirements of all applicable jurisdictions, including the jurisdiction(s) applicable to the

23      individual or entity who is expected to share in the fees; and (3) in the case of any referral

24      fee arrangement, include written representation(s) from referring counsel and the referred

25      client that the client has knowingly consented to the referral fee arrangement and will not

26      receive any direct or indirect pecuniary benefit from such arrangement;

27              (c)     promptly disclose to the Compliance Monitor any modification of

28      an arrangement provided to the Compliance Monitor pursuant to subparagraph (2)(b);

29              (d)     require that upon the resolution of litigation in which the Firm

30      intends to pay any referral fee, co-counsel fee, and/or any other fee division or sharing of

1   fees, a responsible Firm attorney prepare and promptly provide to the Compliance

2   Monitor "back end" documents that (1) specify each such intended payment(s);

3   (2) contain an explanation of the propriety of such payment(s); and (3) in the case of any

4   referral fee payment, include written representations from the individual or entity

5   receiving such referral fee payment(s) that no portion of such fee has been or will be paid

6   over directly or indirectly to any litigation plaintiff(s);

7          (e)     hold payments of referral fees or any other fee division or sharing

8   of fees (other than payments to co-counsel of record) until the required "back end"

9   documentation has been scrutinized and approved by the Compliance Monitor;

10          (f)     in connection with any court filing by the Firm seeking approval of

11   an attorney fee award, disclose to the court (1) the existence of any arrangement by the

12   Firm to share the requested fees with any person other than co-counsel of record in the

13   case, (2) the identity of such person or persons, and (3) an offer to provide the court with

14   the terms of such arrangement(s) upon request by the court;

15          (g)     retain the "front end" and "back end" documents described above

16   during the Agreement Term (as defined in the Agreement);

17          (h)     disclose to the Compliance Monitor and, upon the recommendation

18   of the Compliance Monitor, disclose to the relevant court(s), any relationship between

19   any referring party, co-counsel, or other firm or individual sharing in the fee in any case,

20   on the one hand, and persons or entities associated with such firm or individual, on the

21   other hand, that may present a conflict of interest or the appearance of a conflict of

22   interest;

23          (i)     with respect to any expert witness, disclose to the Compliance

24   Monitor any compensation obligation or arrangement benefitting the witness that depends

25   in whole or in part upon the success of any litigation (i.e. not only the litigation in which

26   the individual is serving as an expert witness);

27          (j)     in connection with any motion to approve a client of the Firm as a

28   lead plaintiff in any class action or shareholder derivative action, disclose to the

29   Compliance Monitor and, upon the recommendation of the Compliance Monitor, disclose

30   to the court presiding over such action any fee arrangement between the Firm and such

31   client;

1        (k)    notify the Compliance Monitor of any disclosures made to third

2    parties, including but not limited to any courts, pursuant to this Program, and provide

3    copies of such disclosure(s) to the Compliance Monitor; and

4        (l)    take appropriate steps to identify and ensure the propriety of

5    significant political contributions, charitable contributions, and gifts by the Firm and

6    maintain a central record under the supervision of the Compliance Monitor of all

7    significant political contributions, charitable contributions, and gifts by the Firm.

8    COMPLIANCE MONITOR

9    3.    The Firm agrees to maintain a designated Compliance Monitor whose

10    primary responsibility is to oversee and maintain the Program. "Compliance Monitor"

11    herein means the Compliance Monitor or the Compliance Monitor's designee, acting at

12    the direction and under the supervision of the Compliance Monitor.

13    4.    The designated Compliance Monitor shall be Bart M. Schwartz, who has

14    been serving as a monitor for the Firm since the Firm voluntarily chose to retain him in

15    that role prior to in or about February 2006. The Firm shall not substitute anyone else as

16    Compliance Monitor during the Agreement Term (as defined in the Agreement) without

17    prior approval from the USAO, which shall not be unreasonably withheld.

18    5.    The Firm agrees to :

19        (a)    cooperate fully, and ensure that all of the Firm's partners,

20    associates, and employees cooperate fully, with the Compliance Monitor in the exercise

21    of his or her duties as described in paragraph 6 below;

22        (b)    make available to the Compliance Monitor all records, including

23    financial and banking records, to which the Compliance Monitor may seek access in the

24    course of performing his or her duties, with the exception of records subject to the

25    attorney-client or work product protections of the Firm's clients. The Firm's financial

26    records relating to fee agreements, referral fees, co-counsel fees, and any other fee

27    division or fee sharing are not subject to the privilege or work product protection for

28    purposes of the Compliance Monitor's review;

29        (c)    prepare and deliver to the Compliance Monitor all reports

30    necessary to perform his or her duties;

1           (d)     provide the Compliance Monitor with a secure office and facilities

2 in the Firm's New York office;

3           (e)     report immediately to the Compliance Monitor any violation or

4 potential violation of the Program, the Agreement, or any of the Rules; and

5           (f)     fund reasonable requests by the Compliance Monitor for assistance

6 of additional experts such as ethics counsel.

7      6.     The Compliance Monitor will take all reasonable steps to ensure that the

8 Firm is in compliance with all of its obligations under this Program, the Agreement, and

9 all of the Rules. Such reasonable steps include, but are not necessarily limited to, the

10 following:

11           (a)     interviewing each attorney in the Firm to explain the Program and

12 the obligations of the Firm, the attorney, and the Compliance Monitor under the

13 Program;

14           (b)     promptly reviewing all documentation submitted by the Firm to the

15 Compliance Monitor pursuant to the Program;

16           (c)     maintaining all proper and necessary auditing procedures;

17           (d)     maintaining a secure office in the Firm's premises for the purpose

18 of providing ongoing consultation to any of the Firm's attorneys regarding the Program,

19 the Agreement, or any of the Rules;

20           (e)     promptly reporting any potential or actual failure of the Firm to

21 comply with its obligations under the Program, the Agreement, or any of the Rules to the

22 Firm's Management Committee, and promptly investigating any potential failure to

23 determine whether there is in fact a failure to comply;

24           (f)     promptly reporting to the USAO any failure of the Firm to comply

25 with its obligations under the Program, the Agreement, or any of the Rules; and

26           (g)     appropriately documenting and maintaining documentation of all

27 transactions or issues submitted to, or identified by, the Compliance Monitor in

28 furtherance of his or her duties under this paragraph 6.

29         COMMUNICATIONS AND CONFIDENTIALITY

30      7.     The USAO may make reasonable inquiries directly to the Compliance

31 Monitor to ensure the Firm's compliance with, and the Compliance Monitor's monitoring

1    of the Firm's compliance with, the Program.  The Compliance Monitor shall promptly

2    respond to such inquiries.

3          8.    The USAO, the Firm, and the Compliance Monitor (the "Parties") agree

4    that:

5          (a)    a confidential relationship between the Firm and the Compliance

6    Monitor currently exists;

7          (b)    a confidential relationship between the Parties has been established.

8    pursuant to the Agreement and this Exhibit;

9          (c)    no information, report, or other material exchanged between the

10   Compliance Monitor and the Firm pursuant to the Agreement shall be disclosed to any

11   third party without the express written consent of the Firm and the Compliance Monitor.

12   Nothing in this subparagraph shall be construed to limit its applicability to any

13   information, report, or other material that the Firm or the Compliance Monitor, or both,

14   consider confidential.

15         (d)    the USAO shall treat as confidential all submissions by the firm,

16   the Compliance Monitor, or both received pursuant to the Agreement or this Exhibit and

17   shall disclose such information only as required by law or for other proper purpose, after

18   reasonable notice to the Firm;

19         (e)    nothing in this paragraph (8) shall limit the USAO's ability to use

20   any information obtained pursuant to the Agreement or this Exhibit to enforce the

21   Agreement.

22         9.    Should any effort be made (a) either by subpoena or otherwise to gain

23   access to information, materials, documents, work product or information of any kind in

24   the possession of the Compliance Monitor that has been generated, obtained or learned as

25   a result of the work performed by the Compliance Monitor in connection with the

26   Program or (b) to otherwise stop, interrupt or interfere with the performance of the

27   Compliance Monitor's work in connection with the Program, whether by judicial action

28   or other means, then in such event and, to the extent feasible and permissible by law

29   under the circumstances, the Compliance Monitor shall promptly notify both the Firm

30   and the USAO and follow lawful directions from the Firm with respect to the Compliance

31   Monitor's response to any such effort.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., On Behalf Of Itself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC.,<br><br>Defendants. | Civil Action No. 08-CV-3095 (LTS) |

*[additional captions follow]*

## SUPPLEMENTAL AFFIDAVIT OF KURTIS R. MAYER

| | |
|---|---|
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     vs.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC. AND CITI SMITH BARNEY,<br><br>                    Defendants. | Civil Action No. 08-CV-3139 (LTS) |
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br>     vs.<br><br>CITIGROUP INC. and CITIGROUP GLOBAL CAPITAL MARKETS, INC.<br><br>                    Defendants. | Civil Action No. 08-CV-3904 (LTS) |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     vs.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>                    Defendants. | Civil Action No. 08-CV-4360 (LTS) |

*[additional captions follow]*

SAED GHALAYINI, Individually And On Behalf
of All Others Similarly Situated,

                Plaintiff,

     vs.

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC., and CITI SMITH BARNEY,

               Defendants.

Civil Action No. 08-CV-5016

STATE OF WASHINGTON )
                           ): ss
COUNTY OF PIERCE      )

      I, Kurtis R. Mayer, being duly sworn, depose and say:

      1.    I submit this affidavit in further support of the motion of Wedgewood Tacoma

LLC and Jemstone LLC (the "Wedgewood Movants") for appointment as Lead Plaintiffs and

approval of their selection of counsel, Milberg LLP, and in reply to Michael Passidomo's

opposition thereto.

      2.    Prior to my retention of Milberg LLP as counsel in this litigation, I was informed

by Milberg LLP that the firm and several of its former name partners had been indicted in

connection with alleged illegal conduct centering around allegations of improper sharing of

attorneys' fees awarded to the firm with certain plaintiffs in certain cases identified in the

indictment. I was informed that Milberg LLP had pleaded not guilty and that the partners named

in the indictments left the firm and plead guilty to a charge of conspiracy.

      3.    Milberg has updated me as to the status of the indictment of Milberg LLP. To

that end, I was recently informed that Milberg LLP has announced that the indictment against the

firm is now being dismissed as part of a comprehensive settlement with federal prosecutors.

According to Milberg LLP, the prosecutors concluded that no attorney currently a partner or

associate with Milberg LLP is criminally culpable and agreed that the conspiring former partners

took affirmative steps to conceal their illegal activities from other partners, associates, and

employees of the Firm. I was also informed that the firm has agreed to pay $75 million over the

next several years, and has agreed to continue and expand its existing "best practices" program

with respect to fees.

4.      I and my family fully support the appointment of Milberg LLP as lead counsel in

this litigation and we have confidence in the firm's ability to adequately and skillfully conduct

this litigation.

5.      As a matter of minor correction to paragraph number 8 of my prior affidavit

submitted on June 16, 2008, I would like to point out that while I stated in that affidavit that my

wife Pamela Mayer "is currently" a Board member of the Tacoma Art Museum, in fact she just

recently ceased her Board membership with the Tacoma Art Museum.

Dated:  June 20, 2008

_Kurtis R. Mayer_
Kurtis R. Mayer

Sworn to before me this _20th_ day
of June, 2008.

_Janet V. Detering_
Janet V. Detering
Notary Public in and for the State of
Washington, residing at Tacoma.
My commission expires 4-24-2010.

2.

# EXHIBIT C

**<u>Appendix of Decisions Appointing/Affirming Milberg LLP
as Counsel in Leadership Position Post-Indictment
(In Descending Date Order)</u>**

Amended Case Management Order, *In re Korean Airlines Co., Ltd. Antitrust Litig.*, No 07-5107 (C.D. Cal. Mar. 14, 2008) (appointing Milberg LLP interim co-lead counsel) (Exhibit I).

Practice & Procedure Order, *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, MDL No. 07-1842 (D.R.I. Feb 29, 2008) (appointing Milberg LLP to the Plaintiffs' Steering Committee in mass tort multidistrict litigation).

So-Ordered Stipulation, *Berkovitz v. Shoretel, Inc.*, No. 108-CV-104623 (Cal. Super. Ct., Santa Clara Cty. Feb. 28, 2008) (appointing Milberg LLP as plaintiffs' lead counsel in derivative action).

Order & Final Judgment, *New Jersey Building Laborers Pension & Annuity Funds v. Applebee's Int'l, Inc.*, No. 3124-CC (Del. Ch. Feb. 27, 2008) (approving class action settlement and awarding attorneys' fees in case in which Milberg LLP served as plaintiffs' counsel).

Order & Final Judgment, *Morgan v. AXT, Inc.*, No. 04-4362 (N.D. Cal. Feb. 26, 2008) (approving class action settlement in case in which Milberg LLP served as lead counsel).

So-Ordered Stipulation, *In re Leap Wireless Int'l, Inc. S'holder Deriv. Litig.*, No. 37-2007-81584 (Cal. Super. Ct., San Diego Cty. Feb 20, 2008) (appointing Milberg LLP as plaintiffs' lead counsel).

Pretrial Order, *In re Morgan Stanley ERISA Litig.*, No. 07-11285 (S.D.N.Y. Feb. 11, 2008) (appointing Milberg LLP as co-lead class counsel).

Pretrial Order, *In re First Am. Corp. ERISA Litig.*, No. 07-1357 (C.D. Cal. Feb, 1 2008) (appointing Milberg LLP as interim co-lead counsel).

So-Ordered Stipulation, *In re Countrywide Fin. Corp. Shareholder Deriv. Litig.*, No. BC375275 (Cal. Super. Ct., L.A. Cty. Jan. 9, 2008) (appointing Milberg LLP co-lead counsel).

Memorandum & Order, *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 02-1335 (D.N.H. Dec, 19, 2007) (approving $3.2 billion settlement in class action in which Milberg LLP is co-lead counsel and noting that "Co-Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery").

Order & Final Judgment, *In re Stillwater Mining Co. Sec. Litig.*, No. 03-93 (D. Mont. Dec. 17, 2007) (approving class action settlement from the bench in case in which Milberg LLP served as class counsel).

Final Order & Judgment, *In re PMA Capital Corp. Sec. Litig.*, No. 03-6121 (E.D. Pa. Dec. 13, 2007) (granting final approval to settlement in securities fraud class action in case in which Milberg LLP is sole class counsel).

Judgment, *In re Omnivision Techs., Inc.*, No. 04-2297 (N.D. Cal. Dec. 6, 2007) (approving settlement in case in which Milberg LLP serves as lead counsel for the class and noting that "[t]he primary Milberg LLP attorneys working on this matter have not been implicated in any wrongdoing").

Order, *In re Remec, Inc. Sec. Litig.*, No. 04-1948 (S.D. Cal. Nov. 21, 2007) (granting class certification and holding that "Milberg LLP is qualified to represent the interests of the proposed class").

Minutes of Status Conference, *Park v. Korean Air Lines Co., Ltd.*, No. 07-5107 (C.D. Cal. Nov. 13, 2007) (appointing Milberg LLP co-interim class counsel in antitrust case).

Order, *Marsden v. Select Med. Corp.*, No. 04-4020, 2007 U.S. Dist LEXIS 79450, at *20-21 (E.D. Pa. Oct. 26, 2007) (certifying class in case where Milberg LLP is co-class counsel and noting that none of the Milberg LLP partners litigating the case were named in the indictment).

Order, *In re Genta, Inc. Sec. Litig.*, No. 04-2123 (D.N.J. Oct. 30, 2007) (granting preliminary approval to class action settlement and certification of the class in case in which Milberg LLP is class counsel).

Order, *Spahn v. Edward D. Jones & Co.*, No. 04-86 (E.D. Mo. Oct. 25, 2007) (granting final approval to class action settlement in case in which Milberg LLP is co-class counsel).

Order, *Cooper v. Pac.c Life Ins. Co.*, No. 03-131 (S.D. Ga. Oct. 3, 2007) (approving settlement in securities fraud class action in which Milberg LLP is sole class counsel).

Final Order, *In re Columbia Entities Litig.*, No. 04-11704 (D. Mass. Sept. 18, 2007) (approving Milberg LLP as co-class counsel and granting final approval to class action settlement).

Order & Final Judgment, *In re CMS Energy Sec. Litig.*, No. 02-72004 (E.D. Mich. Sept. 6, 2007) (granting final approval of $200 million settlement of securities fraud class action in case in which Milberg LLP is co-class counsel and noting that the settlement was achieved with "skill, perseverance, and diligent advocacy" and noting at settlement hearing that Plaintiffs' effort was "truly extraordinary").

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, (S.D.N.Y. Sept. 4, 2007) (certifying class and holding that "[i]n accord with the overwhelming majority of courts faced with this issue, we decline [to remove Milberg LLP as class counsel]").[1]

*In re Magma Design Automation, Inc. Sec. Litig.*, No. 05-2394, 2007 U.S. Dist. LEXIS 62641, at *8 (N.D. Cal. Aug. 16, 2007) (certifying 10b class and appointing Milberg LLP sole class counsel).

---

[1] The United States Court of Appeals for the Second Circuit has granted Rule 23(f) review of this decision.

Order, *In re Beazer Homes USA Inc. Sec. Litig.*, No. 07-725 (N.D. Ga. Aug. 8, 2007) (appointing Milberg LLP co-lead counsel)

Order, *Santiago v. GMAC Mortgage Group, Inc.*, No. 02-4048 (E.D. Pa. Aug. 7, 2007) (granting final approval to class action settlement in case in which Milberg LLP is co-class counsel).

Order & Final Judgment, *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04-1773 (S.D.N.Y. July 18, 2007) (appointing Milberg LLP class co-counsel for settlement purposes and approving settlement)

Final Judgment, *Montoya v. Mamma.com, Inc.*, No. 05-2313 (S.D.N.Y. July 13, 2007) (approving settlement and distribution of attorneys' fees in case in which Milberg LLP served as co-lead counsel to the class).

Order & Final Judgment, *In re Freescale Semiconductor, Inc. S'holder Lawsuit*, No. D-1-GN-06-003501 (Tex. Dist. Ct., Travis Cty, June 25, 2007) (certifying class and approving settlement in case in which Milberg LLP served as co-lead counsel to the class).

Order & Final Judgment, *In re Martha Stewart Living Omnimedia, Inc. Sec. Litig.*, No. 02-6273 (S.D.N.Y. June 8, 2007) (approving settlement in case in which Milberg LLP served as co-lead counsel to the class).

Short Form Order, *Trugman v. Aeroflex, Inc.*, No. 4246/2007 (N.Y. Sup. Ct. Nassau Cty. May 7, 2007) (consolidating related cases and appointing Milberg LLP co-lead counsel).

Final Order & Judgment, *In re PNC Fin. Servs. Group, Inc. Sec. Litig.*, No. 02-271 (W.D. Pa. Apr. 12, 2007) (approving settlement and distribution of attorneys' fees in case in which Milberg LLP served as co-lead counsel for the class).

Order, *In re Topps Co., Inc. S'holder Litig.*, No. 07-600715 (N.Y. Sup. Ct., N.Y. Cty. April 17, 2007) (appointing Milberg LLP co-lead counsel).

*In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. Mar. 23, 2007) (certifying class in case in which Milberg LLP is co-lead counsel).

*In re Novastar Fin. Sec. Litig.*, No. 04-0330, 2007 U.S. Dist. LEXIS 9039, at *21 (W.D. Mo. Feb. 8, 2007) ("[R]emoval of Milberg LLP as co-lead counsel would not only harm the class, but prematurely punish the firm for unproven allegations. The Court does not believe it is appropriate to consider disqualification of the firm unless and until the claims have been substantiated.")

Order, *In re 99 Cents Only Stores Sec. Litig.*, No. 04-4273 (C.D. Cal. Feb. 8, 2007) (approving settlement and awarding attorneys' fees in case in which Milberg LLP serves as co-lead counsel for the class).

Transcript of Hearing, *In re: Merck & Co. Sec., Derivative, & "ERISA" Litig.*, No. 05-2367, MDL 1658 (D.N.J. Jan. 25, 2007) ("[T]his Court takes the presumption of innocence seriously.  I have read decisions by other judges dealing with the Milberg LLP situation and some of them I

3

frankly disagree with. In short, having been a prosecutor for my entire career before I became a federal judge, I came to take not only the presumption of innocence very seriously but also those opening words in the charge to almost any criminal jury which is an indictment is merely an accusation. . . . It means nothing beyond that. . . . For this Court to regard the indictment of the Milberg LLP firm as anything other than that, in my view, would be a total abdication of our criminal justice system and the way in which it's supposed to work.").

Order & Final Judgment, *Simons v. Dynacq Healthcare, Inc.*, No. 03-5825 (S.D. Tex. Jan. 10, 2007) (approving settlement and stating that "Lead Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Order & Final Judgment, *In re Sears, Roebuck & Co., Sec. Litig.*, No. 02-7527 (N.D. Ill. Jan. 8, 2007) (In approving settlement of $215 million, Judge Bucklo's order stated that "Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Order & Final Judgment, *In re McLeod USA Inc. Sec. Litig.*, No. 02-0001 (N.D. Iowa Jan. 5, 2007) (approving settlement in case in which Milberg LLP served as co-lead counsel for the class).

Decision & Order, *In re Nortel Networks Corp. Sec. Litig. (Nortel I)*, No. 01-cv-1855 (S.D.N.Y. Dec. 26, 2006) (approving settlement in case in which Milberg LLP served as lead counsel for the class).

Order, *In re Hibernia Foods, PLC Sec. Litig.*, No. 04-3182 (S.D.N.Y. Dec. 22, 2006) (approving settlement and awarding attorney's fees in case in which Milberg LLP serves as co-lead counsel for the class).

Order, *In re Lord Abbett Mut. Funds Fee Litig.*, No. 04-0559 (D.N.J. Dec. 1, 2006) ("[T]he Court finds insufficient reasons at the present time to relieve Milberg LLP as counsel to Plaintiffs in this matter").

Order & Final Judgment, *In re Broadwing Inc. Sec. Litig.*, No. 02-795 (S.D. Ohio Nov. 30, 2006) (approving $36 million settlement and stating that "Plaintiffs' Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Order, *In re Freescale Semiconductor Inc. S'holder Litig.*, No. D-1-GN-06-003501 (Dist. Ct. Travis Cty., Tex. Oct. 31, 2006) (Judge Dietz appointing Milberg LLP co-lead counsel).

Consolidation Order, *In re Diebold Sec. Litig.*, No. 05-2873 (N.D. Ohio Oct. 20, 2006) (Judge Economus appointing Milberg LLP co-lead counsel).

*In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30 (D.N.H. Oct. 19, 2006) (certifying settlement class and approving settlement in case in which Milberg LLP is co-lead counsel).

*In re Martek Biosciences Corp. Sec. Litig.*, No. 05-1224 (D. Md. June 21, 2006) (in response to a letter disclosing the indictment, the Court issued a letter stating that it saw no need to address the indictment. The court subsequently certified the class.).

Order & Final Judgment, *In re Vistacare, Inc. Sec. Litig.*, No. 04-1661 (D. Ariz. Sept. 29, 2006) (approving settlement in case in which Milberg LLP served as class counsel).

Order & Final Judgment, *Pozniak v. Imperial Chem. Indus. PLC*, No. 03-2457 (S.D.N.Y. Sept. 19, 2006) (approving settlement and stating that "Plaintiffs' Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Order & Final Judgment, *In re Tellium, Inc. Secs Litig.*, No. 02-5878 (D.N.J. Sept. 7, 2006) (approving settlement and stating that "Plaintiffs' Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

*In re Arm Fin. Group, Inc.*, No. 99-539, 2006 U.S. Dist. LEXIS 63528, at *10 (W.D. Ky. Aug. 31, 2006) (approving settlement and stating that "counsel for both sides deserve the Court's praise for the manner in which they have conducted themselves.").

Order, *Cokely v. N.Y. Convention Ctr. Operating Corp.*, No. 00-4637 (S.D.N.Y. Aug. 15, 2006) (approving settlement with Milberg LLP sole lead counsel and approving consent decree granting Milberg LLP three-year supervisory role).

Amended Case Management Order, *In re New York Bextra & Celebrex Prods. Liab. Litig.*, No. 05-1699 (N.Y. Sup. Ct., N.Y. Cty. Aug. 1, 2006) (confirming Milberg LLP's role on plaintiffs' steering committee).

Order & Final Judgment, *In re Network Engines, Inc. Secs Litig.*, No. 03-12529 (D. Mass. July 25, 2006) (approving settlement and stating that "Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Memorandum, *In re Williams Sec. Litig.*, No. 02-72 (N.D. Okla. July 19, 2006) (declining to appoint special master to determine whether Milberg LLP should remain co-lead because the matters alleged in the indictment have no connection to the case before the court).

Order & Final Judgment, *In re Allegheny Energy, Inc. Sec. Litig.*, No. 03-1518 (D. Md. July 17, 2006) (Judge Davis's order in connection with the approval of a $15 million settlement, stated: "Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy").

Decision & Order, *Sollins v. Alexander*, No. 601272/2006, 2006 N.Y. Misc. LEXIS 2889, at *10 n.2 (N.Y. Sup. Ct., N.Y. Cty. July 13, 2006) ("[the indictment] has no effect on this litigation and . . . no bearing on this action or the attorneys who are appointed co-lead counsel. . . . [N]one of the attorneys here for Milberg LLP have been indicted or have been accused of any wrongdoing…[U]nless and until Milberg LLP is found guilty . . . the presumption of innocence is binding.").

*In re PNC Fin. Servs. Group, Inc., Sec. Litig.*, 440 F. Supp. 2d 421, 431 (W.D. Pa. July 13, 2006) (approving settlement and stating that "[C]o-lead counsel are highly experienced and skilled practitioners who have successfully prosecuted numerous class actions throughout the United States.").

*In re WRT Energy Sec. Litig.*, No. 96-3610, 2006 U.S. Dist. LEXIS 47483, at *9 n.2 (S.D.N.Y. July 13, 2006) (acknowledging the indictment and noting that plaintiffs' counsel's letter to the court assured it "that [Milberg LLP] remains ready and able to vigorously prosecute the WRT matter" and that "the indictment does not bear on the 'pending' litigation in this case.").

Order, *Welmon v. Chicago Bridge & Iron Co.*, No. 06-01283 (S.D.N.Y. June 19, 2006) (Judge Sprizzo reaffirming Milberg LLP as co-lead counsel).

*Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J June 2, 2006) (Judge Cavanaugh, in approving settlement of $153 million, found that "Plaintiffs [] retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg LLP] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . . Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg LLP's] appreciation of the merits and complexity of this litigation.").

Order, *In re Rhodia S.A. Sec. Litig.*, No. 05-5389 (MDL No. 1714) (S.D.N.Y. May 31, 2006) (appointing Milberg LLP lead counsel).

Order, *Congregation Ezra Sholom v. Blockbuster, Inc.*, No. 05-2213 (N.D. Tex. May 25, 2006) (appointing Milberg LLP lead counsel).

Order of Consolidation, *Showers v. Kanas*, No. 06-4624 (N.Y. Sup. Ct., Nassau Cty. May 22, 2006) (appointing Milberg LLP co-lead counsel).

# EXHIBIT D

## Appendix of Milberg LLP's Post-Indictment
## Final and Preliminarily Approved Settlements

| Date of Final or Preliminary Approval of Settlement by Trial/District Court | Case | Cash Settlement Amount ($ in millions) |
|---|---|---|
| **April 9, 2008** | *In re Biovail Sec. Litig.*, No. 03-CV-8917 (S.D.N.Y.) (preliminary approval granted on April 9, 2008) | **138** |
| April 4, 2008 | *In re Martek Biosciences Corp. Sec. Litig.*, No. 05-1224 (D. Md.) | 6 |
| Mar. 27, 2008 | *Carlson v. Xerox Corp.*, No. 3:00-CV-1621 (D. Conn.) (preliminary approval granted on March 27, 2008) | 750 |
| Feb. 26, 2008 | *Morgan v. AXT, Inc*, No. 04-4362 (N.D. Cal.) | 2.575 |
| Feb. 19, 2008 | *Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 02-CV-2133 (D. Conn.) (preliminary approval granted on February 19, 2008) | 10.5 |
| Feb. 6, 2008 | *Terry Walker v. Rent-A-Center. Inc.*, No. 5:02cv3 (E.D. Tex.) | 3.6 |
| **Jan. 30, 2008** | *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06-CV-01283 (S.D.N.Y.) (preliminary approval granted on January 30, 2008) | **10.5** |
| Dec. 19, 2007 | *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. 02-1335 (D.N.H.) | 3,200 |
| Dec. 17, 2007 | *In re Stillwater Mining Co. Sec. Litig.*, No. 03-93 (D. Mont.) | 2.55 |

| Date of Final or Preliminary Approval of Settlement by Trial/District Court | Case | Cash Settlement Amount ($ in millions) |
|---|---|---|
| Dec. 13, 2007 | In re PMA Capital Corp. Sec. Litig., No. 03-6121 (E.D. Pa.) | 15 |
| Dec. 6, 2007 | In re Omnivision Techs., Inc., No. 04-2297 (N.D. Cal.) | 13.75 |
| Oct. 30, 2007 | In re Genta, Inc. Sec. Litig., No. 04-2123 (D.N.J.) (preliminary approval granted on October 30, 2007) | 18 |
| Oct. 25, 2007 | Spahn v. Edward D. Jones & Co., L.P., No. 04-00086 (E.D. Mo.) | 127.5 |
| Oct. 3, 2007 | Cooper v. Pac. Life Ins. Co., No. 03-131 (S.D. Ga.) | 60 |
| Sept. 26, 2007 | Lasker v. Kanas (North Fork Bank), No. 06-103557 (Sup. Ct. N.Y. Cty.) | 20 |
| Sept. 6, 2007 | In re CMS Energy Sec. Litig., No. 02-72004 (E.D. Mich.) | 200 |
| July 18, 2007 | **In re Am. Express Fin. Advisors Sec. Litig., No. 04-1773 (S.D.N.Y.)** | **100** |
| July 13, 2007 | **Montoya v. Mamma.com, Inc., No. 05-02313 (S.D.N.Y.)** | **3.15** |
| June 8, 2007 | **In re Martha Stewart Living Omnimedia, Inc., Sec. Litig., No. 02-6273 (S.D.N.Y.)** | **30** |
| May 7, 2007 | **In re NTL, Inc. Sec. Litig., No. 02-3013 (S.D.N.Y)** | **9** |

2

**Bold font indicates cases in the Southern District of New York.**

| Date of Final or Preliminary Approval of Settlement by Trial/District Court | Case | Cash Settlement Amount ($ in millions) |
|---|---|---|
| Apr. 23, 2007 | *Bamboo Partners LLC, v. Robert Mondavi Corp.*, No. 26-27170 (Sup. Ct. Cal., Napa Cty.) | 11 |
| Apr. 12, 2007 | *In re PNC Fin. Servs. Group, Inc. Sec. Litig.*, No. 04-4273, No. 02-271 (W.D. Pa.) | 9.075 |
| Feb. 8, 2007 | *In re 99 Cents Only Stores Sec. Litig.*, No. 04-4273 (C.D. Cal.) | 4.3 |
| Jan. 10, 2007 | *Simons v. Dynacq Healthcare, Inc.*, No. 03-5825 (S.D. Tex.) | 1.5 |
| Jan. 8, 2007 | *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-7527 (N.D. Ill.) | 215 |
| Jan. 5, 2007 | *In re McLeod USA Inc. Sec. Litig.*, No. 02-0001 (N.D. Iowa) | 30 |
| **Dec. 26, 2006** | ***In re Nortel Networks Corp. Sec. Litig. (Nortel I)*, No. 01-cv-1855 (S.D.N.Y.)** | **438.667** |
| **Dec. 22, 2006** | ***In re Hibernia Foods PLC Sec. Litig.*, No. 04-3182 (S.D.N.Y.)** | **2.8** |
| Nov. 30, 2006 | *In re Broadwing Inc. Sec. Litig.*, No. 02-795 (S.D. Ohio) | 36 |
| Oct. 19, 2006 | *In re Cabletron Sys., Inc. Sec. Litig.*, No. 97-542 (D.N.H) | 10.5 |
| Sept. 29, 2006 | *In re Vistacare, Inc. Sec. Litig.*, No. 04-1661 (D. Ariz.) | 4.6 |

**Bold font indicates cases in the Southern District of New York.**

3

| Date of Final or Preliminary Approval of Settlement by Trial/District Court | Case | Cash Settlement Amount ($ in millions) |
|---|---|---|
| Sept. 19, 2006 | *Pozniak, v. Imperial Chem. Indust. PLC*, No. 03-2457 (S.D.N.Y) | **3.8** |
| Sept. 7, 2006 | *In re Tellium Inc Sec. Litig.*, No. 02-5878 (D.N.J.) | 5.5 |
| Aug. 31, 2006 | *In re ARM Fin. Group, Inc. Sec. Litig.*, No. 99-539 (W.D. Ky.) | 3.0 |
| July 25, 2006 | *In re Network Engines, Inc. Sec. Litig.*, No. 03-12529 (D. Mass.) | 2.875 |
| July 17, 2006 | *In re Allegheny Energy, Inc. Sec. Litig.*, No. 03-1518 (D. Md.) | 15.05 |
| July 13, 2006 | *In re PNC Fin. Servs. Group, Inc. Sec. Litig.*, No. 02-271 (W.D. Pa.) | 36.6 |
| June 6, 2006 | *Simon v. KPMG LLP*, No. 05-3189 (D.N.J.) | 153 |

**Bold font indicates cases in the Southern District of New York.**

4

# EXHIBIT E



**ISS** SECURITIES CLASS ACTION SERVICES

INSTITUTIONAL SHAREHOLDER SERVICES

Visit issproxy.com

# The SCAS 50 for 2006

**S**ecurities Class Action Services (SCAS), a wholly-owned subsidiary of Institutional Shareholder Services that maintains the leading database on securities class action litigation, is pleased to present the "SCAS 50" for the year 2006. The SCAS 50 lists the top 50 plaintiffs' law firms ranked by the total dollar amount of final securities class action settlements occurring in 2006 in which the law firm served as lead or co-lead counsel.

| RANK | LAW FIRM | SETTLEMENT TOTAL | # OF SETTLEMENTS | AVERAGE |
|------|----------|------------------|------------------|---------|
| 1 | Lerach Coughlin Stoia Geller Rudman & Robbins LLP | $7,307,050,000 | 30 | $243,568,333 |
| 2 | Bernstein Litowitz Berger & Grossmann | $2,634,765,298 | 9 | $292,751,700 |
| 3 | Heins Mills & Olson PLC | $2,500,000,000 | 1 | $2,500,000,000 |
| 4 | Milberg Weiss Bershad LLP | $1,604,608,808 | 22 | $72,936,764 |
| 5 | Entwistle & Cappucci | $1,100,000,000 | 1 | $1,100,000,000 |
| 6 | Barrack, Rodos & Bacine | $960,000,000 | 1 | $960,000,000 |
| 7 | Kirby McInerney & Squire | $650,900,000 | 5 | $130,180,000 |
| 8 | Abbey Spanier Rodd Abrams & Paradis | $590,925,000 | 8 | $73,865,625 |
| 9 | Barrett & Weber | $410,000,000 | 1 | $410,000,000 |
| 9 | Waite, Schneider, Bayless & Chesley | $410,000,000 | 1 | $410,000,000 |
| 11 | Schiffrin, Barroway, Topaz & Kessler, LLP | $350,650,000 | 12 | $29,220,833 |
| 12 | Labaton Sucharow & Rudoff LLP | $243,950,000 | 7 | $34,850,000 |
| 13 | Lite, DePalma, Greenberg & Rivas | $216,500,000 | 1 | $216,500,000 |
| 14 | Lowenstein Sandler | $137,500,000 | 1 | $137,500,000 |
| 15 | Berman DeValerio Pease Tabacco Burt & Pucillo | $119,753,491 | 4 | $29,938,373 |
| 16 | Stull Stull & Brody | $106,692,922 | 3 | $35,564,307 |
| 17 | Wolf Haldenstein Adler Freeman & Herz | $99,750,000 | 6 | $16,625,000 |
| 18 | Grant & Eisenhofer | $99,500,524 | 2 | $49,750,262 |
| 19 | Levin Papantonio Thomas Mitchell Echsner and Proctor | $99,250,000 | 1 | $99,250,000 |
| 20 | Weiss & Lurie | $94,100,000 | 6 | $15,683,333 |
| 21 | Cohen Milstein Hausfeld & Toll | $80,750,000 | 7 | $11,535,714 |
| 22 | Pomerantz Haudek Block Grossman & Gross | $77,850,000 | 2 | $38,925,000 |
| 23 | Abraham, Fruchter & Twersky, LLP | $61,392,922 | 3 | $20,464,307 |
| 24 | Bernstein Liebhard & Lifshitz LLP | $59,650,000 | 5 | $11,930,000 |
| 25 | Gold Bennett Cera & Sidener LLP | $56,292,922 | 1 | $56,292,922 |
| 26 | Chimicles & Tikellis | $52,500,000 | 2 | $26,250,000 |
| 27 | Saunders & Doyle | $50,000,000 | 1 | $50,000,000 |
| 27 | Tighe Patton Armstrong Teasdale, LLP | $50,000,000 | 1 | $50,000,000 |
| 29 | Yourman Alexander & Parekh LLP | $49,375,000 | 3 | $16,458,333 |
| 30 | Berger & Montague, P.C. | $44,229,539 | 8 | $5,528,692 |
| 31 | Schoengold Sporn Laitman & Lometti, P.C. | $40,400,000 | 2 | $20,200,000 |
| 32 | Weiss & Yourman | $39,900,000 | 1 | $39,900,000 |
| 33 | Strauss & Troy LPA | $36,000,000 | 1 | $36,000,000 |
| 34 | Chitwood Harley Harnes LLP | $35,000,000 | 1 | $35,000,000 |
| 35 | Schatz & Nobel | $32,750,000 | 1 | $32,750,000 |
| 36 | Gardere Wynne Sewell | $32,500,000 | 1 | $32,500,000 |

| 36 | The Wynne Law Firm | $32,500,000 | 1 | $32,500,000 |
| 38 | Ackerman, Link & Sartory, P.A. | $30,000,000 | 1 | $30,000,000 |
| 39 | Faruqi & Faruqi | $29,700,000 | 2 | $14,850,000 |
| 40 | Kaplan Fox & Kilsheimer | $19,500,000 | 2 | $9,750,000 |
| 41 | Law Office of Bernard M. Gross | $17,550,000 | 2 | $8,775,000 |
| 42 | Cotchett Pitre & McCarthy | $17,500,000 | 1 | $17,500,000 |
| 43 | Shapiro Haber & Urmy | $13,000,000 | 3 | $4,333,333 |
| 44 | Bonnett Fairbourn Friedman & Balint | $12,503,491 | 1 | $12,503,491 |
| 45 | Finkelstein Thompson LLP | $11,650,000 | 4 | $2,912,500 |
| 46 | Klafter & Olsen LLP | $10,500,000 | 1 | $10,500,000 |
| 47 | Bagnell & Eason, LLP | $9,350,000 | 1 | $9,350,000 |
| 47 | McGowan Hood Felder & Johnson | $9,350,000 | 1 | $9,350,000 |
| 49 | Green Welling LLP | $9,125,000 | 1 | $9,125,000 |
| 50 | Johnson & Perkinson | $8,500,000 | 1 | $8,500,000 |

## Snapshot: Average Settlement Amount

The top 5 law firms ranked by highest average settlement amount (minimum of five settlements) are as follows:

| RANK | SCAS 50 RANK | LAW FIRM | SETTLEMENT TOTAL | # OF SETTLEMENTS | AVERAGE |
|---|---|---|---|---|---|
| 1 | 2 | Bernstein Litowitz Berger & Grossmann | $2,634,765,298 | 9 | $292,751,700 |
| 2 | 1 | Lerach Coughlin Stoia Geller Rudman & Robbins LLP | $7,307,050,000 | 30 | $243,568,333 |
| 3 | 7 | Kirby McInerney & Squire | $650,900,000 | 5 | $130,180,000 |
| 4 | 8 | Abbey Spanier Rodd Abrams & Paradis | $590,925,000 | 8 | $73,865,625 |
| 5 | 4 | Milberg Weiss Bershad LLP | $1,604,608,808 | 22 | $72,936,764 |

## Snapshot: Number of Settlements

The top 5 law firms ranked by total number of final settlements are as follows:

| RANK | SCAS 50 RANK | LAW FIRM | SETTLEMENT TOTAL | # OF SETTLEMENTS | AVERAGE |
|---|---|---|---|---|---|
| 1 | 1 | Lerach Coughlin Stoia Geller Rudman & Robbins LLP | $7,307,050,000 | 30 | $243,568,333 |
| 2 | 4 | Milberg Weiss Bershad LLP | $1,604,608,808 | 22 | $72,936,764 |
| 3 | 11 | Schiffrin, Barroway, Topaz & Kessler, LLP | $350,650,000 | 12 | $29,220,833 |
| 4 | 2 | Bernstein Litowitz Berger & Grossmann | $2,634,765,298 | 9 | $292,751,700 |
| 5 | 8 | Abbey Spanier Rodd Abrams & Paradis | $590,925,000 | 8 | $73,865,625 |

## Methodology

We created the SCAS 50 using data from the SCAS database, which tracks, among many other things, federal and state shareholder class actions. We also contacted each law firm to seek confirmation of the settlement data pertaining to that firm. The SCAS 50 does not include data on ERISA or derivative lawsuits.

The SCAS 50 reflects only those final settlements that resulted in the creation of a settlement fund on behalf of shareholders. Cases which resulted in no settlement fund being created, but instead had only non-monetary settlement terms (such as corporate governance changes, changes in the terms of a merger, etc.) are not included. Further information on such settlements can be found in the SCAS database.

The SCAS 50 credits law firms that served as lead or co-lead counsel in a case with the entire settlement fund, regardless of how many other firms served as lead or co-lead counsel in the case. Thus, for a settlement of $1,000,000 dollars where there were two lead counsel, the SCAS 50 credits both law firms with a $1,000,000 settlement rather than dividing the settlement fund in half. For purposes of this report, law firms are considered to be lead or co-lead counsel if they are identified as such in the notice of settlement distributed to shareholders.

**Terminology**

SETTLEMENT TOTAL is the total dollar value of all final settlements occurring in 2006 in which the law firm served as lead or co-lead counsel, and where a settlement fund resulted.

# of SETTLEMENTS is the total number of final settlements occurring in 2006 in which the law firm served as lead or co-lead counsel, and where a settlement fund resulted.

AVERAGE is the SETTLEMENT TOTAL divided by the # of SETTLEMENTS.


For further information, please contact Adam Savett, Vice President of ISS' Securities Class Action Services, at (301) 556-0176 or via email at adam.savett@issproxy.com.

# EXHIBIT F

# Securities Class Action Services
## The SCAS 50 for 2007

**RiskMetrics** Group

**Securities Class Action Services** is pleased to present the "SCAS 50" for the year 2007. The SCAS 50 lists the top 50 plaintiffs' law firms ranked by the total dollar amount of final securities class action settlements occurring in 2007 in which the law firm served as lead or co-lead counsel.

## The SCAS 50 for 2007

| Rank | Law Firm | Settlement Total | # of Settlements | Average |
|------|----------|------------------|------------------|---------|
| 1 | Milberg Weiss | $3,804,625,000 | 17 | $223,801,471 |
| 2 | Grant & Eisenhofer | $3,451,300,000 | 5 | $690,260,000 |
| 3 | Schiffrin Barroway Topaz & Kessler | $3,302,265,000 | 19 | $173,803,421 |
| 4 | Coughlin Stoia Geller Rudman & Robbins | $1,853,990,000 | 49 | $37,836,531 |
| 5 | Bernstein Litowitz Berger & Grossmann | $1,338,110,000 | 10 | $133,811,000 |
| 6 | Labaton Sucharow | $765,200,000 | 4 | $191,300,000 |
| 7 | Schatz Nobel Izard | $491,925,000 | 7 | $70,275,000 |
| 8 | Cunningham, Bounds, Crowder, Brown & Breedlove | $445,000,000 | 1 | $445,000,000 |
| 9 | Berman DeValerio Pease Tabacco Burt & Pucillo | $443,125,000 | 5 | $88,625,000 |
| 10 | Stull Stull & Brody | $355,000,000 | 6 | $59,166,667 |
| 11 | Kaplan Fox & Kilsheimer | $232,000,000 | 6 | $38,666,667 |
| 12 | Weiss & Lurie | $222,100,000 | 9 | $24,677,778 |
| 13 | Cohen Milstein Hausfeld & Toll | $220,705,000 | 9 | $24,522,778 |
| 14 | Entwistle & Cappucci | $210,300,000 | 4 | $52,575,000 |
| 15 | Lite, DePalma, Greenberg & Rivas | $190,000,000 | 1 | $190,000,000 |
| 15 | Wolf Popper | $190,000,000 | 1 | $190,000,000 |
| 17 | Shapiro Haber & Urmy | $182,875,000 | 5 | $36,575,000 |
| 18 | Bernstein Liebhard & Lifshitz | $161,050,000 | 7 | $23,007,143 |
| 19 | Murray, Frank & Sailer | $158,201,000 | 8 | $19,775,125 |
| 20 | Abbey Spanier Rodd Abrams & Paradis | $148,500,000 | 3 | $49,500,000 |
| 21 | Berger & Montague | $130,090,000 | 6 | $21,681,667 |
| 22 | Blitz Bardgett & Deutsch | $127,500,000 | 1 | $127,500,000 |
| 22 | Goodin MacBride Squeri Ritchie & Day | $127,500,000 | 1 | $127,500,000 |
| 22 | Hulett Harper Stewart | $127,500,000 | 1 | $127,500,000 |
| 22 | Stanley, Mandel & Iola | $127,500,000 | 1 | $127,500,000 |
| 26 | Cauley Bowman Carney & Williams | $125,875,000 | 2 | $62,937,500 |
| 27 | Girard Gibbs | $115,000,000 | 1 | $115,000,000 |
| 28 | Wolf Haldenstein Adler Freeman & Herz | $113,460,000 | 6 | $18,910,000 |
| 29 | Zwerling Schachter & Zwerling | $102,250,000 | 2 | $51,125,000 |
| 30 | Kirby McInerney | $92,125,000 | 3 | $30,708,333 |
| 31 | Shalov Stone Bonner & Rocco | $81,125,000 | 3 | $27,041,667 |
| 32 | Johnson & Perkinson | $80,000,000 | 1 | $80,000,000 |
| 32 | Scott & Scott | $80,000,000 | 1 | $80,000,000 |
| 34 | Lowey Dannenberg Bemporad & Selinger | $79,750,000 | 1 | $79,750,000 |
| 35 | Barrack, Rodos & Bacine | $72,500,000 | 1 | $72,500,000 |
| 36 | Saxena White | $69,100,000 | 5 | $13,820,000 |
| 37 | Boies, Schiller & Flexner | $64,000,000 | 1 | $64,000,000 |
| 37 | Susman Godfrey | $64,000,000 | 1 | $64,000,000 |
| 39 | Harwood Feffer | $59,450,000 | 2 | $29,725,000 |
| 40 | The Brualdi Law Firm | $57,500,000 | 1 | $57,500,000 |
| 41 | Glancy Binkow & Goldberg | $44,940,000 | 4 | $11,235,000 |
| 42 | Vianale & Vianale | $32,500,000 | 4 | $8,125,000 |
| 43 | Pomerantz Haudek Block Grossman & Gross | $29,125,000 | 2 | $14,562,500 |
| 44 | Robbins Umeda & Fink | $29,000,000 | 2 | $14,500,000 |
| 45 | Bouchard Margules & Friedlander | $25,000,000 | 1 | $25,000,000 |
| 46 | Bull & Lifshitz | $24,000,000 | 1 | $24,000,000 |
| 47 | Marc B. Kramer, A Professional Corp. | $21,556,000 | 2 | $10,778,000 |
| 48 | Schoengold Sporn Laitman & Lometti | $19,075,000 | 2 | $9,537,500 |
| 49 | Finkelstein Thompson | $18,263,000 | 6 | $3,043,833 |
| 50 | Ademi & O'Reilly | $17,500,000 | 1 | $17,500,000 |

RiskMetrics Group

## Firms by Settlements

| Rank | SCAS 50 Rank | Law Firm | Settlement Total | # of Settlements | Average |
|------|--------------|----------|------------------|------------------|---------|
| 1 | 4 | Coughlin Stoia Geller Rudman & Robbins | $1,853,990,000 | 49 | $37,836,531 |
| 2 | 3 | Schiffrin Barroway Topaz & Kessler | $3,302,265,000 | 19 | $173,803,421 |
| 3 | 1 | Milberg Weiss | $3,804,625,000 | 17 | $223,801,471 |
| 4 | 5 | Bernstein Litowitz Berger & Grossmann | $1,338,110,000 | 10 | $133,811,000 |
| 5 | 12 | Weiss & Lurie | $222,100,000 | 9 | $24,677,778 |
| 5 | 13 | Cohen Milstein Hausfeld & Toll | $220,705,000 | 9 | $24,522,778 |

## Firms by Settlement Average  (*Firms had to have a minimum of 3 settlements )

| Rank | SCAS 50 Rank | Law Firm | Settlement Total | # of Settlements | Average |
|------|--------------|----------|------------------|------------------|---------|
| 1 | 2 | Grant & Eisenhofer | $3,451,300,000 | 5 | $690,260,000 |
| 2 | 1 | Milberg Weiss | $3,804,625,000 | 17 | $223,801,471 |
| 3 | 7 | Labaton Sucharow | $765,200,000 | 4 | $191,300,000 |
| 4 | 8 | Schiffrin Barroway Topaz & Kessler | $3,302,265,000 | 19 | $173,803,421 |
| 5 | 4 | Bernstein Litowitz Berger & Grossmann | $1,338,110,000 | 10 | $133,811,000 |

## Methodology

We created the SCAS 50 using data from the SCAS database, which tracks, among many other things, federal and state shareholder class actions. We also contacted each law firm to seek confirmation of the settlement data pertaining to that firm. The SCAS 50 does not include data on ERISA or derivative lawsuits.

The SCAS 50 reflects only those final settlements that resulted in the creation of a settlement fund on behalf of shareholders. Cases which resulted in no settlement fund being created, but instead had only non-monetary settlement terms (such as corporate governance changes, changes in the terms of a merger, etc.) are not included. Further information on such settlements can be found in the SCAS database.

The SCAS 50 credits law firms that served as lead or co-lead counsel in a case with the entire settlement fund, regardless of how many other firms served as lead or co-lead counsel in the case. Thus, for a settlement of $1,000,000 dollars where there were two lead counsel, the SCAS 50 credits both law firms with a $1,000,000 settlement rather than dividing the settlement fund in half. For purposes of this report, law firms are considered to be lead or co-lead counsel if they are identified as such in the notice of settlement distributed to shareholders.

## Terminology

SETTLEMENT TOTAL is the total dollar value of all final settlements occurring in 2007 in which the law firm served as lead or co-lead counsel, and where a settlement fund resulted.

# of SETTLEMENTS is the total number of final settlements occurring in 2007 in which the law firm served as lead or co-lead counsel, and where a settlement fund resulted.

AVERAGE is the SETTLEMENT TOTAL divided by the # of SETTLEMENTS.

For further information, please contact Adam Savett, Vice President of Securities Class Action Services, at (301) 556-0176 or via email adam.savett@riskmetrics.com

Copyright © 2008 by RiskMetrics Group. All rights reserved. No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or any information storage and retrieval system, without permission in writing from the publisher. Requests for permission to make copies of any part of this work should be sent to: RiskMetrics Group Marketing Department One Chase Manhattan Plaza, 44th Floor, New York, NY 10005 RiskMetrics Group is a trademark used herein under license.