UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP AUCTION RATE SECURITIES LITIGATION | 1:08-CV-03095-LTS<br><br>AND RELATED CASES<br><br>09-MD-2043-LTS |
| THIS DOCUMENT RELATES TO:<br><br>*In re Citigroup Auction Rate Securities Litigation*, 1:08-CV-03095-LTS | |

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
# THE SECOND CONSOLIDATED AMENDED COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Brad S. Karp
Susanna M. Buergel
Karen R. King
1285 Avenue of the Americas
New York, New York  10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990
bkarp@paulweiss.com
sbuergel@paulweiss.com
kking@paulweiss.com

Charles E. Davidow
2001 K Street, NW
Washington, D.C. 20006-1047
Tel.  (202) 223-7300
Fax  (202) 223-7420
cdavidow@paulweiss.com

*Attorneys for Defendants Citigroup Inc. and Citigroup Global Markets Inc.*

# TABLE OF CONTENTS

                                                                                                                                    **Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.      PLAINTIFF HAS NO COGNIZABLE LOSS BECAUSE HIS ARS HAVE BEEN FULLY REDEEMED ........................................................................... 2

II.     PLAINTIFF FAILS TO PLEAD MANIPULATIVE CONDUCT ...................... 4

III.    THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY ................................................................................. 6

IV.    PLAINTIFF FAILS TO PLEAD REASONABLE RELIANCE ......................... 8

V.     PLAINTIFF FAILS TO PLEAD FACTS PERMITTING A STRONG INFERENCE OF SCIENTER ..................................................................... 10

VI.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ..................................... 11

VII.   PLAINTIFF'S "CONTROL-PERSON" CLAIMS ARE INSUFFICIENT ...... 12

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aimis Art Corp.* v. *Northern Trust Securities, Inc.*,
   641 F. Supp. 2d 314 (S.D.N.Y. 2009) .................................................................................. 3

*ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .............................................................................................. 6, 9

*Braintree Laboratories, Inc.* v. *Citigroup Global Markets, Inc.*,
   No. 09 Civ. 10601 (NMG), 2009 WL 3683168 (D. Mass. Nov. 4, 2009) ............................ 1

*Brotman* v. *National Life Insurance Co.*,
   No. 94 Civ. 3468 (SJ), 1999 WL 33109 (E.D.N.Y. Jan. 22, 1999) ...................................... 8

*Buscemi* v. *Pepsico, Inc.*,
   736 F. Supp. 1267 (S.D.N.Y. 1990) .................................................................................... 1

*ClearOne Communications, Inc.* v. *Lumbermens Mutual Casualty Co.*,
   No. 04 Civ. 00119 (TC), 2005 WL 2716297 (D. Utah Oct. 21, 2005) ................................ 8

*Davidoff* v. *Farina*,
   No. 04 Civ. 7617 (NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) .......................... 11

*GFL Advantage Fund, Ltd.* v. *Colkitt*,
   272 F.3d 189 (3d Cir. 2001) ................................................................................................ 4

*In re Citigroup Auction Rate Securities Litigation*,
   No. 08 Civ. 3095 (LTS)(FM), 2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) .............. *passim*

*In re JP Morgan Chase Securities Litigation*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................................................ 11

*In re Merrill Lynch & Co., Inc.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................................ 12

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ........................................................................................... 7

*In re Moody's Corp. Securities Litigation*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009) ................................................................................ 12

*In re UBS Auction Rate Securities Litigation*,
   No. 08 Civ. 2967 (LMM), 2009 WL 860812 (S.D.N.Y. Mar. 30, 2009) ............................ 3

*Klein* v. *Marriot International, Inc.*,
   34 F. Supp. 2d 176 (S.D.N.Y. 1999) ................................................................................... 1

Page(s)

*Lentell* v. *Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005) .................................................................................. 12

*Lipsky* v. *Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) .................................................................................... 7

*Panos* v. *Island Gem Enterprises, Ltd., N.V.*,
880 F. Supp. 169 (S.D.N.Y. 1995) .......................................................................... 4

*Plymouth County Retirement Association* v. *Schroeder*,
576 F. Supp. 2d 360 (E.D.N.Y. 2008) ..................................................................... 4

*Rothenberg* v. *Perelman*,
No. 89 Civ. 4308, 1990 WL 3244 (S.D.N.Y. Jan. 9, 1990) ..................................... 5

*Santa Fe Industries, Inc.* v. *Green*,
430 U.S. 462 (1977) ................................................................................................ 5

*Schreiber* v. *Burlington Northern, Inc.*,
472 U.S. 1 (1985) .................................................................................................... 5

*Sedona Corp.* v. *Ladenburg Thalmann & Co.*,
No. 03 Civ. 3120 (LTS)(THK), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ........ 6

*Sullivan & Long, Inc.* v. *Scattered Corp.*,
47 F.3d 857 (7th Cir. 1995) ..................................................................................... 4

*United States* v. *Gilbert*,
668 F.2d 94 (2d Cir. 1981) ...................................................................................... 8

## STATUTES AND RULES

Fed. R. Civ. P. 9(b) ............................................................................................................ 7

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j ....................................... *passim*

Securities Exchange Act of 1934 § 20(a), 15 U.S.C. § 78t(a) ........................................ 12

## OTHER AUTHORITIES

Citigroup Inc. Form 10-Q, for the Quarterly Period Ended September 30, 2007,
*available at* http://www.citigroup.com/citi/fin/data/q0703c.pdf?ieNocache=43 ............. 1

Citigroup Inc. and Citigroup Global Markets Inc. ("CGMI" and, together with Citigroup Inc., "Citigroup" or "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Second Consolidated Amended Complaint (the "Second Amended Complaint").[1]

## PRELIMINARY STATEMENT

Plaintiff cannot remedy the core defect of his claim. The conduct that Plaintiff continues to allege was manipulative—Citigroup's bidding in auctions for ARS in order to prevent auction failures—is explicitly permitted by the SEC when properly disclosed and was, in fact, disclosed to customers repeatedly throughout the Proposed Class Period on Citigroup's website, in the prospectuses for each ARS Plaintiff purchased, and through trade confirmations and customer mailings.

Plaintiff now argues that he is not challenging the act of bidding in auctions, but rather the frequency of Citigroup's bidding in ARS auctions to prevent auction failures. This is a distinction without a difference. Plaintiff had no reasonable basis for assuming that Citigroup's bidding in auctions was infrequent. Indeed, customer disclosures made clear not only that

---

[1] In a footnote, Plaintiff argues that this Court should enter a default judgment against Smith Barney, as it has not moved to dismiss the claims against it. (Opp. Mem. 29 n.20.) However, Plaintiff does not dispute that, during the Proposed Class Period, Smith Barney was a division and service mark of CGMI. (¶ 25.) *See also* Citigroup Inc. Form 10-Q for the Quarterly Period Ended September 30, 2007, at 3, 22, *available at* http://www.citigroup.com/citi/fin/data/q0703c.pdf?ieNocache=43. Courts routinely hold that divisions of other defendants are not separate legal entities. *See, e.g., Braintree Labs., Inc. v. Citigroup Global Markets, Inc.*, No. 09 Civ. 10601 (NMG), 2009 WL 3683168, at *1 n.1 (D. Mass. Nov. 4, 2009) (finding that Smith Barney was "not a judicially cognizable entity," and thus not a proper defendant); *see also Klein v. Marriot Int'l, Inc.*, 34 F. Supp. 2d 176, 178 n.8 (S.D.N.Y. 1999); *Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1268 n.1 (S.D.N.Y. 1990). Thus, Smith Barney is not a proper party to this action and had no obligation to respond separately to the Second Amended Complaint. Were Smith Barney required to respond, its defenses would be identical to those set forth in this motion.

1

Citigroup *could* bid in ARS auctions, but that it "routinely" did so. Because the bidding activity at issue was disclosed, it cannot, as a matter of law, constitute market manipulation.

Plaintiff also cannot state a claim for securities fraud because he chose to have his ARS fully redeemed at par by Citigroup as part of a regulatory settlement. His pursuit of this lawsuit represents a futile struggle to find a role for himself, on a class-wide basis, when the SEC has already obtained class-wide relief. Plaintiff has no cognizable loss—a pleading requirement for a cause of action under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b). Plaintiff's claim to hypothetical higher interest rates to compensate him for the additional risk of illiquidity is speculative and makes no sense. Having elected to sell his ARS back to Citigroup at par, while keeping the interest payments, Plaintiff got exactly what he claims he bargained for—liquidity for his security and the interest rates commensurate with a liquid security.

Because the Second Amended Complaint fails to cure the pleading deficiencies of Plaintiff's earlier complaint, and because Plaintiff no longer holds any Citigroup ARS, this action should be dismissed with prejudice.

## ARGUMENT

### I.

### PLAINTIFF HAS NO COGNIZABLE LOSS BECAUSE HIS ARS HAVE BEEN FULLY REDEEMED

There is no dispute that Plaintiff chose to have his ARS holdings redeemed at par as part of Citigroup's regulatory settlement and that, as of the date of the Second Amended

Complaint, he held no ARS in his Citigroup account. (Opp. Mem. at 21-22; ¶ 17.)[2] Plaintiff nonetheless argues that he may litigate his claims because he did not release them in the redemption process. (Opp. Mem. at 21-24.) This argument misses the point. Defendants' position is not that Plaintiff has released his claims. Rather, it is that, having had his ARS redeemed at par, Plaintiff *can no longer plead any damage*. Nothing in the regulatory settlement abrogates the legal requirements for a Section 10(b) claim, which include cognizable loss. *Aimis Art Corp. v. N. Trust Secs., Inc.*, 641 F. Supp. 2d 314, 318-21 (S.D.N.Y. 2009); *In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967 (LMM), 2009 WL 860812, at *5-6 (S.D.N.Y. Mar. 30, 2009).[3]

Indeed, two judges in this district—Judges Marrero and McKenna—have already ruled that rescission of a plaintiff's ARS holdings precludes further prosecution of Section 10(b) claims. *See Aimis Art Corp.*, 641 F. Supp. 2d at 320 (holding that under Section 10(b), a plaintiff must chose between rescission and benefit-of-the-bargain damages); *In re UBS Auction Rate Secs. Litig.*, 2009 WL 860812, at *5-6. Plaintiff argues that Judges Marrero and McKenna got it wrong, and that he is entitled to the "benefit-of-the-bargain" in the form of higher interest rates

---

[2] Citations in the form of "¶ __" refer to paragraphs in the Second Amended Complaint. Citations in the form of "Def. Mem." refer to Defendants' Memorandum of Law in Support of their Motion to Dismiss the Second Amended Complaint, dated December 3, 2009, and citations in the form of "Opp. Mem." refer to Lead Plaintiff's Memorandum in Opposition, dated January 21, 2010. Citations in the form "Davidow Ex." refer to exhibits attached to the Declaration of Charles E. Davidow in Support of Defendants' Motion to Dismiss the Second Amended Complaint. Citations in the form "Sobel Ex." refer to exhibits attached to the Declaration of Hillary Sobel in Support of Lead Plaintiff's Opposition.

[3] The regulatory settlement preserved the right of investors to pursue consequential damages, if they could establish them, in addition to redeeming the ARS of those who qualified. (Sobel Ex. A at 10-11.) Plaintiff, however, pleads no such consequential damages himself, and any such relief would be individual in nature and unsuited to class-wide treatment in any event.

to compensate him for the "increased risk [he] assumed in purchasing Citigroup ARS." (Opp. Mem. at 22.) However, the basis of Plaintiff's claim is that he purchased ARS believing them to be liquid securities. (¶¶ 70-75.) By Plaintiff's theory, the "benefit-of-the-bargain," therefore, was a liquid security—which Plaintiff received when his ARS were redeemed at par; the interest rates he alleges he actually received were those of a liquid security, which is what he bargained for. Plaintiff is improperly seeking *both* a liquid security and interest rates for an illiquid security, which is not the benefit-of-the-bargain at all.

In any event, Plaintiff's claim to unspecified, higher interest rates is impermissibly speculative and cannot form the basis of a securities fraud action. *See Plymouth County Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 384 (E.D.N.Y. 2008) (dismissing 10b-5 claim because plaintiff's alleged damages were "speculative, at best"); *Panos v. Island Gem Enters., Ltd., N.V.*, 880 F. Supp. 169, 175 (S.D.N.Y. 1995) (noting that the Exchange Act prevents "speculative recoveries").

## II.

## PLAINTIFF FAILS TO PLEAD MANIPULATIVE CONDUCT

Plaintiff's theory of market manipulation is fundamentally and fatally flawed because conduct that is legal and disclosed cannot form the basis of a securities fraud claim. *See GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 209-211 (3d Cir. 2001); *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 864-65 (7th Cir. 1995).

Plaintiff repeatedly asserts that Citigroup manipulated the market for ARS by leading investors to believe that prices and interest rates were set entirely by market forces (Opp. Mem. at 4-6, 12-13), and by failing to disclose that it had increased its bidding in auctions during the Proposed Class Period (*id.* at 7, 19-20). This theory flies directly in the face of numerous disclosures—by regulators, by issuers and by Citigroup—informing investors that (1) Citigroup

4

had the right, but not an obligation, to bid in ARS auctions, (2) Citigroup "routinely" bid in ARS auctions and (3) Citigroup's bids could affect the interest rates of ARS. (Def. Mem. 5-7.)

Both the language of Section 10(b) and the Supreme Court's interpretation of it limit the term "manipulation" to "practices deemed by the SEC to be 'manipulative' in this technical sense of artificially affecting market activity in order to mislead investors . . . ." *Santa Fe Indus., Inc.* v. *Green*, 430 U.S. 462, 476-77 (1977). Here, the SEC has addressed the precise practice at issue—"submitt[ing] bids to ensure that all of the securities would be purchased to avoid failed auctions and thereby, in certain instances, affect[ing] the clearing rate." (Davidow Ex. 1 at 6.) The relief the SEC ordered consisted of disclosure to holders of ARS, not any limitation on the bidding practices. (*Id.* at 6 n.6, 10-11.)[4]

Plaintiff argues that he is not challenging Citigroup's practice of bidding in ARS auctions, but rather "the undisclosed extent, purpose and effect of Defendants' manipulative intervention . . . ." (Opp. Mem. at 6.) This is a distinction without a difference. Manipulation, as a matter of law, requires misrepresentation. *See Schreiber* v. *Burlington N., Inc.*, 472 U.S. 1, 7-8 (1985) ("Congress used the phrase 'manipulative or deceptive' in § 10(b) as well, and we have interpreted 'manipulative' in that context to require misrepresentation." (citing *Santa Fe Indus.*, 430 U.S. at 476-77)); *see also Rothenberg* v. *Perelman*, No. 89 Civ. 4308, 1990 WL 3244, at *2 (S.D.N.Y. Jan. 9, 1990) (citing *Schreiber*, 472 U.S. 1) (rejecting argument that

---

[4] Plaintiff suggests that the existence of SEC and state regulatory investigations into Citigroup's ARS sales practices in 2008 is evidence that the 2006 SEC Order did not condone Defendants making more than "occasional purchase[s] of Citigroup ARS for their own account." (Opp. Mem. at 6.) This argument is contradicted by the plain language of the 2006 Order. (Davidow Ex. 1 at 6 n.6). *See also In re Citigroup Auction Rate Sec. Litig.*, No. 08 Civ. 3095 (LTS)(FM), 2009 WL 2914370, at *7 (S.D.N.Y. Sept. 11, 2009) (finding that the 2006 SEC Order "disclosed that Defendants could engage in the very conduct of which Plaintiff complains").

activities can be manipulative even if disclosed). In addition to the SEC's 2006 Order, Citigroup's customer disclosures made clear not only that it could bid in auctions, but that it "routinely" did so:

- "***Citigroup may routinely place one or more bids in an auction for its own account*** to acquire ARS for its inventory, to prevent a failed auction . . . or an auction from clearing at a rate that Citigroup believes does not reflect the market for a particular ARS being auctioned . . . ." (Davidow Ex. 2 at 4 (emphasis added).)

- Citigroup's bids are "likely" to "cause[] bidders to receive a higher or lower rate than they might have received had Citigroup not bid . . . ." (*Id.*)

Thus, as this Court previously ruled, Plaintiff fails to state a claim for market manipulation because Citigroup "disclosed that [it] could engage in the very conduct of which Plaintiff complains," including "*that the ARS market was not necessarily set by the 'natural interplay of supply and demand,'* but that they could be set by broker-dealers, such as CGMI." *In re Citigroup Auction Rate Sec. Litig.*, No. 08 Civ. 3095 (LTS)(FM), 2009 WL 2914370, at *7, *8 (S.D.N.Y. Sept. 11, 2009) (emphasis added).

### III.

### THE SECOND AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY

Plaintiff has—twice—pleaded his claim only on a general level and failed to specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *5 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007)); *see also Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS)(THK), 2005 WL 1902780, at *10 (S.D.N.Y. Aug. 9, 2005).

Despite the addition of quotes from regulatory complaints and settlements, the Second Amended Complaint continues to addresses only Citigroup's general practices with respect to ARS. Plaintiff does not allege that Citigroup ever bid in an auction for a security that he owned, or that it increased its bidding for, or its inventory of, any such security. Plaintiff admits that he cannot provide these details, but argues that he should be excused from pleading facts not within his knowledge. (Opp. Mem. at 11.) The Private Securities Litigation Reform Act and Rule 9(b) do not simply accept as sufficient whatever facts are within a plaintiff's possession. If Plaintiff lacks the facts to plead a plausible claim that wrongful conduct occurred with respect to a security he purchased, he is not entitled to pursue a complaint. Indeed, in the case on which he primarily relies, *ATSI Communications*, the Second Circuit upheld dismissal because the plaintiff "fail[ed] to state even roughly how many shares the defendants sold, when they sold them, and why those sales caused the precipitous drop in stock price." 493 F. 3d at 103.

Moreover, despite insisting that he is citing regulatory complaints only "for the *statements and facts contained therein*" (Opp. Mem. at 8 (emphasis in original)), Plaintiff repeatedly, and improperly, cites them for their "findings" (*id.* at 9, 12). *See Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[N]either a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of this case."); *see also In re Merrill Lynch & Co., Inc. Research*

7

*Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003).[5] In doing so, Plaintiff tries to repackage regulatory complaints about alleged *misrepresentations* and *sales practices* into a case about *market manipulation* based on *bidding practices*. The square peg does not fit in the round hole. The regulatory complaints do not allege market manipulation because the elements of a Section 10(b) manipulation case are not satisfied.

### IV.

### PLAINTIFF FAILS TO PLEAD REASONABLE RELIANCE

Nothing in the Second Amended Complaint or Plaintiff's opposition can establish reasonable reliance on assumptions that were contradicted by numerous disclosures. Plaintiff had no reasonable basis for assuming that Citigroup bid only rarely in actions, that there was only a "possibility" that Citigroup would bid or that it would only make an "occasional purchase." (Opp. Mem. at 6-7, 15). As discussed above, Citigroup disclosed that it "routinely" bid in ARS auctions. (*See supra* p. 5; Davidow Ex. 2 at 4.) The fact that there were no auction failures in Citigroup ARS in the twenty years prior to February 2008 (Opp. Mem. at 10, 12) supports the inference that Citigroup was bidding whenever necessary to prevent auction failure. It does not show that Citigroup rarely bid in auctions, as Plaintiff suggests.

---

[5] The cases cited by Plaintiff for the proposition that courts regularly permit plaintiffs to cite regulatory complaints and decrees as evidence (Opp Mem. at 8), do not actually stand for that proposition. In fact, the cases very clearly state that consent decrees may *not* serve as proof of underlying liability. *See United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (admitting a consent decree to show the defendant's knowledge of its reporting requirements, but noting that it could not "be used to prove underlying facts of liability"); *Brotman v. Nat'l Life Ins. Co.*, No. 94 Civ. 3468 (SJ), 1999 WL 33109, at *2 (E.D.N.Y. Jan. 22, 1999) (admitting consent orders only to demonstrate motive, "not to prove the truth of the underlying factual matters recited in the consent orders"); *ClearOne Commc'ns, Inc. v. Lumbermens Mut. Cas. Co.*, No. 04 Civ. 00119 (TC), 2005 WL 2716297, at *8 n.10 (D. Utah Oct. 21, 2005) (considering the consent decree "only as part of the factual background").

Plaintiff's repeated reference to reliance on the "integrity of the market" (*see, e.g.*, Opp. Mem. at 12) also makes no sense. Plaintiff himself argues, in an effort to plead loss causation, that Citigroup ARS do not operate in an efficient market. (Opp. Mem. at 28.) In any event, by definition, ARS are purchased through auction, not on an open market. There is no suggestion that the rules of the auction were violated and, as discussed above, the alleged conduct of Citigroup falls squarely within the actions it said it could, and would, take. *See supra* pp. 4-6. Having been told that investors could "receive a higher or lower rate than they might have received had Citigroup not bid," *see supra* p. 5, Plaintiff cannot claim reasonable reliance on a directly contrary assumption.

Finally, Plaintiff argues that certain categories of disclosures should be ignored. He calls the prospectuses "stale" because they were issued between 1999 and 2002, and states that "there exists no reason to suppose that an investor should rely upon the statements in them." (Opp. Mem. at 14.)[6] The prospectuses in question, however, were the governing documents for Plaintiff's securities, they were all publicly available and they remained operative throughout the Proposed Class Period. The fact that Plaintiff ignored explicit disclosures in those documents does not render them "stale."

Plaintiff also argues that the 2006 SEC Order is irrelevant because it relates only to disclosure laws, not market manipulation. This argument has no merit. As discussed above,

---

[6] Plaintiff argues, once again, that the prospectuses "are not properly before the Court." (Opp. Mem. at 14.) As this Court has previously held, it "'may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing suit.' The Court may also consider matters subject to judicial notice." *In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *4 (quoting *ATSI*, 493 F.3d at 98); *see also id.* at *3 n.2.

9

*see supra* pp. 4-6, the 2006 SEC Order speaks directly to the conduct at issue here, and noted that broker-dealers like Citigroup could continue bidding in auctions—with no limitation on the extent or purpose of such bidding—provided that the practice was disclosed. (Davidow Ex. 1 at 6 & n.6.) Moreover, there can be no manipulation without deception. *See supra* p. 5. The 2006 SEC Order, together with Citigroup's customer disclosures, made clear that Citigroup had the ability, but not the obligation, to bid in ARS auctions.

Notwithstanding his attempts to discredit certain disclosures, Plaintiff cannot erase the overall impact of all the disclosures: repeated, consistent disclosures in a variety of different documents informing investors that Citigroup could do exactly what Plaintiff now claims was concealed.

## V.

## PLAINTIFF FAILS TO PLEAD FACTS PERMITTING A STRONG INFERENCE OF SCIENTER

For his scienter allegations, Plaintiff relies almost exclusively on references to internal e-mails culled from the regulatory complaints. (¶¶ 10-11, 59, 62, 73-74, 89, 96, 100-105, 111, 131, 152.) Far from "conceding" motive, as Plaintiff asserts (Opp. Mem. at 18-19), these e-mails merely show that certain Citigroup employees believed that ARS auctions would fail if Citigroup ceased bidding in them. The e-mails do not support an inference that someone at Citigroup believed bidding to be improper, intended to defraud investors or "engaged in knowing misbehavior." (*Id.* at 17.) Indeed, the fact that the 2006 SEC Order, prospectuses and other disclosures stated that Citigroup could bid in ARS auction supports the opposite inference.

Plaintiff's assertion that the 2006 SEC Order "demonstrates that [Citigroup] affirmatively knew that . . . 'intervention into auctions' to affect the clearing rate or prevent auction failure violated the securities laws disclosure provisions" (Opp. Mem. at 15) is illogical.

10

The 2006 SEC Order pre-dates the Proposed Class Period. Moreover, Plaintiff is not bringing a disclosure case (Compl. at 27 (caption)), and the SEC Order explicitly states that it "does not prohibit broker-dealers from bidding for their proprietary accounts when properly disclosed," as it was here. (Davidow Ex. 1 at 6 n.6).

Finally, Plaintiff continues to assert in conclusory fashion that Citigroup's increase in bidding during the Proposed Class Period is "symptomatic of [its] efforts to manipulate the Citigroup ARS market and foster the illusion of stability for their own gains." (Opp. Mem. at 19.) The argument is illogical. An increase in Citigroup's inventory tends to show a *lack of scienter*; it would make no sense for Citigroup to escalate its purchases of ARS if it believed the market was fraudulent. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 629 (S.D.N.Y. 2005) ("JPM Chase's continued provision of billions of dollars in fresh capital to Enron during the class period undermines plaintiffs' conclusory claim that JPM Chase knew or should have known Enron faced impending financial ruin."); *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 WL 2030501, at *11 & n.19 (S.D.N.Y. Aug. 22, 2005) ("[I]t would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail."). Plaintiff's new allegation that Citigroup sold its inventory to "unsuspecting buyers before they let the Citigroup market collapse" (Opp. Mem. at 19) is directly contrary to his allegations that Citigroup more than doubled its ARS inventory between fall of 2007 and February 2008, when auctions began to fail. (¶¶ 66-68.)

## VI.

## **PLAINTIFF FAILS TO PLEAD LOSS CAUSATION**

In addition to the fact that Plaintiff has no cognizable loss, the Complaint fails to articulate a coherent theory of loss causation. Plaintiff tries to narrow the picture of what he describes as the "Citigroup ARS Market," asserting that "Citigroup ARS do not trade on an

efficient market in which . . . outside forces could affect the price paid for or interest rate received for Citigroup ARS." (Opp. Mem. at 28.) But there can be no dispute that the failure of ARS auctions was a marketwide phenomenon which unfolded in the midst of a global credit crisis. The Court can take judicial notice of the fact that numerous ARS auctions—including ARS managed and traded by other broker-dealers, not just Citigroup—failed in February 2008. *See Lentell* v. *Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 513 (S.D.N.Y. 2009); *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 365 (S.D.N.Y. 2003). As *Lentell* indicates, "when the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases . . . ." 396 F.3d at 174; *see also In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *8. Because demand for ARS fell precipitously across the entire industry, Plaintiff fails to plead facts tying his purported loss to conduct by Citigroup, as opposed to market forces at large.

## VII.

## PLAINTIFF'S "CONTROL-PERSON" CLAIMS ARE INSUFFICIENT

As discussed in Citigroup's opening memorandum (Def. Mem. at 24), Plaintiff's claim for "control-person" liability under Section 20(a) of the Securities Exchange Act fails because the Second Amended Complaint does not plead a primary violation of the securities laws. *See In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *10; *see also* 15 U.S.C. § 78t(a).[7]

---

[7] As noted above, Smith Barney is a division of CGMI, and is therefore not a separate legal entity. *See supra* at 1 n.1  As a result, Plaintiff's Section 20(a) claim against CGMI should be dismissed because CGMI cannot be a "control-person" of itself.

## CONCLUSION

For the reasons set forth above and in their opening brief, Defendants respectfully request that the Court dismiss the Second Amended Complaint, in its entirety and with prejudice.

Dated:  New York, New York
        February 16, 2010

                                      Respectfully submitted,

                                      PAUL, WEISS, RIFKIND, WHARTON &
                                      GARRISON LLP

                                      _____/s/ Charles E. Davidow_____
                                      Brad S. Karp
                                      Susanna M. Buergel
                                      Karen R. King
                                      1285 Avenue of the Americas
                                      New York, New York  10019-6064
                                      Tel.  (212) 373-3000
                                      Fax   (212) 757-3990
                                      bkarp@paulweiss.com
                                      sbuergel@paulweiss.com
                                      kking@paulweiss.com

                                      Charles E. Davidow
                                      2001 K Street, NW
                                      Washington, D.C. 20006-1047
                                      Tel.  (202) 223-7300
                                      Fax   (202) 223-7420
                                      cdavidow@paulweiss.com

                                      *Attorneys for Defendants Citigroup Inc. and*
                                      *Citigroup Global Markets Inc.*